Steven W. Golden
Jeffrey M. Dine
Mary F. Caloway (*pro hac vice* pending)
Victoria A. Newmark (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| IOVATE HEALTH SCIENCES INTERNATIONAL INC.,[1] *et al.* | Case No. 25-11958 (MG) |
| | (Joint Administration Requested) |
| Debtors in a Foreign Proceeding. | |

**DECLARATION OF HARVEY G. CHAITON IN SUPPORT OF (I) VERIFIED CHAPTER 15 PETITIONS, (II) FOREIGN REPRESENTATIVE'S MOTIONS FOR ORDERS GRANTING PROVISIONAL AND FINAL RELIEF IN AID OF CANADIAN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

I, Harvey G. Chaiton, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury of the laws of the United States of America that the following is true and correct:

1.      I am over the age of 18, a citizen of Canada, and, if called upon, could testify to all matters set forth in this declaration, except as otherwise provided herein. I hereby submit this declaration in support of (a) the verified chapter 15 petitions of each of the Debtors (the "Verified Petitions"); (b) the *Motion for Provisional Relief in Aid of Canadian Proceeding Pursuant to*

---

[1]      The Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A., Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909).

Section 1519 of the Bankruptcy Code (the "Provisional Relief Motion"); and (c) the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"), each of which is filed concurrently herewith.

2.      I am a partner of Chaitons LLP and have practiced exclusively in the area of bankruptcy, insolvency, and restructuring law, including cross-border insolvency proceedings, for more than 40 years.

**A.      Overview of BIA Reorganizations**

3.      *The Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA") is the principal statute in Canada addressing bankruptcies, similar to Chapters 7 and 13 of the United States Bankruptcy Code (the "Bankruptcy Code"), and also provides for reorganizations similar to Chapter 11 of the Bankruptcy Code.  In the case of corporate reorganizations, the BIA is one of two statutes, the other being the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended ("CCAA"), pursuant to which an insolvent company may reorganize.

4.      A BIA reorganization may be commenced by filing a document with the Official Receiver of the Office of the Superintendent of Bankruptcy (a government agency somewhat akin to the U.S. Trustee), called a "Notice of Intention to Make a Proposal" (the "NOI").  As a collective judicial proceeding, all known creditors with a minimum claim of CAD$250 and other parties in interest receive notice of the NOI's filing. Upon the filing of the NOI, a stay of proceedings is automatically imposed with respect to a  debtor, its property, and its directors pursuant to sections 69.1 and 69.31 of the BIA, subject to certain exceptions not relevant to the instant proceedings.   A debtor's management is permitted to continue to manage the assets and affairs of the debtor (which includes the power to represent the debtor in pending litigations), similar to a debtor-in-possession under the Bankruptcy Code.

5.      A trustee must be appointed to work with the debtor company upon the filing of the NOI (the "Proposal Trustee").   The Proposal Trustee is an independent person (or corporation), licensed by the Superintendent of Bankruptcy. The Proposal Trustee does not displace management of the debtor.   However, the Proposal Trustee is an officer of the court and is a fiduciary to the creditors of the debtor company.

6.      The Proposal Trustee has a duty to monitor and report on the debtor's affairs and to notify creditors and the court of any material adverse changes that may occur after the NOI has been filed.  The Proposal Trustee is to work with the debtor company on developing a proposal to be presented to the debtor's creditors.  In addition, the Proposal Trustee is to send notice of the filing of the NOI to all known creditors with a claim of at least CAD$250.  Such notice is sent within five days of the NOI being filed.

7.      The debtor company must file a cash flow statement within 10 days after the NOI is filed. The Proposal Trustee must have reviewed the cash flow statement and certified that it is reasonable in the circumstances.  Failure to file the cash flow statement within the 10 day period results in an automatic bankruptcy (functionally equivalent to an automatic conversion to Chapter 7 under the Bankruptcy Code).

8.      The initial stay of proceedings upon the filing of the NOI lasts for 30 days.  The debtor company has the option to apply for an extension of time to file the NOI in increments of up to 45 days and for a maximum aggregate period of six months from the time that the NOI was filed.  Before the end of the NOI period the debtor company must file a proposal.  Failure to receive an extension or file a proposal within the prescribed time periods results in an automatic bankruptcy.

9.      Extensions of the stay will be granted provided that the court is satisfied that the debtor is: (i) acting in good faith and with due diligence; (ii) likely to make a viable proposal if the extension is granted; and (iii) no creditor would be materially prejudiced if the extension requested is granted.

10.     Creditors may apply to the court, at any time, to terminate the NOI. To succeed the creditors must establish that the debtor is: (i) not acting in good faith or with due diligence; (ii) unlikely to make a viable proposal before the NOI period expires; (iii) unlikely to make a proposal that the creditors would accept; or (iv) the creditors as a whole would be materially prejudiced if the proceedings are not ended.

## B.      **The BIA Proposal Process**

11.     During the NOI process, the debtor company is to file a proposal.  A proposal must be made to the unsecured creditors of the company.  It may be made to the secured creditors but this is not mandatory. Where a proposal is not made to the secured creditors, the stay of proceedings ceases to apply to such creditors.

12.     Where a proposal is made to both secured and unsecured creditors, they are treated as being in separate classes.  Depending on the nature of the claims or their proposed treatment in a proposal, secured creditors and unsecured creditors may be further divided into additional classes.

13.     Within 21 days after the proposal is filed, a meeting (or meetings if there is more than one class of creditors), must be held to consider and vote on the proposal.  It is the Proposal Trustee's duty to call the creditors' meeting to consider the proposal.  Further, at least 10 days before the proposed creditors' meeting, the Proposal Trustee must send notice to all known creditors setting forth, or otherwise including, (i) the time, date and place of the meeting (usually in the municipality where the debtor is based); (ii) a condensed statement of assets and

liabilities; (iii) a list of creditors owed more than CAD$250 (including the amounts owed as listed on the debtor's  books); (iv) a copy of the proposal; (v) a proof of claim form; (vi) a proxy form; and (vii) a voting letter.

14.     In order to be accepted,  a majority in number and representing 2/3 in the dollar value  of the unsecured creditor class (or classes if the unsecured creditors are divided into more than  one class) with proven claims, must have voted in favour of the proposal.  For the purpose of determining whether the statutory approval has been reached only those creditors who actually voted (whether in  person or by proxy) are counted.  Creditors who cannot attend the meeting in person have the ability to vote by proxy for or against the proposal.  Creditors that are related parties to the debtor cannot vote in favour of the proposal (although they can vote against it).  A proposal cannot be approved over the objection of an unsecured creditor class that did not vote in favour of the proposal.

15.     If the requisite double majority (or double majorities in the case of multiple classes) is obtained in favour of the proposal, then an application is made to the court for approval of the proposal.  If the court approves the proposal, it binds all creditors to whom the proposal was made. Should the court reject the proposal, or the court refuses to approve the proposal, then the company is deemed to have been assigned into bankruptcy.

**C.**     **The BIA Claims Process and Creditor Protections**

16.     To be eligible to vote on the proposal, creditors must file proofs of claim that the Proposal Trustee will review with the debtor company.  Creditors do have the ability to challenge other creditors' claims. Any disputes over the amount or validity of the claim can be referred to the supervising court.

17.     Pursuant to section 108 of the BIA, the Proposal Trustee has the option to allow  a

claim to be allowed at a meeting for voting purposes alone.


Dated: September 9, 2025
          Toronto, Ontario
          Canada

/s/  Harvey G. Chaiton (Sep 8, 2025 20:56:28 EDT)
_____

Harvey G. Chaiton