Steven W. Golden
Jeffrey M. Dine
Mary F. Caloway (admitted *pro hac vice*)
Victoria A. Newmark (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| IOVATE HEALTH SCIENCES INTERNATIONAL INC.,[1] *et al.* | Case No. 25-11958 (MG) |
| | (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |

<u>*AMENDED*</u>[2] **DECLARATION OF WESLEY PARRIS IN SUPPORT OF**
**(I) VERIFIED CHAPTER 15 PETITIONS, (II) FOREIGN REPRESENTATIVE'S**
**MOTIONS FOR ORDERS GRANTING PROVISIONAL AND FINAL RELIEF IN AID**
**OF CANADIAN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

I, Wesley Parris, to the best of my information and belief, state as follows:

1. I am Chief Executive Officer of Iovate Health Sciences International Inc. ("<u>Iovate International</u>"), the authorized foreign representative of the chapter 15 debtors, Iovate International, Iovate Health Sciences U.S.A. Inc. ("<u>Iovate USA</u>"), and Northern Innovations Holding Corp. ("<u>Northern Innovations</u>" and together with Iovate International and Iovate USA, the "<u>Debtors</u>"), in respect of that certain insolvency proceeding (the "<u>Canadian Proceeding</u>")

---

[1] The Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A. Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909).

[2] This Amended Declaration corrects paragraph 17 of my originally-filed Declaration [Docket No. 5], as announced on the record at the hearing on September 10, 2025.

4936-8805-1816.1 42848.00001

commenced pursuant to section 50.4 of Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3) (the "BIA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), and as such, I am fully familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of the following motions and other documents (collectively, the "First Day Papers"): (a) the verified chapter 15 petitions of each of the Debtors (the "Verified Petitions"); (b) the *Motion for Provisional Relief in Aid of Canadian Proceeding Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"); (c) the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"); (d) the *Motion for Order (I) Directing Joint Administration of Cases Under Chapter 15 of the Bankruptcy Code and (II) Authorizing Foreign Representative to File Consolidated Lists of Information Required by Bankruptcy Rule 1007(a)(4)* (the "Joint Administration Motion"); and (e) the *Foreign Representative's Motion for Order Scheduling Recognition Hearing and Specifying the Form and Manner of Service of Notice* (the "Notice Procedures Motion"). I am authorized by the Foreign Representative to submit this Declaration on its behalf in support of the First Day Papers.

3. In my role as the CEO of the Foreign Representative, I have become familiar with the history, day-to-day operations, assets, financial condition, business affairs, and books and records of each of the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents; (c) information supplied to me by other employees of the Debtors or their affiliates, the officers, directors, and employees of the Debtors, or other professionals retained by the Debtors; or (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. I am an

individual over the age of 18 and, if I am called upon to testify, I will testify competently to the facts set forth herein.

I. **THE DEBTORS' BUSINESS OPERATIONS**

4. The Debtors and their non-Debtor affiliates (collectively, the "Iovate Group") are an established and diversified health and wellness business based in Oakville, Ontario, Canada, specializing in active nutrition and weight management products. Founded in approximately 1995, the Iovate Group develops science-based supplements and vitamins tailored to fitness enthusiasts and health-conscious consumers. Its portfolio includes brands such as MuscleTech™, Hydroxycut™, Six Star® and Purely Inspired®, which are designed to support muscle building, weight loss, and overall wellness.



5. Initially headquartered in Mississauga, Ontario, the Iovate Group began as a direct-to-consumer mail order business offering three products. One year later, the Iovate Group launched its wholesale retail division, and introduced several additional product launches. In 2008, the Iovate Group relocated to Oakville, Ontario. With the move, the Iovate Group continued to expand its departments, product lines, and corporate partnerships with retailers such as Walmart, Walgreens, and Sam's Club. Its products are available in various forms, including powders,

capsules, tablets, sachets, chews, softgels, and gummies. Its products are currently distributed in over 90 countries worldwide.

