## EXHIBIT D

Demand Letters



Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trademark Agents
199 Bay Street
Suite 4000, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

**Chris Burr**
Partner
Dir: 416-863-3261
chris.burr@blakes.com

Reference: 22043/960

August 27, 2025

VIA E-MAIL & COURIER

**Iovate Health Sciences International Inc.**
381 North Service Road West
Oakville, ON L6M 0H4

**RE:    Indebtedness of Iovate Health Sciences International Inc. and its subsidiaries pursuant to the Credit Agreement (defined below)**

**RE:    Demand for Immediate Repayment**

We refer to the amended and restated credit agreement dated as of June 30, 2021 between, inter alios, Iovate Health Sciences International Inc., as borrower (the "**Borrower**"), Royal Bank of Canada (as successor to HSBC Bank Canada by way of amalgamation), as administrative agent (the "**Administrative Agent**"), and the financial institutions party thereto, as lenders (the "**Lenders**"), as amended by amending agreement no.1 dated as of March 31, 2022, by amending agreement no. 2 dated as of April 14, 2022, by amending agreement no. 3 dated as of December 30, 2022 , amending agreement no.4 dated as of March 7, 2024, amending agreement no. 5 dated as of March 28, 2024, amending agreement no. 6 dated as of April 30, 2024, amending agreement no. 7 dated as of November 14, 2024, amending agreement no. 8 dated as of December 24, 2024, amending agreement no. 9 dated as of January 31, 2025 and amending agreement no. 10 dated as of February 28, 2025 (collectively, the "**Credit Agreement**").  Capitalized terms used in this letter and not otherwise defined have the meanings set forth in the Credit Agreements.

We are counsel to the Administrative Agent and the Lenders and they have instructed us to send you this letter.

As you are aware, several Events of Default under the Credit Agreement have occurred and are continuing, including the following:

1398-6037-5064.2

Page 2



(i)     failure of the Borrower to cause Holdco to maintain a Fixed Charge Coverage Ratio of not less than 1.10x with respect to the period from July 1, 2023 to June 30, 2024 in accordance with Section 5.1(12)(a);

(ii)    failure of the Borrower to cause Holdco to maintain an Adjusted EBITDA of not less than U.S.$22,349,000 with respect to the period from July 1, 2023 to June 30, 2024 in accordance with Section 5.1(12)(c);

(iii)   the maintenance by certain Credit Parties of bank accounts with affiliates of the former HSBC Bank Canada without a blocked account agreement;

(iv)    pursuant to a warehouse and logistics services agreement dated as of October 17, 2024 between RJW Transport, LLC, RJW Warehouse, LLC and Iovate Health Sciences U.S.A., Inc. a Lien other than a permitted lien was granted in violation of Section 6.1(2);

(v)     writ of execution filed on February 6, 2025 with the United States Court for the Central District of California in violation of Section 7.1(s); and

(vi)    writ of garnishment filed by Orgain to Walmart Inc. dated June 27, 2025 in violation of Section 7.1(s),

        (collectively, the "**Specified Events of Default**").

In addition, on August 25, 2025, the Borrower and Iovate Health Sciences U.S.A. Inc. were unsuccessful in obtaining an order of the Arkansas Court, quashing Orgain's writ of garnishment issued to Walmart Inc. As a result of this refusal to quash the writ, the Lenders' collateral is, or may be, prejudiced to the full extent of the amount of the Orgain writ. This material diminution of the Lenders' collateral, and the direct corresponding prejudice to their potential recoveries from the Borrower, is fundamentally untenable.

To be clear: to the extent that the Agent and the Lenders were exercising their reasonable discretion to forbear from taking enforcement steps in the face of the Specified Events of Default, and instead working with the Borrower and its financial advisors to enable the Borrower to efficiently restructure its business and/or refinance its debt, that forbearance is over.

As a result of the Specified Events of Default, the Lenders have unanimously determined to demand, and hereby do so demand, the immediate repayment of the Secured Liabilities, in the amount of $115,700,995 as of August 26, 2025, together with all interest, fees and recoverable which will continue to accrue at the default rate of interest after August 26, 2025, until the effective date of repayment and the fees, including professional fees, incurred by the Lenders (collectively, the "**Secured Indebtedness**").

In connection with the acceleration and demand set out above, we are enclosing notices of intention to enforce security under section 244 of the *Bankruptcy and Insolvency Act*, dated as of the date hereof

TORONTO        CALGARY        VANCOUVER        MONTRÉAL        OTTAWA        NEW YORK        LONDON

Blake, Cassels & Graydon LLP | blakes.com

Page 3



(the "**244 Notices**"). Also enclosed are waivers of the notice period prescribed by the 244 Notices, which the Lenders request that you immediately execute and return to the undersigned.

If the Secured Indebtedness is not repaid immediately, the Agent reserves all rights to commence and continue enforcements steps against the Borrower, without further notice, including bringing an emergency application before the Ontario Superior Court of Justice for the appointment of a receiver. Given the urgency created by the failure of the Borrower to have the Arkansas Court quash the Orgain writ, the Lenders reserve the right to bring this receivership application prior to the expiry of the notice periods set out in the 244 Notices.

The Agent and the Lenders reserve all rights and remedies in respect of the Secured Liabilities, the Secured Indebtedness, the Specified Events of Default, the Credit Agreement and all Loan Documents.

