**EXHIBIT C-2**

25-11958-mg    Doc 45-4    Filed 10/07/25    Entered 10/07/25 15:22:55    Exhibit C-2
Pg 2 of 14

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2025-Aug-12 10:14:03
04CV-25-1607
C19WD05 : 13 Pages

# IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
## FIFTH DIVISION

| | |
|---|---|
| **ORGAIN, INC.** | **PLAINTIFF** |
| v.  No. 04CV-25-1607 | |
| **IOVATE HEALTH SCIENCES INTERNATIONAL, INC.; and IOVATE HEALTH SCIENCES INTERNATIONAL U.S.A., INC.** | **DEFENDANTS** |

### DEFENDANTS' BRIEF IN SUPPORT OF EMERGENCY MOTION TO QUASH THE WRIT OF GARNISHMENT DIRECTED TO WALMART INC.

Pursuant to Ark. Code Ann. §§ 16-110-134, 16-110-402, 16-66-114, and this Court's inherent authority, Iovate Health Sciences International, Inc. ("Iovate Canada") and Iovate Health Sciences International U.S.A. Inc.[1] ("Iovate USA," and, together with Iovate Canada, "Iovate"), bring this emergency motion to quash Plaintiff Orgain Inc.'s ("Orgain") writ of garnishment to Walmart Inc. ("Walmart") dated June 27, 2025 (the "Writ").

The Writ is improper and deficient for at least two independent reasons. First, Orgain failed obtain a writ of execution and attempt to find and levy Iovate's property before issuing the Writ, in violation of Ark. Code Ann. § 16-66-114. That alone merits quashing the Writ. *See Thompson v. Bank of Am.*, 356 Ark. 576, 584, 157 S.W.3d 174, 179 (2004) (requiring "strict compliance with garnishment statutes").[2]

Second, the property Orgain seeks to garnish—accounts receivable due to Iovate from Walmart (the "Accounts Receivable")—is not subject to garnishment due to the prior, perfected, presently executable, and therefore superior interest of Iovate's secured lenders. Orgain is well

---

[1] Orgain incorrectly identifies Iovate Health Sciences U.S.A., Inc. as Iovate Health Sciences International U.S.A., Inc.

[2] Unless otherwise indicated, all case quotations omit internal quotation marks and citations and adopt previous alterations.

aware of that: Iovate's secured lenders sent it one cease-and-desist letter in May and another in August just days before Orgain served the Writ. Orgain's decision to proceed with the Writ anyway reveals its true purpose is not recovering on the judgment, but harming Iovate's business operations and relationship with Walmart.

This is not the first time Orgain has misused process in this way. In April, Orgain attempted to levy the Accounts Receivable pursuant to a writ of execution issued in the United States District Court for the Central District of California. Despite the fact that those levies were not properly served and sought to levy property outside the Central District's jurisdiction, Walmart froze payments. Iovate sought emergency relief. The Central District vacated and quashed the levies on an emergency basis because it found that Iovate had shown irreparable harm from the disruption of their relationship with Walmart and "ability to continue normal business operations and service their senior secured debt." Affidavit of Douglas R. Gooding ("Gooding Aff."), Ex. 3 at 2.

Orgain is doing the same thing here: issuing deficient process it knows will not result in recovery in order to harm Iovate's business relationships and operations. This Court should not countenance Orgain's misuse of its process. *See M & S Oil Props. v. Halliburton Co.*, 32 Ark. App. 136, 137-138, 798 S.W.2d 116, 117 (1990) ("The general rule is that it is inherent power in a court to control and regulate its process. When justice and fair honest dealing demand, it may quash the process itself . . . .").

Iovate respectfully requests that this Court quash the Writ.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **The Underlying Action**

Orgain and Iovate are competitors. Both businesses produce and sell nutritional supplements, including through third-parties like Walmart. Orgain sued Iovate in the United States District Court for the Central District of California, resulting in a judgment against Iovate for

infringing Orgain's trade dress on certain products. On November 17, 2024, the Central District entered an Amended Judgment against Iovate. *See* Plaintiff's Application for Registration of Foreign Judgment, Ex. A.

