**EXHIBIT D-2**

25-11958-mg    Doc 45-8    Filed 10/07/25    Entered 10/07/25 15:22:55    Exhibit D-2
Pg 2 of 10

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2025-Aug-13  10:13:42
04CV-25-1607
C19WD05 : 9 Pages

# IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
## CIVIL DIVISION

**ORGAIN, INC.**                                                                **PLAINTIFF**

**VS.**                      **CASE NO. 04CV-25-1607**

**IOVATE HEALTH SCIENCES INTERNATIONAL,
INC. AND IOVATE HEALTH SCIENCES
INTERNATIONAL U.S.A., INC.**                                **DEFENDANTS**

## ROYAL BANK OF CANADA'S BRIEF IN SUPPORT
## OF MOTION TO INTERVENE

### I.  INTRODUCTION

Non-party Royal Bank of Canada ("RBC" or the "Agent") is the administrative agent for a group of lenders, who have loaned money to the defendants in this case, Iovate Health Sciences International and Iovate Health Sciences Internal U.S.A., Inc. (collectively, "Iovate"). Plaintiff Orgain, Inc. ("Orgain") has registered a foreign judgment in Arkansas and now seeks to collect on that judgment by garnishing accounts receivable owed to Iovate. The problem is that RBC holds a properly perfected prior in time lien on the same accounts receivable upon which Orgain now seeks to collect from Walmart.

Because RBC's lien is superior to the lien of Orgain created by the writ of garnishment, the writ of garnishment should be quashed or, alternatively, any funds garnished should be paid to RBC to apply to the debts owed to it. RBC seeks to intervene in this case pursuant to Rule 24 of the Arkansas Rules of Civil

Procedure in order to protect its rights to the accounts receivable, among other reasons.

## II. FACTUAL BACKGROUND

On November 22, 2016, Iovate and its lenders (the "<u>Lenders</u>") entered into a credit agreement providing for about $147 million in loans (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "<u>Credit Agreement</u>"). In accordance with a contemporaneous security agreement (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "<u>Security Agreement</u>"), the Agent[1] acquired, for the benefit of the Lenders and to secure the loans, a first-priority lien on substantially all assets of Iovate (the "<u>Collateral</u>").[2] The Collateral includes, among other things, Iovate's accounts receivable and their proceeds, such as amounts owed to Iovate by customers like Walmart.

The Agent's security interest in the Collateral was perfected as early as December 19, 2016, through UCC-1 financing statements filed in multiple jurisdictions, including New York, Pennsylvania, Texas, California, Florida, New

---

[1] The Credit Agreement and Security Agreement designated HSBC Bank Canada as the original administrative agent for the loans. In March 2024, HSBC Holdings sold HSBC Bank Canada to RBC. As a result, RBC became the administrative agent under the Credit Agreement (as successor to HSBC Bank Canada by way of the amalgamation among HSBC Bank Canada and Royal Bank of Canada). The Credit Agreement was most recently amended on February 28, 2025, through the execution of Amending Agreement No. 10, which is Exhibit A to the Andrew O'Coin Declaration submitted herewith.

[2] The Security Agreement is Exhibit B to the Andrew O'Coin Declaration submitted herewith.

3434150-v1

Jersey, Ohio, Delaware, Wisconsin, and the District of Columbia.[3] Each UCC-1 designated that the collateral included "All Assets." Each of these UCC-1 financing statements was continued in June 2021 and amended as recently as April 2024. The Agent's first-priority security interest in all of Iovate's assets remains valid and perfected today.

No later than July 8, 2024, Iovate had violated at least three financial covenants in the Credit Agreement. These breaches constituted defaults under section 5.1(12) and section 6.1 of the Credit Agreement, and thus gave RBC an immediate right to possess the Collateral.,[4]

On November 17, 2024, Orgain obtained a judgment against Iovate in the action captioned *Orgain, Inc. v. Iovate Health Sciences International, Inc.*, 8:18-cv-01253-JLS-ADS, in the United States District Court of the Central District of California (the "California Action"). California Action, Dkt. 523. Orgain then sought to enforce that judgment by sending notices of levy to some of Iovate's wholesale customers—each an account debtor of Iovate. California Action, Dkt. 536. Iovate successfully moved to quash the notices of levy in California for the same or similar reasons that will be articulated in this case. California Action, Dkt. 543.

