**<u>EXHIBIT F</u>**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2025-Sep-08  16:55:55
04CV-25-1607
C19WD05 : 40 Pages

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

ORGAIN, INC.                                                                          **PLAINTIFF**

VS.                                    **CASE NO. 04CV-25-1607**

IOVATE HEALTH SCIENCES INTERNATIONAL,
INC. AND IOVATE HEALTH SCIENCES INTERNATIONAL
U.S.A., INC.                                                                       **DEFENDANTS**

### ROYAL BANK OF CANADA'S REPLY IN SUPPORT
### OF MOTION TO INTERVENE

## I.    INTRODUCTION

RBC[1] moved to intervene on August 13, 2025, on the grounds that it has a significant stake in the outcome of this action because Orgain seeks to garnish property to which RBC has a superior right. RBC submits this reply in further support of its Motion to Intervene (the "Motion").

On August 25, 2025, this Court held a hearing on Iovate's Emergency Motion to Quash the Writ of Garnishment Directed to Walmart Inc.,[2] at which Iovate's emergency motion was denied, and RBC was not permitted to participate because intervention had not yet been granted. Although Iovate's motion was denied, there remain critical questions about "how to release the money" subject to the writs of

---

[1]    Capitalized terms not defined herein have the same meanings as in the Brief in Support of Royal Bank of Canada's Motion to Intervene ("Opening Br.").

[2]    References to the transcript from the August 25, 2025, hearing are designated as "Hr. Tr." herein.

garnishment "and to whom" (Hr. Tr. 26:18-24). For the reasons stated herein, and in the Motion, RBC should be allowed to intervene so it can protect its property rights and have due process with respect to the litigation of these issues.[3]

## II.    <u>ARGUMENT</u>

### A.    The Constitution requires RBC to have a say in the outcome of a proceeding to determine its property rights.

There does not appear to be any dispute that RBC has a prior perfected lien on the Collateral, including the receivable Orgain seeks to garnish. A lien is an interest in property that is protected by the Due Process Clause of the U.S. Constitution. U.S. Const. amends. V, XIV; *see also Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) (holding that a mortgagee's lien rights constitute a protected property right under the Fifth Amendment and cannot be deprived without just compensation); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) (holding that a mortgagee's lien constitutes a protected property interest entitled to due process); *Am. Honda Fin. Corp. v. City of Revere,* 471 F. Supp. 3d 399, 406–10 (D. Mass. 2020) (holding that a secured creditor's perfected lien in a vehicle was a property interest entitled to due process, and holding that the creditor was entitled to actual notice and an opportunity to be heard before their collateral was permanently disposed of).

---

[3] RBC understands that on September 5, 2025, Iovate filed a Notice of Intention to Make a Proposal, a mechanism under Canada's Bankruptcy and Insolvency Act to commence a restructuring process, and that this operates as a stay against Orgain's continuing proceedings against Iovate or its property. RBC is submitting this reply out of an abundance of caution given this Court's deadlines. In doing so, RBC in no way intends to suggest that Orgain is not subject to such a stay, and RBC reserves all rights with respect thereto.

The Arkansas Constitution likewise treats liens as property interests entitled to due process. Ark. Const. art. II, § 21; *Landers v. Jameson*, 355 Ark. 163, 178 (2003) (concluding that a pawn shop in possession of jewelry "seeking to protect its security or lien interest in the jewelry at the time [another party] made a claim on the pawned property as the true owner . . . [was] entitled to due process protection").

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 119 (2003). "Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action." *Owings v. Econ. & Med. Servs.*, 302 Ark. 475, 478 (1990). The Arkansas Rules of Civil Procedure expressly contemplate that intervention is necessary when property rights are at stake, so that parties may be heard and protect their property interests. *See* Ark. R. Civ. P. 24(a) (requiring intervention "when the applicant claims an interest relating to the [subject] property"). It is well settled that "'[i]nterests in property are the most elementary type of right that Rule 24(a) is designed to protect.'" *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977) (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) (permitting government intervention to assert a lien on a fund before the court)).

RBC therefore is entitled to participate in this action to protects its property interest in the accounts receivable that Orgain is trying to garnish. This Court acknowledged that there remain open questions about disposition of the Collateral;

3

RBC therefore seeks intervention so that it may be heard on those open questions "at the appropriate time." (Hr. Tr. 26:22–23.). Even though Iovate was unsuccessful in its emergency motion to quash the writs, further litigation is required to determine what should happen with the garnished funds from Walmart. RBC's constitutional entitlement to due process means it must be afforded an opportunity to intervene and demonstrate that it is entitled to the money ahead of Orgain.

The need for RBC's intervention is made all the more apparent by the position Orgain has taken in this action. At the hearing on August 25, 2025, Orgain argued that RBC's alleged "refusal to take action" with respect to the Collateral "is a clear, unequivocal, and decisive act of waiver." (Hr. Tr. 18:9–13.). That is factually and legally incorrect for all the reasons in RBC's papers attached to the Motion, including supporting affidavits that demonstrate RBC's exercise of remedies in response to Iovate's defaults. But the point is that Orgain has accused RBC, in effect, of forfeiting a property right through waiver, and RBC must be given an opportunity to rebut that fallacious contention. RBC's constitutional rights alone decide this Motion.

