**EXHIBIT G-2**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2025-Aug-21  15:54:33
04CV-25-1607
C19WD05 : 7 Pages

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
CIVIL DIVISION

**ORGAIN, INC.**                                                                                         **PLAINTIFF**

vs.                                        **CASE NO. 04CV-25-1607**

**IOVATE HEALTH SCIENCES INTERNATIONAL, INC.** and
**IOVATE HEALTH SCIENCES INTERNATIONAL U.S.A., INC.**            **DEFENDANTS**

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' EMERGENCY MOTION
TO QUASH THE WRIT OF GARNISHMENT DIRECTED TO WALMART INC.**

Iovate Health Sciences International, Inc. and Iovate Health Sciences International U.S.A, Inc. (hereinafter, collectively, "Iovate"), have filed a Motion to Quash the Writ of Garnishment issued by Orgain, Inc. (hereinafter, "Orgain") and served on Walmart, Inc. (hereinafter, "Walmart"). Iovate claims that Orgain's Writ of Garnishment should be quashed due to an alleged technical violation of Ark. Code Ann. § 16-66-114 and due to a claimed prior security interest in accounts receivable held by Iovate's lender.

At the outset, Iovate makes it clear that it is acting in concert with its lender in pursing this action. Iovate claims that the Writ should be quashed because Iovate "relies on payments from Walmart to service its debt and operate its business." Iovate Memo at 3-4. Iovate further claims that without these funds, its ability to continue its business operations will be "significantly imputed." *Id.* at 4.

However, nowhere in its pleadings does Iovate note the size of payments made to its lenders or why all 8 million of the funds presently held by Walmart are needed to service Iovate's debt. Iovate also fails to explain why it cannot use revenue received from other retailers

1

to satisfy these obligations, nor does Iovate explain why the potential harm to its business operations trumps Orgain's rights to collect on its judgment.

Iovate also seeks to cast malicious intent on Orgain for seeking to collect on its $12,500,000.00 judgment, without explaining that this Judgment represents the finding of a unanimous jury that found Iovate used Orgain's protected trademarks and trade dress to mislead consumers—primarily at Walmart—into buying Iovate products instead of Orgain products. Iovate has fails to tell the Court that even though the jury found Iovate liable for these damages almost two years ago, Iovate has not yet paid anything to Orgain—claiming that to do so might cause Iovate harm.

a.  **Iovate lacks standing to quash the writ of garnishment by asserting claims belonging to its secured lender(s).**

Iovate has asserted that the writ of garnishment should be quashed because it will "harm [Iovate's] business relationships and operations." Iovate Memo at 4. Iovate further claims that, without the garnished funds, Iovate "will be unable to meet its contractual obligations to its secured lenders, thus jeopardizing its access to its operating credit line." *Id*. However, Iovate provides no documents proving these claims, nor does Iovate explain why potential harms to Iovate prevent Orgain from collecting on its judgment. More to the point, any harm to Iovate's business operations stem from Iovate's decision to misuse Orgain's intellectual property rights and such harms are thus the actions of Iovate, not Orgain.

Arkansas' garnishment statutes allow a judgment debtor to assert exemptions to the garnishment. Ark. Code Ann. 16-110-402(e). To the extent Iovate's claim is based upon preservation or protection of its secured lender's lien on its accounts receivable, that claim is not properly asserted by Iovate particularly, as in the instant case, when the secured lender is seeking to intervene in the action. And Iovate has not even informed the Court of the amount of money

2

paid to its lender on a monthly basis—or why that loan payment cannot be met from accounts receivable Iovate obtains from other retailers.

A person has no standing to complain about a garnishment when the object of the garnishment belongs to another. *See Joey Brown Interest, Inc. v. Merchants Nat'l Bank,* 284 Ark. 418, 683 S.W.2d 601 (1985); *see also Nash v. Estate of Swaffar,* 336 Ark. 235, 983 S.W.2d 942 (1999). To the extent that Iovate argues that the funds held by Walmart belong to its secured lender, Iovate has no standing to object to the writ of garnishment.

Iovate cites the Court to *Watkins v. Hadamek* for the proposition that Iovate has the right to challenge the writ of garnishment. 48 Ark. App. 78, 892 S.W.2d 515 (1994). However, the *Watkins* case is distinguishable from the case at bar. In the *Watkins* case the judgment debtor, Hadamek, had assigned 100% of the payments noting that "Ms. Hadamek testified that the assignment was still in effect; that she could not stop it; that the Bank uses the check to pay her debts at the Bank; *that it's 100 percent*; and that *the funds being held do not belong to her but belong to the Bank*." *Id* at p. 517 (emphasis added). Iovate makes no such claim here. To the contrary, Iovate explicitly acknowledges that a portion of the garnished funds will be used by it to "continue normal business operations" to "pay business expenses" and to "make payroll" and never articulate what portion of these funds are needed to pay its monthly obligations to the lenders—or why it cannot use other accounts receivable to gather these payments. Gooding Aff., Ex. 3 at 2; Iovate Memo at 4.

More to the point, if the Court were to conclude that Orgain's garnishment should be quashed because it might "jeopardize [Iovate's] access to its operating credit line" or negatively impact its "business relationship and goodwill" with Walmart, then nearly every writ of garnishment issued against a business entity in Arkansas would need to be quashed. It is

3

axiomatic that involuntary collection of a judgment may negatively impact a company's business relationships and overall financial stability. Such does not form the basis for quashing a validly issued writ of garnishment.

