Steven W. Golden
Jeffrey M. Dine
Mary F. Caloway (admitted *pro hac vice*)
Victoria A. Newmark (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IOVATE HEALTH SCIENCES INTERNATIONAL INC.,[1] *et al.*<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-11958 (MG)<br><br>(Jointly Administered) |

**THIRD DECLARATION OF WESLEY PARRIS**
**IN SUPPORT OF MOTION FOR (I) RECOGNITION OF FOREIGN**
**MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE,**
**AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Wesley Parris, to the best of my information and belief, state as follows:

1. I am Chief Executive Officer of Iovate Health Sciences International Inc. ("Iovate International"), the authorized foreign representative of the chapter 15 debtors, Iovate International, Iovate Health Sciences U.S.A. Inc. ("Iovate USA"), and Northern Innovations Holding Corp. ("Northern Innovations" and together with Iovate International and Iovate USA, the "Debtors"), in respect of that certain insolvency proceeding (the "Canadian Proceeding") commenced pursuant to section 50.4 of Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c.

---

[1] The Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A. Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909).

B-3) (the "BIA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), and as such, I am fully familiar with the facts and circumstances set forth herein.

2. I submit this declaration in further support of the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 4] (the "Recognition Motion"). I am authorized by the Foreign Representative to submit this Declaration on its behalf in support of the Recognition Motion. Capitalized terms used but not defined herein are intended to have the meanings ascribed to them in the *Supplemental Brief in Support of Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code*, filed contemporaneously herewith.

3. In my role as the CEO of the Foreign Representative, I have become familiar with the history, day-to-day operations, assets, financial condition, business affairs, and books and records of each of the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents; (c) information supplied to me by other employees of the Debtors or their affiliates, the officers, directors, and employees of the Debtors, or other professionals retained by the Debtors; or (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. I am an individual over the age of 18 and, if I am called upon to testify, I will testify competently to the facts set forth herein.

4. The Iovate Group develops, markets, and sells performance nutrition and weight-management products under key brands (collectively, "Brands") including MuscleTech™, Hydroxycut™, Six Star®, and Purely Inspired®, which are distributed in over ninety countries.

The Iovate Group's products are sold in thousands of physical stores in Canada, the United States, and elsewhere. The Iovate Group's largest customer is Walmart Inc. and its affiliates (collectively, "Walmart"), which accounts for a significant amount of the Debtors' receipts.

5. The Debtors and Walmart are party to various agreements (collectively, the "Walmart Agreements"), including (a) that certain *Walmart Supplier Agreement*, effective as of July 23, 2025, between Walmart Inc. and Iovate USA; (b) that certain *Supplier Agreement*, effective as of October 15, 2018, between Wal-Mart Canada Corp. and Iovate International; and (c) that certain *Walmart Luminate Master Services Agreement*, effective as of July 1, 2023, between Walmart Inc. and Iovate USA.

6. The Debtors use the payments from Walmart (the "Walmart Receivable") to fund a significant portion of their day-to-day operations, including payroll and accounts payable. Payments from Walmart to the Debtors have averaged about USD $5.8 million per month (year to date) and, as of October 3, 2025, the outstanding Walmart Receivable is approximately USD $21.5 million, with approximately $14.7 million of the Walmart Receivable due and owing to the Debtors in accordance with Walmart's regular payment terms as of October 10, 2025. However, as a result of the Arkansas Proceeding (discussed in more detail below), Walmart has been withholding payments to Iovate since about August 4, 2025.

7. As a result of Walmart's continued retention of the Walmart Receivable, the Debtors face a dire situation that poses an imminent and existential threat not only to their business, but to their ability to maximize value through the Canadian Proceeding for the benefit of all stakeholders. Walmart is the Iovate Group's single largest customer, with a total Walmart Receivable of approximately $21.6 million as of October 1, 2025. Without immediate access to the Walmart Receivable, I and the Debtors' other management will be forced to take drastic

measures to preserve liquidity, including steps that could undermine the Iovate Group's operations and long-term prospects at a time when it is working toward effectuating a successful restructuring.

8.  Based on current forecasts, the Debtors will exhaust all available liquidity by mid-November 2025 if the Walmart Receivable is not remitted to the Debtors. Today, the uncertainty as to the timing of the receipt of the Walmart Receivable is already negatively affecting the Debtors' business, but without its receipt (and the continued receipt of ordinary course receivables from Walmart), the Debtors will be unable to continue funding operations by mid-November, risking an abrupt and disorderly collapse.

9.  Attached hereto as **Exhibit A** is a true and correct copy of the Walmart Letter.

10. Attached hereto as **Exhibit B** is a true and correct copy of the Original Credit Agreement.

11. Attached hereto as **Exhibit C** is a true and correct copy of the A&R Credit Agreement.

12. Attached hereto as **Exhibit D** is a true and correct copy of the Amending Agreement No. 10.

13. Attached hereto as **Exhibit E** is a true and correct copy of the *General Security Agreement* dated as of December 21, 2016.

14. Attached hereto as **Exhibit F** is a true and correct copy of the *Security Agreement* dated as of December 21, 2016.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: October 7, 2025
Oakville, Ontario
Canada

_____
WesParris (Oct 7, 2025 09:24:23 EDT)
Wesley Parris