6. The Iovate Group manufactures and distributes its products through third-party co-manufacturers and a network of domestic and international distribution partners. Its products are shipped from facilities in Canada, the United States, Belgium, and Australia, and are sold through retail, online, and distributor channels globally.

7. As of the Petition Date, Iovate International leases its corporate head office in Oakville, Ontario, Canada (the "Oakville Headquarters"). None of the Debtors lease any other real property. I and the Debtors' other management work out of the Oakville Headquarters. Iovate International employs approximately 165 people in Canada, and 2 people in the United Kingdom. All of Iovate International's employees are located in Ontario. Iovate USA employs approximately 11 people in the United States, most of whom are salespeople. Northern Innovations does not have any employees.

8. Most of Iovate Group's operations are conducted through Iovate International. Iovate USA, generally speaking, is responsible for overseeing warehousing and third-party logistics for Iovate Group's non-Canadian customers and maintains Iovate Group's relationships with United States-based customers. Iovate USA's principal asset is accounts receivable from United States-based customers, which are deposited into New York-based bank accounts with HSBC USA but swept daily into Iovate International's Toronto-based concentration account with RBC. Iovate Group's inventory and raw materials are owned by Iovate International (as is most of Iovate Group's cash, non-United States accounts receivable, and other assets other than intellectual property) and its intellectual property is owned by Northern Innovations.

## II.    THE DEBTORS' CORPORATE STRUCTURE AND LEADERSHIP

9. Iovate International and Northern Innovations are each Ontario corporations governed by the *Ontario Business Corporations Act* and have their registered office located in Oakville, Ontario, Canada. Iovate USA is a Delaware limited liability company with its registered office in Wilmington, Delaware. All of the Debtors are headquartered in Canada at the Oakville Headquarters.

10. Iovate International centrally manages all corporate activities of the Iovate Group from the Oakville Headquarters outside of Toronto. I am primarily responsible for the direction of the Debtors' corporate, management, legal, investment, and strategic functions, all of which I manage from the Oakville Headquarters.

11. As of the Petition Date, each of the Debtors has a three-member board of directors comprised of Di Wang and Jiaqi Zheng (both based in China) and Xiyao Michael Liu (based in Canada). The Debtors' officers and senior management as of the Petition Date are as follows:

| **Iovate Health Sciences International Inc.** | | |
|---|---|---|
| Xiyao Michael Liu | Canada | Deputy Chairman |
| Wesley Parris | Canada | Chief Executive Officer |
| Tanya Mistry | Canada | Vice President-Finance |
| Lesley Au | Canada | Chief Financial Officer |
| Nick Rini | Canada | Chief Commercial Officer |
| Chris Lloyd | Canada | Chief Operations Officer |
| Raza Bashir | Canada | Chief Innovation Officer |
| **Iovate Health Sciences U.S.A. Inc.** | | |
| Di Wang | China | Chairman |
| Wesley Parris | Canada | Chief Executive Officer |
| Tanya Mistry | Canada | Vice President-Finance; Treasurer |
| **Northern Innovations Holding Corp.** | | |
| Wesley Parris | Canada | Chief Executive Officer |
| Tanya Mistry | Canada | Vice President-Finance |

12. The Debtors' operations are highly integrated and share management and headquarters in Oakville, Ontario, Canada. All accounting, finance, and human resource functions

for the Debtors are centralized and managed from the head office in Oakville, where payroll is also processed for all Canadian and U.S. operations. An extract of the Iovate Group's organizational chart (including both Debtors and non-Debtors) is as follows:



13. As shown on the chart above, Iovate USA wholly-owns seven Delaware limited liability companies (the "Delaware Subsidiaries"), none of which are Debtors at this time. Apart from *de minimis* cash, the Delaware Subsidiaries do not have any assets or liabilities. However, Muscletech LLC, SimpleVita Nutrition LLC, and XP Sports LLC have agreed to terms of service with Amazon.com as third party sellers and are actively selling to Amazon thereunder.