Yours truly,

Chris Burr

Cc:     H. Chaiton, *Chaitons*
        A.Gadia, *KPMG*
        T. Mistry, *Xiwang Iovate Holdings Company Limited*
        T. Mistry, *Northern Innovations Holding Corp.*
        T. Mistry, *Iovate Health Services U.S.A. Inc.*
        T. Mistry, *Iovate Health Sciences Australia Pty Ltd.*

## NOTICE OF INTENTION TO ENFORCE SECURITY

(Rule 124)

*(Section 244 of the Bankruptcy and Insolvency Act)*

TO:     **Iovate Health Sciences International Inc.**
381 North Service Road West
Oakville, ON L6M 0H4
Attention: Tanya Mistry

Take notice that:

1.      The Royal Bank of Canada, in its capacity as administrative agent (the "**Agent**"), a secured creditor, intends to enforce its security on Iovate Health Sciences International Inc.'s (the "**Debtor**") property described in Schedule "A" hereto.

2.      The security that is to be enforced is the:

(a)    General Security Agreement dated December 21, 2016 granted by, *inter alios*, the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**GSA**");

(b)    Security Agreement dated December 21, 2016 granted by, *inter alios,* the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**US GSA**");

(c)    Collateral Leasehold Mortgage dated April 11, 2017 granted by the debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**Mortgage**"), as acknowledged by the Leasehold Mortgage Agreement dated April 11, 2017, among the Debtor, 1554728 Ontario Inc., as landlord, and HSBC Bank Canada (as predecessor in interest to the Agent); and

(d)    Pledge on Business, dated April 4, 2025 granted by the Debtor in favour of the Agent and the Lenders (the "**Belgian Pledge**").

(collectively, the "**Security**").

3.      The total amount of indebtedness secured by the Security is US$115,700,995 as of August 26, 2025, together with (a) all expenses and costs of the Agent recoverable under the Security (including solicitor fees) and (b) all interest, costs, fees, expenses, costs, charges and other amounts recoverable under the Security, in each case as may accrue after August 26, 2025.

4.      The secured creditor will not have the right to enforce the security until after the expiry of the 10-day period after this notice is sent unless the insolvent person consents to an earlier enforcement.

1377-9015-8360.1

- 2 -

DATED at Toronto, this 27th day of August, 2025.

**ROYAL BANK OF CANADA, as agent, by its counsel BLAKE, CASSELS & GRAYDON LLP**

Per: _____

Name:  Chris Burr

Title:   Partner

## SCHEDULE "A"

**COLLATERAL:**

| (a) | **GSA** | With respect to the Debtor, all of the present and future: |
|-----|---------|------------------------------------------------------------|
| | | (a)    undertaking; |
| | | (b)    Personal Property (other than Excluded CFC Securities but including any Personal Property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA); and |
| | | (c)    real property (including any real property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA and including all fixtures, improvements, buildings and other structures placed, installed or erected from time to time on any such real property), |
| | | of the Debtor, including Books and Records, Contracts, Intellectual Property Rights and Permits, and including all such property in which the Debtor now or in the future has any right, title or interest whatsoever, whether owned, leased, licensed, possessed or otherwise held by the Debtor, and all Proceeds of any of the foregoing, wherever located. |
| | | All capitalized terms in this cell shall have the meanings given to them in the GSA. |
| (b) | **US GSA** | All of the Debtor's right, title and interest in, to and under the following property, in each case whether tangible or intangible, wherever located, and whether now owned by such Grantor or hereafter acquired and whether not existing or hereafter coming into existence: (a) all Accounts, Receivables, and Receivables Records, (b) all As-Extracted Collateral; (c) all Chattel Paper; (d) all Deposit Accounts; (e) all Documents, (f) all Equipment, (g) all Fixtures, (h) all General Intangibles, (i) all Goods not covered by other clauses in Section 3 of the US GSA; (j) the Pledged Shares; (k) all Instruments, including all Promissory Notes; (l) all Insurance; (m) all Intellectual Property and Intellectual Property Licenses; (n) all Inventory; (o) all Investment Property, including all Securities, all Securities Accounts and all Security Entitlements with respect |

- 2 -

|   |   |   |
|---|---|---|
|   |   | thereto and Financial Assets carried therein, and all Commodity Accounts and Commodity Contracts; (p) all Letter-of-Credit Rights; (q) all Money, as defined in Section 1-201(24) of the New York Uniform Commercial Code; (r) all commercial tort claims, as defined in Section 9-102(a)(13) of the New York Uniform Commercial Code; (s) all other tangible and intangible personal property whatsoever of the debtor; and (t) all Proceeds of any of the Collateral, all Accessions to and substitutions and replacements for, any of the Collateral, and all offspring, rents, profits and products of any of the Collateral, and, to the extent related to any Collateral, all books, correspondence, credit files, records, invoices and other papers (including all tapes, cards, computer runs and other papers and documents in the possession or under the control of the Debtor).<br><br>All capitalized terms in this cell shall have the meanings given to them in the US GSA. |
| (c) | **Mortgage** | The leasehold interest of the Debtor in premises at the Property demised to the Agent pursuant to the Premises Lease.<br><br>"Property" means: 381 North Service Road West, Oakville, Ontario, with the legal description: Firstly:  PIN 24829-0652 (LT):  PT BLK 3, PLAN 20M266, PART 1, 20R15207, SAVE & EXCEPT PART 1, 20R17099; OAKVILLE. Secondly:  PIN 24829-0654 (LT):  BLK 4, PL 20M266, SAVE & EXCEPT PT 2, 20R17099; OAKVILLE. Thirdly:  PIN 24289-0656 (LT):  BLK 5, PLAN 20M266, SAVE & EXCEPT PARTS 3 TO 6, 20R17099; OAKVILLE.  S/T H176801 & H177928.<br><br>"Premises Lease" means the offer to lease effective as of December 1, 2006 between the Landlord, as landlord, and Iovate Health Services Inc., as tenant, as extended by term extension option notice dated as of June 28, 2012 between the Landlord, as landlord, and the Mortgagor, as tenant, as amended by first amendment of lease dated as of August 27, 2014 between the Landlord, as landlord, and the Mortgagee, as mortgagee, notice of which lease was registered in the Land Registry Office for the Land Titles Division of Halton on September 2, 2008 as Instrument No. HR695436, as assigned by notice of assignment of lessee interest in lease registered |