Following entry of the Amended Judgment, Orgain attempted to levy on Iovate accounts receivable from certain customers, including Walmart, pursuant to a writ of execution issued by the Central District. Gooding Aff., ¶ 4. In response, Walmart froze payments to Iovate until it received a court order or joint instruction. *Id.* Iovate informed Orgain that the accounts receivable were not subject to levy because they were collateral for Iovate's secured lenders, who had a prior, perfected, first-priority lien. Iovate requested Orgain recall the levies. *Id.*, ¶ 5.

When Orgain refused, Iovate moved on an emergency basis to vacate and quash the levies. *Id.*, ¶ 8. On April 28, 2025, the Central District granted the motion, concluding that Iovate would be irreparably harmed if the application was heard according to regularly-noticed motion procedures. Gooding Aff., Ex. 3 at 2 ("Without these payments, Defendants will suffer irreparable harm to their ability to continue normal business operations and service their senior secured debt."). The Central District held that the levies were deficient in that they were improperly served and attempted to reach property outside the court's jurisdiction. *Id.* at 3.

The next day, Orgain filed this action to domesticate the Amended Judgment in Arkansas, with the ostensible purpose of pursuing the same Accounts Receivable from Walmart in a court of competent jurisdiction.

**B.     Iovate's Relationship with Walmart**

Walmart is a longstanding and important customer of Iovate USA. Declaration of Tanya Mistry ("Mistry Decl."), ¶ 3. As of August 7, 2025, Walmart has paid Iovate USA $43,851,361.74 in 2025, approximately $6.1 million per month on average. *Id.* The outstanding account receivable from Walmart, as of August 7, 2025, is $8,740,423.29. *Id.* Iovate relies on payments from Walmart

3

to service its debt and operate its business. *Id.*, ¶¶ 3, 7-8.

The Writ directs Walmart to suspend payments to Iovate. Writ at 2 ("Notice to the Garnishee . . . You should hold the money until a Court order directs you to release the money."). Walmart has in fact put payments on hold. Mistry Decl., ¶ 7; Gooding Aff., ¶ 20.

Without these payments, Iovate will be unable to meet its contractual obligations to its secured lenders, thus jeopardizing its access to its operating credit line. Mistry Decl., ¶ 8. Iovate's ability to pay business expenses and make payroll will be significantly impacted, jeopardizing Iovate's ability to continue as a going concern. *Id.,* ¶¶ 3, 7. Moreover, Iovate's business relationship and goodwill with Walmart will be irreparably damaged. *Id.*, ¶¶ 5-6.

### C. Iovate's Credit Facility and Secured Lenders

Since 2016, Iovate Canada has been party to a credit agreement, as amended and restated from time to time, with a group of lenders that provides Iovate with a line of credit for business operations. Mistry Decl., ¶ 8. Royal Bank of Canada is currently the administrative agent for the lenders. *Id.* As security for the agreement, Iovate granted lenders a first-position security interest in substantially all assets, including the Walmart Accounts Receivable. *Id.*

The lenders' security interest in Iovate USA's assets was perfected by, among other things, the filing of a UCC Financing Statement with the Delaware Secretary of State in 2016, which was renewed in 2021. Gooding Aff., Ex. 1. The security interest in Iovate Canada's assets was perfected by, among other things, the filing of a UCC Financing Statement with the Washington, D.C. Recorder of Deeds in 2016, which was renewed in 2021. Gooding Aff., Ex. 2.

In 2024, the lenders declared a default under the credit agreement. Mistry Decl., ¶ 8. Following the default, Iovate Canada and the lenders entered into a forbearance agreement dated September 24, 2024. *Id.* Pursuant to the forbearance agreement, Iovate Canada is required to make certain payments to lenders. *Id*. Iovate's ability to comply with the terms of the forbearance agreement, and therefore to maintain its access to the credit line, is jeopardized by the Writ. *Id.*