---

[3] These UCC-1 financing statements are Exhibit C to the Andrew O'Coin Declaration submitted herewith. Additional UCC-1 financing statements were filed in Illinois, Indiana, Kentucky, and Nevada in February 2025.

[4] In addition, on September 24, 2024, Iovate and RBC entered into a Deposit Account Control Agreement (the "DACA") on an account held by Iovate. To the extent that Orgain's garnishment application seeks relief from such account, RBC perfected its interest in that account through establishing its control over the account by execution of the DACA. *See* Ark. Code Ann. § 4-9-314(b).

3

On May 1, 2025, counsel for RBC sent a letter notifying Orgain of its prior perfected lien on Iovate's assets.[5] RBC demanded that Orgain refrain from judgment enforcement efforts that could interfere with RBC's superior rights in the Collateral, including efforts to garnish Iovate's accounts receivable. Orgain never responded to that correspondence. Rather, in disregard of RBC's rights, Orgain filed a writ of garnishment directed at Walmart on or about June 27, 2025.

### III. ARGUMENT

**A.  The Court Should Allow RBC to Intervene Because It Has a Senior Interest in the Accounts Receivable.**

Orgain seeks to attach a garnishment lien to Iovate's accounts receivable and to collect Orgain's judgment through execution on the writ of garnishment lien. The problem is Orgain's garnishment lien is junior and inferior to RBC's lien on Iovate's accounts receivable.

This is an issue of lien priority. RBC's lien on the Walmart Receivables dates back to 2016 and has priority over Orgain's garnishment lien, which was created when Orgain served Walmart with a writ of garnishment. The "well established rule is that the priority of liens is generally determined by the maxim, first-in-time, first-in-right." *Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 256 S.W.3d 496, 501 (Ark. 2007); *see also Niedermeier v. Cent. Prod. Credit Ass'n*, 777 S.W.2d 210, 211 (Ark. 1989) ("The first in time, first in right rule prevails" when determining the priority of conflicting security interests.). This concept is enshrined in the Uniform

---

[5] The letter dated May 1, 2025, is Exhibit D to the Andrew O'Coin Declaration submitted herewith.

4

Commercial Code, which has been adopted by Arkansas. *See* Ark. Code Ann. § 4-9-322(a)(1) ("Conflicting perfected security interests . . . rank according to priority in time of filing or perfection."). A security interest in property is superior to a judgment lien that attached after the security interest was perfected. Ark. Code Ann. § 4-9-317(a)(2)(A); *Slodov v. United States*, 436 U.S. 238, 257 n.22 (1978) ("Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property[.]"); *Sperry Corp. v. Farm Implement, Inc.*, 760 F.2d 196, 198 (8th Cir. 1985) ("[T]he holder of a perfected security interest takes priority over a subsequent lien creditor under the general code principle that gives priority to the earliest perfected security interest." (applying Arkansas law)).

RBC's security interest in the accounts receivable attached in November 2016, upon execution of the Security Agreement. *See* UCC § 9-203(a) ("A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral. . . ."). RBC's security interest was perfected that same month, through the filing of UCC-1 financing statements. *See* UCC § 9-312(a) ("A security interest in chattel paper, negotiable documents, instruments, or investment property may be perfected by filing."). And because of Iovate's several defaults under the Credit Agreement, which Iovate has expressly acknowledged in writing, RBC presently has the right to take possession of its Collateral, which includes Iovate's accounts receivable and their proceeds. *See* UCC § 9-609(a) ("After default, a secured party . . . [m]ay take possession of the collateral[.]"). RBC should not be foreclosed from

5

exercising this right to take possession of the subject accounts receivable by way of a junior judgment creditor's interest in collecting on a later-in-time judgment.

Orgain's judgment against Iovate was not entered until November 2024, nearly eight years after RBC's lien attached and was perfected. As a result, RBC's rights in Iovate's assets—including with respect to payments due and owing from Walmart to Iovate—is senior to Orgain's as a matter of Arkansas law. Any lien created by the writ of garnishment is inferior to the lien of RBC. Therefore, any proceeds obtained pursuant to the writ of garnishment should be paid to RBC, as the senior lienholder.