### B.    The Arkansas Code mandates RBC's joinder as a party.

Additionally, and consistent with the Constitution, Arkansas's legislature has given a clear command that when any property is subjected to garnishment and there is an existing lien, "[a]ny prior lienholder or lienholders of any nature whatsoever shall be made a party or parties to the process, by the plaintiff or his or her attorney serving notice upon the lienholder or lienholders." Ark. Code Ann. § 16-66-203(b)(1). Orgain failed to comply with this provision. It submitted the writ of garnishment on June 27, 2025, after having been advised on multiple occasions of

4

RBC's prior perfected lien on the property in question. Declaration of Andrew O'Coin at ¶¶ 10–12, 15, Ex. C, Ex. D. Yet Orgain never joined RBC, as Arkansas law requires. It even reaped a benefit from its procedural defect by opposing Iovate's motion to quash – which RBC was prepared to join and support – without RBC having a chance to speak up for its rights at the August 25 hearing. And Orgain continues to violate section 16-66-203(b)(1) to the extent it is opposing intervention and otherwise not taking steps to ensure RBC is joined as a party.

If Orgain will not correct its procedural default, then RBC must ask the Court to do so by granting intervention, which this Court should grant because RBC is a necessary party under section 16-66-203(b)(1). As Arkansas Rule Civil Procedure 19 provides, a person must be joined if, among other possibilities, "they claim an interest in the subject of the action and their absence may . . . "[i]mpair their ability to protect that interest." That accurately describes RBC in this circumstance. If RBC is not joined, the Court should dismiss this action. *See Swindle v. Benton Cnty. Prosecuting Attorney's Off.*, 2023 Ark. App. 98, 7 ( 2023) (writing that the "failure to join [the lien granter] as a necessary party warranted dismissal" where the lienholder brought a claim seeking recovery under a lien, but failed to join the individual that granted the lien); *cf. Williams v. Hall*, 98 Ark. App. 90, 101 (2007) (voiding judicial sale of property, holding that the appellant "was not afforded due process before his interest in the property [at issue] was ordered to be sold" where the appellant was a one-half owner of the property subject to judicial sale and was not joined as a party).

### C.    No other party adequately represents RBC's interests.

Orgain asserts that RBC's "interest is adequately represented by Iovate." (Orgain's Response at ¶ 5.) That is incorrect and not a basis to deny intervention.

"The burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention." *Matson, Inc. v. Lamb & Assocs. Packaging, Inc.*, 328 Ark. 705, 709–10 (1997) (finding party opposing intervention failed to show putative intervenor's interest was "identical to or not significantly different from" an existing party's). "[I]t is not enough" for the nonmovant to rely on the fact that the intervenor and the existing party have "similar defenses" *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, 18 (2015).

Orgain has not satisfied its burden. Instead, Orgain summarily alleges that RBC's interests are adequately represented "based upon the affidavits, briefs and other pleadings filed by both Iovate and [RBC]." (Orgain's Response at ¶ 5.) Orgain provides no proof or evidence to demonstrate that Iovate and RBC have an identical interest. Nor could it.

The Arkansas Supreme Court has repeatedly held that parties seeking intervention are not adequately represented when their interests diverge from those of the existing parties. *See Matson*, 328 Ark. at 709-710 (finding a lack of adequate representation where the putative intervenor's interest was likely to diverge at a later stage of proceedings); *Cherokee Nation Bus., LLC v. Gulfside Casino P'ship*, 2021 Ark. 17, at 9 (2021) (holding that putative intervenor was not adequately represented where, notwithstanding that it shared a "broad interest" with existing parties, other interests specific to the intervenor risked being impaired by the outcome of the

litigation); *Bass*, 2015 Ark. 178, at 18 (finding it was error to deny intervention, because while the putative intervenor had "some similar interests" as the existing parties, their core interests in the litigation were distinct).

While it is true that Iovate and RBC both want to prevent garnishment by Orgain, that is not enough for Iovate to represent RBC's interests. Courts regularly find on motions to intervene that borrowers do not adequately represent the interests of their lenders. For example, in *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* the Eighth Circuit held that a lender that financed construction of a tribal casino was entitled to intervene as of right in a breach of contract action, because the lender's security agreements created a substantial interest in the casino, and the casino's revenues could be impaired by the litigation. 164 F.3d 1080, 1081–82 (8th Cir. 1999). The court further found that the borrower's litigation strategy might diverge from the lender's repayment interests, including because the borrower might have "reasons to agree to a settlement" that could disadvantage the lender. *Id.* at 1082.

Similarly, in *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 674–75 (D. Md. 2010), a federal district court allowed a lienholder to intervene in a borrower's suit against a car dealership where the dealership failed to pay off an existing lien on the borrower's trade-in vehicle. The court held that although the borrower's claims also concerned the lien payoff, her objective was to obtain damages for her own benefit, whereas the lienholder's distinct goal was satisfaction of its debt. *Id.* at 691–92. The court acknowledged that if the borrower won "she will receive the money for her own use" and that those funds would "not necessarily be used to pay off the

7

obligation" to the intervening lender, which had "an independent objective of seeing that its debt is satisfied." *Id.* at 691. On that basis, the court held the interests of the borrower-plaintiff and the intervenor-lender materially diverged, and therefore the court granted intervention as of right. *Id.* at 692.

Likewise, in *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 375 (N.D. Ohio 2021), a federal district court allowed a lender to intervene in a dispute between two financial advisors concerning ownership of client accounts. The plaintiff had acquired the client accounts with a loan from the putative intervenor, pledging the revenues from those accounts as collateral. *Id.* at 375–76. The lender argued that the defendant's failure to transfer the accounts impaired its interests in the collateral. *Id.* at 376. The court held that the lender had a substantial legal interest in the litigation because disposition of the dispute without the lender could impair the lender's ability to protect its interest in the collateral. *Id.* at 378–79. The court further found that the existing parties could not adequately represent lender's interests—the borrower-plaintiff's objectives focused on enforcing only its own contractual rights, while the lender's interests derived from its independent security interest and contractual protections. *Id.* at 379–80. The court explained that inadequacy was satisfied because the borrower was unlikely to raise or protect the lender's distinct contractual and security rights, and because the borrower's and lender's interests could become adverse if the collateral was impaired. *Id.* at 379.