**b.     The accounts receivable are subject to garnishment because the secured lender has taken no affirmative steps to enforce its interest.**

It is important to note the interests of the relative parties to this action. Orgain's interest is simple, it seeks to collect its judgment by any and all legally available means. Iovate's interest is to continue its operations as normal and continue as an on-going concern without paying Orgain. Iovate's secured lender's interest is in securing repayment of its debt by continuing to receive payments from Iovate and ensuring that Iovate's business operations continue so that it can further pay down its debt obligations to it. Obviously, it is in the secured lender's interest to not immediately enforce its various security agreements with Iovate because doing so would limit its recoupment. As such, and according to the affidavits attached to Iovate's brief, after declaring a default, Iovate's secured lender nevertheless entered into a forbearance agreement. By forbearing its rights, the secured lender is allowing Iovate to use pledged collateral, here the accounts receivable, in a way that impairs Orgain's rights. Implicit in Article 9 is the obligation of secured parties to be proactive in exercising their remedies when defaults occur and to not freeze out other creditors by inaction.

In *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302 (8th Cir. 1989), the 8th Circuit Court of Appeals was faced with a similar situation when a bank moved to quash a writ of garnishment on funds held in a deposit account in which it held a perfected security interest. In its holding the Frierson Court noted as follows:

> "Most secured loans provide for numerous events which constitute default, many of which are technical in nature and are inserted in the loan documents to enable the lender to declare the note in default when even a relatively minor problem arises with the loan

4

>or the debtor. Thus, at any given time many secured loans are technically in default, but are never treated as such by secured creditors. In addition, a secured party will occasionally, as Merchants has done in this case, ignore a default which is more than just a technical default. ***If a secured creditor with a security interest over all the debtor's property is permitted to rely on a default, whether technical or not, to prevent another creditor from executing on the debtor's property, while treating the loan as not in default when dealing with the debtor and others, severe inequities would result.*** * * * Such an approach would be against both the spirit and the letter of the Uniform Commercial Code. Merchants cannot refuse to exercise its rights under the security agreement, thereby maintaining UFA as a going concern, while it impairs the status of other creditors by preventing them from exercising valid liens."

*Id* (emphasis added*)*.

Here, like *Frierson*, whether Iovate's secured lender has declared a default should not be dispositive when the secured lender is taking no action to otherwise enforce its interest and simply propping Iovate up, while simultaneously preventing Orgain from exercising its post-judgment remedies. See also *Shales v. Pipe-Liners, Ltd*., 2012 WL 4793499 (ND Ill Oct 9, 8 2012) (Holding that because the secured party took no action until after the unsecured creditor had obtained its judgment lien against the debtor, the judgment lien had priority over the secured party's interest).

Furthermore, according to the pleadings filed by Iovate, the secured lender may no longer be entitled to declare Iovate in default by virtue of the forbearance agreement. Importantly, neither Iovate nor the intervening secured lender have attached or provided any copies of the alleged security agreements, notice(s) of default from the secured lender to Iovate or the forbearance agreement. Iovate has also failed to provide the Court with the amount of money paid do the secured lender on a monthly basis, nor has Iovate explained why this amount cannot be paid from revenue received from other retailers. It is now too late to provide such documentation and Orgain specifically objects to the introduction or discussion of any such information at any hearing.

5

Similarly, describing the secured lender's lien as "presently executable" would only be accurate if Iovate has also defaulted under the forbearance agreement – a fact not asserted in any of the pleadings. Due to the existence of the forbearance agreement, Iovate's secured lender may not have a *present right* to the garnished funds, even if it has previously declared a default. See *S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*, 560 F. Supp. 2d 647, 650–51 (N.D. Ill. 2008) ("[B]ecause Premier did not enforce its U.C.C. and contractual rights, Premier does not have a *present right* to the funds nor a basis on which to object to their release.").

c.  **The writ of garnishment should not be quashed for failure to issue a writ of fieri facias.**

Iovate also claims that the writ of garnishment should be quashed because Orgain failed to first obtain a writ of fieri facias – i.e. a writ of execution – prior to issuing the writ of garnishment pursuant to Ark. Code Ann. § 16-66-114. This argument is without merit. As the Iovate knows, it owns no property in Arkansas, real or personal, and its only asset in the state is the right to receive payments from Walmart. Iovate demands that Orgain, nevertheless obtain a writ of execution and demand the sheriff levy upon these non-existent assets[1]. This is the very definition of a useless act. It is so well settled as to be axiomatic that the law does not require a vain and useless act. *See Dep't of Finance & Admin. v. Staton*, 325 Ark. 341, 942 S.W.2d 804 (1996); *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979) ("The law does not require a written request for consent, or a vain and useless act. Neither does it put form above substance.").

Iovate's demand for a useless act is the very definition of placing form over substance.

WHEREFORE, Orgain, Inc., prays that the Emergency Motion to Quash the Writ of

---

[1] The foregoing argument notwithstanding, Orgain has nevertheless obtained a writ of execution which will, of course, be returned unsatisfied and will obtain a writ of garnishment once again.

6

Garnishment Directed to Walmart Inc. be denied, that Iovate take nothing therefrom and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

NIXON, LIGHT & BUZBEE, PLLC
Attorneys at Law
10201 W. Markham, Suite 108
Little Rock, Arkansas 72205
501.376.3600 Telephone
501.225.6370 Facsimile
john@nixonandlight.com


/s/ John B. Buzbee
John B. Buzbee (Ark. Bar 08045)

ATTORNEY FOR ORGAIN, INC.

**CERTIFICATE OF SERVICE**

I, John Buzbee, hereby certify that a true and correct copy of the foregoing Response was filed on this 21st day of August, 2025, providing electronic notice to all parties of record.

/s/ John B. Buzbee
John B. Buzbee (Ark. Bar 08045)