### III.     THE DEBTORS' CAPITAL STRUCTURE

####    A.     Secured Debt

14. Iovate International entered into an amended and restated credit agreement dated June 30, 2021 (as amended, the "Credit Agreement"), with HSBC Bank Canada (now Royal Bank of Canada ("RBC")), as administrative agent (in such capacity, the "Administrative Agent"), and HSBC Bank Canada, the Toronto-Dominion Bank, Bank of China (Canada), Bank of Montreal, National Bank of Canada, Canadian Western Bank, and the Bank of Nova Scotia, as syndicated

lenders (together, the "Lenders"). The Credit Agreement has been amended ten times, most recently by an amendment dated February 28, 2025 ("Amending Agreement No. 10"). The Credit Agreement provides for a revolving credit facility and a term loan facility (together, the "Credit Facilities").

15. As security for the obligations under the Credit Agreement, the Debtors and related affiliates granted the Lenders a comprehensive security package. This included, among other things: (i) a multi-party Group Guarantee by Iovate International, Iovate USA, Northern Innovations and certain of their affiliates; (ii) a general security agreement granted by Iovate International, Iovate USA, Northern Innovations and certain of their affiliates creating a first-priority lien over all present and after-acquired real and personal property; (iii) security agreements and pledges from Iovate USA; and (iv) specific security over intellectual property, including trademarks and patents held by Northern Innovations.

16. As of August 31, 2025, approximately USD $100,606,023 of principal was owing under the term loan facility, USD $14,000,000 was owing under the revolving loan facility, and an additional USD $1,179,465 of default interest had accrued month-to-date for a total amount owing of USD $115,785,488.

### B.  Unsecured Notes

17. Non-Debtor Xiwang Iovate is an obligor on a series of unsecured promissory notes (the "Unsecured Notes") dated between March 31, 2022 and June 20, 2025. As of the Petition Date, Non-Debtor Xiwang Iovate owes approximately USD $10 million to Xiwang Foodstuffs (Qingdao) Co., Ltd. and approximately USD $39 million to XW Foodstuffs Co., Ltd. on account of the Unsecured Notes.[3]

---

[3] Xiwang Foodstuffs (Qingdao) Co., Ltd. and XW Foodstuffs Co., Ltd. are affiliates of Xiwang Iovate.

### C. Trade Payables

18. As of September 5, 2025, the Debtors estimate that they owe approximately CAD $33.8 million to trade creditors, of which approximately CAD $2.5 million is owed by Iovate USA.

### IV. EVENTS LEADING TO THE CANADIAN PROCEEDING

#### A. Defaults Under the Credit Agreement

19. On July 8, 2024, Iovate International, the Administrative Agent and the Lenders entered into a default agreement (as amended, the "Default Agreement") following Iovate International's failure to make a scheduled principal payment of approximately USD $3.27 million that had become due on June 30, 2024. The Default Agreement did not constitute a waiver of the default under the Credit Agreement but confirmed that the Lenders reserved all of their rights and remedies under the Credit Agreement and related security documents.

20. Iovate International, the Administrative Agent, and the Lenders entered into a forbearance agreement dated September 24, 2024, which forbearance agreement was subsequently amended a number of times, including pursuant to Amending Agreement No. 10 in February 2025 (as amended from time to time, the "Forbearance Agreement"). Iovate International is in default under the Forbearance Agreement.

#### B. Orgain Litigation

21. The Debtors are parties to various litigation proceedings in Canada and the United States, both as plaintiffs and as defendants. The most significant of these is litigation brought by Orgain, Inc. ("Orgain") in the United States District Court of Central District of California (the "CA District Court") and in other courts throughout the United States and Canada (collectively, the "Orgain Litigation").

22. On April 17, 2024, judgment was granted in favor of Orgain against Iovate International and Iovate USA in the amount of USD $10,035,481 in damages, together with costs.

The parties subsequently entered into settlement negotiations, which resulted in a May 3, 2024 agreement in principle regarding the settlement terms. However, disputes later arose regarding whether a binding settlement had been reached.