- 3 -

| | | |
|---|---|---|
| | | in the Land Registry Office for the Land Titles Division of Halton on May 16, 2017 as Instrument No. HR1454796, as the same may be renewed, extended, amended, restated or replaced from time to time.<br><br>Other capitalized terms in this cell shall have the meanings given to them in the First Mortgage. |
| (d) | **Belgian Pledge** | The Debtor's Business.<br><br>"Business" means, in relation to the Debtor, the collection (geheel/ensemble) of assets that constitute its business (handelszaak/fonds de commerce) in accordance with Article 7 of the Pledge Law and any other activities which the Debtor shall from time to time exercise at any place in Belgium, including the business currently operated by it at the place(s) and with the activities mentioned in section Business under Schedule 1 (Pledged Assets). The Business comprises all constitutive elements of it, including, (i) the administrative permits and licences relating to the business, (ii) the clients, the goodwill, the commercial names and signs, the commercial organisation, (iii) trademarks, patents, and all other intellectual property rights (iv) know-how, whether exclusive or not, (v) all rights which derive from rental, licence, concession and other (current) agreements, including any insurances or operational agreements; (vi) all furniture, materials, machinery, equipment, computers and vehicles; (vii) the inventory stored with the Debtor or third parties; (viii) all shares or participations; (ix) all liquidities, receivables (including, among others, to the customer and supplier receivables and, in general, from all ongoing agreements, claims on the tax administration, intra-group receivables and any indemnities awarded by the insurer or the liable third party in case of loss or of damage to any part of the Business), commercial paper and financial instruments; (x) all assets on accounts with financial institutions; (xi) all movable assets which become fixtures (onroerend door bestemming/immeuble par destination); and more generally, (xii) all other assets which can be part of a business in accordance with the Pledge Law; and (xiii) all expansions, replacements or improvements to any of the abovementioned assets, by addition or otherwise. |

- 4 -

|  |  | Other capitalized terms in this cell shall have the meanings given to them in the Belgian Pledge. |
|---|---|---|

## WAIVER AND CONSENT

TO:        **THE ROYAL BANK OF CANADA in its capacity as Administrative Agent** (the "**Agent**")

_____

Reference is made to the Notice of Intention to Enforce Security (Rule 124) issued by the Agent to the undersigned debtor (the "**Debtor**"), dated August 27, 2025 (the "**NOI**").

The undersigned Debtor hereby irrevocably waives the 10-day notice period as set out in Paragraph 4 of the NOI, and consents to the immediate enforcement of the Security (as defined and more particularly set out in the NOI) it has granted to the Agent.

The Debtor further acknowledges and confirms that it has sought and obtained advice from its professional advisors, including legal counsel, in connection with the execution of this Waiver and Consent.

Dated this _____ day of August, 2025.


**IOVATE      HEALTH      SCIENCES INTERNATIONAL INC.**


Per:      _____
Name:
Title:



Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trademark Agents
199 Bay Street
Suite 4000, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

**Chris Burr**
Partner
Dir: 416-863-3261
chris.burr@blakes.com

August 27, 2025

Reference: 22043/960

VIA E-MAIL & COURIER

**Xiwang Iovate Holdings Company Limited**
381 North Service Road West
Oakville, ON L6M 0H4

**Northern Innovations Holding Corp.**
381 North Service Road West
Oakville, ON L6M 0H4

**Iovate Health Services U.S.A. Inc.**
381 North Service Road West
Oakville, ON L6M 0H4

**Iovate Health Sciences Australia Pty Ltd.**
381 North Service Road West
Oakville, ON L6M 0H4

**Attn: Tanya Mistry**

**RE:  Indebtedness of Iovate Health Sciences International Inc. and its subsidiaries pursuant to the Credit Agreement (defined below)**

**RE:  Demand for Immediate Repayment**

We refer to the amended and restated credit agreement dated as of June 30, 2021 between, inter alios, Iovate Health Sciences International Inc., as borrower (the "**Borrower**"), Royal Bank of Canada (as successor to HSBC Bank Canada by way of amalgamation), as administrative agent (the "**Administrative Agent**"), and the financial institutions party thereto, as lenders (the "**Lenders**"), as amended by amending agreement no.1 dated as of March 31, 2022, by amending agreement no. 2 dated as of April 14, 2022, by amending agreement no. 3 dated as of December 30, 2022, amending agreement no.4 dated as of March 7, 2024, amending agreement no. 5 dated as of March 28, 2024, amending agreement no. 6 dated as of April 30, 2024, amending agreement no. 7 dated as of November 14, 2024, amending agreement no. 8 dated as of December 24, 2024, amending agreement no. 9 dated as of January 31, 2025 and amending agreement no. 10 dated as of February 28, 2025 (collectively, the "**Credit Agreement**").  Capitalized terms used in this letter and not otherwise defined have the meanings set forth in the Credit Agreement.