4

### D. Orgain's Refusal to Cease and Desist

On May 1, 2025, days after this action was filed, counsel for Royal Bank of Canada sent a letter to Orgain's counsel, giving notice of the lenders' senior security interests in the collateral, "including amounts owed to Iovate or its subsidiaries by Walmart Inc.," and demanding that Orgain "immediately cease all judgment enforcement efforts that interfere with the Agent's and the Lender's rights with respect to Iovate, its subsidiaries, and their assets." Gooding Aff., ¶ 11; Ex. 4. The letter further explained that "[b]y seeking to redirect payments from Iovate's and its subsidiaries' account debtors to itself, Orgain is attempting to improperly interfere with the Agent's and the Lenders' rights under the Credit Agreement and to the Collateral." *Id.*

Orgain thereafter withdrew writs of garnishment it had issued to Amazon in Washington state and the parties engaged in settlement discussions regarding payment of the Amended Judgment. Gooding Aff., ¶¶ 11-12. Orgain agreed to a "standstill" from enforcing the judgment while negotiations continued. *Id.*, ¶ 12.

While negotiations were ongoing, and without prior notice, Orgain issued the Writ on June 27, 2025. *Id.*, ¶ 13. Orgain agreed not to serve the Writ while negotiations continued. *Id.*, ¶¶ 13-14. Orgain made their most recent counteroffer on July 31, 2025, and set a response deadline of August 18, 2025. *Id.*, ¶ 14. While Iovate was considering that settlement offer, and before the response deadline, Orgain served the Writ without prior notice to Iovate on August 8, 2025. *Id.*, ¶ 21.[3]

---

[3] Despite its assurances of a standstill, Orgain has repeatedly moved ahead with enforcement efforts to disrupt Iovate's business and gain negotiating leverage. On July 14, Orgain registered the Amended Judgment in Delaware state court, prompting Royal Bank of Canada to send another cease-and-desist letter on August 4—just days before the Writ was served. *See* Gooding Aff., ¶ 15; *id.*, Ex. 5. In addition, an April notice of levy from the Central District of California, which had already been vacated and quashed, mysteriously came to Walmart's attention at the end of July. *Id.*, ¶ 16. Walmart suspended payments to Iovate in response, and counsel for Orgain confirmed

5

## II. ARGUMENT

Iovate, as judgment debtor, has standing to challenge—and this Court has the authority to determine—the validity of the Writ and the relative rights in the property sought to be garnished (*i.e.*, the Accounts Receivable). *Watkins v. Hadamek*, 48 Ark. App. 78, 81-82, 892 S.W.2d 515, 517 (1994) (holding judgment debtor who had assigned rights in property at issue to bank had standing to challenge writ of garnishment) (citing Ark. Code Ann. § 16-110-134(a)); *see also* Ark. Code Ann. § 16-110-402(e) (allowing judgment debtor to claim exemptions to writ of garnishment). Moreover, this Court has inherent authority to control and regulate its own process. *M & S Oil Props.*, 32 Ark. App. at 137-138, 798 S.W.2d at 117 ("The general rule is that it is inherent power in a court to control and regulate its process. When justice and fair honest dealing demand, it may quash the process itself . . . ."); *Papan v. Ark. Light & Power Co.*, 169 Ark. 855, 858, 277 S.W. 1, 2 (1925) ("The circuit court had inherent jurisdiction over process issued out of its court . . . ."); *see also Green v. State*, 2009 Ark. 113, at 12, 313 S.W.3d 521, 529 (Brown, J., concurring) ("[I]t is axiomatic that courts have inherent authority to protect the integrity of the judicial process.").

### A. The Writ Should Be Quashed Because Orgain Failed to Comply with Ark. Code Ann. § 16-66-114.

Post-judgment execution against private corporations like Iovate USA and Iovate Canada is governed by Ark. Code Ann. § 16-66-114, which provides:

> (a) The first process upon a judgment against any private corporation shall be a *fieri facias*, which the sheriff or other officer shall levy on the moneys, goods and chattels, and lands and tenements of the corporation, and upon which he or she shall proceed as in other cases.
>
> (b) If the sheriff or other officer returns upon any writ of *fieri facias* that no goods and chattels and lands and tenements can be found whereon to levy or if the

---

the notice of levy had been quashed only under threat of a motion for sanctions. *Id.*, ¶¶ 17-19. But Orgain also took the opportunity to notify Walmart's counsel of the Writ, ensuring payments would remain suspended. *See id.*, ¶ 20.