Under Arkansas Rule of Civil Procedure 24, intervention as of right is appropriate "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Ark. R. Civ. P. 24(a); *Certain Underwriters at Lloyd's, London v. Bass*, 461 S.W.3d 317, 326 (Ark. 2015) ("[I]f a party meets all three factors under Rule 24(a)(2), intervention as a matter of right cannot be denied."); *accord Classic Nursery, Inc. v. Reed Plumbing Supply Co.*, 1991 WL 89655, at *2 (Ark. Ct. App. May 22, 1991) (stating that pursuant to Arkansas Supreme Court precedent interpreting a since overturned statute, that "a party can intervene in a garnishment action before actual payment by the garnishee in order to assert a claim to the funds in question.").

Here, intervention as a right is appropriate because RBC meets each of the requirements under Rule 24(a). First, RBC has an interest in the property that is the

6

subject of this action. RBC holds a perfected security interest in the accounts receivable of which Iovate now seeks to obtain control and possession, through garnishment directed at Walmart.

Second, RBC cannot protect its interest in those accounts receivable unless it is a party to this case. Should RBC's motion to intervene be denied, Iovate's accounts receivable will be dissipated. RBC would then face the obstacle of mounting a separate collection action against Orgain, unnecessarily squandering judicial resources.[6] Consequently, RBC would then face credit and collection risk vis-à-vis Orgain. There is no justification for forcing this upon RBC, nor for the resulting waste of judicial resources.

Finally, RBC's interest is not adequately represented by any other party to this action. "An interest is adequately represented when the interest of a party to the litigation is identical or not significantly different from that of the proposed intervenors." *Nat'l Enters., Inc. v. Union Planters Nat'l Bank of Memphis*, 910 S.W.2d 691, 694 (Ark. 1995). Walmart owes the disputed monies to Iovate, which in turn owes the funds to RBC. Accordingly, Walmart possesses little to no interest in which entity the subject property is ultimately paid to. Iovate's interest is limited to ensuring that it receives the accounts receivable—but that is not the same as ensuring that RBC receives the funds. RBC should be allowed to intervene as of right under Rule 24(a).

---

[6] *See* UCC § 9-609 (cmt. § 5) ("Normally, a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right to the collateral would be liable in conversion.").

7

Alternatively, at a minimum, permissive intervention should be granted. The Court has discretion to grant permissive intervention where "an applicant's claim or defense and the main action have a question of law or fact in common," so long as intervention will not cause undue prejudice or delay. Ark. R. Civ. P. 24(b)(2). Arkansas courts have permitted parties to intervene in a garnishment action before actual payment by the garnishee to assert a claim to the funds in question. *Turner v. Farnam*, 120 S.W.3d 616, 620 (Ark. Ct. App. 2003) ("Arkansas cases have permitted persons who have an interest in attached or garnished property to either intervene or file an independent action to assert their interest."); *accord Lawrence v. Ford Motor Credit Co.*, 449 S.W.2d 695, 697–98 (Ark. 1970) (holding that a person with a property interest who disputes the validity of garnishment may intervene in garnishment proceedings); *see, e.g.*, *Pine Bluff Nat'l Bank v. Parker*, 490 S.W.2d 457, 459 (Ark. 1973) (finding no error in permitting intervention where the intervenor contested garnishment of account in which intervenor claimed actual ownership). The question posed by the underlying action is whether Orgain, by way of the November 2024 California judgment, can garnish amounts due from Walmart to Iovate. That is precisely the same question that RBC seeks intervention to answer. This action is in its earliest stages, and intervention would neither unduly delay nor prejudice the parties.

## IV.   CONCLUSION

For the foregoing reasons, RBC respectfully requests that the Court grant its motion to intervene and that such intervention be deemed effective as of the date of such order.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: abaker@wlj.com; jfair@wlj.com

By  /s/ Jacob P. Fair
    Adrienne L. Baker (2007159)
    Jacob P. Fair (2015167)

*Attorneys for Royal Bank of Canada*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the Arkansas Judiciary Electronic Filing System, which shall send notification of such filing to the attorneys of record in this case.

/s/ Jacob P. Fair
Jacob P. Fair

9

3434150-v1