The same reasoning was applied in *PPI/TimeZero, Inc. v. Zenith Firearms, Inc.*, 2024 WL 5360154, at *1 (W.D. Va. Dec. 5, 2024), where two creditors were

permitted to intervene as of right in a dispute over assets that were pledged to the creditors as collateral. The court found that those liens constituted a substantial interest that would be impaired if the case proceeded without the creditors, and further concluded that the defendant-borrower could not adequately represent the creditors' repayment interests because the defendant was not interested, nor capable, of enforcing the putative intervenors' interests. *Id*. at *3–*5.

These cases should be followed here. Although Iovate and RBC may both want to prevent Orgain from obtaining the funds held by Walmart, their interests are not completely overlapping. Iovate wants to make sure it receives the money; RBC wants to make sure its Collateral is not dissipated. This Court expressly acknowledged that it is entirely possible that "Iovate could take the money and not pay the bank." (Hr. Tr. 26:6-9). Moreover, as RBC made clear in its papers attached to the Motion, if the Court is not inclined to quash the writs, then RBC instead will ask for the funds to be released directly to it – an outcome Iovate did not request. *See* Brief in Support of Royal Bank of Canada's Objection and Motion to Quash Writ of Garnishment at 8–9.

Just because two parties ask for similar relief does not mean that their interests, motives, or positions are identical. As in the cases cited above, Iovate as borrower and RBC as Agent are sufficiently differently situated that RBC's intervention is required.

### D.    Permissive intervention is warranted in the alternative.

Even if the Court were to credit Orgain's spurious contention that Iovate adequately represents RBC's interests, this would not resolve the Motion. Adequate representation only limits intervention *as of right*. As RBC explained in its opening

brief, however, permissive intervention is an alternative basis for granting relief. Opening Br. at 8.

Without offering any supporting argument or authority, Orgain denies that this Court maintains discretion to grant permissive intervention. (Orgain's Response at ¶ 6, Motion at ¶ 6.) Orgain is wrong. This Court maintains discretion to grant permissive intervention so long as RBC's claim "and the main action have a question of law or fact in common," and intervention will not cause undue prejudice or delay. Ark. R. Civ. P. 24(b)(2).

The "main action" involves an effort by Orgain to enforce a judgment by garnishing accounts receivable owed from Walmart to Iovate. RBC has a senior secured interest in the Collateral, which includes the very same accounts receivable. The Court has expressly acknowledged that there is a common question for resolution: "how to release the money and to whom." Hearing Tr. 26:18–24. And because "that money will sit where it is" until the issue is resolved (*id.*), no undue delay or prejudice will result from RBC's intervention.

### III.  <u>CONCLUSION</u>

For the reasons above and in RBC's previous submissions, the Court should grant RBC's Motion to Intervene.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: jfair@wlj.com

By  <u>/s/ Jacob P. Fair</u>
    Jacob P. Fair (2015167)

MILBANK LLP
55 Hudson Yards
New York, NY 10001-2163
Phone: (212) 530-5000
Fax: (212) 530-5219
alees@milbank.com
mfrieda@milbank.com
Alexander B. Lees (admitted *pro hac vice*)
Michael T. Frieda (admitted *pro hac vice*)

*Attorneys for Royal Bank of Canada*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the Arkansas Judiciary Electronic Filing System, which shall send notification of such filing to the attorneys of record in this case.


/s/ Jacob P. Fair
Jacob P. Fair

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
CIVIL DIVISION

ORGAIN, INC.                                               PLAINTIFF


                v.                      No.  04CV-25-1607


IOVATE HEALTH SCIENCES
INTERNATIONAL,  INC.;
and IOVATE HEALTH SCIENCES
INTERNATIONAL U.S.A., INC.                                DEFENDANTS




HEARING UPON AN EMERGENCY MOTION TO QUASH WRIT
OF EXECUTION UPON WALMART
BEFORE THE HONORABLE XOLLIE DUNCAN
BENTONVILLE, ARKANSAS

August 25, 2025

**<u>APPEARANCES:</u>**

Mr. John B. Buzbee, of
NIXON, LIGHT & BUZBEE, PLLC
Attorneys at Law
10201 W. Markham, Suite 108
Little Rock, Arkansas                         for      Plaintiff, Orgain

Mr. Peter Shults, of
SHULTS LAW FIRM LLP
200 West Capitol Avenue, Suite 1600
Little Rock, AR
   and
Mr. Derek Farquhar, of
CHOATE, HALL & STEWART, LLP
2 International Pl                                        *Pro Hac Vice*
Boston, MA                                    for      Iovate Health Sciences, et al

Mr. Jacob Fair, of
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas
         and
Mr. Alexander B. Lees, of
Milbank LLP
 55 Hudson Yards                                         *Pro Hac Vice*
New York, NY                                  for      Royal Bank of Canada

I N D E X

PAGE

Opening Statement on behalf of Orgain by Mr. Buzbee....................................................    4

Motion on behalf of Iovate by Mr. Shults.........................................................................    5

Response to Motion on behalf of Orgain by Mr. Buzbee.................................................    16

Statement on behalf of Royal Bank of Canada by Mr. Fair............................................    23

Reply to Response on behalf of Iovate by Mr. Shults.....................................................    24

Ruling by The Court.........................................................................................................    25

Court Reporter's Certificate.............................................................................................    28

1        **THE COURT:** *Orgain versus Iovate, CV25-1607.*

2   Mr. Buzbee --

3        **MR. BUZBEE:** Yes, Your Honor.