23. On August 30, 2024, Orgain brought a motion to enforce the settlement agreement. The CA District Court granted that motion and, on November 17, 2024, issued an Amended Judgment awarding Orgain USD $12,500,000 in satisfaction of its claims (the "Amended Judgment").[4] Iovate International and Iovate USA are jointly and severally liable for payment of the Amended Judgment.

24. Since entry of the Amended Judgment, the Debtors and Orgain have attempted to reach a consensual resolution of their disputes, although no such agreement has been reached. However, since entry of the Amended Judgment, Orgain has since sought its enforcement against the Debtors by attempting to garnish receivables from certain of the Debtors' major customers, including Walmart, Amazon, GNC, and Vitamin Shoppe.

25. In particular, on June 27, 2025, Orgain obtained a writ of garnishment against Walmart Inc. ("Walmart"), which writ was not served upon Walmart until August. On August 25, 2025, Iovate International and Iovate USA were unsuccessful in obtaining an order of the Circuit Court of Benton County, Arkansas (the "Arkansas Court") quashing Orgain's writ of garnishment issued to Walmart.

---

[4] A true and correct copy of the Amended Judgment is attached hereto as **Exhibit E**.

### C. The Lenders' Demand Letters

26. On August 27, 2025, the Debtors received letters from the Lenders (the "Demand Letters")[5] which asserted that several Events of Default under the Credit Agreement had occurred, demanded immediate repayment of the outstanding indebtedness under the Credit Agreement, and delivered notices of intention to enforce security under Section 244 of the BIA.

27. In the Demand Letters, the Lenders stated that, as a result of the Arkansas Court's refusal to quash the writ, they had concluded that their collateral is, or may be, prejudiced to the full extent of the amount of the Orgain writ. The Lenders advised that such diminution of their collateral, and the resulting prejudice to their recoveries, was fundamentally untenable.

28. In the weeks leading up to the filing of the NOIs (as defined below), the Lenders made it clear to the Debtors that a restructuring filing was necessary. Furthermore, Lenders' counsel advised that the Lenders were actively considering initiating creditor-driven proceedings under the *Companies' Creditors Arrangements Act* ("CCAA") if the Debtors did not act promptly.

29. Following extensive discussion with key stakeholders, including the Lenders, the Debtors determined that it was in the best interests of their stakeholders to commence the Canadian Proceeding under the BIA to pursue an orderly restructuring under the supervision of the Canadian Court, and to seek recognition thereof in the United States. The Canadian Proceeding provided the Debtors with a stay of proceedings that is necessary to preserve the Debtors' enterprise value, protect their relationships with key customers, and allow for the development of a restructuring proposal for the benefit of all stakeholders.

---

[5] True and correct copies of the Demand Letters are attached hereto as **Exhibit D**.

## V. THE CANADIAN PROCEEDING

30. On September 5, 2025, Iovate International, Iovate USA, and Northern Innovations each filed a Notice of Intention to Make a Proposal (an "NOI") pursuant to section 50.4 of the BIA. KSV Restructuring Inc. ("KSV") was appointed as the Debtors' proposal trustee (the "Proposal Trustee"). That same date, the Office of Superintendent of Bankruptcy Canada issued for each Debtor a *Certificate of Filing of a Notice of Intention to Make a Proposal Subsection 50.4* (the "Certificates of Filing")[6] which, pursuant to subsection 69(1) of the BIA, stayed all proceedings against the Debtors (the "Canadian Stay").

31. On September 9, 2025, the Canadian Court granted an order (the "Foreign Representative Order")[7] that, among other things, authorized and empowered Iovate International to act as foreign representative of the Debtors. Specifically, the Foreign Representative Order provides as follows:

> **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Iovate Entities, the Proposal Trustee and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and provide such assistance to the Iovate Entities and to the Proposal Trustee, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant foreign representative status to Iovate International in any foreign proceeding, or to assist the Iovate Entities and the Proposal Trustee and their respective agents in carrying out the terms of this Order.
>
> **THIS COURT ORDERS** that Iovate International be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, including in the United States, for the recognition of this Order and the Proposal Proceedings for assistance in carrying out the terms of this Order, and Iovate International is authorized and empowered to act as a foreign representative in respect of the Proposal

---

[6] True and correct copies of the Certificates of Filing are attached hereto as **Exhibit A**.
[7] A true and correct copy of the Foreign Representative Order is attached hereto as **Exhibit B**.