1408-2178-8440.1

Page 2



Reference is also made to the group guarantee dated as of December 21, 2016, granted by the Borrower, Kerr Investment Holding Corp. ("**Kerr**"), Old Iovate International Inc. ("**Old Iovate**"), Iovate Health Sciences U.S.A. Inc. ("**Iovate USA**"), Old Northern Innovations Corp. ("**Old Northern**"), Lakeside Innovations Holding Corp. ("**Lakeside**") and Northern Innovations Holding Corp. ("**Northern**") to the Administrative Agent (the "**Guarantee**"), pursuant to which the guarantors unconditionally and irrevocably guarantee the prompt payment and performance to the Administrative Agent of the "Secured Liabilities", as defined in the Guarantee. The "Secured Liabilities" are all liabilities under, *inter alia*, the Credit Agreement.

Reference is also made to the limited recourse guarantee dated as of December 21, 2016, granted by Xiwang Iovate Holdings Company Limited ("**Holdco**") to the Administrative Agent (the "**Limited Recourse Guarantee**"), pursuant to which Holdco unconditionally and irrevocably guaranteed the prompt payment and performance to the Administrative Agent of the "Debtors Liabilities", with recourse limited to certain collateral pledged by Holdco. The "Debtors Liabilities" are all liabilities under, *inter alia*, the Credit Agreement.

As part of a corporate restructuring in 2018, Old Iovate, Lakeside and Iovate Health Sciences International Inc. amalgamated, to form Iovate Health Sciences International Inc. Subsequently, as part of a corporate restructuring in 2021, Kerr amalgamated with Xiwang Iovate Health Science International Inc. and then the resulting entity amalgamated with Iovate Health Sciences International Inc. to form Iovate Heath Sciences International Inc. Accordingly, Kerr, Old Iovate and Lakeside ceased to exist as discrete corporate entities, and their assets and liabilities were amalgamated into existing guarantors.

On April 1, 2021, Old Northern amalgamated with Northern, to form Northern Innovations Holdings Corp.

On October 6, 2022, Iovate Health Sciences Australia Pty Ltd. ("**Iovate Australia**") attorned to the Guarantee pursuant to a Supplement to Guarantee agreement granted by Iovate Australia to the Administrative Agent.

The term "**Guarantors**" as used in this letter refers to, collectively, HoldCo, Iovate Australia, Iovate USA, and Northern, and "**Guarantor**" refers to any one of them.

We are counsel to the Administrative Agent and the Lenders and they have instructed us to send you this letter.

As you are aware, several Events of Default under the Credit Agreement have occurred and are continuing, including the following:

Page 3



(i)    failure of the Borrower to cause Holdco to maintain a Fixed Charge Coverage Ratio of not less than 1.10x with respect to the period from July 1, 2023 to June 30, 2024 in accordance with Section 5.1(12)(a);

(ii)   failure of the Borrower to cause Holdco to maintain an Adjusted EBITDA of not less than U.S.$22,349,000 with respect to the period from July 1, 2023 to June 30, 2024 in accordance with Section 5.1(12)(c);

(iii)  the maintenance by certain Credit Parties of bank accounts with affiliates of the former HSBC Bank Canada without a blocked account agreement;

(iv)   pursuant to a warehouse and logistics services agreement dated as of October 17, 2024 between RJW Transport, LLC, RJW Warehouse, LLC and Iovate Health Sciences U.S.A., Inc. a Lien other than a permitted lien was granted in violation of Section 6.1(2);

(v)    writ of execution filed on February 6, 2025 with the United States Court for the Central District of California in violation of Section 7.1(s); and

(vi)   writ of garnishment filed by Orgain to Walmart Inc. dated June 27, 2025 in violation of Section 7.1(s),

       (collectively, the "**Specified Events of Default**").

In addition, on August 25, 2025, the Borrower and Iovate USA were unsuccessful in obtaining an order of the Arkansas Court, quashing Orgain's writ of garnishment issued to Walmart Inc. As a result of this refusal to quash the writ, the Lenders' collateral is, or may be, prejudiced to the full extent of the amount of the Orgain writ. This material diminution of the Lenders' collateral, and the direct corresponding prejudice to their potential recoveries from the Borrower, is fundamentally untenable.

To be clear: to the extent that the Agent and the Lenders were exercising their reasonable discretion to forbear from taking enforcement steps in the face of the Specified Events of Default, and instead working with the Borrower and its financial advisors to enable the Borrower to efficiently restructure its business and/or refinance its debt, that forbearance is over.

As a result of the Specified Events of Default, the Lenders have unanimously determined to demand the immediate repayment of the Secured Liabilities, in the amount of $115,700,995 as of August 26, 2025, together with all interest, fees and recoverable which will continue to accrue at the default rate of interest after August 26, 2025, until the effective date of repayment and the fees, including professional fees, incurred by the Lenders (collectively, the "**Secured Indebtedness**"). Each of the Guarantors was copied on the Agent's demand letter to the Borrower in this regard.