6

> property taken is not sufficient to satisfy the judgment, interest, and costs, then upon the application of the plaintiff or his or her attorney, the circuit court shall issue a writ of attachment against the rights and credits of the corporation, reciting the judgment, execution, and return, which shall be directed to the sheriff of the proper county.
>
> (c) The attachment shall be executed by summoning as garnishee any person having any moneys or effects belonging to the corporation and any debtor to the corporation who may be found within the county to appear before the circuit court at the return of the writ and answer touching any moneys or effects of the corporation in his or her hands or any debt he or she may owe to the corporation.

Ark. Code Ann. § 16-66-114(a)-(c).

The statute is clear that "the first process upon a judgment against a private corporation must be a *fieri facias*, which the sheriff shall levy on the property of the corporation." *Turner v. Farnam*, 82 Ark. App. 489, 492, 120 S.W.3d 616, 618-19 (2003). Only if "no property of the corporation can be found or, if found, is not sufficient to satisfy the judgment, then writs of garnishment may issue." *Id.* While there are other statutes addressing the issuance of writs of garnishment generally, *e.g.*, Ark. Code Ann. § 16-110-401, it is black-letter law that the more specific statute—here, addressing writs of garnishment for judgments against corporations—controls. *See, e.g., Wal-Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.*, 374 Ark. 489, 494, 288 S.W.3d 627, 632 (2008) ("[T]he specific statute controls over the general.").

Orgain did not issue a writ of *fieri facias*, *i.e.*, a writ of execution. No sheriff attempted to levy Iovate's assets or certified that no Iovate property could be found. Orgain has therefore not fulfilled the necessary prerequisites to issue a writ of garnishment.

That is not a harmless oversight or excusable error. A writ of garnishment is "a purely statutory remedy in derogation of the common law and must be strictly construed." *See Thompson v. Bank of Am.*, 356 Ark. 576, 584, 157 S.W.3d 174, 179 (2004). Garnishment imposes significant costs and burdens on third parties, *see id.* at 582, 157 S.W.3d at 178; it makes good sense to require process against corporate parties in the first instance. The Arkansas Supreme Court has "frequently,

7

and without exception, held . . . that strict compliance with garnishment statutes is essential to the validity of the proceeding." *Id.* at 584, 157 S.W.3d at 179 (quoting *G.A.C. Trans-World Accept. Corp. v. Jaynes Enters., Inc.*, 255 Ark. 752, 756, 255 Ark. 752, 756 (1973)).

Because Orgain failed to strictly comply with the requirements of Ark. Code Ann. § 16-66-114, the Writ should be quashed.

**B.     The Writ Should Be Quashed Because the Accounts Receivable Are Not Subject to Garnishment and Orgain Is Using the Writ for Improper Purposes.**

Even if the Court finds that Orgain strictly complied with all necessary requirements before issuing the Writ, the Writ should be quashed for a second, independent reason. Orgain, as a judgment creditor, cannot jump ahead of Iovate's secured lenders, who have a superior interest and who are already receiving proceeds of the Accounts Receivable pursuant to their forbearance agreement with Iovate.

Iovate's secured lenders have a secured, first priority lien on essentially all of Iovate assets, including the Accounts Receivable. Mistry Decl., ¶ 8. That lien was perfected in 2016. *See* Gooding Aff., Exs. 1, 2, 4. Iovate has been in default since 2024 and the lenders have a present right to enforce their security interest. Mistry Decl., ¶ 8.

As a judgment creditor, Orgain is a lien creditor, not a secured creditor. *See Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC*, 315 A.3d 1164, 1175 (Del. Sup. Ct. 2024) ("A judgment creditor is not a secured creditor under Article 9, but rather, is a 'lien creditor.'"); Ark. Code Ann. § 4-9-102(a)(52) (defining "lien creditor" to mean "a creditor that has acquired a lien by attachment, levy, or the like"). A lien creditor only takes priority over a secured creditor if it "becomes a lien creditor before… the time: (A) the security interest … is perfected." Ark. Code Ann. § 4-9-317(a)(2). Orgain did not even file the underlying suit, let alone receive a judgment or become a lien creditor, until years after Iovate's lenders' security interest was

8

perfected.