4        **THE COURT:** Is that you, sir?

5        **MR. BUZBEE:** Yes, ma'am.

6        **THE COURT:** Are you ready?

7        **MR. BUZBEE:** Yes, ma'am.

8        **THE COURT:** Mr. Shults, for the Defendant.

9        **MR. SHULTS:** Yes, that's me.

10        **THE COURT:** Are you ready?

11        **MR. SHULTS:** Yes.

12        **THE COURT:** You've each got 30 minutes to

13   present your whatever it is you want to present.

14        Mr. Buzbee, you may begin.

15        **MR. BUZBEE:** Your Honor, I believe -- first of

16   all, Your Honor, John Buzbee on behalf of Orgain. As

17   this is the judgment debtor's Motion to Quash, I

18   believe they have the burden of proof.

19        **THE COURT:** Oh, I'm sorry.

20        **MR. BUZBEE:** But, as a preliminary matter, Your

21   Honor, the main issue here is going to involve an

22   intensive examination, by the Court, of Security

23   Agreements and actions taken by a bank, the

24   Intervenor, Royal Bank of Canada. And, so, to

25   preserve my record, and I have advised counsel for

4

1    the bank of this, I object to them offering argument

2    at today's hearing since it was only on the Motion

3    to Quash and they have not, technically, been

4    allowed to intervene yet. And, furthermore, I offer

5    an objection to counsel testifying regarding these

6    agreements and the actions taken by the bank,

7    without those things being in evidence and witnesses

8    here to testify.

9         **THE COURT:** Okay. All right. So, absolutely,

10   correct, Mr. Shults, it's your Motion for an

11   emergency Order, so come on up.

12        **MR. SHULTS:** Thank you, Your Honor.

13        **THE COURT:** What is it you wish to present

14   today?

15        **MR. SHULTS:** Your Honor, I wish to present

16   argument on our Emergency Motion to Quash Writs of

17   Garnishment issued in this case and directed to

18   Walmart, Inc.

19        And, again, I'm Peter Shults and I represent

20   the Defendants. I'll refer to the Defendants,

21   collectively, as "Iovate".

22        Iovate appreciates the Court's expedited

23   consideration of this emergency motion. It's an

24   emergency because the Writs of Garnishment, if

25   allowed to stand, threaten Iovate's very existence.

1    So, Iovate and Plaintiff, Orgain, Inc., sell

2    competing products. Late last year, Orgain obtained

3    a judgment against Iovate in California. Since

4    Orgain obtained that judgment, it has continuously

5    tried to enforce it by attaching property that it

6    knows is subject to prior perfected liens and,

7    therefore, not available to it. Nevertheless, Orgain

8    persists. And, it does so because it knows that the

9    issuance of Writs for these unobtainable assets will

10   wreak havoc on Iovate and will, potentially, force

11   it to cease as a going concern.

12       Orgain first attempted to attach accounts

13   receivable, from Walmart, in California.  The U.S.

14   District Court for the Central District of

15   California quashed that Writ on an emergency basis.

16   It did so because the Writ was improper and because,

17   as it held, Iovate would be irreparably harmed if

18   the improper Writ were allowed to remain in place.

19       Orgain also has tried to issue a Writ of

20   Garnishment in Washington State and has registered

21   the judgment in Delaware. But, it has, so far, been

22   unsuccessful in recovering assets in those

23   jurisdictions too. In Washington, for instance, when

24   presented with the same argument Iovate makes today,

25   Orgain withdrew the Writ.

6

1    So, Orgain has come to Arkansas, the

2    headquarters of one of Iovate's biggest and most

3    important customers, Walmart, and has issued a Writ

4    of Garnishment for all accounts receivable of

5    Walmart owing to Iovate.  As a result, Walmart has

6    suspended payment of accounts receivable to Iovate.

7    So far, in 2025, Walmart has paid Iovate, on

8    average, over $6 million dollars each month. The

9    outstanding accounts receivable from Walmart, as of

10   August 7th, is over $8.7 million dollars. As Iovate

11   and its lenders have explained, Iovate likely cannot

12   continue as a going concern without those accounts

13   receivable.

14   Iovate moved to quash that Writ of Garnishment

15   issued to Walmart. Because there were statutorily-

16   mandated defects in that Writ, on Friday, just a few

17   days ago, Orgain had a second Writ of Garnishment

18   issued to Walmart. So, now, there are two Writs of

19   Garnishment outstanding. One issued on June 27, and

20   the second issued on August 22. Our argument that

21   Orgain has issued these Writs for an improper

22   purpose applies, equally, to both Writs. Iovate,

23   therefore, requests that any ruling granting its

24   Motion to Quash apply to both outstanding Writs

25   directed to Walmart.

1      At the outset, multiple facts relevant to this

2  emergency motion are undisputed. First, it is

3  undisputed that Iovate's lenders, through their

4  agent, Royal Bank of Canada, have a prior perfected

5  lien on the accounts receivable Orgain is attempting

6  to garnish. Second, it is undisputed that Iovate's

7  lender's interest in the accounts receivable is

8  superior to any interest Orgain may have. Third, it

9  is undisputed that Iovate has defaulted on its

10  agreements with the lenders. And, fourth, it is

11  undisputed that Orgain has had knowledge of these

12  facts well before it had the Writs of Garnishment

13  issued.