> Proceedings for the purpose of having the Proposal Proceedings recognized in a jurisdiction outside of Canada.
>
> **THIS COURT ORDERS** that Iovate International is authorized and empowered, as a foreign representative of the Iovate Entities and the Proposal Proceedings, to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, and any other provisions of the *United States Bankruptcy Code*.[8]

32. I believe recognition of the Canadian Proceeding will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the Canadian Proceeding under the supervision of the Canadian Court.

## VI. FILING THE VERIFIED PETITION

33. Each of the Debtors have property in the United States (and specifically in the Southern District of New York) in the form of a retainer in counsel's New York trust account. In addition, all of Iovate USA's cash (which includes payments made to the Iovate Group by United States-based customers) is held in New York bank accounts with HSBC USA, which cash is swept into the Iovate Group's Canadian bank accounts on a daily basis.

34. Therefore, on September 9, 2025 (the "Petition Date"), the Foreign Representative filed a Verified Petition with respect to each Debtor in the United States Bankruptcy Court for the Southern District of New York (this "Court") pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), seeking recognition of the Canadian Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the Canadian Proceeding. I have been informed that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign main

---

[8] Foreign Representative Order ¶¶ 7-9.

proceeding" if such foreign proceeding is a "foreign proceeding" pending in a country where the debtor has "the center of its main interests." *See* 11 U.S.C. § 1517(b)(1).

35. I have been informed that the Canadian Proceeding is a "foreign proceeding" as it is a collective judicial proceeding authorized and supervised by the Canadian Court under the BIA. It is my understanding that for these reasons, the Canadian Proceeding qualifies as a "foreign proceeding" as that term is defined in Section 101(23) of the Bankruptcy Code. Pursuant to section 1515(b) of the Bankruptcy Code, a certified copy of the Foreign Representative Order, in which the Canadian Court appointed the Foreign Representative, is attached hereto as **Exhibit B**.[9]

36. In addition, I believe that each of the Debtors has their center of main interests, as such term is used in section 1502(4) of the Bankruptcy Code, in Oakville, Ontario, Canada. The Debtors' parent company, Xiwang Iovate Holdings Company Limited ("Xiwang Iovate"), is a Canadian corporation that directly has a one-hundred percent ownership interest in the common stock of the Debtors. The Iovate Group, including the Debtors, is an integrated, complex enterprise, and the Debtors' management, administrative, support, and other functions are performed on a centralized basis and managed in Canada, namely:

   a. the Debtors' operations are overseen by and report to the Chief Executive Officer, located at the Oakville Headquarters;

   b. the Debtors' senior management team has historically been located in Canada, and, as of the Petition Date, I, as Chief Executive Officer, work from the Oakville Headquarters;

   c. all creative, strategic, and key operating decisions and key policy decisions are made by and/or subject to approval from the Iovate Group's senior management located in Canada;

---

[9] Moreover, on September 4, 2025, the Boards of each of the Debtors authorized, among other things, Iovate International to act as Foreign Representative for each of the Debtors and for me, as Chief Executive Officer of Iovate International, to exercise such documents on behalf of the Foreign Representative as is necessary. True and correct copies of such authorization is attached hereto as **Exhibit C**.

  d. key human resources decisions pertaining to, *inter alia*, payroll budgets and augmentation or reduction of employee headcount are subject to the approval of the Debtors' senior management located in Canada;

  e. key accounting decisions and all plans, budgets, and financial projections are subject to the approval of the Debtors' senior management located in Canada;

  f. planning, budgeting, management of tax, treasury, and cash management functions, and preparation of financial projections for the Debtors is done from the Oakville Headquarters;

  g. all material and/or long-term contracts and expenses are subject to the approval of senior management located in Canada;

  h. marketing and business development initiatives are overseen from the Oakville Headquarters;

  i. corporate governance and regulatory compliance for the Debtors is overseen from its management team located at the Oakville Headquarters;

  j. meetings for management and senior staff of the Debtors, are regularly held at the Oakville Headquarters; and

  k. senior management and all sales and operations staff report to their respective senior executives, who, ultimately, report to the senior management of the Debtors located at the Oakville Headquarters.