As a result of the demand against the Borrower for the Secured Indebtedness, the "Secured Liabilities" (as defined in the Guarantee) and "Debtors Liabilities" (as defined in the Limited Recourse Guarantee) are hereby immediately due and owing, pursuant to Section 2 of the Guarantee and Limited Recourse Guarantee. Accordingly, the Agent and the Lenders hereby demand the immediate repayment from the

TORONTO        CALGARY        VANCOUVER        MONTRÉAL        OTTAWA        NEW YORK        LONDON
Blake, Cassels & Graydon LLP | blakes.com

Page 4



Guarantors, of the Secured Liabilities and Debtors Liabilities (as applicable), which are in the amount of the Secured Indebtedness as described above.

In connection with the acceleration and demand set out above, we are enclosing notices of intention to enforce security under section 244 of the *Bankruptcy and Insolvency Act*, dated as of the date hereof (the "**244 Notices**"). Also enclosed are waivers of the notice period prescribed by the 244 Notices, which the Lenders request that you immediately execute and return to the undersigned.

If the Secured Indebtedness is not repaid immediately, the Agent reserves all rights to commence and continue enforcements steps against the Borrower and the Guarantors, without further notice, including bringing an emergency application before the Ontario Superior Court of Justice for the appointment of a receiver. Given the urgency created by the failure of the Borrower to have the Arkansas Court quash the Orgain writ, the Lenders reserve the right to bring this receivership application prior to the expiry of the notice periods set out in the 244 Notices.

The Agent and the Lenders reserve all rights and remedies in respect of the Secured Liabilities, the Secured Indebtedness, the Specified Events of Default, the Credit Agreement and all Loan Documents (including the Guarantee and Limited Recourse Guarantee).

Yours truly,

Chris Burr

Cc:    H. Chaiton, *Chaitons*
       A.Gadia, *KPMG*
       T. Mistry, *Xiwang Iovate Holdings Company Limited*
       T. Mistry, *Northern Innovations Holding Corp.*
       T. Mistry, *Iovate Health Services U.S.A. Inc.*
       T. Mistry, *Iovate Health Sciences Australia Pty Ltd.*

## NOTICE OF INTENTION TO ENFORCE SECURITY
(Rule 124)
*(Section 244 of the Bankruptcy and Insolvency Act)*


TO:        **Northern Innovations Holding Corp.**
           381 North Service Road West
           Oakville, ON L6M 0H4
           Attention:  Tanya Mistry

Take notice that:

1.         The Royal Bank of Canada, in its capacity as administrative agent (the "**Agent**"), a secured creditor, intends to enforce its security on Northern Innovations Holding Corp. (the "**Debtor**") property described in Schedule "A" hereto.

2.         The security that is to be enforced is the:

    (a)    General Security Agreement dated December 21, 2016 granted by, *inter alios*, the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**GSA**");

    (b)    Trademark Security Agreement dated June 30, 2021 granted by the Debtor in favour of the Agent (the "**2021 Trademark Agreement**")

    (c)    Trademark Security Agreement dated September 25, 2024 granted by the Debtor in favour of the Agent (the "**2024 Trademark Agreement**");

    (d)    Patent Security Agreement dated December 21, 2016 granted by the Debtor in favour of the Agent (the "**2016 Patent Agreement**");

    (e)    Patent Security Agreement dated June 30, 2021 granted by the Debtor in favour of the Agent (the "**2021 Patent Agreement**").

    (collectively, the "**Security**").

3.         The total amount of indebtedness secured by the Security is US$115,700,995 as of August 26, 2025, together with (a) all expenses and costs of the Agent recoverable under the Security (including solicitor fees) and (b) all interest, costs, fees, expenses, costs, charges and other amounts recoverable under the Security, in each case as may accrue after August 26, 2025.

4.         The secured creditor will not have the right to enforce the security until after the expiry of the 10-day period after this notice is sent unless the insolvent person consents to an earlier enforcement.

DATED at Toronto, this 27th day of August, 2025.

**ROYAL BANK OF CANADA, as agent, by its counsel BLAKE, CASSELS & GRAYDON LLP**

Per: _____

Name: Chris Burr

Title:   Partner

1384-7441-9992.1

**SCHEDULE "A"**

**COLLATERAL:**

| (a) | **GSA** | With respect to the Debtor, all of the present and future: |
|---|---|---|
| | | (a) undertaking; |
| | | (b) Personal Property (other than Excluded CFC Securities but including any Personal Property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA); and |
| | | (c) real property (including any real property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA and including all fixtures, improvements, buildings and other structures placed, installed or erected from time to time on any such real property), |
| | | of the Debtor, including Books and Records, Contracts, Intellectual Property Rights and Permits, and including all such property in which the Debtor now or in the future has any right, title or interest whatsoever, whether owned, leased, licensed, possessed or otherwise held by the Debtor, and all Proceeds of any of the foregoing, wherever located. |
| | | All capitalized terms in this cell shall have the meanings given to them in the GSA. |
| (b) | **2021 Trademark Agreement** | All the trademarks and trademark applications listed in the Schedule to the 2021 Trademark Agreement, together with the reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto, all damages and payments for past or future infringements thereof and rights to sue therefor, and all rights corresponding thereto throughout the world. |
| (c) | **2024 Trademark Agreement** | All the trademarks and trademark applications listed in the Schedule to the 2024 Trademark Agreement, together with the reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, all income, royalties, damages and payments now or hereafter due and/or payable with |