Under well-established Arkansas law, Iovate's secured lenders hold a superior interest to Orgain, and thus Orgain cannot garnish the Accounts Receivable. *See Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 369 Ark. 487, 493, 256 S.W.3d 496, 501 (2007) ("Our well established rule is that the priority of liens is generally determined by the maxim, first-in-time, first-in-right."); *Gossett v. Merchants & Planters Bank*, 235 Ark. 665, 666-67, 361 S.W.2d 537, 538 (1962); *Metro. Nat. Bank v. La Sher Oil Co.*, 81 Ark. App. 269, 271, 101 S.W.3d 252, 253 (2003). Courts applying the same U.C.C. provisions in similar cases in other jurisdictions have reached the same conclusion. *See Sys. Soft Techs. LLC v. Artemis Techs., Inc.,* 301 Mich. App. 642, 654, 837 N.W.2d 449, 456 (Mich. Ct. App. 2013) ("In short, because the UCC did not require [the secured lender] to foreclose, liquidate, or seize defendant's assets and because [the UCC] and the security agreement authorized [the secured lender's] method of collecting the debt, the trial court did not abuse its discretion by quashing the plaintiff's writs of garnishment[.]")*; Navient Solutions*, 315 A.3d at 1182 ("Because Lender has a valid, prior perfected secured lien and a default occurred before the writs of garnishment were served, Lender maintains its priority status and [judgment creditor's] writs are junior to Lender's rights.").

Iovate and its lenders have repeatedly informed Orgain of the lenders' prior, perfected security interest in the Accounts Receivable, including via lenders' May 1 and August 4 cease-and-desist letters. Gooding Aff., ¶¶ 5, 11, 12, 15; Exs. 4-5. Iovate and lenders have also repeatedly explained the legal significance of that security interest—that Orgain cannot garnish the Accounts Receivable. *Id.* Orgain understands that, as well: in May, Orgain released similar writs in Washington state court seeking to garnish accounts receivable from Amazon in light of the same legal principles and provisions of the U.C.C. *Id.*, ¶ 12.

9

Orgain's decision to push ahead with the Writ notwithstanding its actual knowledge of the lenders' superior interest in the Accounts Receivable and, in turn, its inability to recover them reveals that Orgain is using the Writ to harm Iovate's business and relationship with Walmart, not to recover on the Amended Judgment. From the previous proceedings in the Central District of California, Orgain knows that Walmart will freeze payments to Iovate until this Court rules on the Writ. Orgain also knows that will irreparably harm Iovate, as discussed below, because Walmart is one of its most important customers and payments from Walmart are essential to Iovate's day-to-day business operations and servicing of its senior secured debt.

Orgain has the right to lawfully enforce the Amended Judgment. But the Amended Judgment is not a license to burden Iovate, its secured lenders, and its key customers with deficient and futile process in order to gain negotiating leverage or competitive advantage. *Cf. Farm Service Coop., Inc. v. Goshen Farms, Inc.*, 267 Ark. 324, 338, 590 S.W.2d 861, 868 (1979) (noting "repeated issuance of writs of garnishment" in order "to annoy, vex and harass the debtor, to tie up the wages which were his only means of support, and to cause him to lose time and incur expenses in attending court, issuing notices, filing schedules and claims of exempt property, and making defenses to the suits" was an example of abuse of process). The Court should not allow its process to be used in that way. *See M & S Oil Props.*, 32 Ark. App. at 137-138, 798 S.W.2d at 117.

C.  **The Writ Will Irreparably Harm Iovate Without Emergency Relief.**

Iovate seeks relief on an emergency basis to prevent irreparable harm from a suspension in payments from Walmart, as directed by the Writ. Writ at 2 ("Notice to the Garnishee . . . You should hold the money until a Court order directs you to release the money."). Walmart has in fact put payments on hold. Mistry Decl., ¶ 7; Gooding Aff., ¶ 20. In particular, Iovate requests that the court expedite the time for briefing and deciding this motion.