14      Given these undisputed facts, Orgain is not

15  entitled to the property it's trying to garnishment.

16  As Arkansas Supreme Court held in *Gossett vs.*

17  *Merchants & Planters Bank,* cited at 235 Ark. 665,

18  funds that are subject to a superior lien cannot be

19  garnished by a judgment creditor. This begs the

20  question of why is Orgain spending all of this time

21  and effort to garnish property that it will not end

22  up with?

23      Orgain argues that it is attempting to get paid

24  on its judgment. But, it is undisputably not

25  entitled to the property it is attempting to

8

garnish. Moreover, Orgain has issued and served these Writs of Garnishment while the parties were involved in negotiations for Iovate to pay Orgain on the judgment. Issuing these Writs of Garnishment has made it less likely - not more likely - that Orgain will get paid on the judgment.

The reality is that Orgain is taking advantage of this process by issuing Writs of Garnishment so that Iovate's most important customers, including and especially Walmart, will stop paying accounts receivable owed to Iovate, which would drive Iovate out of business. In its brief and response to Iovate's Emergency Motion, Orgain does not even dispute this.  It just asserts that any harm to Iovate is its own fault.

Iovate acknowledges that Orgain has the right to enforce its judgment, but it does not have the right to issue futile Writs to gain negotiating leverage or an advantage over a competitor. As Arkansas Supreme Court explained in *Farm Service Coop, Inc. vs. Goshen Farms, Inc.,* cited at 267 Ark. 324, it is improper to issue Writs of Garnishment "*...t*o annoy and harass the debtor, and to tie up the wages that are the debtor's only means of support."  That is the situation that exists here.

And, in such a situation, Arkansas courts have held that courts have inherent authority to quash the improperly issued Writ.

Orgain has made two main arguments in response to Iovate's emergency motion. First, Orgain asserts that Iovate lacks standing to quash the Writs of Garnishment. But, as *Watkins vs. Hadamek,* cited at 48 Ark. App.78, explains "...any person may dispute the validity of a Writ of Garnishment including and, especially, a party to the case that has an interest in the disposition of the property attempting to be garnished." Moreover, this Court has inherent power to control and regulate its process including by granting a Motion to Quash an improperly issued Writ.

Second, Orgain argues that the accounts receivable are subject to garnishment because Iovate's lenders have not taken affirmative steps to enforce their interest. That is just not true. Iovate and the lenders, through their agent, Royal Bank of Canada, have explained in their Briefs, Affidavits, and Declarations the steps the lenders have taken to enforce their interest. The lenders declared that Iovate was in default of the Credit Agreement. Then they determined that entering into

10

1    a Forbearance Agreement with Iovate, rather than

2    liquidating their collateral, was the best way to

3    maximize their recovery.  Iovate is currently in

4    default of the Forbearance Agreement and the lenders

5    have reserved their rights to enforce their interest

6    under that agreement as well.  As Iovate explained

7    in its Brief, courts have recognized that declaring

8    a default and entering into a Forbearance Agreement

9    are affirmative enforcement actions.  A Forbearance

10   Agreement is a particular appropriate type of

11   enforcement action for maximizing recovery from an

12   ongoing business since it allows the business to

13   continue making money instead of being liquidated.

14        The lenders here have explicitly stated that

15   they believe that allowing Iovate to operate as a

16   going concern is the best path for the lenders to

17   maximize their recovery. And, they have also

18   explained that if Orgain succeeds in garnishing

19   Walmart's accounts receivable they may have to take

20   further steps to exercise remedies and protect their

21   collateral.

22        To support its argument that the lenders have

23   not taken sufficient steps to enforce their rights,

24   Orgain relies almost exclusively on the *Frierson vs.*

25   *United Farm Agency, Inc.* case.  But, in that case,

11

1   the lender did not declare the loans in default and

2   did not follow the procedures required by the Loan

3   Agreement to enforce its rights.  That is just

4   starkly different from what happened here. Where the

5   lenders did declare default and have taken other

6   steps, including through the Forbearance Agreement,

7   to enforce their rights. Lenders themselves have

8   explained to the court that they "...have spent the

9   past year actively managing the default situation in

10  which they found themselves in."

11      As the *Systems Soft Technoloiges LLC vs.*

12  *Artemis Technologies., Inc.* case held, when a

13  secured party declares a default and enters into a

14  Forbearance Agreement with the debtor, as occurred

15  here, the situation is "distinguishable from

16  *Frierson".*  The other cases Orgain briefly relies on

17  also do not apply here because, in those cases, the

18  secured parties took no action to declare default or

19  otherwise enforce their rights in stark contrast to

20  the lender's actions here. And, the cases cited in

21  both Iovate's and Royal Bank of Canada's Briefs

22  provide more support for the proposition that Orgain

23  cannot leap frog Royal Bank of Canada's senior

24  interest through a Writ of Garnishment.  Orgain's

25  argument, here, is essentially that a secured party

12

1    must liquidate the assets of a business to show that

2    it is enforcing its rights against a debtor in

3    default.  There is no support for that assertion and

4    it, also, does not make any business sense. As even

5    Orgain acknowledges, if the lenders enforce their

6    rights through liquidation, their recovery would be

7    limited.  And, if that happened, Orgain would not

8    recover anything either.

9        And, even under Orgain's theory in which the

10   lenders have not done enough to support their

11   rights, Orgain is not arguing that it, ultimately,

12   will be entitled to the accounts receivable.