37. Based on these facts, I believe that recognition of the Canadian Proceeding as a foreign main proceeding is warranted.

38. I also believe recognition of Iovate International as the Debtors' "foreign representative" and recognition of the Canadian Proceeding as a "foreign main proceeding" are consistent with the purpose of chapter 15 and will allow the Debtors to restructure in the most efficient manner without jeopardizing the creditors' rights.

39. The Debtors are affiliates of each other and each of their cases (the "<u>Chapter 15 Cases</u>") were filed on the Petition Date in this Court. Accordingly, I believe that joint administration of these Chapter 15 Cases for procedural purposes only, as well as permitting the filing of consolidated lists of the information required by Bankruptcy Rule 1007(a)(4), will be an

administrative convenience for the Bankruptcy Court, the court clerk's office, and interested parties.

40. Further, I believe that noticing procedures are appropriate in light of the voluminous amount of creditors, potential creditors, and other parties of interest, all of whom need to be provided with, among other things, notice of the entry of the provisional order, the proposed final order, the recognition objection deadline, and the recognition hearing. The Foreign Representative has prepared a form of notice advising of these and related matters (the "Recognition Hearing Notice"), a copy of which is annexed to the Notice Procedures Motion. Under the facts and circumstances of the Debtors' Chapter 15 Cases, I submit that service of the Recognition Hearing Notice in the manner proposed in the Notice Procedures Motion will provide those parties identified as the Notice Parties in the Notice Procedures Motion with due and sufficient notice of the relief requested in the Recognition Motion and associated objection deadline and hearing dates.

41. Also, for the reasons set forth in the Recognition Motion, I submit that recognition of the Canadian Proceeding is necessary and appropriate for the benefit of the Debtors, their creditors, and other parties in interest.

## VII. STATEMENT IN SUPPORT OF PROVISIONAL RELIEF MOTION

42. The Foreign Representative commenced these Chapter 15 Cases in order to provide the Debtors with the breathing room and stability necessary to implement their restructuring, including by seeking certain provisional relief between the Petition Date and the Bankruptcy Court's entry of the proposed order recognizing the Canadian Proceeding. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of sections 361, 362, and 365(e) of the Bankruptcy Code to these Chapter 15 Cases. While the Debtors received stay protection pursuant to the BIA, the Debtors may be exposed to

potentially adverse action in the United States by certain creditors and other parties in interest (including counterparties to the Debtors' contracts) who may disregard the stay imposed by the BIA. Most critically, the provisional relief requested by the Foreign Representative will preserve the *status quo* with respect to the Orgain Litigation and prevent Orgain from taking precipitous action to enforce the Amended Judgment that would irreparably harm the Debtors. Accordingly, I believe that consideration of the Foreign Representative's request for provisional relief on an emergency basis is also necessary, appropriate, and in the best interest of the Debtors and their stakeholders.

43. Additionally, the Debtors' commencement of the Canadian Proceeding and these Chapter 15 Cases are, or may be asserted to be, triggers, events of default, and subsequent cross-default under certain of the Debtors' executory contracts. Further, certain of the Debtors' executory contracts contain provisions permitting termination upon the Debtors' filing of a case under any section or chapter of the Bankruptcy Code and parties to such agreements could attempt to assert rights in the Debtors' property located in the United States. The relief requested by the Foreign Representative is required to prevent individual creditors or contract counterparties acting to frustrate the purpose of the Canadian Proceeding by disregarding the Canadian Stay, the foremost of which is the fair and efficient administration of the Canadian Proceeding to maximize the value for all creditors.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: September 12, 2025
Oakville, Ontario
Canada

Wesley Parris