|  |  | respect thereto, all damages and payments for past or future infringements thereof and rights to sue therefor, and all rights corresponding thereto throughout the world. |
| --- | --- | --- |
| (d) | **2016 Patent Agreement** | All the patents and patent applications listed in the Schedule to the 2016 Patent Agreement, together with the reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto, all damages and payments for past or future infringements thereof and rights to sue therefor, and all rights corresponding thereto throughout the world. |
| (e) | **2021 Patent Agreement** | All the patents and patent applications listed in the Schedule to the 2021 Patent Agreement, together with the reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto, all damages and payments for past or future infringements thereof and rights to sue therefor, and all rights corresponding thereto throughout the world. |

# WAIVER AND CONSENT

**TO:**        **THE ROYAL BANK OF CANADA in its capacity as Administrative Agent** (the "**Agent**")

---

Reference is made to the Notice of Intention to Enforce Security (Rule 124) issued by the Agent to the undersigned debtor (the "**Debtor**"), dated August 27, 2025 (the "**NOI**").

The undersigned Debtor hereby irrevocably waives the 10-day notice period as set out in Paragraph 4 of the NOI, and consents to the immediate enforcement of the Security (as defined and more particularly set out in the NOI) it has granted to the Agent.

The Debtor further acknowledges and confirms that it has sought and obtained advice from its professional advisors, including legal counsel, in connection with the execution of this Waiver and Consent.

Dated this _____ day of August, 2025.

**NORTHERN INNOVATIONS HOLDING CORP.**

Per:    _____
Name:
Title:

**NOTICE OF INTENTION TO ENFORCE SECURITY**
(Rule 124)
*(Section 244 of the Bankruptcy and Insolvency Act)*

TO:      **Xiwang Iovate Holdings Company Limited**
381 North Service Road West
Oakville, ON L6M 0H4
Attention: Tanya Mistry

Take notice that:

1.     The Royal Bank of Canada, in its capacity as administrative agent (the "**Agent**"), a secured creditor, intends to enforce its security on Xiwang Iovate Holdings Company Limited's (the "**Debtor**") property described in Schedule "A" hereto.

2.     The security that is to be enforced is the:

(a)    Pledge Agreement dated December 21, 2016 granted by the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**Pledge**");

(b)    Supplement to Security Agreement, dated March 31, 2021, pursuant to which the Debtor attorned to the General Security Agreement dated December 21, 2016 granted by, *inter alios*, Iovate Health Sciences International Inc. in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**GSA**"); and

(c)    Specific Security Agreement (Shares) dated October 6, 2022 granted by the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**Australian Pledge**").

(d)    Blocked Accounts Agreement dated September 6, 2024, among the Debtor, the Agent and Bank of China (Canada) (the "**DACA**").

(collectively, the "**Security**").

3.     The total amount of indebtedness secured by the Security is US$115,700,995 as of August 26, 2025, together with (a) all expenses and costs of the Agent recoverable under the Security (including solicitor fees) and (b) all interest, costs, fees, expenses, costs, charges and other amounts recoverable under the Security, in each case as may accrue after August 26, 2025.

4.     The secured creditor will not have the right to enforce the security until after the expiry of the 10-day period after this notice is sent unless the insolvent person consents to an earlier enforcement.

DATED at Toronto, this 27th day of August, 2025.

**ROYAL BANK OF CANADA, as agent, by
its counsel BLAKE, CASSELS &
GRAYDON LLP**


Per: _____

Name: Chris Burr

Title:   Partner

## SCHEDULE "A"

**COLLATERAL:**

| (a) | **Pledge** | (a) | all (i) Securities, Security Entitlements and other interests issued by or with respect to the Pledged Issuer, and (ii) all Intercompany Debt, Intercompany Debt Instruments and Intercompany Debt Support Arrangements, in each case in which the Debtor now or in the future has any right, title or interest; |
|---|---|---|---|
| | | (b) | all certificates and instruments evidencing or representing the Pledged Property; |
| | | (c) | all interest, dividends and distributions (whether in cash, kind or stock) received or receivable upon or with respect to any of the Pledged Property and all moneys or other property payable or paid on account of any return or repayment of capital with respect to any of the Pledged Property or otherwise distributed with respect thereto or which will in any way be charged to, or payable or paid out of, the capital of any Pledged Issuer on account of any such Pledged Property; |
| | | (d) | all other property that may at any time be received or receivable by or otherwise distributed to the Debtor with respect to, or in substitution for, or in exchange or replacement for, any of the foregoing; and |
| | | (e) | all Proceeds of any of the foregoing. |
| | | | All capitalized terms in this cell shall have the meanings given to them in the Pledge. |
| (b) | **GSA** | | With respect to the Debtor, all of the present and future: |
| | | (a) | undertaking; |
| | | (b) | Personal Property (other than Excluded CFC Securities but including any Personal Property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA); and |