Walmart is a critical customer of Iovate USA. Mistry Decl., ¶ 3. As of August 7, 2025,

10

Walmart has paid Iovate USA $43,851,361.74 in 2025, approximately $6.1 million per month on average. *Id.* The outstanding account receivable from Walmart, as of August 7, 2025, is $8,740,423.29. *Id.* Iovate relies on these payments from Walmart to operate its business and to make payments to its lenders under its credit facility. *Id.*, ¶ 3, 7-8. Without payments from Walmart, Iovate would have to begin making drastic cuts to its business. *Id.*, ¶ 7. It would effectively shut down Iovate, and Iovate would be unable to pay its lenders. *Id.*, ¶¶ 7-8; *see Home-Land Title & Abstract Co. v. Guffey*, No. CA 92-283, 1993 Ark. App. LEXIS 29, *8 (Jan. 20, 1993) (holding there is irreparable harm where "movant's very existence is threatened, for example, where an act threatens an ongoing business with destruction as opposed to mere disruption"); *Byrd v. Ritchie Grocer Co.*, No. CA 85-93, 1985 Ark. App. LEXIS 2250, *7 (Nov. 27, 1985) (holding there is irreparable harm where "the very existence of the business is threatened with destruction" by "monetary loss"). In addition, Orgain's repeated attempts to collect Iovate's accounts receivable from Walmart impose a significant burden on Walmart and strain Iovate's relationship with Walmart. Mistry Decl., ¶ 6; *see Rogers Group, Inc. v. City of Fayetteville*, 629 F.3d 784, 789-90 (8th Cir. 2010) (concluding loss of goodwill among customers sufficient to establish a threat of irreparable harm) (citing *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003)).

This issue—that Iovate will suffer irreparable harm from a suspension of Walmart's payments of the Accounts Receivable—has already been litigated by the same parties and adjudicated by the United States District Court for the Central District of California. That court held that Iovate would suffer irreparable harm if its accounts receivable, including those from Walmart, were improperly attached or suspended. Gooding Aff., Ex. 3 at 2, 5. That issue was essential to the court's decision. *Id.* Because this issue has been decided in Iovate's favor, Orgain

11

is precluded from arguing that Iovate will not suffer irreparable harm if its accounts receivable from Walmart are attached or suspended. *See Powell v. Lane*, 375 Ark. 178, 185, 289 S.W.3d 440, 444 (2008); *Turcios v. Carter*, 2023 Ark. App. 476, at 15, 678 S.W.3d 802, 813 ("A federal court judgment may preclude relitigation of issues in state court . . . .").

### III.  CONCLUSION

For the reasons stated above, Iovate respectfully requests that this Court quash the Writ.

Dated: August 12, 2025

                    Respectfully submitted,

                    /s/ Peter Shults
                    Peter Shults (Ark. Bar No. 2019021)
                    Amanda G. Orcutt (Ark. Bar No. 2019102)
                    Steven Shults (Ark. Bar No. 78139)
                    SHULTS LAW FIRM LLP
                    200 West Capitol Avenue, Suite 1600
                    Little Rock, Arkansas 72201-3621
                    (501) 375-2301
                    pshults@shultslaw.com
                    aorcutt@shultslaw.com
                    sshults@shultslaw.com

                    *-and-*

                    Douglas R. Gooding (*pro hac vice forthcoming*)
                    Derek H. Farquhar (*pro hac vice forthcoming*)
                    CHOATE, HALL & STEWART LLP
                    Two International Place
                    Boston, MA 02210
                    (617) 248-5000
                    dgooding@choate.com
                    dfarquhar@choate.com

## **CERTIFICATE OF SERVICE**

    I certify that I filed the foregoing with the Clerk of the Benton County Circuit Court using the electronic filing system, which shall send notification to all counsel of record.

                                                /s/ Peter Shults
                                                Peter Shults