13   Instead, Orgain is asserting that it should be

14   allowed to garnish the accounts receivable from

15   Walmart after which the lenders, or Royal Bank of

16   Canada's agent for the lenders, would need to

17   initiate their suit against Orgain to recapture

18   those accounts receivable.  The lenders and Royal

19   Bank of Canada have stated that they expect to

20   initiate such a suit, if Orgain is allowed to

21   garnish the accounts receivable from Walmart.

22   Allowing Orgain to garnish the accounts receivable

23   would, therefore, be a waste of time and resources,

24   both for the judiciary and for the parties involved.

25   Since the ultimate result is that Orgain will not be

13

1  able to use the accounts receivable to satisfy the

2  judgment, there's no good reason to allow the

3  process to continue playing out. The better course

4  of action is to stop that process now by quashing

5  the improperly issued Writs.

6  Iovate also moved to quash the June 27 Writ,

7  the first Writ of Garnishment, because Orgain did

8  not follow the correct statutory procedures pursuant

9  to Arkansas Code Section 16-66-114 in issuing the

10  Writ. In particular, Orgain did not have a Writ of

11  Execution returned before issuing its Writ of

12  Garnishment. Orgain acknowledged this mistake by

13  issuing a new Writ on August 22, but the issuance of

14  the August 22 Writ does not cure the defects of the

15  June 27 Writ and should not be applied

16  retroactively. So, if the Court here is inclined to

17  allow the August 22 Writ to stand, in other words,

18  if the Court does not agree with the arguments I've

19  made so far, regarding why both Writs should be

20  quashed, Iovate still seeks an Order quashing the

21  June 27 Writ for failure to follow the statutorily-

22  mandated procedures for the reasons explained in our

23  Briefs.

24  Walmart has withheld millions of dollars in

25  payments that otherwise would have been paid to

14

1   Iovate but for the defective June 27 Writ.

2       Iovate also requests that the Order quashing

3   the June 27 Writs state that Orgain cannot garnish

4   accounts receivable if Walmart became due before the

5   August 22 Writ was served on Walmart. In other

6   words, Iovate wants to insure that it can still

7   obtain accounts receivable owing to it, from

8   Walmart, before the issuance and service of the new

9   Writ.

10      For all of these reasons, as well as those in

11  Iovate's and Royal Bank of Canada's supporting

12  papers, Iovate respectfully requests that this Court

13  grant its emergency Motion and quash the Writs of

14  Garnishment issued in this case and directed to

15  Walmart, Inc.

16      I'm happy to take any questions from the Court

17  and I would also, if the Court allows, like to

18  reserve a few minutes of rebuttal time.

19      **THE COURT:** All right. One question: The money

20  from Walmart that has been levied on through the

21  garnishment, is it payable to the lender or is it

22  paid to Iovate?

23      **MR. SHULTS:** It's payable to Iovate.

24      **THE COURT:** Thank you, sir.

25      **MR. SHULTS:** Can I explain a little bit more?

15

1   It's payable to Iovate, but it goes into an account,

2   and this is in footnote four (4) of the lender's

3   first Brief and their Brief in Support of Motion to

4   Intervene.  It goes into an account --

5       **THE COURT:** I haven't even seen a Motion to

6   Intervene. It's not even come into my system yet.

7       **MR. SHULTS:** It was docketed about two weeks

8   ago, I think.

9       **THE COURT:** I don't think I've seen it.  Okay.

10      **MR. SHULTS:** Anyway, it goes into --

11      **THE COURT:** Okay. Now, I just now see it right

12   here.

13      **MR. SHULTS:** It goes into an account that the

14   lenders have a lien on and have access to and can

15   sweep. So, in other words, the lenders have control

16   of the account that the money goes into as well.

17      **THE COURT:** But it's payable to Iovate?

18      **MR. SHULTS:** It's payable to Iovate.

19      **THE COURT:** All right, Mr. Shults.  Mr. Buzbee,

20   I will hear from you.

21      **MR. BUZBEE:** Thank you, Your Honor.  Again, Your

22   Honor, I'm just going to -- for purposes of

23   protecting my argument, what you heard there was a

24   lot of testimony from an attorney about Security

25   Agreements, Forbearance Agreements and the actions

16

1    the intervening bank has taken. He said there was no

2    dispute of these things. Let me assure you, Your

3    Honor, there are factual disputes to those things.

4         This case is about whether Iovate, a judgment

5    debtor that has refused to pay a $12.5 million

6    dollar jury verdict for nearly two years, can shield

7    its assets from lawful collection. Nothing more,

8    nothing less.  Based on the Briefs that have been

9    filed in this case, it does appear to me, at least,

10   that all parties agree that the conclusions that

11   were reached by the Eight Circuit Court of Appeals

12   in *Frierson vs. United Farm Agency* are correct.  The

13   disagreement is simply whether the secured lender

14   has satisfied those obligations or not. Iovate

15   asserts that the bank declared a default and then it

16   took action, following that default, by entering

17   into a Forbearance Agreement where Iovate made

18   certain concessions.  They say that is the action

19   that the bank took that satisfies the *Frierson*

20   requirements. However, by their own admission,

21   Iovate has repeatedly breached that Forbearance

22   Agreement; specifically they say that the

23   Forbearance Agreements indicates that if Orgain

24   seeks to collect on this judgment, it automatically

25   terminates the Forbearance Agreement.  So, then, you

1    would presume they would take action because we

2    have, of course, sought to enforce our judgment, not

3    only in this court, but elsewhere.  Yet, they've

4    done nothing, they haven't accelerated the loans.

5    It's undisputed that even before this action, we

6    enforced it in California, in the court where this

7    judgment was entered, and by registering the

8    judgment elsewhere.