| | | |
|---|---|---|
| | | (c)     real property (including any real property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA and including all fixtures, improvements, buildings and other structures placed, installed or erected from time to time on any such real property), <br><br> of the Debtor, including Books and Records, Contracts, Intellectual Property Rights and Permits, and including all such property in which the Debtor now or in the future has any right, title or interest whatsoever, whether owned, leased, licensed, possessed or otherwise held by the Debtor, and all Proceeds of any of the foregoing, wherever located. <br><br> All capitalized terms in this cell shall have the meanings given to them in the GSA. |
| (c) | **Australian Pledge** | All of the Debtor's present and future interest in (a) the Shares, (b) the Additional Rights, and (c) the Controlled Account and any chose in action in respect of the Controlled Account. <br><br> "Shares" means any shares in any company, corporation, body corporate or other entity (including, but not limited to, any shares in Iovate Health Sciences Australia Pty Ltd. <br><br> Other capitalized terms in this cell shall have the meanings given to them in the Australian Pledge. |
| (d) | **DACA** | All Cheques and other remittances received by the Debtor from tiem to time, and the Bank Accounts, including all sums now on deposit in or payable to and any interest accrued or payable on the credit balances therein. <br><br> All capitalized terms in this cell shall have the meanings given to them in the DACA. |

**WAIVER AND CONSENT**

TO:         **THE ROYAL BANK OF CANADA in its capacity as Administrative Agent**
            (the "**Agent**")

_____

Reference is made to the Notice of Intention to Enforce Security (Rule 124) issued by the Agent to the undersigned debtor (the "**Debtor**"), dated August 27, 2025 (the "**NOI**").

The undersigned Debtor hereby irrevocably waives the 10-day notice period as set out in Paragraph 4 of the NOI, and consents to the immediate enforcement of the Security (as defined and more particularly set out in the NOI) it has granted to the Agent.

The Debtor further acknowledges and confirms that it has sought and obtained advice from its professional advisors, including legal counsel, in connection with the execution of this Waiver and Consent.

Dated this _____ day of August, 2025.

**XIWANG        IOVATE        HOLDINGS COMPANY LIMITED**


Per:   _____
Name:
Title:

**NOTICE OF INTENTION TO ENFORCE SECURITY**
(Rule 124)
*(Section 244 of the Bankruptcy and Insolvency Act)*

TO:          **Iovate Health Sciences U.S.A. Inc.**
             381 North Service Road West
             Oakville, ON L6M 0H4
             Attention: Tanya Mistry

Take notice that:

1.          The Royal Bank of Canada, in its capacity as administrative agent (the "**Agent**"), a secured creditor, intends to enforce its security on Iovate Health Sciences U.S.A. Inc.'s (the "**Debtor**") property described in Schedule "A" hereto.

2.          The security that is to be enforced is the:

   (a)      General Security Agreement dated December 21, 2016 granted by, *inter alios*, the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**GSA**");

   (b)      Security Agreement dated December 21, 2016 granted by, *inter alios,* the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**US GSA**"); and

   (c)      Deposit Account Control Agreement dated September 24, 2024 among the Debtor, the Agent and HSBC Bank USA, N.A., as depository bank (the "**DACA**").

           (collectively, the "**Security**").

3.          The total amount of indebtedness secured by the Security is US$115,700,995 as of August 26, 2025, together with (a) all expenses and costs of the Agent recoverable under the Security (including solicitor fees) and (b) all interest, costs, fees, expenses, costs, charges and other amounts recoverable under the Security, in each case as may accrue after August 26, 2025.

4.          The secured creditor will not have the right to enforce the security until after the expiry of the 10-day period after this notice is sent unless the insolvent person consents to an earlier enforcement.

           DATED at Toronto, this 27th day of August, 2025.

                              **ROYAL BANK OF CANADA, as agent, by
                              its counsel BLAKE, CASSELS &
                              GRAYDON LLP**

Per: _____
Name:  Chris Burr
Title:   Partner

**SCHEDULE "A"**

**COLLATERAL:**

| (a) | GSA | With respect to the Debtor, all of the present and future: |
|---|---|---|
| | | (d)  undertaking; |
| | | (e)  Personal Property (other than Excluded CFC Securities but including any Personal Property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA); and |
| | | (f)  real property (including any real property that may be described in any Schedule to this Agreement or any schedules, documents or listings that the Debtor may from time to time provide to the Agent in connection with the GSA and including all fixtures, improvements, buildings and other structures placed, installed or erected from time to time on any such real property), |
| | | of the Debtor, including Books and Records, Contracts, Intellectual Property Rights and Permits, and including all such property in which the Debtor now or in the future has any right, title or interest whatsoever, whether owned, leased, licensed, possessed or otherwise held by the Debtor, and all Proceeds of any of the foregoing, wherever located. |
| | | All capitalized terms in this cell shall have the meanings given to them in the GSA. |
| (b) | US GSA | All of the Debtor's right, title and interest in, to and under the following property, in each case whether tangible or intangible, wherever located, and whether now owned by such Grantor or hereafter acquired and whether not existing or hereafter coming into existence: (a) all Accounts, Receivables, and Receivables Records, (b) all As-Extracted Collateral; (c) all Chattel Paper; (d) all Deposit Accounts; (e) all Documents, (f) all Equipment, (g) all Fixtures, (h) all General Intangibles, (i) all Goods not covered by other clauses in Section 3 of the US GSA; (j) the Pledged Shares; (k) all Instruments, including all Promissory Notes; (l) all Insurance; (m) all Intellectual Property and Intellectual Property Licenses; (n) all Inventory; (o) all Investment Property, including all Securities, all Securities Accounts and all Security Entitlements with respect |