9        And, certainly, the bank has taken no action as

10   to the collateral, which is the property that's at

11   issue, the accounts receivable. The bank's refusal

12   to take action, under the Forbearance Agreement, is

13   a clear, unequivocal, and decisive active waiver.

14       The action the *Frierson* court references is in

15   regards to the collateral, not the obligor. The bank

16   has taken no action as to Iovate's property. They

17   merely entered into additional agreements with

18   Iovate, to the detriment of Iovate's other

19   creditors, including Orgain.  The *Frierson* court

20   made it clear that that's not -- it's not enough to

21   declare a default, as the bank alleges and Iovate

22   alleges that has happened here. The secured creditor

23   must also treat the debtor as if it was in default

24   and that's not what they're doing by continuing

25   business as usual, under either a Security Credit

1   Agreement or a Forbearance Agreement.

2       Under the bank and Iovate's theory, the bank

3   could continue to lend money to Iovate, thus further

4   impairing Orgain's judgment. This is exactly what

5   happened in the *Frierson* case; they are refusing to

6   exercise their rights, albeit under the Forbearance

7   Agreement rather than the original Security

8   Agreement, thereby maintaining Iovate as a going

9   concern, while simultaneously impairing the status

10  of Orgain and other creditors by preventing us from

11  exercising valid liens and efforts to collect our

12  judgment. Ultimately, they're, in essence, saying

13  that the bank has the power to unilaterally make

14  Orgain's judgment worthless while Iovate continues

15  business as usual.

16      They referenced *Gossett vs. Merchant &*

17  *Planter's Bank,* which is a 1962 case, and *Watkins v.*

18  *Hadamek,* which is a '94 case. Those are both

19  factually distinguishable from this case. In both of

20  those cases, the secured party had actual possession

21  of the collateral, the bank accounts.  And, the

22  obligor, judgment debtor, had no access to the

23  funds. In our case, a third party has possession of

24  the collateral and, most importantly, the secured

25  creditor seeks to allow the judgment debtor,

19

1    obligor, access and use of the collateral for its

2    own business operations, not merely to satisfy the

3    obligations of the secured party. They admit they

4    will continue to use it to continue business

5    operations, make payroll, presumably, including

6    higher ups of the business, and, it's safe to say,

7    pay lawyers and various other actions to avoid

8    paying this judgment; fighting it all across the

9    country.

10        They -- I want to shift gears, Your Honor, and

11   talk about this Writ of Execution and this technical

12   violation. In 17 years of practice, Your Honor, I

13   had to look up what a Writ of *fieri facias* was. It

14   is a red herring. They have no assets other than the

15   accounts receivable that are garnished in the State

16   of Arkansas. They know that, we know that.

17   Nevertheless, in an attempt, out of an abundance of

18   caution, and purely out of an abundance of caution,

19   to satisfy this technical requirement that they

20   claim we have  -- this hoop we have to jump through.

21   We got the Writ of Execution, it was, of course,

22   returned unsatisfied and we issued a new Writ. They

23   claim that that is not enough because Walmart was

24   withholding funds that we wouldn't have been able to

25   get. But, my understanding is that Walmart has been

20

1   withholding funds before we served, even, the first

2   Writ, because I received a call from Iovate's

3   counsel saying withhold funds. I said I haven't even

4   served the Writ yet. So, that factually doesn't seem

5   to gel.

6       The case law I cited is that the law doesn't

7   require people to do a vain and useless act. Issuing

8   that Writ of Execution is simply that, a vain and

9   useless act. But, I believe that has been cured by

10  the issuance of the second Writ, which presumably is

11  served today. It went out on Friday to the

12  registered agent in Little Rock, from Little Rock.

13      The Writs in California were not quashed due to

14  irreparable harm. They were quashed because the

15  California court said it lacked jurisdiction and

16  that the plaintiff had not complied with California

17  service rules.  It wasn't because of the irreparable

18  harm to Iovate. My calculations, based on the

19  pleadings filed in this case, is that the bank is

20  owed about $3 million dollars through October 3rd.

21  That's less than half of the $8.7 million that

22  Walmart is holding. One of the alternative arguments

23  I would offer to this Court, if it -- I don't think

24  the Court should quash the Writs, to be clear about

25  that. But, alternatively, there's enough money being

21

1    garnished that the Court can marshal these assets,

2    pursuant to the UCC, and allow whatever is not due

3    to the bank be paid to Orgain. But, nevertheless,

4    these are issues that would come out in an

5    evidentiary hearing, with testimony from witnesses.

6    I don't think we can get to those merits at a

7    Motions hearing.

8        In conclusion, Your Honor, Iovate has delayed

9    for nearly two years, after a unanimous jury

10    verdict. The statement that this judgment, this

11    $12.5 million dollar judgment is -- I believe they

12    said is last year, it was actually entered two years

13    ago.  It was amended to included an additional award

14    for attorney's fees after that. Nothing has

15    prevented Iovate, during this period of time, from

16    paying some amount, any amount, towards this final

17    judgment. But, it hasn't.

18        Now, Iovate and its bank, together, say,

19    "Sorry, Orgain, there's nothing for you here, but

20    we're going to continue to allow Iovate access to

21    this money to operate its business and pay other

22    creditors as it so chooses," despite its default

23    under every single contract and Forbearance

24    Agreement they have executed. That doesn't pass the

25    smell test.

1        Article Nine was revised in 2001 for many

2  reasons, but one of the changes was the definition

3  of obligations of good faith. That requires

4  reasonable commercial standards of fair dealing.

5  This standard should preclude a secured creditor,

6  like the bank, from freely disposing of collateral

7  without fairly dealing with Orgain's valid interest

8  and outcome of the disposition.

9        Your Honor, if I may have one moment to ask my

10  co-counsel a question?

11        **THE COURT:** You may.

12        **MR. BUZBEE:** Nothing further, Your Honor.

13        **THE COURT:** Anything else from you, Mr. Shults?

14        **MR. FAIR:** Your Honor, if I may --

15        **THE COURT:** What's your name?

16        **MR. FAIR:** Jake Fair, with Wright, Lindsey and

17  Jennings here on behalf of the Royal Bank of Canada

18  and I have Mr. Lees as well. And, if the Court is

19  inclined, I'd like to be heard. This is one -- we

20  filed a Motion to Intervene, it hasn't been granted,

21  but I believe that it's not going to be seriously

22  contested in this case and we have a property

23  interest in the outcome of this case and I think due

24  process would allow us to present argument to you,

25  because of lots of issues they are arguing about

23

1      also pertain to the Royal Bank of Canada --

2      **THE COURT:** I understand that and, at some

3      point, we will get to your Motion to Intervene, but

4      it's not before the Court today.

5      All right, anything else from you, Mr. Shults?

6      **MR. SHULTS:** Yes, Your Honor, if I may have just

7      a couple of minutes.

8      I just -- from Orgain's side, Your Honor, and

9      you heard them just now, they rely on one case,

10      really, *Frierson.* We don't think that *Frierson* is

11      applicable here, we said why in our Briefs here.

12      Here, the Royal Bank of Canada and lenders did

13      declare default, they have exercised rights, they

14      have decided to enter into a Forbearance Agreement

15      instead of liquidating all the assets of Iovate so

16      that they can maximize the recovery. But, even under

17      - and I just want to emphasize this - even under

18      Orgain's theory of *Frierson* applying, *Frierson*

19      doesn't stand for the proposition that Orgain is

20      going to end up with the accounts receivable we are

21      talking about here.  What *Frierson* says is that the

22      bank's security interest -- and it says **(reading)**

23      "*The bank's security interest in the funds will*

24      *continue and the bank can trace and recapture when*

25      *it chooses to declare a loan in default and*

24

1    *accelerate the debt."*

2         So, even under Orgain's theory, they're not

3    going to end up with the funds. It's just the

4    process will play out longer, the Royal Bank of

5    Canada will have to issue -- initiate a new suit,

6    which in its briefing it said it would do, if it

7    comes to this, to go trace and recapture.

8         And, so, it just seems like the process would

9    play out and we would be in the same place as here.

10   And, if the Court quashes the Writ now, we don't

11   have to go through that entire process.

12        I would also point the Court, again, to the

13   *Systems Soft* case, which explicitly distinguishes

14   *Frierson* and is on point with the facts of this

15   case.

16        And, I think, that, again, the facts are not in

17   dispute that the Court needs to decide this Motion.

18        One last thing, Mr. Buzbee said that Walmart

19   held payments before service of this Writ. They are

20   holding payments now, as I understand it, because of

21   the June 27 Writ and I guess the latest Writ has not

22   been served on them, but will be.

23        That's all I have, Your Honor.

24        **THE COURT:** All right. So, I don't find any

25   emergency from the claim that the Defendants'

1   existence is threatened by this Writ of Garnishment.

2   Absolutely unmoved by that. I don't think there is

3   an emergency. The issue is this: Walmart pays Iovate

4   money every month, evidently. Iovate, I suppose,

5   just like I could, take my paycheck and not pay my

6   car payment. Just like Iovate could take the money

7   and not pay the bank. It's up to them and if they

8   take the money and don't pay the bank, then the bank

9   can go after Iovate.

10       I don't find the fact that the bank has,

11   evidently, declared a default, but has chosen to

12   forbear as any evidence that they've actually taken

13   action. So, I'm denying the Motion to declare this

14   any kind of an emergency.

15       Orgain has a legitimate judgment against Iovate

16   that they are entitled to try to collect. They have,

17   as of now, issued the *fieri facias* and there are no

18   assets, which everybody knew, to begin with. So, I

19   do not see any reason to quash either of the

20   garnishments and that money will sit where it is

21   until, I guess, the bank is going to file a lawsuit

22   and I can figure out how to release the money and to

23   whom at the appropriate time, but today is not the

24   day. So, the Motion is denied.

25       Mr. Buzbee you will draw the Order?

26

1          **MR. BUZBEE:** Yes, ma'am.

2          **THE COURT:** All right. Court is in recess.

3    **(WHEREUPON, COURT STOOD IN RECESS FOR AUGUST 25, 2025, IN THE**

4    **CASE OF *ORGAIN versus IOVATE, CV25-1607.*)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

CERTIFICATE

I, CATHY GARDISSER, Official Court Reporter for the Circuit Court of the Nineteenth

Judicial District West of Arkansas, certify that I recorded the foregoing by stenomask recording

in the case of *Orgain vs. Iovate Health Sciences, et al,* Benton County Circuit No.

04CV-25-1607-5 on the 25th day of August, 2025, before the Honorable Xollie Duncan, Circuit

Judge thereof, at Bentonville, Arkansas; that said record has been reduced to a transcript by me,

and the foregoing pages constitute a true and correct transcript of the proceedings held to the

best of my ability.

WITNESS MY HAND AND SEAL, as such Court Reporter on this 3rd day of

September, 2025.

Cathy Gardisser, CCR #53
Official Court Reporter
19th Judicial District West
Fifth Division