| | | |
|---|---|---|
| | | thereto and Financial Assets carried therein, and all Commodity Accounts and Commodity Contracts; (p) all Letter-of-Credit Rights; (q) all Money, as defined in Section 1-201(24) of the New York Uniform Commercial Code; (r) all commercial tort claims, as defined in Section 9-102(a)(13) of the New York Uniform Commercial Code; (s) all other tangible and intangible personal property whatsoever of the debtor; and (t) all Proceeds of any of the Collateral, all Accessions to and substitutions and replacements for, any of the Collateral, and all offspring, rents, profits and products of any of the Collateral, and, to the extent related to any Collateral, all books, correspondence, credit files, records, invoices and other papers (including all tapes, cards, computer runs and other papers and documents in the possession or under the control of the Debtor).<br><br>All capitalized terms in this cell shall have the meanings given to them in the US GSA. |
| (c) | **DACA** | The Account and all funds on deposit from time to time therein.<br><br>"Account" means the deposit account(s), as such term is defined in Section 9-102 of the Uniform Commercial Code (ie, a demand, time, savings, passbook or similar account maintained with the Bank), as identified in the Transaction Summary (including Deposit Accounts #104035579 and #104035587) |

## WAIVER AND CONSENT

TO:          **THE ROYAL BANK OF CANADA in its capacity as Administrative Agent**
             (the "**Agent**")

_____

Reference is made to the Notice of Intention to Enforce Security (Rule 124) issued by the Agent to the undersigned debtor (the "**Debtor**"), dated August 27, 2025 (the "**NOI**").

The undersigned Debtor hereby irrevocably waives the 10-day notice period as set out in Paragraph 4 of the NOI, and consents to the immediate enforcement of the Security (as defined and more particularly set out in the NOI) it has granted to the Agent.

The Debtor further acknowledges and confirms that it has sought and obtained advice from its professional advisors, including legal counsel, in connection with the execution of this Waiver and Consent.

Dated this _____ day of August, 2025.

**IOVATE HEALTH SCIENCES U.S.A. INC.**

Per:     _____
Name:
Title:

1378-8138-5240.1

**NOTICE OF INTENTION TO ENFORCE SECURITY**
(Rule 124)
*(Section 244 of the Bankruptcy and Insolvency Act)*

TO:        **Iovate Health Sciences Australia Pty Ltd.**
           381 North Service Road West
           Oakville, ON L6M 0H4
           Attention:  Tanya Mistry

Take notice that:

1.        The Royal Bank of Canada, in its capacity as administrative agent (the "**Agent**"), a secured creditor, intends to enforce its security on Iovate Health Sciences Australia Pty Ltd.'s (the "**Debtor**") property described in Schedule "A" hereto.

2.        The security that is to be enforced is the:

    (a)    General Security Deed dated October 6, 2022 granted by the Debtor in favour of HSBC Bank Canada (as predecessor in interest to the Agent) (the "**Deed**")

    (collectively, the "**Security**").

3.        The total amount of indebtedness secured by the Security is US$115,700,995 as of August 26, 2025, together with (a) all expenses and costs of the Agent recoverable under the Security (including solicitor fees) and (b) all interest, costs, fees, expenses, costs, charges and other amounts recoverable under the Security, in each case as may accrue after August 26, 2025.

4.        The secured creditor will not have the right to enforce the security until after the expiry of the 10-day period after this notice is sent unless the insolvent person consents to an earlier enforcement.

        DATED at Toronto, this 27th day of August, 2025.

                                   **ROYAL BANK OF CANADA, as agent, by
                                   its counsel BLAKE, CASSELS &
                                   GRAYDON LLP**


                                   Per:    _____
                                   Name: Chris Burr
                                   Title:   Partner

## SCHEDULE "A"

**COLLATERAL:**

| (a) | **Deed** | All the Debtor's present and after-acquired property, including anything in respect of which the Debtor has at any time sufficient right, interest or power to grant a security interest, and includes the "Mortgaged Property". |
| --- | --- | --- |
| | | "Mortgaged Property" means all of the Debtor's present and future interest in: (a) any shares in any company, corporation, body corporate or other entity from time to time registered in the name of the Debtor, (b) any unit in any trust registered from time to time in the name of the Debtor, (c) the Additional Rights in respect of the Shares or Units; (d) the Controlled Account and any chose in action in respect of the Controlled Account, and (e) any cash or other assets deposited by the Debtor at any time with or at the direction of the Administrative Agent. |
| | | All capitalized terms in this cell shall have the meanings given to them in the Deed. |

## WAIVER AND CONSENT

TO:             **THE ROYAL BANK OF CANADA in its capacity as Administrative Agent**
(the "**Agent**")

---

Reference is made to the Notice of Intention to Enforce Security (Rule 124) issued by the Agent to the undersigned debtor (the "**Debtor**"), dated August 27, 2025 (the "**NOI**").

The undersigned Debtor hereby irrevocably waives the 10-day notice period as set out in Paragraph 4 of the NOI, and consents to the immediate enforcement of the Security (as defined and more particularly set out in the NOI) it has granted to the Agent.

The Debtor further acknowledges and confirms that it has sought and obtained advice from its professional advisors, including legal counsel, in connection with the execution of this Waiver and Consent.

Dated this _____ day of August, 2025.


**IOVATE       HEALTH       SCIENCES AUSTRALIA PTY LTD.**


Per:    _____
Name:
Title: