## **<u>EXHIBIT E</u>**

*Execution Version*

## GENERAL SECURITY AGREEMENT

This General Security Agreement is made as of December 21, 2016.

**TO**:    Name:    HSBC BANK CANADA, as administrative agent
Address:    70 York Street, Toronto, ON M5J 1S9
Attention:    Agency Administrator
Facsimile:    647-788-2185
E-mail:    cacmbagency2@hsbc.ca

**RECITALS:**

A.    Xiwang Iovate Health Science International Inc. and Iovate Health Sciences International Inc., as borrowers, the financial institutions and other parties thereto from time to time, as lenders, HSBC Bank Canada, as administrative agent, and HSBC Bank Canada and The Toronto-Dominion Bank, as joint lead arrangers and joint bookrunners, are *inter alios* party to a credit agreement dated as of November 22, 2016 (as amended, supplemented, restated or replaced from time to time, the "**Credit Agreement**").

B.    To secure the payment and performance of its Secured Liabilities, each Debtor has agreed to grant to the Agent (for its own benefit and for the benefit of the other Secured Parties) the Security Interests with respect to its Collateral in accordance with the terms of this Agreement.

For good and valuable consideration, the receipt and adequacy of which are acknowledged by each Debtor, each Debtor severally (and not jointly or jointly and severally) agrees with and in favour of the Agent (for its own benefit and for the benefit of the other Secured Parties) as follows:

1.    **Definitions**.  In this Agreement capitalized terms used but not otherwise defined in this Agreement shall have the meanings given to them in the Credit Agreement, and the following terms have the following meanings:

"**Accessions**", "**Account**", "**Chattel Paper**", "**Certificated Security**", "**Consumer Goods**", "**Document of Title**", "**Equipment**", "**Futures Account**", "**Futures Contract**", "**Futures Intermediary**", "**Goods**", "**Instrument**", "**Intangible**", "**Inventory**", "**Investment Property**", "**Money**", "**Proceeds**", "**Securities Account**", "**Securities Intermediary**" "**Security**", "**Security Certificate**", "**Security Entitlement**", and "**Uncertificated Security**" have the meanings given to them in the PPSA.

"**Agent**" means HSBC Bank Canada, in its capacity as administrative agent for the lenders under the Credit Agreement, or any successor administrative agent appointed pursuant to the Credit Agreement.

"**Agreement**" means this agreement, including the exhibits and recitals to this agreement, the Supplements and the Schedules, as it or they may be amended, supplemented, restated or replaced from time to time, and the expressions "hereof", "herein", "hereto", "hereunder", "hereby" and similar expressions refer to this Agreement and not to any particular section or other portion of this Agreement.

"**Books and Records**" means, with respect to any Debtor, all books, records, files, papers, disks, documents and other repositories of data recording in any form or medium, evidencing or relating to the Personal Property of such Debtor which are at any time owned by such Debtor or to which such Debtor (or any Person on such Debtor's behalf) has access.

"**Collateral**" means, with respect to any Debtor, all of the present and future:

(a)     undertaking;

(b)     Personal Property (other than Excluded CFC Securities but including any Personal Property that may be described in any Schedule to this Agreement or any schedules, documents or listings that such Debtor may from time to time provide to the Agent in connection with this Agreement); and

(c)     real property (including any real property that may be described in any Schedule to this Agreement or any schedules, documents or listings that such Debtor may from time to time provide to the Agent in connection with this Agreement and including all fixtures, improvements, buildings and other structures placed, installed or erected from time to time on any such real property),

of such Debtor, including Books and Records, Contracts, Intellectual Property Rights and Permits, and including all such property in which such Debtor now or in the future has any right, title or interest whatsoever, whether owned, leased, licensed, possessed or otherwise held by such Debtor, and all Proceeds of any of the foregoing, wherever located.

"**Contracts**" means, with respect to any Debtor, all contracts and agreements to which such Debtor is at any time a party or pursuant to which such Debtor has at any time acquired rights, and includes (i) all rights of such Debtor to receive money due and to become due to it in connection with a contract or agreement, (ii) all rights of such Debtor to damages arising out of, or for breach or default with respect to, a contract or agreement, and (iii) all rights of such Debtor to perform and exercise all remedies in connection with a contract or agreement.

"**Control Person**" means a "control person", as such term is defined under applicable Canadian securities laws.

"**Credit Agreement**" has the meaning set out in the recitals hereto.

"**Debtors**" means the Persons delivering a signature page to this Agreement and any other Person which hereafter delivers a Supplement, and "**Debtor**" means any one of them.

"**Excluded CFC Securities**" means, at any time with respect to any Pledged CFC Issuer, those Issuer Voting Securities of such Pledged CFC Issuer representing in excess of 65% of the total combined voting power of each class of its Issuer Voting Securities at such time.

"**Event of Default**" means any "Event of Default" as defined in the Credit Agreement.

"**Exhibits**" means the exhibits to this Agreement.

*Iovate GSA*

"**Intellectual Property Rights**" means, with respect to any Debtor, all industrial and intellectual property rights of such Debtor or in which such Debtor has any right, title or interest, including copyrights, patents, inventions (whether or not patented), trade-marks, get-up and trade dress, industrial designs, integrated circuit topographies, plant breeders' rights, know how and trade secrets, registrations and applications for registration for any such industrial and intellectual property rights, and all Contracts related to any such industrial and intellectual property rights.

"**Issuer**" has the meaning given to that term in the STA.

"**Issuer Voting Securities**" means, at any time, Securities or Securities Entitlements of an Issuer entitled, at such time, to vote for the election of directors of such Issuer.

"**Organizational Documents**" means, with respect to any Person, such Person's articles or other charter documents, by-laws, unanimous shareholder agreement, partnership agreement or trust agreement, as applicable, and any and all other similar agreements, documents and instruments relative to such Person.

"**Permits**" means, with respect to any Debtor, all permits, licences, waivers, exemptions, consents, certificates, authorizations, approvals, franchises, rights-of-way, easements and entitlements that such Debtor has, requires or is required to have, to own, possess or operate any of its property or to operate and carry on any part of its business.

"**Personal Property**" means personal property and includes Accounts, Chattel Paper, Documents of Title, Equipment, Goods, Instruments, Intangibles, Inventory, Investment Property and Money.

"**Pledged Certificated Securities**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Certificated Security.

"**Pledged CFC Issuer**" means, at any time, any Pledged Issuer with respect to any Debtor which is at such time a CFC or a CFC Holdco of such Debtor.

"**Pledged Futures Contracts**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Futures Contract.

"**Pledged Futures Accounts**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Futures Account.

"**Pledged Futures Intermediary**" means, at any time, any Person which is at such time is a Futures Intermediary at which a Pledged Futures Account is maintained.

"**Pledged Futures Intermediary's Jurisdiction**" means, with respect to any Pledged Futures Intermediary, its jurisdiction as determined under section 7.1(4) of the PPSA.

"**Pledged Issuer**" means, with respect to any Debtor at any time, any Person which is an Issuer of, or with respect to, any Pledged Shares of such Debtor at such time.

- 4 -

"**Pledged Issuer's Jurisdiction**" means, with respect to any Pledged Issuer, its jurisdiction as determined under section 44 of the STA.

"**Pledged Securities**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Security.

"**Pledged Securities Accounts**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Securities Account.

"**Pledged Securities Intermediary**" means, at any time, any Person which is at such time a Securities Intermediary at which a Pledged Securities Account is maintained.

"**Pledged Securities Intermediary's Jurisdiction**" means, with respect to any Pledged Securities Intermediary, its jurisdiction as determined under section 45(2) of the STA.

"**Pledged Security Certificates**" means, with respect to any Debtor, any and all Security Certificates of such Debtor representing the Pledged Certificated Securities.

"**Pledged Security Entitlements**" means, with respect to any Debtor, any and all Collateral of such Debtor that is a Security Entitlement.

"**Pledged Shares**" means, with respect to any Debtor, all Pledged Securities and Pledged Security Entitlements of such Debtor.

"**Pledged Uncertificated Securities**" means, with respect to any Debtor, any and all Collateral of such Debtor that is an Uncertificated Security.

"**PPSA**" means the *Personal Property Security Act* of the Province referred to in the "Governing Law" section of this Agreement, as such legislation may be amended, renamed or replaced from time to time, and includes all regulations from time to time made under such legislation.

"**Receiver**" means an interim receiver, a receiver, a manager or a receiver and manager.

"**Reporting Pledged Issuer**" means a Pledged Issuer that is a "reporting issuer", as such term is defined under applicable Canadian securities laws.

"**Secured Liabilities**" means, with respect to any Debtor, all present and future indebtedness, liabilities and obligations of any and every kind, nature and description (whether direct or indirect, joint or several, absolute or contingent, matured or unmatured) of such Debtor to the Secured Parties (or any of them) under, in connection with or with respect to the Transaction Documents (including Secured Cash Management Obligations and Secured Hedge Obligations), and any unpaid balance thereof.  Notwithstanding the foregoing or anything else in any Transaction Document, Excluded Swap Obligations of a Guarantor shall not constitute Secured Liabilities for the purposes of this Agreement with respect to such Guarantor.

"**Secured Parties**" means, collectively, the Agent, the Secured Cash Management Provider, the Secured Hedge Counterparties, and the Lenders, and "**Secured Party**" means any one of them.

"**Schedules**" means the schedules to this Agreement.

"**Security Interests**" means, with respect to any Debtor, the Liens created by such Debtor in favour of the Agent (for its own benefit and for the benefit of the other Secured Parties) under this Agreement.

"**STA**" means the *Securities Transfer Act* of the Province referred to in the "Governing Law" section of this Agreement, as such legislation may be amended, renamed or replaced from time to time, and includes all regulations from time to time made under such legislation.

"**Subsidiary**" means, with respect to any Person (the "**parent**") at any date, any other Person (a) of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or, in the case of a partnership, more than 50% of the general partnership interests are, as of such date, owned, controlled or held, or (b) that is, as of such date, otherwise Controlled, by the parent or one or more Subsidiaries of the parent or by the parent and one or more Subsidiaries of the parent.

"**Supplement**" has the meaning given to that term in Section 35.

"**ULC**" means an Issuer that is an unlimited company, unlimited liability corporation or unlimited liability company.

"**ULC Laws**" means the *Companies Act* (Nova Scotia), the *Business Corporations Act* (Alberta), the *Business Corporations Act* (British Columbia) and any other present or future Laws governing ULCs.

"**ULC Shares**" means shares or other equity interests in the capital stock of a ULC.

"**Voting or Equity Securities**" means (a) any "security" (as defined under applicable Canadian securities laws), other than a bond, debenture, note or similar instrument representing indebtedness (whether secured or unsecured), of an issuer carrying a voting right either under all circumstances or under some circumstances that have occurred and are continuing or (b) a security of an issuer that carries a residual right to participate in the earnings of the issuer and, on liquidation or winding up of the issuer, in its assets.

2.      **Grant of Security Interests**.  As general and continuing collateral security for the due payment and performance of its Secured Liabilities, each Debtor pledges, mortgages, charges and assigns (by way of security) to the Agent (for its own benefit and for the benefit of the other Secured Parties), and grants to the Agent (for its own benefit and for the benefit of the other Secured Parties) a security interest in, the Collateral of such Debtor.

3.      **Limitations on Grant of Security Interests**.  If the grant of the Security Interests (i) with respect to any Contract, Intellectual Property Right or Permit under Section 2 would result in the termination or breach of or requires any consent not obtained under such Contract, Intellectual Property Right or Permit, or is otherwise prohibited or ineffective (whether by the terms thereof or under applicable Law), or (ii) with respect to any United States "intent-to-use" trademark applications for which the grant of the Security Interest would impair the validity or

*Iovate GSA*

enforceability of such "intent-to-use" trademark application, then such Contract, Intellectual Property Right, or Permit or trademark application shall not be subject to the Security Interests but shall be held in trust by the applicable Debtor for the benefit of the Agent (for its own benefit and for the benefit of the other Secured Parties) and, on the exercise by the Agent of any of its rights or remedies under this Agreement following an Event of Default shall be assigned by such Debtor as directed by the Agent; provided that: (a) the Security Interests of such Debtor shall attach to such Contract, Intellectual Property Right or Permit, or applicable portion thereof, immediately at such time as the condition causing such termination or breach is remedied, and (b) if a term in a Contract that prohibits or restricts the grant of the Security Interests in the whole of an Account or Chattel Paper forming part of the Collateral is unenforceable against the Agent under applicable Law, then the exclusion from the Security Interests set out above shall not apply to such Account or Chattel Paper. In addition, the Security Interests do not attach to Consumer Goods or extend to the last day of the term of any lease or agreement for lease of real property. Such last day shall be held by the applicable Debtor in trust for the Agent (for its own benefit and for the benefit of the other Secured Parties) and, on the exercise by the Agent of any of its rights or remedies under this Agreement following an Event of Default, shall be assigned by such Debtor as directed by the Agent. For greater certainty, no Intellectual Property Right in any trade-mark, get-up or trade dress is presently assigned to the Agent by sole virtue of the grant of the Security Interests contained in Section 2.

4.    **Attachment; No Obligation to Advance**.  Each Debtor confirms that value has been given by the Secured Parties to such Debtor, that such Debtor has rights in its Collateral existing at the date of this Agreement or the date of any Supplement, as applicable, and that such Debtor and the Agent have not agreed to postpone the time for attachment of the Security Interests to any of the Collateral of such Debtor.  The Security Interests with respect to the Collateral of each Debtor created by this Agreement shall have effect and be deemed to be effective whether or not the Secured Liabilities of such Debtor or any part thereof are owing or in existence before or after or upon the date of this Agreement or the date of any Supplement, as applicable.  Neither the execution and delivery of this Agreement or any Supplement nor the provision of any financial accommodation by any Secured Party shall oblige any Secured Party to make any financial accommodation or further financial accommodation available to any Debtor or any other Person.

5.    **Representations and Warranties**.  Each Debtor represents and warrants to the Agent (for its own benefit and for the benefit of the other Secured Parties) that, as of the date of this Agreement or the date of any Supplement, as applicable:

(a)    Debtor Information.    All of the information set out in the Schedules and Supplements, as applicable, with respect to such Debtor is accurate and complete.

(b)    Consents and Transfer Restrictions.

(i)    Except for any consent that has been obtained and is in full force and effect, no consent of any Person (including any counterparty with respect to any Contract, any account debtor with respect to any Account, or any Governmental Authority with respect to any Permit) is required, or is

- 7 -

purported to be required, for the execution, delivery, performance and enforcement of this Agreement (this representation being given without reference to the exclusions contained in Section 3).  For the purposes of complying with any transfer restrictions contained in the Organizational Documents of any Pledged Issuer, such Debtor hereby irrevocably consents to any transfer of such Debtor's Pledged Securities of such Pledged Issuer.

(ii)    (A) No order ceasing or suspending trading in, or prohibiting the transfer of the Pledged Shares has been issued and no proceedings for this purpose have been instituted, nor does such Debtor have any reason to believe that any such proceedings are pending, contemplated or threatened and (B) the Pledged Shares are not subject to any escrow or other agreement, arrangement, commitment or understanding, prohibiting the transfer of the Pledged Shares, including pursuant to applicable Canadian securities laws or the rules, regulations or policies of any marketplace on which the Pledged Shares are listed, posted or traded.

(c)    <u>No Consumer Goods</u>.  Such Debtor does not own any Consumer Goods which are material in value or which are material to the business, operations, property, condition or prospects (financial or otherwise) of such Debtor.

(d)    <u>Intellectual Property Rights</u>.  All registrations and applications for registration pertaining to any Intellectual Property Rights of owned by such Debtor, all other material Intellectual Property Rights of such Debtor, and the nature of such Debtor's right, title or interest therein, are described in the Schedules and Supplements as applicable, with respect to such Debtor.  Each material registration or application of Intellectual Property Rights owned by such Debtor is valid, subsisting, unexpired, enforceable, and has not been abandoned, and to such Debtor's knowledge, is valid and enforceable.  In the case of copyright works of such Debtor, such Debtor has obtained full and irrevocable waivers of all moral rights or similar rights pertaining to such works.  Except as set out in the Schedules and Supplements, as applicable, none of the Intellectual Property Rights owned by such Debtor have been licensed or franchised by such Debtor to any Person on an exclusive basis or, to the best of such Debtor's knowledge, infringed or otherwise misused by any Person in any material respect.  Except as set out in the Schedules and Supplements, as applicable, to such Debtor's knowledge, the exercise of any Intellectual Property Right of such Debtor, or any licensee or franchisee thereof, has not infringed or otherwise misused any intellectual property right of any other Person in any material respect, and such Debtor has not received and is not aware of any written claim of such infringement or other misuse that has not since been resolved.

(e)    <u>Partnerships, Limited Liability Companies</u>.  The terms of any interest in a partnership or limited liability company that is Collateral of such Debtor expressly provide that such interest is a "security" for the purposes of the STA.

*Iovate GSA*

(f)    <u>Due Authorization</u>.  The Pledged Securities of such Debtor have been duly authorized and validly issued and are fully paid and non-assessable.

(g)    <u>Warrants, Options, etc.</u>  There are no outstanding warrants, options or other rights to purchase, or other agreements outstanding with respect to, or property that is now or hereafter convertible into, or that requires the issuance or sale of, any Pledged Shares of such Debtor.

(h)    <u>No Required Disposition</u>.  There is no existing agreement, option, right or privilege capable of becoming an agreement or option pursuant to which such Debtor would be required to sell, redeem or otherwise dispose of any Pledged Shares of such Debtor or under which any Pledged Issuer has any obligation to issue any Securities of such Pledged Issuer to any Person.

(i)    <u>Securities Laws</u>.  Such Debtor is not a Control Person with respect to any Pledged Issuer and the Pledged Shares issued by a Reporting Pledged Issuer do not comprise Voting or Equity Securities of any class (or securities convertible into Voting or Equity Securities of any class) constituting ten per cent or more of the outstanding securities of that class.

6.    **Survival of Representations and Warranties**.  All representations and warranties made by each Debtor in this Agreement (a) are material, (b) shall be considered to have been relied on by the Secured Parties, and (c) shall survive the execution and delivery of this Agreement and any Supplement or any investigation made at any time by or on behalf of any Secured Party and any disposition or payment of the Secured Liabilities until the Lender Termination Date.

7.    **Covenants**.  Each Debtor covenants and agrees with the Agent (for its own benefit and for the benefit of the other Secured Parties) that:

(a)    <u>Further Documentation</u>.  Such Debtor shall from time to time, at the expense of such Debtor, promptly and duly authorize, execute and deliver such further instruments and documents, and take such further action, as the Agent may request, acting reasonably, for the purpose of obtaining or preserving the full benefits of, and the rights and powers granted by, this Agreement (including the filing of any financing statements or financing change statements under any applicable legislation with respect to the Security Interests).  Such Debtor acknowledges that this Agreement has been prepared based on the existing Laws in the Province referred to in the "Governing Law" section of this Agreement and that a change in such Laws, or the Laws of other jurisdictions, may require the execution and delivery of different forms of security documentation.  Accordingly, such Debtor agrees that the Agent shall have the right to require that this Agreement be amended, supplemented, restated or replaced, and that such Debtor shall immediately on request by the Agent authorize, execute and deliver any such amendment, supplement, restatement or replacement (i) to reflect any changes in such Laws, whether arising as a result of statutory amendments, court decisions or otherwise, (ii) to facilitate the creation and registration of appropriate

security in all appropriate jurisdictions, or (iii) if such Debtor merges or amalgamates with any other Person or enters into any corporate reorganization, in each case in order to confer on the Agent Liens similar to, and having the same effect as, the Security Interests.

(b)      <u>Maintenance of Records</u>.  Such Debtor shall keep and maintain accurate and complete records of the Collateral of such Debtor, including a record of all payments received and all credits granted with respect to the Accounts and Contracts of such Debtor.  At the written request of the Agent, such Debtor shall mark any Collateral of such Debtor specified by the Agent to evidence the existence of the Security Interests.

(c)      <u>Further Identification of Collateral</u>.  Such Debtor shall promptly furnish to the Agent such statements and schedules further identifying and describing the Collateral of such Debtor, and such other reports in connection with the Collateral of such Debtor, as the Agent may from time to time reasonably request, including an updated list of any motor vehicles or other "serial number" goods owned by such Debtor and classified as Equipment, including vehicle identification numbers, having a Fair Market Value exceeding U.S.$100,000.

(d)      <u>Instruments; Documents of Title; Chattel Paper</u>.  Promptly upon request from time to time by the Agent, such Debtor shall deliver to the Agent, endorsed and/or accompanied by such instruments of assignment and transfer in such form and substance as the Agent may reasonably request, any and all Instruments, Documents of Title and Chattel Paper of such Debtor having a Fair Market Value exceeding U.S. $1,000,000 included in or relating to the Collateral of such Debtor as the Agent may specify in its request.

(e)      <u>Pledged Certificated Securities</u>.  Such Debtor shall deliver to the Agent any and all Pledged Security Certificates of such Debtor and other materials as may be required from time to time to provide the Agent with control over all Pledged Certificated Securities of such Debtor in the manner provided under section 23 of the STA.  At the request of the Agent, such Debtor shall cause all Pledged Security Certificates of such Debtor to be registered in the name of the Agent or its nominee.

(f)      <u>Pledged Uncertificated Securities</u>.  Such Debtor shall deliver to the Agent any and all such documents, agreements and other materials as may be required from time to time to provide the Agent with control over all Pledged Uncertificated Securities of such Debtor in the manner provided under section 24 of the STA. For the purposes of section 27(1) of the STA, this Agreement shall constitute the Debtor's irrevocable consent to entry by a Pledged Issuer into an agreement of the kind referred to in clause 24(1)(b) of the STA.

(g)      <u>Pledged Security Entitlements</u>.  Such Debtor shall deliver to the Agent any and all such documents, agreements and other materials as may be required from time to

time to provide the Agent with control over all Pledged Security Entitlements of such Debtor in the manner provided under section 25 or 26 of the STA.

(h)     <u>Pledged Futures Contracts</u>.  Such Debtor shall deliver to the Agent any and all such documents, agreements and other materials as may be required from time to time to provide the Agent with control over all Pledged Futures Contracts of such Debtor in the manner provided under subsection 1(2) of the PPSA.

(i)     <u>Partnerships, Limited Liability Companies</u>.  Such Debtor shall ensure that the terms of any interest in a partnership or limited liability company that is Collateral of such Debtor shall expressly provide that such interest is a "security" for the purposes of the STA.

(j)     <u>Transfer Restrictions</u>.  If the constating documents of any Pledged Issuer (other than a ULC) restrict the transfer of the Securities of such Pledged Issuer, then such Debtor shall deliver to the Agent a certified copy of a resolution of the directors, shareholders, unitholders or partners of such Pledged Issuer, as applicable, consenting to the transfer(s) contemplated by this Agreement, including any prospective transfer of the Collateral of such Debtor by the Agent upon a realization on the Security Interests.

(k)     <u>Notices</u>.  Such Debtor shall advise the Agent promptly, in reasonable detail, of:

(i)     (upon knowledge by such Debtor thereof) any change to a Pledged Securities Intermediary's Jurisdiction, Pledged Issuer's Jurisdiction or Pledged Future Intermediary's Jurisdiction;

(ii)     any change in the location of the jurisdiction of incorporation or amalgamation, chief executive office or domicile of such Debtor;

(iii)     any change in the name of such Debtor;

(iv)     any additional jurisdiction in which such Debtor has tangible Personal Property;

(v)     any acquisition of any Intellectual Property Rights which are the subject of a registration or application with any governmental intellectual property or other governing body or registry, or which are material to such Debtor's business (it being understood that such notification shall be concurrent with the delivery of the next Compliance Certificate after the acquisition of such Intellectual Property);

(vi)     any acquisition of any Instrument, Document of Title or Chattel Paper having a Fair Market Value exceeding U.S. $1,000,000;

(vii)    the Debtor becoming (or if the Debtor could reasonably be determined to have become) a Control Person with respect to any Reporting Pledged Issuer;

(viii)    the issuance of any order ceasing or suspending trading in, or prohibiting the transfer of any Pledged Shares or the institution of proceedings for such purpose, or if such Debtor has any reason to believe that any such proceedings are pending, contemplated or threatened; or

(ix)    any occurrence of any event, claim or occurrence that could reasonably be expected to have a material adverse effect on the value of the Collateral of such Debtor or on the Security Interests.

Such Debtor shall not effect or permit any of the changes referred to in clauses (ii) through (viii) above unless all filings have been made and all other actions taken that are required in order for the Agent to continue at all times following such change to have a valid and perfected first priority Security Interest with respect to all of the Collateral of such Debtor.

8.    **Voting Rights**.  Unless an Event of Default has occurred and is continuing, each Debtor shall be entitled to exercise all voting power from time to time exercisable with respect to the Pledged Shares of such Debtor and give consents, waivers and ratifications with respect thereto; provided, however, that no vote shall be cast or consent, waiver or ratification given or action taken which would be, or would have a reasonable likelihood of being, prejudicial to the interests of the Secured Parties or which would have the effect of reducing the value of the Collateral of such Debtor as security for the Secured Liabilities of such Debtor or imposing any restriction on the transferability of any of the Collateral of such Debtor.  Unless an Event of Default has occurred and is continuing, the Agent shall, from time to time at the request and expense of the applicable Debtor, execute or cause to be executed, with respect to all Pledged Securities of such Debtor that are registered in the name of the Agent or its nominee, valid proxies appointing such Debtor as its (or its nominee's) proxy to attend, vote and act for and on behalf of the Agent or such nominee, as the case may be, at any and all meetings of the applicable Pledged Issuer's shareholders or debt holders, all Pledged Securities that are registered in the name of the Agent or such nominee, as the case may be, and to execute and deliver, consent to or approve or disapprove of or withhold consent to any resolutions in writing of shareholders or debt holders of the applicable Pledged Issuer for and on behalf of the Agent or such nominee, as the case may be.  Immediately upon the occurrence and during the continuance of any Event of Default, all such rights of the applicable Debtor to vote and give consents, waivers and ratifications shall cease and the Agent or its nominee shall be entitled to exercise all such voting rights and to give all such consents, waivers and ratifications.

9.    **Dividends; Interest**.  Unless an Event of Default has occurred and is continuing, each Debtor shall be entitled to receive any and all cash dividends, interest, principal payments and other forms of cash distribution on the Pledged Shares of such Debtor which it is otherwise entitled to receive, but any and all stock and/or liquidating dividends, distributions of property, returns of capital or other distributions made on or with respect to the Pledged Shares of such Debtor, whether resulting from a subdivision, combination or reclassification of the outstanding

- 12 -

capital stock of any Pledged Issuer of such Debtor or received in exchange for such Pledged Shares or any part thereof or as a result of any amalgamation, merger, consolidation, acquisition or other exchange of property to which any Pledged Issuer of such Debtor may be a party or otherwise, and any and all cash and other property received in exchange for any Pledged Shares of such Debtor shall be and become part of the Collateral of such Debtor subject to the Security Interests and with respect to any Security Certificates, if received by such Debtor, shall forthwith be delivered to the Agent or its nominee (accompanied, if appropriate, by proper instruments of assignment and/or stock powers of attorney executed by such Debtor in accordance with the Agent's instructions) to be held subject to the terms of this Agreement; and if any of the Pledged Security Certificates have been registered in the name of the Agent or its nominee, the Agent shall execute and deliver (or cause to be executed and delivered) to such Debtor all such dividend orders and other instruments as such Debtor may request for the purpose of enabling such Debtor to receive the dividends, distributions or other payments which such Debtor is authorized to receive and retain pursuant to this Section. If an Event of Default has occurred and is continuing, all rights of such Debtor pursuant to this Section shall cease and the Agent shall have the sole and exclusive right and authority to receive and retain the cash dividends, interest, principal payments and other forms of cash distribution which such Debtor would otherwise be authorized to retain pursuant to this Section. Any money and other property paid over to or received by the Agent pursuant to the provisions of this Section shall be retained by the Agent as additional Collateral hereunder and be applied in accordance with the provisions of this Agreement.

10.    **Rights on Event of Default**. If an Event of Default has occurred and is continuing, then and in every such case the Security Interests of each Debtor shall become enforceable and the Agent, in addition to any rights now or hereafter existing under applicable Law may, personally or by agent, at such time or times as the Agent in its discretion may determine, do any one or more of the following:

(a)    <u>Rights under PPSA, etc</u>. Exercise against any or all Debtors all of the rights and remedies granted to secured parties under the PPSA and any other applicable statute, or otherwise available to the Agent by contract, at law or in equity.

(b)    <u>Demand Possession</u>. Demand possession of any or all of the Collateral of any or all Debtors, in which event each such Debtor shall, at the expense of such Debtor, immediately cause the Collateral of such Debtor designated by the Agent to be assembled and made available and/or delivered to the Agent at any place designated by the Agent.

(c)    <u>Take Possession</u>. Enter on any premises where any Collateral of any or all Debtors is located and take possession of, disable or remove such Collateral.

(d)    <u>Deal with Collateral</u>. Hold, store and keep idle, or operate, lease or otherwise use or permit the use of, any or all of the Collateral of any or all Debtors for such time and on such terms as the Agent may determine, and demand, collect and retain all earnings and other sums due or to become due from any Person with respect to any of the Collateral of any or all Debtors.

*Iovate GSA*

(e)    <u>Carry on Business</u>.  Carry on, or concur in the carrying on of, any or all of the business or undertaking of any or all Debtors and enter on, occupy and use (without charge by such Debtor) any of the premises, buildings, plant and undertaking of, or occupied or used by, any or all Debtors.

(f)    <u>Enforce Collateral</u>.  Seize, collect, receive, enforce or otherwise deal with any Collateral of any or all Debtors in such manner, on such terms and conditions and at such times as the Agent deems advisable.

(g)    <u>Dispose of Collateral</u>.  Realize on any or all of the Collateral of any or all Debtors and sell, lease, assign, give options to purchase, or otherwise dispose of and deliver any or all of the Collateral of any or all Debtors (or contract to do any of the above), in one or more parcels at any public or private sale, at any exchange, broker's board or office of the Agent or elsewhere, with or without advertising or other formality, except as required by applicable Law, on such terms and conditions as the Agent may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery.

(h)    <u>Court-Approved Disposition of Collateral</u>.  Obtain from any court of competent jurisdiction an order for the sale or foreclosure of any or all of the Collateral of any or all Debtors.

(i)    <u>Purchase by Agent</u>.  At any public sale, and to the extent permitted by Law on any private sale, bid for and purchase any or all of the Collateral of any or all Debtors offered for sale and, upon compliance with the terms of such sale, hold, retain, sell or otherwise dispose of such Collateral without any further accountability to any Debtor or any other Person with respect to such holding, retention, sale or other disposition, except as required by Law.  In any such sale to the Agent, the Agent may, for the purpose of making payment for all or any part of the Collateral of any Debtor so purchased, use any claim for any or all of the Secured Liabilities of such Debtor then due and payable to it as a credit against the purchase price.

(j)    <u>Collect Accounts</u>.  Notify (whether in its own name or in the name of any Debtor) the account debtors under any Accounts of any or all Debtors of the assignment of such Accounts to the Agent and direct such account debtors to make payment of all amounts due or to become due to any or all Debtors with respect to such Accounts directly to the Agent and, upon such notification and at the expense of any such Debtor, enforce collection of any such Accounts, and adjust, settle or compromise the amount or payment of such Accounts, in such manner and to such extent as the Agent deems appropriate in the circumstances.

(k)    <u>Transfer of Collateral</u>.  Transfer any Collateral of any or all Debtors that is Pledged Shares into the name of the Agent or its nominee.

(l)    <u>Voting</u>.  Vote any or all of the Pledged Shares of any or all Debtors (whether or not transferred to the Agent or its nominee) and give or withhold all consents,

waivers and ratifications with respect thereto and otherwise act with respect thereto as though it were the outright owner thereof.

(m)   <u>Exercise Other Rights</u>.  Exercise any and all rights, privileges, entitlements and options pertaining to any Collateral of any or all Debtors that is Pledged Shares as if the Agent were the absolute owner of such Pledged Shares.

(n)   <u>Dealing with Contracts and Permits</u>.  Deal with any and all Contracts and Permits of any or all Debtors to the same extent as any such Debtor might (including the enforcement, realization, sale, assignment, transfer, and requirement for continued performance), all on such terms and conditions and at such time or times as may seem advisable to the Agent.

(o)   <u>Payment of Liabilities</u>.  Pay any liability secured by any Lien against any Collateral of any or all Debtors.  Each such Debtor shall immediately on demand reimburse the Agent for all such payments and, until paid, any such reimbursement obligation shall form part of the Secured Liabilities of such Debtor and shall be secured by the Security Interests of such Debtor.

(p)   <u>Borrow and Grant Liens</u>.  Borrow money for the maintenance, preservation or protection of any Collateral of any or all Debtors or for carrying on any of the business or undertaking of any or all Debtors and grant Liens on any Collateral of any or all Debtors (in priority to the Security Interests of any or all Debtors or otherwise) as security for the money so borrowed.  Each such Debtor shall immediately on demand reimburse the Agent for all such borrowings and, until paid, any such reimbursement obligations shall form part of the Secured Liabilities of such Debtor and shall be secured by the Security Interests of such Debtor.

(q)   <u>Appoint Receiver</u>.  Appoint by instrument in writing one or more Receivers of any or all Debtors or any or all of the Collateral of any or all Debtors with such rights, powers and authority (including any or all of the rights, powers and authority of the Agent under this Agreement) as may be provided for in the instrument of appointment or any supplemental instrument, and remove and replace any such Receiver from time to time.  To the extent permitted by applicable Law, any Receiver appointed by the Agent shall (for purposes relating to responsibility for the Receiver's acts or omissions) be considered to be the agent of any such Debtor and not of the Agent or any of the other Secured Parties.

(r)   <u>Court-Appointed Receiver</u>.  Obtain from any court of competent jurisdiction an order for the appointment of a Receiver of any or all Debtors or of any or all of the Collateral of any or all Debtors.

(s)   <u>Consultants</u>.  Require any or all Debtors to engage a consultant of the Agent's choice, or engage a consultant on its own behalf, such consultant to receive the full cooperation and support of each such Debtor and its agents and employees,

*Iovate GSA*

> including unrestricted access to the premises of each such Debtor and the Books and Records of each such Debtor; all reasonable fees and expenses of such consultant shall be for the account of each such Debtor and each such Debtor hereby authorizes any such consultant to report directly to the Agent and to disclose to the Agent any and all information obtained in the course of such consultant's employment.

The Agent may exercise any or all of the foregoing rights and remedies without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except as required by applicable Law) to or on any Debtor or any other Person, and each Debtor hereby waives each such demand, presentment, protest, advertisement and notice to the extent permitted by applicable Law.  None of the above rights or remedies shall be exclusive of or dependent on or merge in any other right or remedy, and one or more of such rights and remedies may be exercised independently or in combination from time to time.  Each Debtor acknowledges and agrees that any action taken by the Agent hereunder following the occurrence and during the continuance of an Event of Default shall not be rendered invalid or ineffective as a result of the curing of the Event of Default on which such action was based.

11.    **Realization Standards**.  To the extent that applicable Law imposes duties on the Agent to exercise remedies in a commercially reasonable manner and without prejudice to the ability of the Agent to dispose of the Collateral in any such manner, each Debtor acknowledges and agrees that it is not commercially unreasonable for the Agent to (or not to) (a) incur expenses reasonably deemed significant by the Agent to prepare the Collateral of such Debtor for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition, (b) fail to obtain third party consents for access to the Collateral of such Debtor to be disposed of, (c) fail to exercise collection remedies against account debtors or other Persons obligated on the Collateral of such Debtor or to remove Liens against the Collateral of such Debtor, (d) exercise collection remedies against account debtors and other Persons obligated on the Collateral of such Debtor directly or through the use of collection agencies and other collection specialists, (e) dispose of Collateral of such Debtor by way of public auction, public tender or private contract, with or without advertising and without any other formality, (f) contact other Persons, whether or not in the same business of such Debtor, for expressions of interest in acquiring all or any portion of the Collateral of such Debtor, (g) hire one or more professional auctioneers to assist in the disposition of the Collateral of such Debtor, whether or not such Collateral is of a specialized nature or an upset or reserve bid or price is established, (h) dispose of the Collateral of such Debtor by utilizing internet sites that provide for the auction of assets of the types included in such Collateral or that have the reasonable capacity of doing so, or that match buyers and sellers of assets, (i) dispose of assets in wholesale rather than retail markets, (j) disclaim disposition warranties, such as title, possession or quiet enjoyment, (k) purchase insurance or credit enhancements to insure the Agent against risks of loss, collection or disposition of the Collateral of such Debtor or to provide to the Agent a guaranteed return from the collection or disposition of such Collateral, (l) to the extent deemed appropriate by the Agent, obtain the services of other brokers, investment bankers, consultants and other professionals to assist the Agent in the collection or disposition of any of the Collateral of such Debtor, (m) dispose of Collateral of such Debtor in whole or in part, and (n) dispose of

*Iovate GSA*

Collateral of such Debtor to a customer of the Agent, and (o) establish an upset or reserve bid price with respect to Collateral of such Debtor.

12.    **Grant of Licence**.  For the purpose of enabling the Agent to exercise its rights and remedies under this Agreement when the Agent is entitled to exercise such rights and remedies, and at no other time and for no other purpose, each Debtor grants to the Agent an irrevocable (for clarity, only during the time the Agent is entitled to exercise its rights and remedies under this Agreement), non-exclusive licence (exercisable without payment of royalty or other compensation to such Debtor) to use, license or sublicence any or all of the Intellectual Property Rights of such Debtor, including in such licence reasonable access to all media in which any of the licensed items may be recorded or stored and to all computer programs used for the compilation or printout of the same, in each case, subject to any Grantor's security policies and obligations of confidentiality; provided, however, that nothing in this Section 12 shall require a Debtor to grant any license that is prohibited by any applicable Law, statute or regulation or is prohibited by, or constitutes a breach or default under or results in the termination of or gives rise to any right of acceleration, modification or cancellation under any contract, license, agreement, instrument or other document evidencing, giving rise to a right to use or therefore granted with respect to such property.  For any trade-marks, get up and trade dress and other business indicia, such licence includes an obligation on the part of the Agent to maintain the standards of quality maintained by such Debtor.  For copyright works, such licence shall include the benefit of any waivers of moral rights and similar rights available to such Debtor.

13.    **Securities Laws**.  The Agent is authorized, in connection with any offer or sale of any Pledged Shares of any Debtor, to comply with any limitation or restriction as it may be advised by counsel is necessary to comply with applicable Law, including compliance with procedures that may restrict the number of prospective bidders and purchasers, requiring that prospective bidders and purchasers have certain qualifications, and restricting prospective bidders and purchasers to Persons who will represent and agree that they are purchasing for their own account or investment and not with a view to the distribution or resale of such Securities.  In addition to and without limiting Section 11, each Debtor further agrees that compliance with any such limitation or restriction shall not result in a sale being considered or deemed not to have been made in a commercially reasonable manner, and the Agent shall not be liable or accountable to such Debtor for any discount allowed by reason of the fact that such Pledged Shares are sold in compliance with any such limitation or restriction.  If the Agent chooses to exercise its right to sell any or all Pledged Shares of any Debtor, upon written request, such Debtor shall cause each applicable Pledged Issuer to furnish to the Agent all such information as the Agent may request in order to determine the number of shares and other instruments included in the Collateral of such Debtor which may be sold by the Agent in exempt transactions under any Laws governing securities, and the rules and regulations of any applicable securities regulatory body thereunder, as the same are from time to time in effect.

14.    **ULC Shares**.  Each Debtor acknowledges that certain of the Collateral of such Debtor may now or in the future consist of ULC Shares, and that it is the intention of the Agent and each Debtor that neither the Agent nor any other Secured Party should under any circumstances prior to realization thereon be held to be a "member" or a "shareholder", as applicable, of a ULC for the purposes of any ULC Laws.  Therefore, notwithstanding any provisions to the contrary

*Iovate GSA*

contained in this Agreement, the Credit Agreement or any other Transaction Document, where a Debtor is the registered owner of ULC Shares which are Collateral of such Debtor, such Debtor shall remain the sole registered owner of such ULC Shares until such time as such ULC Shares are effectively transferred into the name of the Agent, any other Secured Party, or any other Person on the books and records of the applicable ULC. Accordingly, each Debtor shall be entitled to receive and retain for its own account any dividend on or other distribution, if any, with respect to such ULC Shares (except for any dividend or distribution comprised of Pledged Security Certificates of such Debtor, which shall be delivered to the Agent to hold hereunder) and shall have the right to vote such ULC Shares and to control the direction, management and policies of the applicable ULC to the same extent as such Debtor would if such ULC Shares were not pledged to the Agent pursuant hereto. Nothing in this Agreement, the Credit Agreement or any other Transaction Document is intended to, and nothing in this Agreement, the Credit Agreement or any other Transaction Document shall, constitute the Agent, any other Secured Party, or any other Person other than the applicable Debtor, a member or shareholder of a ULC for the purposes of any ULC Laws (whether listed or unlisted, registered or beneficial), until such time as notice is given to such Debtor and further steps are taken pursuant hereto or thereto so as to register the Agent, any other Secured Party, or such other Person, as specified in such notice, as the holder of the ULC Shares. To the extent any provision hereof would have the effect of constituting the Agent or any other Secured Party as a member or a shareholder, as applicable, of any ULC prior to such time, such provision shall be severed herefrom and shall be ineffective with respect to ULC Shares which are Collateral of any Debtor without otherwise invalidating or rendering unenforceable this Agreement or invalidating or rendering unenforceable such provision insofar as it relates to Collateral of any Debtor which is not ULC Shares. Except upon the exercise of rights of the Agent to sell, transfer or otherwise dispose of ULC Shares in accordance with this Agreement, each Debtor shall not cause or permit, or enable a Pledged Issuer that is a ULC to cause or permit, the Agent or any other Secured Party to: (a) be registered as a shareholder or member of such Pledged Issuer; (b) have any notation entered in their favour in the share register of such Pledged Issuer; (c) be held out as shareholders or members of such Pledged Issuer; (d) receive, directly or indirectly, any dividends, property or other distributions from such Pledged Issuer by reason of the Agent holding the Security Interests over the ULC Shares; or (e) act as a shareholder of such Pledged Issuer, or exercise any rights of a shareholder including the right to attend a meeting of shareholders of such Pledged Issuer or to vote its ULC Shares.

15. **Application of Proceeds**. All Proceeds of Collateral of any Debtor received by the Agent or a Receiver shall be applied as set out in the Credit Agreement.

16. **Continuing Liability of Debtor**. Each Debtor shall remain liable for any Secured Liabilities of such Debtor that are outstanding following realization of all or any part of the Collateral of such Debtor and the application of the Proceeds thereof.

17. **Agent's Appointment as Attorney-in-Fact**. Effective upon the occurrence and during the continuance of an Event of Default, each Debtor constitutes and appoints the Agent and any officer or agent of the Agent, with full power of substitution, as such Debtor's true and lawful attorney-in-fact with full power and authority in the place of such Debtor and in the name of such Debtor or in its own name, from time to time in the Agent's discretion, to take any and all

*Iovate GSA*

appropriate action and to execute any and all documents and instruments as, in the opinion of such attorney, may be necessary or desirable to accomplish the purposes of this Agreement. Without limiting the effect of this Section, each Debtor grants the Agent an irrevocable proxy to vote the Pledged Shares of such Debtor and to exercise all other rights, powers, privileges and remedies to which a holder thereof would be entitled (including giving or withholding written consents of shareholders, calling special meetings of shareholders and voting at such meetings), which proxy shall be effective, automatically and without the necessity of any action (including any transfer of any Pledged Shares of such Debtor on the books and records of a Pledged Issuer or Pledged Securities Intermediary, as applicable), upon the occurrence of an Event of Default. These powers are coupled with an interest and are irrevocable until the Lender Termination Date. Nothing in this Section affects the right of the Agent as secured party or any other Person on the Agent's behalf, to sign and file or deliver (as applicable) all such financing statements, financing change statements, notices, verification statements and other documents relating to the Collateral and this Agreement as the Agent or such other Person considers appropriate. Each Debtor hereby ratifies and confirms, and agrees to ratify and confirm, whatever lawful acts the Agent or any of the Agent's sub-agents, nominees or attorneys do or purport to do in exercise of the power of attorney granted to the Agent pursuant to this Section.

18. **Performance by Agent of Debtor's Obligations**. If any Debtor fails to perform or comply with any of the obligations of such Debtor under this Agreement, the Agent may, but need not, perform or otherwise cause the performance or compliance of such obligation, provided that such performance or compliance shall not constitute a waiver, remedy or satisfaction of such failure. The expenses of the Agent incurred in connection with any such performance or compliance shall be payable by such Debtor to the Agent immediately on demand, and until paid, any such expenses shall form part of the Secured Liabilities of such Debtor and shall be secured by the Security Interests of such Debtor.

19. **Severability**. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability and shall be severed from the balance of this Agreement, all without affecting the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

20. **Rights of Agent; Limitations on Agent's Obligations**.

   (a) <u>Limitations on Liability of Secured Parties</u>. Neither the Agent nor any other Secured Party shall be liable to any Debtor or any other Person for any failure or delay in exercising any of the rights of such Debtor under this Agreement (including any failure to take possession of, collect, sell, lease or otherwise dispose of any Collateral of such Debtor, or to preserve rights against prior parties). Neither the Agent, any other Secured Party, a Receiver, nor any agent thereof (including, in Alberta or British Columbia, any sheriff) is required to take, or shall have any liability for any failure to take or delay in taking, any steps necessary or advisable to preserve rights against other Persons under any Collateral of any Debtor in its possession. Neither the Agent, any other Secured Party, any Receiver, nor any agent thereof shall be liable for any, and each Debtor

shall bear the full risk of all, loss or damage to any and all of the Collateral of such Debtor (including any Collateral of such Debtor in the possession of the Agent, any other Secured Party, any Receiver, or any agent thereof) caused for any reason other than the gross negligence or wilful misconduct of the Agent, such other Secured Party, such Receiver or such agent thereof (or their respective officers, employees or representatives).

(b)    <u>Debtors Remain Liable under Accounts and Contracts</u>.    Notwithstanding any provision of this Agreement, each Debtor shall remain liable under each of the documents giving rise to the Accounts of such Debtor and under each of the Contracts of such Debtor to observe and perform all the conditions and obligations to be observed and performed by such Debtor thereunder, all in accordance with the terms of each such document and Contract.    Neither the Agent nor any other Secured Party shall have any obligation or liability under any Account of any Debtor (or any document giving rise thereto) or Contract of any Debtor by reason of or arising out of this Agreement or the receipt by the Agent of any payment relating to such Account or Contract pursuant hereto, and in particular (but without limitation), neither the Agent nor any other Secured Party shall be obligated in any manner to perform any of the obligations of any Debtor under or pursuant to any Account of such Debtor (or any document giving rise thereto) or under or pursuant to any Contract of such Debtor, to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any Account of such Debtor (or any document giving rise thereto) or under any Contract of such Debtor, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time.

(c)    <u>Collections on Accounts and Contracts</u>.    Each Debtor shall be authorized to, at any time that an Event of Default is not continuing, collect the Accounts of such Debtor and payments under the Contracts of such Debtor in the normal course of the business of such Debtor and for the purpose of carrying on the same.    If required by the Agent at any time, any payments of Accounts of such Debtor or under Contracts of such Debtor, when collected by such Debtor, shall be forthwith (and, in any event, within two Business Days) deposited by such Debtor in the exact form received, duly endorsed by such Debtor to the Agent if required, in a special collateral account maintained by the Agent, and until so deposited, will be held by such Debtor in trust for the Agent, segregated from the other funds of such Debtor.    All such amounts while held by the Agent (or by such Debtor in trust for the Agent) and all income with respect thereto shall continue to be collateral security for the Secured Liabilities and shall not constitute payment thereof until applied as hereinafter provided.    If an Event of Default has occurred and is continuing, the Agent may apply all or any part of the amounts on deposit with respect to such Debtor in said special collateral account on account of the Secured Liabilities of such Debtor in such order as the Agent may elect.    At the Agent's request, such Debtor shall deliver to the Agent any documents evidencing

and relating to the agreements and transactions which gave rise to the Accounts and the Contracts of such Debtor, including all original orders, invoices and shipping receipts.

(d)     <u>Use of Agents</u>.  The Agent may perform any of its rights or duties under this Agreement by or through agents and is entitled to retain counsel and to act in reliance on the advice of such counsel concerning all matters pertaining to its rights and duties under this Agreement.

21.     **Dealings by Agent**.  The Agent shall not be obliged to exhaust its recourse against any Debtor or any other Person or against any other security it may hold with respect to the Secured Liabilities of such Debtor or any part thereof before realizing upon or otherwise dealing with the Collateral of such Debtor in such manner as the Agent may consider desirable.  The Agent and the other Secured Parties may grant extensions of time and other indulgences, take and give up security, accept compositions, grant releases and discharges and otherwise deal with any Debtor and any other Person, and with any or all of the Collateral of any Debtor, and with other security and sureties, as they may see fit, all without prejudice to the Secured Liabilities of any Debtor or to the rights and remedies of the Agent under this Agreement.  The powers conferred on the Agent under this Agreement are solely to protect the interests of the Agent in the Collateral of each Debtor and shall not impose any duty upon the Agent to exercise any such powers.

22.     **Communication**.  Any notice or other communication required or permitted to be given under this Agreement shall be made in accordance with the terms of the Credit Agreement.

23.     **Release of Information**.  Each Debtor authorizes the Agent to provide a copy of this Agreement and such other information as may be requested of the Agent (i) to the extent necessary to enforce the Agent's rights, remedies and entitlements under this Agreement, (ii) to any assignee or prospective assignee of all or any part of its Secured Liabilities, and (iii) as required by applicable Law.

24.     **Expenses; Indemnity; Waiver**.

(a)     The Debtors shall pay (i) all reasonable and documented out-of-pocket expenses incurred by the Secured Parties, including the reasonable and documented fees, charges and disbursements of one primary counsel for the Secured Parties and all applicable taxes, in connection with the preparation and administration of this Agreement, (ii) all reasonable and documented out-of-pocket expenses incurred by the Secured Parties, including the reasonable and documented fees, charges and disbursements of one primary counsel for the Secured Parties and applicable taxes, in connection with any amendments, modifications or waivers of the provisions hereof, and (iii) all out-of-pocket expenses incurred by the Secured Parties, including the fees, charges and disbursements of any counsel for the Secured Parties and all applicable taxes, in connection with the assessment, enforcement or protection of their rights in connection with this Agreement, including its rights under this Section, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations with respect to the

Loans of such Debtor, in each case to the extent the Borrowers would be required to do so pursuant to Section 9.3(1) of the Credit Agreement.

(b)    Each Debtor shall indemnify, in to the extent the Borrowers would be required to do so pursuant to Section 9.3(1) of the Credit Agreement, the Secured Parties against, and hold the Secured Parties harmless from, any and all losses, claims, cost recovery actions, damages, expenses and liabilities of whatsoever nature or kind and all reasonable out-of-pocket expenses and all applicable taxes to which any Secured Party may become subject out of or in connection with (i) the execution or delivery of this Agreement and the performance by such Debtor of its obligations hereunder, (ii) any actual or prospective claim, litigation, investigation or proceeding relating to this Agreement or the Secured Liabilities of such Debtor, whether based on contract, tort or any other theory and regardless of whether any Secured Party is a party thereto, (iii) any other aspect of this Agreement, or (iv) the enforcement of the Secured Parties' rights hereunder and any related investigation, defence, preparation of defence, litigation and enquiries; provided that such indemnity shall not, as to any Secured Party, be available to the extent such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence (it being acknowledged that ordinary negligence does not necessarily constitute gross negligence) or wilful misconduct of or material breach of this Agreement by such Secured Party, (y) result from a claim brought by any Group Party for a material breach of such Secured Party's obligations under this Agreement if such Group Party has obtained a final and nonappealable judgment by a court of competent jurisdiction in such Group Party's favor on such claim or (z) result from a proceeding that does not involve an act or omission by a Borrower or any of its Affiliates and that is brought by a Secured Party (or a Related Party thereto) against any other Secured Party (or a Related Party thereto) (other than a proceeding that is brought against the Agent or an Arranger in its capacity as such).

(c)    No claim may be made by any Debtor, any Secured Party or any other Person against any party hereto on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, or in connection with, or as a result of, this Agreement, or any act, omission or event occurring in connection applicable law all such claims, whether or not accrued and whether or not known or suspected to exist in its favour.

(d)    All amounts due under this Section shall be payable to the Agent for the benefit of the applicable Secured Parties not later than 10 Business Days after written demand therefor.

(e)    The indemnifications set out in this Section shall survive the Lender Termination Date and the release or extinguishment of the Security Interests.

25.     **Release of Debtor**.  On the Lender Termination Date, each Debtor shall be released from the Liens created hereunder, and this Agreement and all obligations of the Debtors under this Agreement shall terminate, all without delivery of any instrument or performance of any act by any Person. Upon the written request of any Debtor given at any time on or after the Lender Termination Date, or as permitted pursuant to the Credit Agreement, the Agent shall at the expense of such Debtor, execute and deliver to such Debtor such releases and discharges as such Debtor may reasonably request.

26.     **Additional Security**.  This Agreement is in addition to, and not in substitution of, any and all other security previously or concurrently delivered by any Debtor or any other Person to any Secured Party, all of which other security shall remain in full force and effect.

27.     **Alteration or Waiver**.  None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by the Agent.  The Secured Parties shall not, by any act or delay, be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default or in any breach of any of the terms and conditions hereof.  No failure to exercise, nor any delay in exercising, on the part of any Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by any Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Agent would otherwise have on any future occasion.  Neither the taking of any judgment nor the exercise of any power of seizure or sale shall extinguish the liability of any Debtor to pay the Secured Liabilities of such Debtor, nor shall the same operate as a merger of any covenant contained in this Agreement or of any other liability, nor shall the acceptance of any payment or other security constitute or create any novation.

28.     **Environmental Indemnity**.  Each Debtor shall indemnify the Secured Parties and hold the Secured Parties harmless against and from all losses, costs, damages and expenses which any Secured Party may sustain, incur or be or become liable at any time whatsoever for by reason of or arising in connection with any Environmental Liability to the extent the Borrowers would be required to do so pursuant to Section 9.3(2) of the Credit Agreement.  This indemnification shall survive the Lender Termination Date.

29.     **Amalgamation**.  If any Debtor is a corporation, such Debtor acknowledges that if it amalgamates or merges with any other corporation or corporations, then (i) the Collateral and the Security Interests of such Debtor shall extend to and include all the property and assets of the amalgamated corporation and to any property or assets of the amalgamated corporation thereafter owned or acquired, (ii) the term "Debtor", where used in this Agreement, shall extend to and include the amalgamated corporation, and (iii) the term "Secured Liabilities", where used in this Agreement, shall extend to and include the Secured Liabilities of the amalgamated corporation.

30.     **Governing Law; Attornment**.  This Agreement shall be governed by and construed in accordance with the Laws of the Province of Ontario.  Without prejudice to the ability of the Agent to enforce this Agreement in any other proper jurisdiction, each Debtor irrevocably

*Iovate GSA*

submits and attorns to the non-exclusive jurisdiction of the courts of such province.  To the extent permitted by applicable Law, each Debtor irrevocably waives any objection (including any claim of inconvenient forum) that it may now or hereafter have to the venue of any legal proceeding arising out of or relating to this Agreement in the courts of such Province.

31.    **Interpretation**.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "or" is disjunctive; the word "and" is conjunctive.  The word "shall" is mandatory; the word "may" is permissive.  Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set out herein), (b) any reference herein to any statute or any section thereof shall, unless otherwise expressly stated, be deemed to be a reference to such statute or section as amended, restated or re-enacted from time to time, (c) any reference herein to any Person shall be construed to include such Person's successors and permitted assigns, (d) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, and (e) all references herein to Sections and Schedules shall be construed to refer to Sections and Schedules to, this Agreement, Section headings are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.  Any reference in this Agreement to a Permitted Lien is not intended to subordinate or postpone, and shall not be interpreted as subordinating or postponing, or as any agreement to subordinate or postpone, any Security Interest to any Permitted Lien.  In accordance with the *Property Law Act* (British Columbia), the doctrine of consolidation applies to this Agreement.

32.    **Paramountcy.**  In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Credit Agreement then, notwithstanding anything contained in this Agreement, the provisions contained in the Credit Agreement shall prevail to the extent of such conflict or inconsistency and the provisions of this Agreement shall be deemed to be amended to the extent necessary to eliminate such conflict or inconsistency, it being understood that the purpose of this Agreement is to add to, and not detract from, the rights granted to the Agent (for its own benefit and for the benefit of the other Secured Parties) under the Credit Agreement.  If any act or omission of any or all Debtors is expressly permitted under the Credit Agreement but is expressly prohibited under this Agreement, such act or omission shall be permitted.  If any act or omission is expressly prohibited under this Agreement, but the Credit Agreement does not expressly permit such act or omission, or if any act is expressly required to be performed under this Agreement but the Credit Agreement does not expressly relieve any or all Debtors from such performance, such circumstance shall not constitute a conflict or inconsistency between the applicable provisions of this Agreement and the provisions of the Credit Agreement.

33.    **Successors and Assigns**.  This Agreement shall enure to the benefit of, and be binding on, each Debtor and its successors and permitted assigns, and shall enure to the benefit of, and be binding on, the Agent and its successors and assigns.  No Debtor may assign this Agreement, or any of its rights or obligations under this Agreement.  The Agent may assign this Agreement and any of its rights and obligations hereunder to any Person that replaces it in its capacity as such. If any Debtor or the Agent is an individual, then the term "Debtor" or "Agent", as applicable, shall also include his or her heirs, administrators and executors.

34.    **Additional Debtors**.  Additional Persons may from time to time after the date of this Agreement become Debtors under this Agreement by executing and delivering to the Agent a supplemental agreement (together with all schedules thereto, a "**Supplement**") to this Agreement, in substantially the form attached hereto as Exhibit A.  Effective from and after the date of the execution and delivery by any Person to the Agent of a Supplement:

(a)    such Person shall be, and shall be deemed for all purposes to be, a Debtor under this Agreement with the same force and effect, and subject to the same agreements, representations, indemnities, liabilities, obligations and Security Interests, as if such Person had been an original signatory to this Agreement as a Debtor; and

(b)    all Collateral of such Person shall be subject to the Security Interest from such Person as security for the due payment and performance of the "Liabilities" of such Person in accordance with the provisions of this Agreement.

The execution and delivery of a Supplement by any additional Person shall not require the consent of any Debtor and all of the Secured Liabilities of each Debtor and the Security Interests granted thereby shall remain in full force and effect, notwithstanding the addition of any new Debtor to this Agreement.

35.    **Acknowledgment of Receipt/Waiver**.  Each Debtor acknowledges receipt of an executed copy of this Agreement and, to the extent permitted by applicable Law, waives the right to receive a copy of any financing statement or financing change statement registered in connection with this Agreement or any verification statement issued with respect to any such financing statement or financing change statement.

36.    **Enforcement by Agent**.  This Agreement and the Security Interests may be enforced only by the action of the Agent acting on behalf of the Secured Parties and no other Secured Party shall have any rights individually to enforce or seek to enforce this Agreement or any of the Security Interests, it being understood and agreed that such rights and remedies may be exercised by the Agent for the benefit of the Secured Parties upon the terms of this Agreement.

37.    **Electronic Signature and Counterparts**.  Delivery of an executed signature page to this Agreement by any Debtor by facsimile or other electronic form of transmission shall be as effective as delivery by such Debtor of a manually executed copy of this Agreement by such Debtor.  This Agreement may be executed in counterparts (and by different parties hereto on

*Iovate GSA*

different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.

*[signatures on the next following pages]*

S-1

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

> **XIWANG IOVATE HEALTH SCIENCE**
> **INTERNATIONAL INC.**
>
> By: _____
>
> Name:  Di Wang
> Title:   Director

S-2

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**IOVATE HEALTH SCIENCES
INTERNATIONAL INC.**

By: _____

Name:  Norm Vanderee

Title:    Chief Financial Officer

S-3

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

KERR INVESTMENT HOLDING CORP.

By: _____

Name:  Norm Vanderee

Title:   Chief Financial Officer

S-4

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**OLD IOVATE INTERNATIONAL INC.**

By: _____
Name:   Norm Vanderee
Title:    Chief Financial Officer

S-5

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**IOVATE HEALTH SCIENCES U.S.A. INC.**

By: _____

Name:  Norm Vanderee

Title:   Chief Financial Officer

S-6

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**OLD NORTHERN INNOVATIONS CORP.**

By: _____

Name:    Norm Vanderee
Title:    Chief Financial Officer

S-7

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**LAKESIDE INNOVATIONS HOLDING CORP.**

By: _____

Name:  Norm Vanderee

Title:  Chief Financial Officer

S-8

**IN WITNESS WHEREOF** the undersigned has caused this Agreement to be duly executed as of the date first written above.

**NORTHERN INNOVATIONS HOLDING CORP.**

By: _____

Name:  Norm Vanderee
Title:  Chief Financial Officer

**SCHEDULE A-1**

**DEBTOR INFORMATION**

Full legal name: Xiwang Iovate Health Science International Inc.

Prior names: None

Predecessor companies: None

Jurisdiction of incorporation or organization: British Columbia

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: None

Addresses of all leased real property: None

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: None

Description of all material Permits: None

Subsidiaries of the Debtor: Kerr Investment Holding Corp.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: None

Pledged Certificated Securities:

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| Kerr Investment Holding Corp. | 41 Class A Common Shares | 41% | CAC-3 | Toronto |
| Kerr Investment Holding Corp. | 39 Class B Common Shares | 39% | CBC-3 | Toronto |

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

*Iovate GSA*

A-1-2

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

*Iovate GSA*

## SCHEDULE A-2

## DEBTOR INFORMATION

Full legal name: Iovate Health Sciences International Inc.

Prior names: 2533667 Ontario Limited

Predecessor companies: None

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario, New York, New Jersey, Pennsylvania, Florida, Michigan, Massachusetts, California, Ohio, Texas, Nebraska, Wisconsin, Indiana, Arizona, Utah, Missouri, South Carolina, Montana, Georgia, United Kingdom[*], Australia[*].

Addresses of all owned real property: N/A

Addresses of all leased real property: 381 North Service Road West, Oakville, On L6M 0H4, 325 Annagem Blvd., Mississauga, On, L5T 3A7

Addresses of Inventory:  3880 Jeffrey Blvd., Blasdell, NY 14219 and 2475 George Urban Blvd., Depew, NY 14043, 325 Annagem Blvd., Mississauga, Ontario, L5T 3A7

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: None

Subsidiaries of the Debtor: Lakeside Innovations Holdings Corp.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: None

---

[*] Tangible Personal Property kept in this location is immaterial as of the date hereof.  Iovate Health Sciences International Inc. shall provide written notice to the Agent as soon as practicable shall the tangible Personal Property located at this location become material.

*Iovate GSA*

A-2-2

Pledged Certificated Securities:

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| Lakeside innovations Holdings Corp. | 1,001,001 common shares | 100% | C-4 | Toronto |
|  |  |  |  |  |

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

*Iovate GSA*

## SCHEDULE A-3

## DEBTOR INFORMATION

Full legal name: Kerr Investment Holding Corp.

Prior names: Iovate Health Sciences Group Inc.

Predecessor companies: None

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M 0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: N/A

Addresses of all leased real property: 381 North Service Road West, Oakville, Ontario, L6M 0H4

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: None

Subsidiaries of the Debtor:

- Iovate Health Sciences U.S.A. Inc.

- Old Iovate International Inc.

- Old Northern Innovations Corp.

- Infinity Insurance Co. Ltd.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: None

*Iovate GSA*

Pledged Certificated Securities:

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| Iovate Health Sciences U.S.A. Inc. | 100 common shares | 100% | 2 | Toronto |
| Old Iovate International Inc. | 2,000 class C common shares | 100% | C-2 | Toronto |
| Old Northern Innovations Corp. | 1,800 class C common shares | 100% | C-1 | Toronto |
| Infinity Insurance Co. Ltd. | 2,000,000 common shares | 100% | 1 | Toronto |

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

*Iovate GSA*

## SCHEDULE A-4

## DEBTOR INFORMATION

Full legal name: Old Iovate International Inc.

Prior names: Iovate Health Sciences International Inc.

Predecessor companies: Iovate Health Sciences Canada Inc., Iovate Health Sciences Inc., Iovate Health Sciences International Inc., Accelis Formulations Ltd., Iomedix Formulations (Canada) Ltd., Cytogenix Sports Laboratories Inc., Mtor Formulations Ltd., Pump Formulations Ltd., 1795577 Ontario Limited, Six Star Formulations Ltd., Cytogenix Laboratories Inc., Iovate Copyright Ltd., Iovate Health Sciences Research Inc., New Nitro Formulations Ltd., New Cell Formulations Ltd., IML Formulations Ltd., Everslim Formulations Ltd.

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M 0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: N/A

Addresses of all leased real property: N/A

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: N/A

Subsidiaries of the Debtor: Iovate Health Sciences International Inc., HDM Formulations Ltd. And HHC Formulations Ltd.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: None.

*Iovate GSA*

A-3-2

A-4-2

Pledged Certificated Securities:

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| Iovate Health Sciences International Inc. | 1, 010 common shares | 100% | C-3 | Toronto |
| HDM Formulations Ltd. | 100 class C common shares | 100% | C-4 | Toronto |
| HHC Formulations Ltd. | 100 C2 common shares | 100% | C2-3 | Toronto |

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

**SCHEDULE A–5**

**DEBTOR INFORMATION**

Full legal name: Iovate Health Sciences U.S.A. Inc.

Prior names: MtTSales (U.S.) Inc.

Predecessor companies: SN Warehousing, Inc., MT Sales (U.S.), Inc.

Jurisdiction of incorporation or organization: Delaware

Address of chief executive office: 381 North Service Road West, Oakville, ON L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: New York

Addresses of all owned real property: N/A

Addresses of all leased real property: 3880 Jeffrey Blvd., Blasdell, NY 14219 and 2475 George Urban Blvd., Depew, NY 14043

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: NIL

Subsidiaries of the Debtor: NIL

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: NIL

Pledged Certificated Securities: NIL

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

*Iovate GSA*

**SCHEDULE A-6**

**DEBTOR INFORMATION**

Full legal name: Old Northern Innovations Corp.

Prior names: N/A

Predecessor companies: Old Northern Innovations Corp., Northern Innovations Holding Corp

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, ON L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: N/A

Addresses of all leased real property: N/A

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: N/A

Subsidiaries of the Debtor: Northern Innovations Holdings Corp.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: None.

Pledged Certificated Securities:

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| Northern Innovations Holdings Corp. | 1,001,001 common shares | 100% | C-4 | Toronto |
|  |  |  |  |  |

*Iovate GSA*

A-3-2

A-6-2

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts:  NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

## SCHEDULE A-7

## DEBTOR INFORMATION

Full Legal Name: Lakeside Innovations Holding Corp.

Prior names: N/A

Predecessor companies: None

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: N/A

Addresses of all leased real property: 381 North Service Road West, Oakville, Ontario, L6M 0H4

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: NIL

Subsidiaries of the Debtor: NIL

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value exceeding U.S. $100,000,000: NIL

Pledged Certificated Securities: NIL

Pledged Securities Accounts: NIL

Pledged Uncertificated Securities: NIL

Pledged Futures Accounts: NIL

Registered trade-marks and applications for trademark registrations: NIL

Patents and patent applications: NIL

- Copyright registrations and applications for copyright registrations:

Copyright registrations and applications for copyright registrations:

United States:

| Title | Registration No. | Registration Date |
|-------|------------------|-------------------|
| ANATOR-P70 | TX0007372550 ** | 17-DEC-2009 |
| CELL-TECH HARDCORE | TX0007222693 ** | 04-MAY-2010 |
| CREAKIC | TX0007255484 ** | 11-JAN-2010 |
| HYDROXYCUT HARDCORE REVOLUTION | TX0007255603 ** | 11-JAN-2010 |
| NA NO X9 | TX0007222657 ** | 15-DEC-2009 |
| NANO VAPOR | TX0007255492 ** | 24-DEC-2009 |
| POWER OF LEUKIC | TX0007280920 ** | 11-JAN-2010 |
| APLODAN | TX0007351070 ** | 28-FEB-2007 |

Industrial designs/registered designs and applications for registered designs: NIL

Company also holds unregistered product formulations.

**SCHEDULE A-8**

## DEBTOR INFORMATION

Full Legal Name: Northern Innovations Holding Corp.

Prior names: 2508304 Ontario Limited

Predecessor companies:

Jurisdiction of incorporation or organization: Ontario

Address of chief executive office: 381 North Service Road West, Oakville, Ontario L6M0H4

Jurisdictions in which business is carried on or tangible Personal Property is kept: Ontario

Addresses of all owned real property: N/A

Addresses of all leased real property: 381 North Service Road West, Oakville, Ontario, L6M0H4
(Intangible Property - Trademarks)

Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard
motors for boats) having a Fair Market Value exceeding U.S. $100,000: N/A

Description of all material Permits: N/A

Subsidiaries of the Debtor:  None.

Instruments, Documents of Title and Chattel Paper of New Debtor having a Fair Market Value
exceeding U.S. $100,000,000: None

Pledged Certificated Securities: None.

Pledged Securities Accounts: None.

Pledged Uncertificated Securities: None.

Pledged Futures Accounts: None.

Registered trade-marks and applications for trademark registrations:

*Iovate GSA*

**Canada**

Registrations:

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| SLEEP MD | TMA699,050 ** | October 19, 2007 |
| COLD MD | TMA699,198 ** | October 23, 2007 |
| ZINCTECH | TMA566,664 ** | August 29, 2002 |
| OSMOTIC ACCELERATION TECHNOLOGY | TMA566,665 ** | August 29, 2002 |
| MESOPRO | TMA566,667 ** | August 29, 2002 |
| NITROXEN | TMA570,948 ** | November 20, 2002 |
| Supplements That Work! (SUPPLEMENTS THAT WORK! & Design) | TMA647,224 ** | September 1, 2005 |
| CHROMATECH | TMA649,849 ** | October 6, 2005 |
| PRO ISOLATE TECH | TMA667,365 ** | July 12, 2006 |
| ANATOR-P70 | TMA671,601 ** | August 30, 2006 |
| READY-TO-DRINK NUTRITION (READY-TO-DRINK NUTRITION & Design) | TMA676,227 ** | November 2, 2006 |
| EVERSLIM | TMA677,859 ** | November 29, 2006 |
| YOHIMBACORE | TMA678,726 ** | December 22, 2006 |
| Accelis (ACCELIS & Design) | TMA678,977 ** | January 8, 2007 |
| WEIGHT LOSS FOR MOMS | TMA679,011 ** | January 8, 2007 |
| hammerhead (HAMMERHEAD LABEL | TMA679,043 ** | January 9, 2007 |

** Immaterial Intellectual Property Rights.

*Iovate GSA*

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| Design) | | |
|  (SHARK & Design) | TMA679,045 ** | January 9, 2007 |
| HAMMERHEAD | TMA679,046 ** | January 9, 2007 |
|  (HAMMERHEAD ENERGY DRINK & SHARK Design) | TMA679,111 ** | January 9, 2007 |
| ANATOR | TMA686,323 ** | April 19, 2007 |
| RAPIDSLIM SX | TMA690,034 ** | June 18, 2007 |
| GLUCO-TECH | TMA700,110 ** | November 2, 2007 |
| METABO-TECH | TMA700,111 ** | November 2, 2007 |
| ACETA-TECH | TMA700,115 ** | November 2, 2007 |
| LIPOIC-TECH | TMA700,151 ** | November 5, 2007 |
|  (ADVANCED MUSCLEBUILDING CREATINE FORMULA & Design) | TMA700,366 ** | November 6, 2007 |
| PUMP-TECH | TMA701,207 ** | November 21, 2007 |
| ALPHA-GAIN | TMA703,720 ** | December 21, 2007 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (SCIENTIFICALLY FORMULATED & Design) | TMA703,861 ** | December 31, 2007 |
| TRIMSOURCE | TMA705,647 ** | January 24, 2008 |
| SOURCECAL | TMA706,658 ** | February 6, 2008 |
| WHEY-TECH | TMA707,767 ** | February 19, 2008 |
| INSULODRIVE | TMA708,885 ** | March 4, 2008 |
| RTS | TMA709,747 ** | March 18, 2008 |
|  (CEE & Design) | TMA720,478 ** | August 7, 2008 |
|  (N4 DELIVERY SYSTEM & Design) | TMA720,941 ** | August 14, 2008 |
| CEE-PRO | TMA720,923 ** | August 14, 2008 |
|  (LOGO IN BLACK & WHITE Design) | TMA724,027 ** | September 18, 2008 |
| LASIDRATE | TMA725,366 ** | October 6, 2008 |
| LEUCOAT | TMA726,268 ** | October 16, 2008 |
| PYROXYCLENE | TMA727,687 ** | November 3, 2008 |
| OSMODROL | TMA728,186 ** | November 10, 2008 |
| RL-EX6 | TMA728,468 ** | November 14, 2008 |
| GENETOR | TMA728,469 ** | November 14, 2008 |
| PHENYLGENE | TMA728,472 ** | November 14,2 008 |
| LEUCIGENE | TMA728,473 ** | November 14, 2008 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| RL-FIRE6 | TMA728,474 ** | November 14, 2008 |
| <br>(MUSCLEBUILDING STACK & Design) | TMA728,755 ** | November 18, 2008 |
| RAPIDLEAN | TMA728,757 ** | November 18, 2008 |
| VASOPRIME | TMA732,337 ** | January 14, 2009 |
| AminoFuse | TMA737,145 ** | March 27, 2009 |
| <br>(FORCES MASSIVE MUSCLE GROWTH FROM DAY ONE! … & Design) | TMA739,345 ** | May 1, 2009 |
| CYLARIS | TMA740,168 ** | May 14, 2009 |
| MesoDrive | TMA742,608 ** | June 25, 2009 |
| THE WORLD'S MOST ANABOLIC EVENT | TMA744,551 ** | August 4, 2009 |
| WORLD'S STRONGEST VASO ANABOLIC PSYCHOACTIVE EXPERIENCE | TMA745,646 ** | August 18, 2009 |
| APLODAN | TMA747,158 ** | September 9, 2009 |
| INTRAVOL | TMA753,060 ** | November 13, 2009 |
| INFERNOGEN | TMA754, 365 ** | December 2, 2009 |
| N. O. FURY | TMA766,445 ** | May 11, 2010 |
| CELLULAR OVERFULL | TMA766,463 ** | May 11, 2010 |
| GROWTH STREAK | TMA766,464 ** | May 11, 2010 |
| VASOFORCE | TMA766,465 ** | May 11, 2010 |
| ENERGY STRIKE | TMA766,467 ** | May 11, 2010 |

A-8-6

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| LIQUI-PULSE | TMA767,842 ** | May 26, 2010 |
| BLAZING FOCUS | TMA773,772 ** | August 5, 2010 |
| HARDCORE PRO SERIES | TMA795,903 ** | April 18, 2011 |
| HYDROXYSTIM | TMA867,759 ** | December 19, 2013 |
| LEAN BALANCE | TMA684,138 ** | March 20, 2007 |
| (HEALTHY WEIGHT LOSS FOR A RADIANT YOU & Design) | TMA684,521 ** | March 23, 2007 |
| PROGAIN | TMA707,082 ** | February 11, 1008 |
| RUSH | TMA709,861 ** | March 18, 2008 |
| ANDRENALIZE | TMA709,863 ** | March 18, 2008 |
| SMARTBURN | TMA716,441 ** | June 12, 2008 |
| YOU DEFINE SUCCESS, WE DEFINE PERFORMANCE | TMA721,821 ** | August 22, 2008 |
| TARAXATONE | TMA809,088 ** | October 14, 2011 |
| NANO-DIFFUSE | TMA747,545 ** | September 14, 2009 |
| ARSON | TMA713,224 ** | April 30, 2008 |
| ANABOLIC O.D. | TMA737,144 ** | March 27, 2009 |
| FREAK FIX | TMA739,585 ** | May 6, 2009 |
| GROWTH INTERVENTION | TMA739,586 ** | May 6, 2009 |
| STRENGTH FIX | TMA739,587 ** | May 6, 2009 |
| ANABOLIC OPTIMAL DOSE (O.D.) | TMA741,756 ** | June 9, 2009 |
| HEAT INJECTED SERUM CAPSULES | TMA742,786 ** | June 29, 2009 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (MAP & Design) | TMA746,731 ** | September 1, 2009 |
| ALTERED STATE | TMA763,807 ** | April 9, 2010 |
| MUSCLE SYN | TMA766,169 ** | May 7, 2010 |
| INTERNAL COMBUSTION | TMA766,460 ** | May 11, 2010 |
| N.O. PLASMACORE | TMA782,285 ** | November 12, 2010 |
| CREADEX | TMA782,292 ** | November 12, 2010 |
| ALLERGY MD | TMA749,666 ** | October 7, 2009 |
| NANOSLIM | TMA727,055 ** | October 27, 2008 |
| HOODIA SURE | TMA729,756 ** | November 28, 2008 |
| HOODIA SURE RAPID GELS | TMA729,759 ** | November 28, 2008 |
| GERM MD | TMA735,893 ** | March 6, 2009 |
| TRIMFORM | TMA737,559 ** | April 3, 2009 |
| SLEEP FAST | TMA758,479 ** | February 1, 2010 |
| JOINT MD | TMA719,342 ** | March 6, 2009 |
| ACETABOLAN III | TMA686,098 ** | April 17, 2007 |
| NORTESTEN | TMA566,666 ** | August 29, 2002 |
| DIET-TECH | TMA651,469 ** | October 26, 2005 |
| WAVE PULSE TECHNOLOGY | TMA742,324 ** | June 19, 2009 |
| STIMUGROW | TMA703,718 ** | December 21, 2007 |
| AKG-EXTEND | TMA703,719 ** | December 21, 2007 |
| VASODILASE | TMA703,860 ** | December 31, 2007 |
| NITROXY3 | TMA704,171 ** | January 8, 2008 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| naNOX9 | TMA744,566 | August 4, 2009 |
| MUSCLETECH | TMA498,201 | July 31, 1998 |
| HYDROXYCUT | TMA498,206 | July 31, 1998 |
| HYDROXAGEN | TMA498,208 ** | July 31, 1998 |
| MESO-TECH | TMA566,662 ** | August 29, 2002 |
| CELL-TECH | TMA571,901 | December 6, 2002 |
| NYTRO-ISO WHEY | TMA576,735 ** | February 28, 2003 |
| MUSCLETECH (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | TMA577,989 | March 24, 2003 |
| NYTROCELL | TMA580,441 ** | May 1, 2003 |
| NYTRO TECH NUTRITION (NYTRO TECH NURITION & Design) | TMA584,581 ** | July 7, 2003 |
| NYTRO-LEAN | TMA590,370 ** | September 19, 2003 |
| HYDROXYTEA | TMA605,275 ** | March 16, 2004 |
| MUSCLETECH.COM | TMA662,358 ** | April 7, 2006 |
| MASS-TECH | TMA666,677 | June 28, 2006 |
| LEUKIC | TMA679,006 ** | January 8, 2007 |
| ACCELIS | TMA679,007 ** | January 8, 2007 |
| GAKIC.COM | TMA688,136 ** | May 24, 2007 |
| SIX STAR (SIX STAR & Design 2) | TMA696,127 ** | September 11, 2007 |
| HYDROXAGEN PLUS | TMA700,114 ** | November 2, 2007 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (SIX STAR & Design) | TMA709,748 ** | March 18, 2008 |
| GAKIC | TMA720,925 | August 14, 2008 |
| HYDROXYCUT HARDCORE | TMA724,577 | September 25, 2008 |
|  (HYDROXYCUT 24 & CLOCK Design) | TMA724,633 ** | September 26, 2008 |
| CREAKIC | TMA726,269 ** | October 16, 2008 |
| NANOVAPOR | TMA728,175 | November 10, 2008 |
|  (HYDROXYCUT.COM & Design) | TMA728,756 ** | November 18, 2008 |
| naNO X9 | TMA728,758 | November 18, 2008 |
|  (SIX STAR MUSCLE & Design) | TMA738,646 ** | April 23, 2009 |
| ANABOLIC HALO | TMA745,024 | August 11, 2009 |
|  (ANABOLIC HALO & Design) | TMA745,031 ** | August 11, 2009 |
| SIX STAR | TMA753,362 | November 18, 2009 |
| naNO VAPOR | TMA762,506 | March 24, 2010 |
|  (TEAM MUSCLETECH & Design #2) | TMA769,693 ** | June 15, 2010 |
| TEAM MUSCLETECH | TMA771,132 ** | July 5, 2010 |
| PRO CLINICAL HYDROXYCUT | TMA801,902 ** | July 11, 2011 |
| SIX STAR PRO NUTRITION | TMA801,913 | July 11, 2011 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITRO-TECH | TMA809,107 | October 14, 2011 |
| NANOSTIM | TMA836,906 ** | November 22, 2012 |
| CREACORE | TMA836,907 | November 22, 2012 |
| ALPHATEST | TMA842,308 | February 5, 2013 |
| PURELY INSPIRED | TMA855,653 | July 19, 2013 |
| HYDROXYCUT | TMA856,942 | August 2, 2013 |
| ANOTEST | TMA867,758 ** | December 19, 2013 |
| EPIQ | TMA869,212 | January 16, 2014 |
| MYOBUILD | TMA871,577 | February 18, 2014 |
| AMINO BUILD | TMA889,691 ** | November 7, 2014 |
| #SHATTER SX-7 | TMA898,154 | March 6, 2015 |
| SX-7 | TMA906,448 | June 16, 2015 |
| PUSH 10 | TMA909,698 ** | July 28, 2015 |
| MUSCLETECH Slanted M Design | TMA940,795 | June 13, 2016 |
| SIX STAR Slanted Star Design | TMA942,495 | July 6, 2016 |
| ANOTESET | TMA848,926 ** | April 18, 2013 |

Applications:

| Trade-mark | Application No. | Application Date |
|---|---|---|
| TEST HD | 1,633,190 ** | June 28, 2013 |
| FUELONE | 1,650,477 ** | November 4, 2013 |
| CLEAR MUSCLE | 1,655,344 | December 9, 2013 |

**Immaterial Intellectual Property Rights                                    *Iovate GSA*
22976971.15

| Trade-mark | Application No. | Application Date |
|---|---|---|
| CUT FUEL | 1,656,444 ** | December 16, 2013 |
| WHEY BUILD | 1,663,186 ** | February 10, 2014 |
| MASS BUILD | 1,663,222 ** | February 10, 2014 |
| 6TH GEAR | 1,663,228 ** | February 10, 2014 |
| THERMO STACK | 1,663,229 ** | February 10, 2014 |
| CREAPRO3 | 1,663,230 ** | February 10, 2014 |
| BLACK ONYX | 1,684,077 | July 7, 2014 |
| XENADRINE CORE | 1,686,366 | July 22, 2014 |
| APPISLIM | 1,687,687 ** | July 31, 2014 |
| APPEDEX | 1,687,693 ** | July 31, 2014 |
| STRONG GIRL | 1,693,287 | September 11, 2014 |
| XENADRINE CORE | 1,693,441 | September 11, 2014 |
| NATURES FOOD | 1,693,986 | September 16, 2014 |
| ANARCHY | 1,694,046 | September 16, 2014 |
| AFTER BUILD | 1,699,378 | October 23, 2014 |
| APPILESS | 1,699,397 ** (ABANDONED 2016-08-16) | October 23, 2014 |
| TRUE GRIT | 1,700,885 | November 3, 2014 |
| WHAT'S YOUR GRITNESS? | 1,704,607 ** | November 26, 2014 |
| CREACTOR | 1,710,993 | January 15, 2015 |
| PHOSPHA MUSCLE | 1,714,469 | February 9, 2015 |
| PHOSPHA GROW | 1,714,475 | February 9, 2015 |
| SLASH | 1,714,785 ** | February 11, 2015 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

| Trade-mark | Application No. | Application Date |
|---|---|---|
| QUAD TEST | 1,716,361 ** | February 23, 2015 |
| PLASMA MUSCLE | 1,717,431 | March 2, 2015 |
| ICY ROCKET | 1,718,172 ** | March 6, 2015 |
| FREESTYLE | 1,734,632 ** | June 25, 2015 |
| PROTEIN FREESTYLE | 1,734,636 ** | June 25, 2015 |
| MISSION1 (Class 5) | 1,737,107 | July 13, 2015 |
| VITA BUILD | 1,753,371 | November 4, 2015 |
| MISSION1 (Class 29) | 1,753,656 | November 6, 2015 |
| VITALIGENIX T-10 | 1,771,033 | March 7, 2016 |
| PUREGENIX (App no. 2) | 1,771,449 | March 9, 2016 |
| VALOR (App no. 2) | 1,782,546 ** | May 16, 2016 |
| purely inspired (PURELY INSPIRED & Design) | 1,783,161 | May 19, 2016 |
| VAPORX | 1,785,317 ** | June 2, 2016 |
| HERBIVORE | 1700401 ** | October, 30, 2014 |
| LEGIT | 1694052 ** | September 16, 2014 |
| COBALT | 1694054 ** | September 16, 2014 |
| HERBAL ZEN NUTRITION | 1689453 ** | August 13, 2014 |
| APPELESS | 1684070 ** | July 7, 2014 |
| APPELEAN | 1684075 ** | July 7, 2014 |

**United States**

| Trademark | Application Number Application Date | Registration Number |
|---|---|---|

---

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trademark | Application Number<br>Application Date | Registration Number |
|---|---|---|
| BLACK ONYX | 86917026<br>23-FEB-2016 | 5054003 |
| VITA BUILD | 86809503<br>13-JUL-2015 | 5037978 |
| HYDROXYCUT LEAN PROTEIN | 86686441 **<br>08-JUL-2015 | 4922277 |
| SLASH | 86531282 **<br>11-FEB-2015 | |
| PHOSPHAGROW | 86528905<br>09-FEB-2015 | 5004250 |
| CREACTOR | 86504680<br>15-JAN-2015 | 4915030 |
| WHAT'S YOUR GRITNESS? | 86465913 **<br>26-NOV-2014 | 4814813 |
| MUSCLETECH RESEARCH AND DEVELOPMENT AND DESIGN | 86452994<br>13-NOV-2014 | 4830255 |
| SIX STAR PRO NUTRITION AND DESIGN | 86452487<br>12-NOV-2014 | 4838199 |
| TRUE GRIT | 86442949<br>03-NOV-2014 | 4914800 |
| AFTER BUILD | 86432766<br>23-OCT-2014 | 5004085 |
| ANARCHY | 86396212<br>16-SEP-2014 | 4761991 |
| NATURES FOOD | 86395748<br>16-SEP-2014 | 4810099 |
| XENADRINE CORE | 86392419<br>11-SEP-2014 | 4838037 |
| HERBAL ZEN NUTRITION | 86365684 **<br>13-AUG-2014 | 4856537 |
| APPEDEX | 86354087 **<br>31-JUL-2014 | 4718218 |

**Immaterial Intellectual Property Rights                                                                                  *Iovate GSA*

| Trademark | Application Number<br>Application Date | Registration Number |
|---|---|---|
| SX-7 | 86313378<br>18-JUN-2014 | 4675280 |
| WHEY BUILD | 86189362 **<br>10-FEB-2014 | 4863777 |
| MASS BUILD | 86189395 **<br>10-FEB-2014 | 4744667 |
| 6TH GEAR | 86189416 **<br>10-FEB-2014 | 4744668 |
| THERMO STACK | 86189438 **<br>10-FEB-2014 | 4749018 |
| CREAPRO3 | 86189476 **<br>10-FEB-2014 | 4749019 |
| CLEAR MUSCLE | 86138630<br>09-DEC-2013 | 4615227 |
| #SHATTER SX-7 | 86119836<br>15-NOV-2013 | 4786590 |
| FUELONE | 86109075<br>13-JUL-2015 | 4682764 |
| TEST HD | 85973036 **<br>28-JUN-2013 | 4561361 |
| HERBAL ZEN WEIGHT<br>LOSS | 85962979 **<br>18-JUN-2013 | 4530872 |
| VALOR | 85946544 **<br>30-MAY-2013 | |
| PUREGENIX | 85900285<br>10-APR-2013 | 4685330 |
| AMINO BUILD | 85690329 **<br>30-JUL-2012 | 4522689 |
| PURELY INSPIRED | 85669536<br>05-JUL-2012 | 4322244 |
| PURELY INSPIRED AND DESIGN | 87042925 | |

**Immaterial Intellectual Property Rights                                          *Iovate GSA*

22976971.15

| Trademark | Application Number<br>Application Date | Registration Number |
|---|---|---|
|  | 19-MAY-2016 |  |
| ALPHATEST | 85587890<br>03-APR-2012 | 4237495 |
| ANOTEST | 85581860 **<br>28-MAR-2012 | 4262653 |
| CREACORE | 85462455<br>02-NOV-2011 | 4311482 |
| NANOSTIM | 85462588 **<br>02-NOV-2011 | 4352401 |
| MYOBUILD | 85462614<br>02-NOV-2011 | 4566141 |
| NEUROCORE | 85230350<br>31-JAN-2011 | 4176530 |
| AMINOFX | 85121069 **<br>01-SEP-2010 | 4165171 |
| PRO CLINICAL<br>HYDROXYCUT | 85121100 **<br>01-SEP-2010 | 4168546 |
| SIX STAR PRO<br>NUTRITION | 85104407<br>10-AUG-2010 | 4064310 |
| HARDCORE PRO<br>SERIES | 77969691 **<br>11-SEPT-2014 | 3870138 |
| HYDROXAGEN | 76698616 **<br>24-JUL-2009 | 3826741 |
| HYDROXYCUT | 77781961<br>15-JUL-2009 | 4408937 |
| HYDROXYPLUS | 77721011 **<br>15-JUL-2009 | 3857733 |
| ANABOLIC HALO | 77307505<br>18-OCT-2007 | 4179615 |
| ANABOLIC HALO AND DESIGN | 77307511<br>18-OCT-2007 | 4179616 |
| N.O. FURY | 77194308 ** | 3619942 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trademark | Application Number Application Date | Registration Number |
|---|---|---|
| | 31-MAY-2007 | |
| NANOVAPOR | 77023136 17-OCT-2006 | 3431881 |
| TEAM MUSCLETECH | 78893160 ** 11-SEPT-2014 | 3602539 |
| CREAKIC | 78758483 ** 11-SEPT-2014 | 3341471 |
| BUYHYDROXYCUT.COM | 78757375 ** 18-NOV-2005 | 4159555 |
| LEUKIC | 78719498 ** 11-SEP-2014 | 3336514 |
| HYDROXYCUT HARDCORE | 78695585 18-AUG-2005 | 3952358 |
| GAKIC | 78598902 31-MAR-2005 | 3345243 |
| RUSH | 78547672 ** 14-JAN-2005 | 3357146 |
| SIX STAR | 78537814 23-DEC-2004 | 3141261 |
| MUSCLETECH RESEARCH AND DEVELOPMENT AND DESIGN | 78387343 19-MAR-2004 | 3048799 |
| MUSCLETECH RESEARCH AND DEVELOPMENT AND DESIGN | 78386740 18-MAR-2004 | 3044607 |
| SUPPLEMENTS THAT WORK! AND DESIGN | 78386927 ** 18-MAR-2004 | 3026805 |
| SUPPLEMENTS THAT WORK! AND DESIGN | 78386816 ** 18-MAR-2004 | 3040195 |
| MUSCLETECH RESEARCH AND DEVELOPMENT AND DESIGN | 78274054 14-JUL-2003 | 2917257 |
| SUPPLEMENTS THAT WORK! | 78240493 ** 22-APR-2003 | 2984937 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trademark | Application Number Application Date | Registration Number |
|---|---|---|
| GAKIC | 76337928 ** 14-SEPT-2014 | 3006154 |
| MASS -TECH | 76297599 09-AUG-2001 | 3038144 |
| INSULOGEN | 76029450 ** 19-APR-2000 | 2954018 |
| XENADRINE | 75709672 17-MAY-1999 | 2329696 |
| MUSCLETECH | 75245251 21-FEB-1997 | 2180130 |
| NITRO-TECH | 75819829 12-OCT-1995 | 2855448 |
| HYDROXYSTIM | 85231566 ** 01-FEB-2011 | 4078126 |
| PRE WORKOUT IGNITION | 85121035 ** 01-SEP-2010 | 4064417 |
| HEXATEST | 85104400 ** 10-AUG-2010 | 4039554 |
| INTRAVOL | 85001888 ** 30-MAR-2010 | 3870546 |
| *DESIGN ONLY* | 77581839 ** 30-SEP-2008 | 3854359 |
| MYOSHOCK HSP | 77581065 ** 29-SEP-2008 | 3800348 |
| CYTOGENIX LABORATORIES AND DESIGN | 77581114 ** 29-SEP-2008 | 3807804 |
| CYTOGENIX LABORATORIES AND DESIGN | 77581127 ** 29-SEP-2008 | 3807805 |
| N.O. PLASMACORE | 77386523 ** 01-FEB-2008 | 3763898 |
| FREAK FIX | 77178497 ** 11-MAY-2007 | 3841898 |

**Immaterial Intellectual Property Rights                                    *Iovate GSA*

| Trademark | Application Number Application Date | Registration Number |
|---|---|---|
| NANOX9 | 78941565 31-JUL-2006 | 3645074 |
| TSX QUANTUMFEED | 77417246 ** 10-MAR-2008 | 3939416 |
| CREATINE 6000-ES | 75250700 ** 28-FEB-1997 | 2138931 |
| VITALIGENIX T-10 | 86930727 07-MAR-2016 | |
| MISSION1 | 86811729 06-NOV-2015 | |
| PLASMA MUSCLE | 86550292 02-MAR-2015 | |
| PHOSPHA MUSCLE | 86528894 09-FEB-2015 | |
| STRONG GIRL | 86391617 11-SEPT-2014 | |

**Immaterial Intellectual Property Rights

*Iovate GSA*

## International

### ARGENTINA

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 1.862.743 | March 7, 2002 |
| HYDROXYCUT | 1.874.478 | June 3, 2002 |
| CELL-TECH | 1.906.254 | August 6, 2003 |
| NITRO-TECH | 2.779.821 | January 11, 2006 |
| MUSCLETECH Logo | 2.464.873 | June 1, 2010 |

### ALGERIA

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MUSCLETECH | DZ/T/2016/002430 | May 25, 2016 |
| HYDROXYCUT | DZ/T/2016/002431 | May 25, 2016 |
| EPIQ | DZ/T/2016/002429 | May 25, 2016 |

### ANGOLA

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MUSCLETECH | 42.148 | Unknown |

**AUSTRALIA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITRO-TECH | 819507 | January 10, 2000 |
| MUSCLETECH | 819508 | January 10, 2000 |
| HYDROXYCUT | 821503 | January 27, 2000 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 823720 | February 15, 2000 |
| XENADRINE | 854900 | October 25, 2000 |
|  (SUPPLEMENTS THAT WORK! & Design) | 1072102 | August 25, 2005 |
| CELL-TECH | 1101776 | March 2, 2006 |
| RAPIDSLIM SX | 1120639 | June 26, 2006 |
| GAKIC | 1120818 | June 26, 2006 |
| LEUKIC | 1120819 | June 26, 2006 |
| CREAKIC | 1120821 | June 26, 2006 |
| SIX STAR | 1142549 | October 23, 2006 |
|  (TEAM MUSCLETECH & Design #2) | 1142552 | October 23, 2006 |
|  (SIX STAR & Design 2) | 1142579 | October 23, 2006 |
| NANOVAPOR | 1142583 | October 23, 2006 |

*Iovate GSA*

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HOODIA SURE | 1181106 | June 7, 2007 |
| HOODIA SURE RAPID GELS | 1181107 | June 7, 2007 |
|  (MAP & Design) | 1209054 | November 6, 2007 |
| MUSCLE ASYLUM PROJECT | 1209055 | November 6, 2007 |
| FREAK FIX | 1209056 | November 6, 2007 |
| ARSON | 1209058 | November 6, 2007 |
| ALTERED STATE | 1209059 | November 6, 2007 |
| TORMENT | 1209060 | November 6, 2007 |
| N.O. PLASMACORE | 1265548 | October 1, 2008 |
| CREADEX | 1265549 | October 1, 2008 |
|  (LOGO IN BLACK & WHITE Design) | 1265551 | October 1, 2008 |
| ANABOLIC HALO | 1265552 | October 1, 2008 |
|  (ANABOLIC HALO & Design) | 1265553 | October 1, 2008 |
| VOLNOX | 1291408 | March 24, 2009 |
| CYTOCELL | 1291409 | March 24, 2009 |
|  (CYTOGENIX LABORATORIES HC & | 1291410 | March 24, 2009 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| Design) | | |
| (CYTOGENIX LABORATORIES & Design) | 1291411 | March 24, 2009 |
| CYTONOX | 1291412 | March 24, 2009 |
| (HYDROXYCUT Natural Logo) | 1291413 | March 24, 2009 |
| INTERVOL | 1291414 | March 24, 2009 |
| MYOSHOCK HSP | 1291415 | March 24, 2009 |
| TEST AGP | 1291416 | March 24, 2009 |
| IGNITION STIX | 1295087 | April 17, 2009 |
| FIBER FULL | 1323918 | October 1, 2009 |
| HYDROXYCUT FULL | 1323920 | October 1, 2009 |
| HEXATEST | 1377266 | August 10, 2010 |
| PRO ISOLATE 65 | 1381334 | September 1, 2010 |
| SIX STAR PRO NUTRITION | 1381335 | September 1, 2010 |
| EXPLOSION STIX | 1381341 | September 1, 2010 |
| PRE WORKOUT IGNITION | 1381342 | September 1, 2010 |
| PRO CLINICAL HYDROXYCUT | 1381343 | September 1, 2010 |
| EPIQ | 1595966 | December 10, 2013 |

**Immaterial Intellectual Property Rights                                         *Iovate GSA*
22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| PURELY INSPIRED | 1595964 | December 10, 2013 |
| SX-7 | 1724006 | September 24, 2015 |

## BENELUX

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| XENADRINE | 690075 | October 25, 2000 |

## BRAZIL

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 823790061 | March 20, 2007 |
| CELLTECH | 823790096 | August 17, 2001 |
| HYDROXYCUT | 823790118 | March 20, 2007 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 823790070 | March 20, 2007 |
| MESOPRO | 825387094 | August 17, 2007 |
| INSULOGEN | 825387108 | August 14, 2007 |
| SYNTHEPRO | 825387116 | August 14, 2007 |
| HYDROXAGEN | 825590302 | June 5, 2007 |
| HYDROXYTECH | 825590310 | June 5, 2007 |
| SLIM-TECH | 825590337 | June 5, 2007 |

| Trade-mark | Registration No. | Registration Date |
|------------|------------------|-------------------|
| GAKIC | 828735506 | October 13, 2009 |

**CHILE**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITRO-TECH | 637394 | July 25, 2002 |
| MASS-TECH | 984463 | November 15, 2002 |
| XENADRINE | 657813 | February 12, 2003 |
| HYDROXYCUT | 668367 | July 3, 2003 |
| SLIM-TECH | 776983 | January 11, 2007 |
| EPIQ | 1087141 | December 12, 2013 |

**CHINA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITROTECH (class 30) | 1995288 | December 28, 2002 |
| HYDROXYCUT (class 30) | 2011968 | December 28, 2002 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) (class 30) | 2011973 | December 7, 2004 |
| SLIM-TECH | 3548381 | February 7, 2008 |
| HYDROXYTECH | 3548383 | April 14, 2005 |
| HYDROXAGEN PLUS | 3563985 | April 28, 2005 |
| MUSCLETECH | 5318604 | October 14, 2010 |
| VIVABODY | 5319028 | August 7, 2009 |
|  | 5319029 | April 21, 2009 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| (HAMMERHEAD SHARK Logo) | | |
| APLODAN | 5432825 | October 21, 2009 |
| SIX STAR | 5438142 | September 14, 2009 |
| SIX STAR BODY FUEL | 5438143 | September 14, 2009 |
|  (SIX STAR BODY FUEL & Design) | 5438145 | September 14, 2009 |
|  (SIX STAR & Design) | 5438146 | September 14, 2009 |
| ANATOR-P70 | 5449734 | September 14, 2009 |
| ANATOR | 5449735 | September 14, 2009 |
| CREAKIC | 5449736 | September 14, 2009 |
| LEUKIC | 5449737 | September 14, 2009 |
| JOINT MD | 5473107 | September 21, 2009 |
| SLEEP MD | 5473108 | September 21, 2009 |
| CYLARIS | 5473112 | September 21, 2009 |
| ADISTAT | 5473113 | September 21, 2009 |
| RAPIDSLIM SX | 5473225 | September 21, 2009 |
| COLD MD | 5473226 | September 21, 2009 |
| LIQUICUT | 5707120 | November 28, 2009 |
| GLUTACYL | 5707121 | November 28, 2009 |
|  (SIX | 5707123 | November 28, 2009 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| STAR & Design 2) | | |
| SIX STAR& DESIGN | 5707124 | November 28, 2009 |
| NANOVAPOR | 5707125 | November 28, 2009 |
| LIQUID TRIM | 6056154 | February 7, 2010 |
| ALLER MD | 6056155 | February 7, 2010 |
|  (MAP & Design) (Class 5) | 6387323 | March 28, 2010 |
| FREAK FIX (Class 5) | 6387325 | March 28, 2010 |
| ALTERED STATE (Class 5) | 6387329 | March 28, 2010 |
|  (MAP & Design) (Class 30) | 6387331 | March 14, 2010 |
| MUSCLE ASYLUM PROJECT (Class 30) | 6387412 | December 21, 2010 |
| FREAK FIX (Class 30) | 6387413 | March 14, 2010 |
| ALTERED STATE (Class 30) | 6387417 | March 14, 2010 |
| ARSON (Class 30) | 6387418 | March 14, 2010 |
| N.O. PLASMACORE | 7028958 | July 28, 2010 |
| TEST AGP | 7284413 | March 27, 2009 |
| VOLNOX | 7284414 | August 28, 2010 |
|  (CYTOGENIX | 7284417 | August 28, 2010 |

**Immaterial Intellectual Property Rights                                      *Iovate GSA*
22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| LABORATORIES & Design) | | |
| (CYTOGENIX LABORATORIES HC & Design) | 7284418 | August 28, 2010 |
| (HYDROXYCUT Natural Logo) | 7289467 | September 28, 2010 |
| INTERVOL | 7289468 | September 7, 2010 |
| MYOSHOCK HSP | 7289469 | September 7, 2010 |
| TARAXATONE | 7346674 | September 21, 2010 |
| IGNITION STIX | 7461991 | November 21, 2010 |
| SIX STAR SHAPE | 7706876 | December 14, 2010 |
| HYDROXYCUT FULL | 7752807 | December 21, 2010 |
| HARDCORE PRO SERIES | 8149033 | March 28, 2011 |
| HEXATEST | 8563254 | August 14, 2011 |
| SIX STAR PRO NUTRITION | 8633944 | September 21, 2011 |
| EPIQ | 15647925 | January 7, 2016 |
| PURELY INSPIRED | 16436054 | April 21, 2016 |

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MUSCLETECH RESEARCH AND DEVELOPMENT Logo (Class 5) | Pending | Pending |
| MUSCLETECH RESEARCH AND DEVELOPMENT Logo (Class 30) | Pending | Pending |
| SIX STAR PRO NUTRITION Logo (Class 5) | Pending | Pending |
| SIX STAR PRO NUTRITION Logo (Class 30) | Pending | Pending |
| purely inspired PURELY INSPIRED Logo (Class 5) | Pending | Pending |
| purely inspired PURELY INSPIRED Logo (Class 30) | Pending | Pending |
| #SHATTER (Class 5) | Pending | Pending |
| #SHATTER (Class 30) | Pending | Pending |
| AMINO BUILD (Class 5) | Pending | Pending |
| AMINOBUILD (Class 30) | Pending | Pending |
| CREACTOR  (Class 5) | Pending | Pending |

**Immaterial Intellectual Property Rights

| Trade-mark | Application No. | Application Date |
|---|---|---|
| CREACTOR (Class 30) | Pending | Pending |
| PHOSPHA MUSCLE (Class 5) | Pending | Pending |
| PHOSPHA MUSCLE (Class 30) | Pending | Pending |
| PLASMA MUSCLE (Class 5) | Pending | Pending |
| PLASMA MUSCLE (Class 30) | Pending | Pending |
| STRONG GIRL (Class 5) | Pending | Pending |
| STRONG GIRL (Class 30) | Pending | Pending |
| XENADRINE (Class 5) | Pending | Pending |
| XENADRINE (Class 30) | Pending | Pending |
| SX-7 (Class 5) | Pending | Pending |
| SX-7 (Class 30) | Pending | Pending |
| CLEAR MUSCLE (Class 5) | Pending | Pending |
| CLEAR MUSCLE (Class 30) | Pending | Pending |
| 肌肉科技研发中心<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT ( Muscle Sci-Tech R&D Center ) (Class 5) | Pending | September 28, 2016 |
| 肌肉科技研发中心<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT ( Muscle Sci-Tech R&D Center ) (Class 30) | Pending | September 28, 2016 |
| 迈斯泰科研究与发展<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT (Phonetic pronunciation of the name Mai-Si-Tai-Ke + the Research ad Development) (Class 5) | Pending | September 28, 2016 |

**Immaterial Intellectual Property Rights                                        *Iovate GSA*

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 迈斯泰科研究与发展<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT (Phonetic pronunciation of the name Mai-Si-Tai-Ke + the Research ad Development) (Class 5) | Pending | September 28, 2016 |
| 增肌高科研发<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT (Muscle building high technology R&D)(Class 5) | Pending | September 28, 2016 |
| 增肌高科研发<br><br>MUSCLETECH RESEARCH AND DEVELOPMENT (Muscle building high technology R&D)(Class 30) | Pending | September 28, 2016 |
| MUSCLETECH 麦斯泰克 (Class 5) | Pending | September 28, 2016 |
| MUSCLETECH 麦斯泰克 (Class 30) | Pending | September 28, 2016 |
| 迈斯泰科<br>MUSCLETECH (Phonetic pronunciation of the name(Mai-Si-Tai-Ke)) | | |
| 增肌高科<br>MUSCLETECH (Muscle building and high technology) | | |
| 六星专业营养<br>(Six Star Professional Nutrition) | | |
| 六星蛋白质营养套餐<br>(Six star protein nutrition package) | | |
| 六全专业营养<br>(Six Complete Professional Nutrition) | | |
| 素源<br>PURELY INSPIRED (pure sourse) | | |
| 纯粹智选<br>PURELY INSPIRED (smart choice of pureness) | | |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 纯之灵感<br>PURELY INSPIRED (of pure inspiration) | | |
| 脂肪杀手<br>HYDROXYCUT (Fat killer/assassin) | | |
| 燃脂精华<br>HYDROXYCUT (Fat burning essence) | | |
| 脂肪克星<br>HYDROXYCUT (Fat Terminator) | | |
| 巨力科技<br><br>MASSTECH (huge strength tech) | | |
| 麦斯泰克<br><br>MASSTECH (Chinese pronunciation for MASSTECH – mai si tai ke | | |
| 增肌王<br><br>MASS-TECH (the king of muscle increasing) | | |
| 巨增科技<br><br>MASSTECH (huge gainer tech) | | |
| 强力增科技<br><br>MASSTECH (powerful energy gainer tech) | | |
| 威普X5<br>VAPOR X5 (Chinese pronunciation for VAPOR X5 – wei pu X5) | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 威力肌能 X5<br>VAPOR X5 (mighty power muscle energy/ability X5) | | |
| 能量补充剂 X5<br>VAPOR X5 (energy supplement X5) | | |
| 阶段8<br>PHASE8 (stage/phase 8) | | |
| 8 小时蛋白粉<br>PHASE8 (eight-hour protein powder) | | |
| 第 8 步高性能蛋白粉<br>PHASE8 (step 8 high-performance protein powder) | | |
| 黑玛瑙<br>BLACK ONYX (black onyx) | | |
| 黑金<br>BLACK ONYX (black gold) | | |
| 黑宝<br>BLACK ONYX (black treasure) | | |
| 中枢能量<br>NEUROCORE (major center energy/central energy) | | |
| 能量泵<br>NEUROCORE (energy pump) | | |
| 神经之核<br>NEUROCORE (neuro core) | | |
| 阿尔法增肌素<br>ALPHA TEST (alpha muscle gainer) | | |
| 阿尔法促睾酮素<br>ALPHA TEST (alpha testosterone booster) | | |
| A 促睾酮素<br>ALPHA TEST (a testosterone booster) | | |
| 唯一<br>MISSION1 (one and only) | | |
| 使命1<br>MISSION1 (Mission1) | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 米森1<br>MISSION1 (The Chinese pronunciation for Mission1) | | |
| 正氮科技<br>NITROTRECH (nitro technology) | | |
| 正氮蛋白粉<br>NITROTECH (nitro protein powder) | | |
| 尼特泰克<br>NITROTECH (The Chinese pronunciation for NITROTECH – ni te tai ke) | | |
| 纳米健肌粉<br>NANOVAPOR (nano muscle gainer powder) | | |
| 纳诺威普<br>NANOVAPOR (The Chinese pronunciation for NANOVAPOR – na nuo wei pu) | | |
| 纳米能量<br>NANOVAPOR (nano energy) | | |
| 易普科<br>EPIQ (The Chinese pronunciation for EPIQ) | | |
| 艾匹克<br>EPIQ (another option of Chinese pronunciation of EPIQ) | | |
| 爱普客<br>EPIQ (another option of Chinese pronunciation of EPIQ) | | |
| 细胞科技<br><br>CELLTECH (cell sci-tech) | | |
| 细胞载体肌酸<br><br>CELLTECH (cell carrier creatine) | | |
| 细胞能量<br><br>CELLTECH (cell energy) | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| #速健<br>#SHATTER (get strong in a short period of time – Lit. rapidly strengthening) | | |
| #健力<br>#SHATTER (healthy and strong – Lit healthy/to invigorate (and) power/strength) | | |
| #赛特尔<br>#SHATTER (Chinese pronunciation for SHATTER – se tee r) | | |
| 七料<br>SX-7 (seven ingredients) | | |
| 全配比<br>SX-7 (full ingredients combined) | | |
| 氨基酸营养王<br>AMINO BUILD (amino nutrition king) | | |
| 氨基酸健肌粉<br>AMINO BUILD (amino powder to get your muscles strong) | | |
| 氨基酸能量泵<br>AMINO BUILD (amino energy pump) | | |
| 肌酸王<br>CREACTOR (the king of creatine) | | |
| 强力肌酸粉<br>CREACTOR (powerful creatine powder) | | |
| 肌酸泵<br>CREACTOR (creatine pump) | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 增肌磷脂酸<br>PHOSPHA MUSCLE<br>(muscle-gaining phospha) | | |
| 磷脂酸健肌胶囊<br>PHOSPHA MUSCLE<br>(phospha product that is good for/strengthens/invigorates muscle) | | |
| 磷脂酸强健胶囊<br>PHOSPHA MUSCLE<br>(phospha product that can make people strong) | | |
| 等离子健肌胶囊<br>PLASMA MUSCLE (plasma product that is good for muscle) | | |
| 等离子强健胶囊<br>PLASMA MUSCLE (plasma product that can make people strong) | | |
| 等离子肌肉胶囊<br>PLASMA MUSCLE (plasma muscle product) | | |
| 金刚芭比<br>STRONG GIRL (strong beauty – Lit. diamond/gold-iron Barbie) | | |
| 健身女孩<br>STRONG GIRL (bodybuilding girl/healthy body girl) | | |
| 女士健肌<br>STRONG GIRL (women muscle-training) | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| 纤娜德恩<br>XENADRINE (Chinese pronunciation of XENADRINE – xian na de en) | | |
| 仙恩纳得<br>XENARINE (Chinese pronunciation of XENADRINE – xian en na de) | | |
| 纤那得恩<br>XENADRINE (Chinese pronunciation of XENADRINE – xian na de en) | | |
| 纤娜瘦身<br>XENADRINE (xian na slim body) | | |
| 西娜瘦身美体<br>XENADRINE (xi na slim body beautiful body) | | |
| VITALIGENIX T-10 | | |
| VAPORX5 | | |
| SIX STAR PRO NUTRITION | | |
| SIX STAR | | |
| PURELY INSPIRED | | |
| PHASE8 | | |
| NITROTECH | | |
| NANOVAPOR | | |
| NANO X9 | | |
| MUSCLETECH | | |

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MASSTECH | | |
| HYDROXYCUT | | |
| HARDCORE PRO SERIES | | |
| EPIQ | | |
| CELLTECH | | |
| BLACK ONYX | | |
| NEUROCORE | | |
| ALPHA TEST | | |
| MISSION1 | | |
|  (note colour was not claimed as a feature of the mark) | | |

## COLOMBIA

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 251465 | August 12, 2002 |
| HYDROXYCUT | 259651 | October 29, 2002 |
| MESOTECH | 259789 | October 29, 2002 |
| NITROTECH | 263568 | December 16, 2002 |
| CELLTECH | 320151 | June 29, 2006 |
| SIX STAR PRO NUTRITION | 12-129.345 | January 20, 2013 |
| EPIQ | 498713 | July 30, 2014 |

A-8-39

**COSTA RICA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT | 142325 | October 31, 2003 |
| CELL-TECH | 142326 | October 31, 2003 |
| NITRO-TECH | 142328 | October 31, 2003 |
| MUSCLETECH | 142329 | October 31, 2003 |

**DENMARK**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | VR 2001 03337 | August 9, 2001 |
| HYDROXYCUT | VR 2001 03338 | August 9, 2001 |
| MESOTECH | VR 2001 03339 | August 9, 2001 |
| NITROTECH | VR 2001 03341 | August 9, 2001 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | VR 2001 03342 | August 9, 2001 |
| NORTESTEN | VR 2001 03343 | August 9, 2001 |
| CELLTECH | VR 2001 04389 | October 29, 2001 |

## DOMINICAN REPUBLIC

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  HYDROXYCUT Logo | 175230 | July 31, 2009 |
| HYDROXYCUT | 175465 | July 31, 2009 |
| MUSCLETECH | 175467 | July 31, 2009 |

## EGYPT

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MUSCLETECH | 336108 | May 31, 2016 |
| HYDROXYCUT | 336106 | May 31, 2016 |
| EPIQ | 336107 | May 31, 2016 |

## EUROPEAN UNION

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT | 001128057 | June 5, 2000 |
| MESO-TECH | 001128107 | June 5, 2000 |
| ACETABOLAN | 001128131 | June 5, 2000 |
| MUSCLETECH | 001128156 | June 6, 2000 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 001527191 | May 7, 2001 |
| NITRO-TECH | 003160983 | July 5, 2005 |
| GAKIC | 004895488 | March 21, 2007 |
| TEAM MUSCLETECH | 004924759 | April 10, 2007 |
|  (TEAM MUSCLETECH & Design) | 004924841 | April 10, 2007 |
| NANO-DIFFUSE | 005129333 | June 12, 2006 |
| CREAKIC | 005160891 | January 22, 2009 |
| LEUKIC | 005160932 | November 24, 2010 |
| naNO X9 | 005171814 | June 30, 2006 |
| NANO X9 | 005171814 | June 28, 2007 |
| CHOLESTEROL MD | 005359831 | December 13, 2007 |
|  (TEAM MUSCLETECH & Design #2) | 005360573 | September 27, 2007 |
| SIX STAR | 005417753 | October 26, 2006 |
| NANOVAPOR | 005417803 | October 26, 2006 |
| SIX ST★R (SIX STAR & Design 2) | 005417969 | October 29, 2007 |
| HOODIA SURE RAPID GELS | 005978391 | June 7, 2007 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| ARSON | 006409429 | November 6, 2007 |
| ALTERED STATE | 006409551 | November 6, 2007 |
| ANABOLIC O.D. | 006409817 | November 6, 2007 |
| FREAK FIX | 006409833 | November 6, 2007 |
| MUSCLE ASYLUM PROJECT | 006409866 | November 13, 2008 |
|  (MAP & Design) | 006409891 | November 6, 2007 |
| ANABOLIC HALO | 006710313 | February 6, 2009 |
|  (ANABOLIC HALO & Design) | 006710421 | February 13, 2009 |
| N.O. PLASMACORE | 007284417 | June 25, 2009 |
| CREADEX | 007284532 | June 26, 2009 |
| MYOSHOCK HSP | 008181844 | September 6, 2009 |
| TEST AGP | 008182149 | September 6, 2009 |
| VOLNOX | 008182297 | September 15, 2009 |
| INTERVOL | 008183923 | October 21, 2009 |
|  (HYDROXYCUT Natural Logo) | 008184954 | September 6, 2009 |

| Trade-mark | Registration No. | Registration Date |
| --- | --- | --- |
| CYTOGENIX LABORATORIES (CYTOGENIX LABORATORIES & Design) | 008185101 | January 12, 2010 |
| CYTOGENIX LABORATORIES (CYTOGENIX LABORATORIES HC & Design) | 008185175 | December 23, 2009 |
| PROTOTYPE 216 | 008195638 | September 21, 2009 |
| INTRAVOL | 008195737 | August 31, 2009 |
| TARAXATONE | 008227506 | October 7, 2009 |
| IGNITION STIX | 008227589 | November 10, 2009 |
| VITAKIC | 008409484 | January 21, 2010 |
| CRYOTEST | 008409501 | January 21, 2010 |
| SIX STAR SHAPE | 008556177 | March 16, 2010 |
| HYDROXYCUT FULL | 008588105 | March 29, 2010 |
| FIBER FULL | 008588188 | March 29, 2010 |
| HARDCORE PRO SERIES | 008974693 | August 10, 2010 |
| HEXATEST | 009305673 | January 24, 2011 |
| PRE WORKOUT IGNITION | 009343872 | January 21, 2011 |
| SIX STAR PRO NUTRITION | 009343914 | January 21, 2011 |
| PRO CLINICAL HYDROXYCUT | 009343948 | January 21, 2011 |
| PRO ISOLATE 65 | 009343971 | January 21, 2011 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| EXPLOSION STIX | 009344078 | January 14, 2011 |
| ANOTEST | 011375052 | November 26, 2012 |
| EPIQ | 012405205 | December 9, 2013 |
| PURELY INSPIRED | 012405106 | December 9, 2013 |

**GUATEMALA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITROTECH | 117596 | May 21, 2002 |
| HYDROXYCUT | 120941 | November 12, 2002 |
| MUSCLETECH | 176362 | June 7, 2011 |

**HONG KONG**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| ACETABOLAN | 200204001 | June 5, 2001 |
| NITROXEN | 200312294 | March 14, 2003 |
| INSULOGEN | 200313759 | March 14, 2003 |
| MUSCLETECH | 2003B03231 | June 5, 2001 |
| MESOPRO | 200403226 | March 17, 2003 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 2004B00368 | July 16, 2001 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| SYNTHEPRO | 2004B03224 | March 14, 2003 |
| HYDROXYTEA | 2005B00444 | May 21, 2002 |
| HYDROXYCUT | 2003B01228 | June 5, 2001 |
| NITROTECH | 200214844 | June 5, 2008 |
| CELLTECH | 2004B00933 | June 5, 2008 |
| MESOTECH | 200210810 | June 5, 2008 |

## ICELAND

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 459/2000 | April 3, 2000 |
| HYDROXYCUT | 313/2000 | March 3, 2000 |
| MUSCLETECH | 312/2000 | March 3, 2000 |
| NITRO-TECH | 311/2000 | March 3, 2000 |
| MASS-TECH | 906/2006 | October 5, 2006 |

## INDIA

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 1014798 | June 6, 2001 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITROTECH | 1014799 | June 6, 2001 |
| CELLTECH | 1014800 | June 6, 2005 |
| MESOTECH | 1014801 | July 6, 2005 |
| HYDROXYCUT | 1014802 | July 5, 2005 |
| GAKIC | 1467635 | March 8, 2008 |
| LEUKIC | 1467636 | July 31, 2008 |
| CREAKIC | 1467637 | March 8, 2008 |
| ANATOR-P70 | 1467640 | July 10, 2008 |
| naNO X9 | 1467647 | July 6, 2006 |
| APLODAN | 1482989 | August 30, 2006 |
| **TEAM MUSCLETECH** (TEAM MUSCLETECH & Design #2) | 1502067 | March 31, 2009 |
| SIX STAR | 1502071 | July 26, 2008 |
| NANOVAPOR | 1502072 | September 6, 2008 |
| **HALO** (ANABOLIC HALO & Design) | 1,743,936 | February 3, 2011 |
| ANABOLIC HALO | 1743937 | February 3, 2011 |
| VOLNOX | 1799926 | February 17, 2012 |
| MYOSHOCK HSP | 1799928 | February 17, 2011 |
| SIX STAR PRO NUTRITION | 2017806 | September 2, 2010 |

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| EPIQ | Pending | December 16, 2013 |
| PURELY INSPIRED | 2899651 | February 11, 2015 |

## INDONESIA

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| Z-MASS | 489977 | September 12, 2001 |
| CYTODYNE | 489979 | September 12, 2001 |
| TARAXATONE | 489982 | September 12, 2001 |
| XENADRINE | 489983 | September 12, 2001 |

## JAPAN

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT (class 29) | 4573870 | May 31, 2002 |
| MUSCLETECH (class 29) | 4573875 | May 31, 2002 |
| HYDROXYCUT (class 16) | 4963851 | June 23, 2006 |
| GAKIC | 5015542 | January 5, 2007 |
|  (HAMMERHEAD SHARK Logo) | 5021589 | January 26, 2007 |
| CYLARIS | 5023399 | February 2, 2007 |
| SLEEP MD | 5023400 | February 2, 2007 |
| COLD MD | 5024893 | February 9, 2007 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| ACCELIS | 5027997 | February 23, 2007 |
| ANATOR-P70 | 5028128 | February 23, 2007 |
| ANATOR | 5028129 | February 23, 2007 |
| CREAKIC | 5035883 | March 30, 2007 |
| LEUKIC | 5035884 | March 30, 2007 |
| ADISTAT | 5039234 | April 6, 2007 |
| APLODAN | 5046779 | May 11, 2007 |
| アクセリス (ACCELIS in Japanese Characters) | 5056664 | June 22, 2007 |
| SIX STAR | 5074390 | August 31, 2007 |
| SIX ST★R (SIX STAR & Design 2) | 5074391 | August 31, 2007 |
| NANOVAPOR | 5074392 | August 31, 2007 |
| RAPIDSLIM SX | 5095571 | November 30, 2007 |
| naNO X9 | 5095572 | November 30, 2007 |
| HEARTBURN MD | 5111398 | February 15, 2008 |
| ALLERGY MD | 5111399 | February 15, 2008 |
| CHOLESTEROL MD | 5111400 | February 15, 2008 |
| HOODIA SURE | 5113336 | February 22, 2008 |
| HOODIA SURE RAPID GELS | 5113337 | February 22, 2008 |
| JOINT MD | 5122659 | March 28, 2008 |
| ARSON | 5135961 | May 23, 2008 |
| ALTERED STATE | 5135962 | May 23, 2008 |
| ANABOLIC OPTIMAL | 5135963 | May 23, 2008 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| DOSE (O.D.) | | |
| ANABOLIC O.D. | 5135964 | May 23, 2008 |
| FREAK FIX | 5135965 | May 23, 2008 |
| MUSCLE ASYLUM PROJECT | 5135966 | May 23, 2008 |
|  (MAP & Design) | 5135967 | May 23, 2008 |
| CREADEX | 5233005 | May 22, 2009 |
| N.O. PLASMACORE | 5233006 | May 22, 2009 |
| INTERVOL | 5240065 | June 19, 2009 |
| TARAXATONE | 5244674 | July 3, 2009 |
| IGNITION STIX | 5259500 | August 21, 2009 |
|  (TEAM MUSCLETECH & Design #2) | 5268526 | October 2, 2009 |
| MYOSHOCK HSP | 5268754 | October 2, 2009 |
|  (HYDROXYCUT Natural Logo) | 5268755 | October 2, 2009 |
|  (CYTOGENIX LABORATORIES & Design) | 5268756 | October 2, 2009 |

**Immaterial Intellectual Property Rights                                        *Iovate GSA*

22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (CYTOGENIX LABORATORIES HC & Design) | 5268757 | October 2, 2009 |
| CYTONOX | 5268758 | October 2, 2009 |
| CYTOCELL | 5268759 | October 2, 2009 |
| VOLNOX | 5268760 | October 2, 2009 |
| FIBER FULL | 5322537 | May 14, 2010 |
| HARDCORE PRO SERIES | 5367886 | November 12, 2010 |
| HEXATEST | 5386868 | January 28, 2011 |
| SIX STAR PRO NUTRITION | 5394518 | February 25, 2011 |
| XENADRINE | 5884058 | September 23, 2016 |

**KOREA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITROTECH | 558008 | September 1, 2003 |
| CELLTECH | 558009 | September 1, 2003 |
| HYDROXYCUT | 558010 | September 1, 2003 |
| MUSCLETECH | 668554 | June 30, 2006 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design #1) | 668555 | June 30, 2006 |

\*\*Immaterial Intellectual Property Rights                                    *Iovate GSA*
22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| | | |
| MUSCLETECH | 677492 | September 7, 2006 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design #2) | 687248 | November 27, 2006 |
| XENADRINE EFX | 768245 | November 10, 2008 |

**KUWAIT**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CYTODYNE | 38457 | March 9, 2002 |
| TARAXATONE | 38467 | March 9, 2002 |
| XENADRINE | 38486 | March 9, 2002 |
| Z-MASS | 39564 | May 18, 2002 |

**ALAYSIA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT | 07000508 | January 11, 2007 |

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| BELLI LEAN | 2016056530 | April 11, 2016 |

**MEXICO**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT | 645,140 | February 29, 2000 |
| MUSCLETECH | 645,141 | February 29, 2000 |
| NITRO-TECH | 645,142 | February 29, 2000 |
|  (MUSCLETECH RESEARCH AND | 656,631 | May 30, 2000 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| DEVELOPMENT & Design) | | |
| CELL-TECH | 798,659 | June 30, 2003 |
| MASS-TECH | 819,481 | January 27, 2004 |
| CREAKIC | 945,219 | July 26, 2006 |
| LEUKIC | 945,220 | July 26, 2006 |
| GAKIC | 947,313 | July 31, 2006 |
| SIX STAR | 962,495 | October 27, 2006 |
| GLUTAKIC | 967365 | December 13, 2006 |
| SLEEP MD | 987624 | July 10, 2008 |
| SIX ST★R (SIX STAR & Design 2) | 987,856 | June 13, 2007 |
| NANOVAPOR | 1,010,911 | November 9, 2007 |
| ARSON | 1,016,695 | December 6, 2007 |
| TORMENT | 1,016,696 | December 6, 2007 |
| ANABOLIC O.D. | 1,016,697 | December 6, 2007 |
| FREAK FIX | 1,017,213 | December 10, 2007 |
| LIQUID TRIM | 1020901 | January 25, 2008 |
| ALLER MD | 1023499 | February 6, 2008 |
| MUSCLE ASYLUM PROJECT | 1,026,441 | February 25, 2008 |
| N.O. PLASMACORE | 1,068,080 | October 22, 2008 |
| ANABOLIC HALO | 1,068,081 | October 22, 2008 |
| HALO (ANABOLIC HALO & Design) | 1,072,643 | November 18, 2008 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CREADEX | 1,074,965 | November 28, 2008 |
| ALTERED STATE | 1,077,925 | January 7, 2009 |
| ANABOLIC OPTIMAL DOSE (O.D.) | 1,079,316 | January 16, 2009 |
| VOLNOX | 1,110,652 | July 15, 2009 |
|  (HYDROXYCUT Natural Logo) | 1110896 | July 16, 2009 |
| MYOSHOCK HSP | 1115081 | August 13, 2009 |
| TEST AGP | 1,115,082 | August 13, 2009 |
| TARAXATONE | 1116057 | August 24, 2009 |
|  (CYTOGENIX LABORATORIES HC & Design) | 1118487 | August 31, 2009 |
|  (CYTOGENIX LABORATORIES & Design) | 1124562 | October 8, 2009 |
| SIX STAR SHAPE | 1124894 | October 8, 2009 |
| CYTONOX | 1132066 | November 26, 2009 |
| CYTOCELL | 1148138 | March 11, 2010 |
| IGNITION STIX | 1160509 | May 27, 2010 |
| HEXATEST | 1176756 | August 27, 2010 |
| SIX STAR PRO | 1196454 | January 13, 2011 |

**Immaterial Intellectual Property Rights
*Iovate GSA*

| Trade-mark | Registration No. | Registration Date |
| --- | --- | --- |
| NUTRITION | | |
| PRO ISOLATE 65 | 1196455 | January 13, 2011 |
| PRE WORKOUT IGNITION | 1196973 | January 17, 2011 |
| EXPLOSION STIX | 1196975 | January 17, 2011 |
| EPIQ | 1525213 | February 10, 2015 |
| PURELY INSPIRED | 1576061 | February 10, 2015 |

**NEW ZEALAND**

Registrations

| Trade-mark | Registration No. | Registration Date |
| --- | --- | --- |
| MUSCLETECH | 606547 | January 13, 2000 |
| NITRO-TECH | 606548 | January 13, 2000 |
| HYDROXYCUT | 606549 | January 13, 2000 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 609129 | February 24, 2000 |
| INSULOGEN | 675495 | March 14, 2003 |
| SYNTHEPRO | 675496 | March 14, 2003 |
| NITROXEN | 675497 | March 14, 2003 |
| HYDROXAGEN | 677966 | April 28, 2003 |
| CELL-TECH | 678152 | May 9, 2003 |
| MESO-TECH | 678153 | May 9, 2003 |
| CYLARIS | 784537 | August 21, 2008 |

\*\*Immaterial Intellectual Property Rights                                    *Iovate GSA*
22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
|  (MAP & Design) | 784538 | February 19 2008 |
| TORMENT | 784539 | August 21, 2008 |
| HOODIA SURE | 784540 | February 19, 2008 |
| RAPIDSLIM SX | 784541 | February 19, 2008 |
|  (TEAM MUSCLETECH & Design #2) | 784542 | August 13, 2009 |
| APLODAN | 784543 | August 21, 2008 |
| ANATOR | 784544 | August 21, 2008 |
| ANATOR-P70 | 784545 | August 21, 2008 |
| CREAKIC | 784546 | August 21, 2008 |
| GAKIC | 784547 | August 21, 2008 |
| LEUKIC | 784548 | August 21, 2008 |
| NANO VAPOR | 784549 | August 21, 2008 |
| NANO X9 | 784550 | August 21, 2008 |
| SIX STAR | 784551 | January 8, 2009 |
| SIX ST★R (SIX STAR & Design 2) | 784552 | August 21, 2008 |
| THERMOGAIN | 784553 | August 21, 2008 |
| THERMOSHRED | 784554 | August 21, 2008 |
| TEAM MUSCLETECH | 784555 | August 13, 2009 |
| SMARTBURN | 784556 | August 21, 2008 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLE ASYLUM PROJECT | 784557 | February 19, 2008 |
| ALTERED STATE | 784558 | February 19 2008 |
| ARSON | 784559 | February 19, 2008 |
| FREAK FIX | 784560 | August 21, 2008 |
| N.O. PLASMACORE | 797035 | April 2, 2009 |
| CREADEX | 797036 | January 7, 2010 |
|  (LOGO IN BLACK & WHITE Design) | 797037 | April 2, 2009 |
| ANABOLIC HALO | 797038 | October 2, 2008 |
|  (ANABOLIC HALO & Design) | 797039 | October 2, 2008 |
| VOLNOX | 804220 | September 29, 2008 |
| TEST AGP | 804221 | September 29, 2008 |
| CYTOCELL | 804222 | March 25, 2009 |
|  (CYTOGENIX LABORATORIES HC & Design) | 804223 | September 29, 2009 |
|  (CYTOGENIX LABORATORIES & Design) | 804224 | September 29, 2009 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CYTONOX | 804225 | March 25, 2009 |
|  (HYDROXYCUT Natural Logo) | 804226 | September 29, 2008 |
| INTERVOL | 804227 | October 27, 2008 |
| MYOSHOCK HSP | 804228 | September 29, 2008 |
| TARAXATONE | 805306 | April 20, 2009 |
| IGNITION STIX | 805307 | April 20, 2009 |
| SIX STAR SHAPE | 812872 | September 17, 2009 |
| HYDROXYCUT FULL | 813671 | October 2, 2009 |
| FIBER FULL | 813672 | October 7, 2010 |
| HARDCORE PRO SRIES | 821526 | March 24, 2010 |
| HEXATEST | 828735 | August 11, 2010 |
| EXPLOSION STIX | 829851 | March 2, 2011 |
| SIX STAR PRO NUTRITION | 829852 | March 2, 2011 |
| PRO CLINICAL HYDROXYCUT | 829853 | March 2, 2011 |
| PRO ISOLATE 65 | 829854 | March 2, 2011 |
| EPIQ | 989432 | December 10, 2013 |
| PURELY INSPIRED | 989431 | December 10, 2013 |
| SX-7 | 1028372 | September 24, 2015 |

**PARAGUAY**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 244006 | February 5, 2002 |
| HYDROXYCUT | 244009 | February 5, 2002 |
| XENADRINE | 260596 | August 21, 2003 |

**PERU**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CELLTECH | 128122 | April 18, 2007 |
| MUSCLETECH | 196481 | July 4, 2006 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 196483 | July 4, 2006 |
| HYDROXYCUT | 590808 | June 1, 2015 |

**SAUDI ARABIA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CELL-TECH | 6604 | July 14, 2001 |
| NITRO-TECH | 6606 | July 14, 2001 |
| ACETABOLAN | 64011 | August 23, 2002 |
| HYDROXYCUT | 64012 | August 23, 2002 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 64013 | August 23, 2002 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 64014 | August 23, 2002 |

## SINGAPORE

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| XENADRINE | T00/19052A | October 30, 2000 |
| MUSCLETECH | T0110041J | July 9, 2001 |
| NITROTECH | T0110043G | July 9, 2001 |
| CELLTECH | T0110044E | July 9, 2001 |
| HYDROXYCUT | T0110046A | July 9, 2001 |
|  (HYDROXYCUT Natural Logo) | T0903433F | March 26, 2009 |
|  (CYTOGENIX LABORATORIES HC & Design) | T0903435B | March 26, 2009 |
| CYTOGENIX LABORATORIES | T0903438G | March 26, 2009 |
| BELLI LEAN | 40201605279V | March 24, 2016 |

**SOUTH AFRICA**

<u>Registrations</u>

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 2000/00690 | January 18, 2000 |
| NITRO-TECH | 2000/00696 | January 18, 2000 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 2000/02326 | February 15, 2000 |
| HYDROXYTEA | 2003/06620 | May 14, 2002 |
| HYDROXYCUT | 2003/06910 | January 18, 2000 |
| CELL-TECH | 2003/07500 | May 9, 2003 |
| LEUKIC | 2006/12437 | June 5, 2006 |
| CREAKIC | 2006/12438 | June 5, 2006 |
| ANATOR | 2006/12440 | June 5, 2006 |
| naNO X9 | 2006/12453 | June 5, 2006 |
| GAKIC | 2006/12632 | June 7, 2006 |
| HEARTBURN MD | 2006/23665 | October 5, 2006 |
| ALLERGY MD | 2006/23666 | October 5, 2006 |
| CHOLESTEROL MD | 2006/23668 | October 5, 2006 |
| LIQUID TRIM | 2006/23669 | October 5, 2005 |
| GLUTACYL | 2006/25875 | October 30, 2006 |
| GLUTACIL | 2006/25876 | October 30, 2006 |
| SIX STAR | 2006/25877 | October 30, 2006 |
|  (SIX STAR & Design 2) | 2006/25878 | October 30, 2006 |

**Immaterial Intellectual Property Rights                                *Iovate GSA*

22976971.15

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NANOVAPOR | 2006/25879 | October 20, 2006 |
| GLUTACIK | 2006/27906 | November 16, 2006 |
| LIQUICUT | 2006-25874 | October 30, 2006 |
| ADISTAT | 2007/06792 | March 30, 2007 |
| ALTERED STATE | 2007/25677 | November 6, 2007 |
| ARSON | 2007/25680 | November 6, 2007 |
| FREAK FIX | 2007/25681 | November 6, 2007 |
|  (HYDROXYCUT Natural Logo) | 2009/05782 | March 27, 2009 |
| IGNITION STIX | 2009/07249 | April 17, 2009 |
| SIX STAR PRO NUTRITION | 2010/19380 | September 1, 2010 |
|  (ANABOLIC HALO & Design) | 2008/23144 | October 1, 2008 |
| ANABOILC HALO | 2008/23145 | October 1, 2008 |
| EPIQ | 2013/35286 | December 18, 2013 |

## SPAIN

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| XENADRINE | 2,521,399 | June 9, 2003 |

**TAIWAN**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 1012581 | September 1, 2002 |
| NITROTECH | 1012582 | September 1, 2002 |
| CELLTECH | 1012583 | September 1, 2002 |
| HYDROXYCUT | 1012585 | September 1, 2002 |
| BELLI LEAN | 1779441 | July 16, 2016 |

**TUNISIA**

Applications

| Trade-mark | Application No. | Application Date |
|---|---|---|
| MUSCLETECH | TN/E/2015/0665 | September 8, 2015 |

**TURKEY**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| HYDROXYCUT (Class 29) | 2011/109486 | November 16, 2012 |
| XENADRINE (Class 29) | 2011/109790 | November 15, 2012 |
| HYDROXYCUT (Class 5) | 2011/104710 | November 20, 2012 |
| MASS-TECH (Class 5) | 2011/104713 | November 20, 2012 |
| NITRO-TECH (Class 5) | 2011/104714 | November 20, 2012 |
| SIX STAR PRO NUTRITION (Class 5) | 2011/104718 | November 21, 2012 |
| NITRO-TECH (Class 29) | 2011/109765 | November 20, 2012 |
| SIX STAR PRO | 2011/109807 | November 20, 2012 |

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NUTRITION (Class 29) | | |
| XENADRINE (Class 5) | 2011/104716 | December 5, 2011 |
| MASS-TECH (Class 29) | 2011/109690 | December 13, 2011 |
| CELL-TECH (Class 5, 29) | 2011/109818 | December 13, 2011 |
| MUSCLETECH (Class 5) | 2011/109825 | December 13, 2011 |
| MUSCLETECH (Class 5 & 29) | 2014/12776 | February 14, 2014 |

## UKRAINE

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 120739 | March 25, 2010 |
|  (MUSCLETECH RESEARCH AND DEVELOPMENT & Design) | 133722 | January 10, 2011 |

## UNITED ARAB EMIRATES

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITROTECH | 35577 | June 17, 2001 |
| CELL-TECH | 35578 | June 17, 2001 |
| MUSCLETECH | 35579 | June 17, 2001 |
| MESO-TECH | 35580 | June 17, 2001 |
| HYDROXYCUT | 35584 | June 17, 2001 |

**Immaterial Intellectual Property Rights                                        *Iovate GSA*
22976971.15

**UNITED KINGDOM**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| CYTODYNE | 2250949 | April 20, 2001 |
| Z-MASS | 2250949 | April 20, 2001 |
| TARAXATONE | 2250956 | May 11, 2001 |
| XENADRINE | 2250957 | September 28, 2001 |
| ISODYNE | 2250950 | February 15, 2002 |

**VENEZUELA**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| NITRO-TECH | 227.429-P | January 26, 2000 |
| MUSCLETECH | 232.911-P | August 27, 2001 |
| HYDROXICUT | 232.912-P | August 27, 2001 |
| MASS-TECH | 260.515-P | May 25, 2005 |

**VIETNAM**

Registrations

| Trade-mark | Registration No. | Registration Date |
|---|---|---|
| MUSCLETECH | 247102 | November 27, 2013 |

**Patents and patent applications:**

**Canada**

| Patent/Application No. |
| --- |
| 2246014 ** |
| 2388733 ** |
| 2408528 ** |
| 2548695 ** |
| 2556305 ** |
| 2559836 ** |
| 2560107 ** |
| 2566343 ** |
| 2570103 ** |
| 2577437 ** |
| 2577439 ** |
| 2577963 ** |
| 2595907 ** |
| 2598786 ** |
| 2602037 ** |
| 2602643 ** |
| 2610818 ** |
| 2610821 ** |
| 2611532 ** |
| 2611572 ** |

**\*\*Immaterial Intellectual Property Rights**                                     *Iovate GSA*

| Patent/Application No. |
| --- |
| 2616844 ** |
| 2663141 ** |
| 2668245 ** |
| 2698500 ** |
| 2734231 ** |
| 2747904 ** |
| 2751218 ** |
| 2781406 ** |
| 2791796 ** |
| 2842767 ** |
| 2862370 ** |
| 2927181 ** |

## United States

| Title | Application Number | Filing Date | Patent Number | Issue Date |
| --- | --- | --- | --- | --- |
| CREATINE PYROGLUTAMIC ACID SALTS AND METHODS FOR THEIR PRODUCTION AND USE IN INDIVIDUALS | 11/530,601 ** | 11-SEP-2006 | 7,329,763 | 12-FEB-2008 |
| CREATINE PYROGLUTAMIC ACID SALTS AND METHODS FOR THEIR PRODUCTION AND USE IN INDIVIDUALS | 11/776,049 ** | 11-JUL-2007 | 7,479,560 | 20-JAN-2009 |
| CREATINE PYROGLUTAMIC ACID SALTS AND METHODS FOR THEIR PRODUCTION AND USE IN INDIVIDUALS | 11/776,230 ** | 11-JUL-2007 | 7,482,474 | 20-JAN-2009 |

| Title | Application Number | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|
| CREATINE PYROGLUTAMIC ACID SALTS AND METHODS FOR THEIR PRODUCTION AND USE IN INDIVIDUALS | 11/778,981 ** | 17-JUL-2007 | 7,465,812 | 16-DEC-2008 |
| NUTRITIONAL COMPOSITION AND METHOD FOR INCREASING CREATINE UPTAKE AND RETENTION IN SKELETAL MUSCLE, INCREASING MUSCLE MASS AND STRENGTH, INCREASING EXERCISE CAPACITY AND FOR AIDING RECOVERY FOLLOWING EXERCISE | 11/522,266 ** | 06-JUL-2010 | 7,749,547 | 14-SEP-2016 |
| CREATINE HYDROXYCITRIC ACIDS SALTS AND METHODS FOR THEIR PRODUCTION AND USE IN INDIVIDUALS | 12/108,822 ** | 24-APR-2008 | 7,772,428 | 10-AUG-2010 |
| PREPARATIONS CONTAINING AMINO ACIDS AND OROTIC ACID | 11/958,747 ** | 18-DEC-2007 | 8,236,952 | 07-AUG-2012 |
| COMPOSITIONS AND METHODS FOR PROMOTING WEIGHT LOSS AND INCREASING ENERGY | 12/849,076 ** | 03-AUG-2010 | 8,372,447 | 12-FEB-2013 |
| PREPARATIONS CONTAINING CREATINE AND IMINO SUGARSZPREPARATIONS CONTAINING CREATINE AND IMINO SUGARS | 12/229,979 ** | 28-AUG-2008 | 8,426,395 | 23-APR-2013 |
| SALTS OF CREATINE IMINO SUGAR AMIDES | 12/229,955 ** | 28-AUG-2008 | 8,546,369 | 01-OCT-2013 |
| COMPOSITIONS AND METHODS FOR PROMOTING WEIGHT LOSS AND INCREASING ENERGY | 13/736,358 ** | 08-JAN-2013 | | |
| COMPOSITIONS FOR IMPROVED BODY COMPOSITION | 14/689,806 ** | 17-APR-2015 | | |
| COMPOSITIONS CONTAINING MYRISTICA FRAGRANS | 14/036,097 ** | 25-SEP-2013 | | |
| FOOD SUPPLEMENT FOR INCREASING LEAN MASS AND STRENGTH | 10/799,038 | 11-MAR-2004 | 7,795,204 | 14-SEP-2010 |
| FOOD SUPPLEMENTS AND METHODS COMPRISING LIPOIC ACID AND CREATINE | 09/666,432 | 21-SEP-2000 | 6,620,425 | 16-SEP-2003 |

| Title | Application Number | Filing Date | Patent Number | Issue Date |
|-------|-------------------|-------------|---------------|------------|
| FOOD SUPPLEMENTS AND METHODS COMPRISING LIPOIC ACID AND CREATINE | 09/138,136 | 21-AUG-1998 | 6,136,339 | 24-OCT-2000 |
| HYDROSOLUBLE ORGANIC SALTS OF CREATINE | 08/649,620 ** | 22-MAY-1996 | 5,973,199 | 26-OCT-1999 |
| CREATINE SALT HAVING ENHANCED NUTRITIONAL AND THERAPEUTIC EFFICACY AND COMPOSITIONS CONTAINING SAME | 10/258,878 | 30-OCT-2002 | 6,861,554 | 01-MAR-2005 |
| PREPARATION OF AMINO ACID-FATTY ACID ANHYDRIDES | 12/099,306 ** | 08-APR-2008 | 7,714,154 | 11-MAY-2010 |
| CREATINE-FATTY ACIDS | 11/856,374 ** | 17-SEP-2007 | 7,511,164 | 31-MAR-2009 |
| METHODS AND COMPOSITIONS FOR REDUCING SYMPATHOMIMETIC-INDUCED SIDE EFFECTS | 10/044,645 ** | 10-JAN-2002` | 6,759,063 | 06-JUL-2004 |
| COMPOSITION AND METHOD FOR INCREASING THE ANABOLIC STATE OF MUSCLE CELLS | 11/853,277 ** | 11-SEP-2007 | 7,645,794 | 12-JAN-2010 |
| COMPOSITION AND METHOD FOR INCREASING THE ANABOLIC STATE OF MUSCLE CELLS | 12/499,109 ** | 04-OCT-2001 | 7,956,090 | 29-SEP-2009 |
| RAPIDLY DISSOLVING SOLID ORAL DOSAGE FORM FOR DELIVERY OF COMPOSITION FOR INCREASING INTRIC OXIDE ACTIVITY | 11/505,779 ** | 16-AUG-2006 | 7,794,749 | 14-SEP-2010 |
| ENERGY STATUS OF AN INDIVIDUAL BY ENHANCED USAGE OF AN ENDOGENOUS FUEL SOURCE | 11/867,433 | 04-OCT-2007 | 7,820,618 | 26-OCT-2010 |
| ENERGY STATUS OF AN INDIVIDUAL BY ENHANCED PRODUCTION OF AN ENDOGENOUS FUEL SOURCE | 12/829,438 | 02-JUL-2010 | 8,101,569 | 24-JAN-2012 |
| ORGANIC SALTS OF BETA-ALANINE | 11/954,644 ** | 12-DEC-2007 | 7,956,218 | 07-JUN-2011 |
| COMPOSITION FOR MAINTAINING ANDROGEN AND ANDROGEN-LIKE UPTAKE POTENTIAL BY CELLS | 11/746,825 ** | 10-MAY-2007 | 8,062,679 | 22-NOV-2011 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

| Title | Application Number | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|
| CONTAINER FOR DIETARY SUPPLEMENT HAVING IMPROVED EFFICACY AT TIME OF CONSUMPTION | 11/443,656 ** | 30-MAY-2006 | 7,786,073 | 31-AUG-2010 |
| WEIGHT LOSS FORMULATION | 13/221,141 ** | 30-AUG-2011 | 9,220,741 | 29-DEC-2015 |
| COMPOSITION FOR MAINTAINING ANDROGEN AND ANDROGEN-LIKE UPTAKE POTENTIAL BY CELLS | 11/746,825 ** |  | 8,062,679 |  |
| WEIGHT LOSS FORMULATION | 14/923,544 ** | 27-OCT-2015 |  |  |
| FOOD SUPPLEMENT FOR INCREASING LEAN MASS AND STRENGTH | 09/482,688 ** | 13-JAN-2000 | 6,784,209 | 31-AUG-2004 |
| FOOD SUPPLEMENTS AND METHODS COMPRISING LIPOIC ACID AND CREATINE | 90/005,906 | 06-JAN-2001 | 6,136,339 | 12-NOV-2002 |
| INCREASING CREATINE AND GLYOCOGEN CONVENTRATION IN MUSCLE | 08/875,326 ** | 29-SEP-1997 | 5,968,900 | 19-OCT-1999 |
| NUTRITIONAL SUPPLEMENT FOR INCREASED MUSCLE SIZE AND STRENGTH FOR BODY BUILDERS | 08/806,124 | 28-FEB-1997 | 5,817,329 | 06-OCT-1998 |
| DIETARY SUPPLEMENT CONTAINING A THERMOGENIC SUBSTANCE AND AN ADRENAL SUPPORT SUBSTANCE | 09/568,587 | 11-may-2000 | 6,277,396 | 20-AUG-2001 |
| CREATINE-FATTY ACIDS | 11/676,623 ** | 20-FEB-2007 | 7,314,945 | 01-JAN-2008 |
| PREPARATION OF AMINO ACID-FATTY ACID ANHYDRIDES | 11/747,203 ** | 10-MAY-2007 | 7,511,162 | 31-MAR-2009 |
| CREATINE-FATTY ACIDS | 11/676,630 ** | 20-FEB-2007 | 7,319,157 | 15-JAN-2008 |
| CREATINE-FATTY ACIDS | 11/856,358 ** | 17-SEP-2007 | 7,511,163 | 31-MAR-2009 |
| METHODS AND COMPOSITIONS FOR PRODUCING WEIGHT LOSS | 09/684,697 | 04-OCT-2000 | 6,475,530 | 05-NOV-2002 |
| COMPOSITION FOR TREATING OBESITY AND ESTHETIC TREATMENT PROCESS | 09/601,019 ** | 17-OCT-2000 | 6,814,986 | 09-NOV-2004 |
| COMPOSITION FOR TREATING OBESITY AND ESTHETIC TREATMENT PROCESS | 10/274,888 ** | 22-OCT-2002 | 6,830,765 | 14-DEC-2004 |

| Title | Application Number | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|
| COMPOSITION FOR A FEELING OF CALMNESS | 11/696,945 ** | 05-APR-2007 | 7,374,785 | 20-MAY-2008 |
| METHOD OF INCREASING INTRACELLULAR CONCENTRATIONS OF PHOSPHATE AND INCREASING THE FORCE OF MUSCULAR CONTRACTIONS | 11/468,605 ** | 30-AUG-2006 | 7,368,441 | 06-MAY-2008 |
| INCREASING ATP AVAILABILITY BY INHIBITION OF CREATINE KINASE (CK) LEAKAGE RESULTING FROM HIGH-INTENSITY EXERCISE | 11/468,657 ** | 30-AUG-2006 | 7,375,097 | 20-MAY-2008 |
| MELATONIN-BASED COMPOSITION FOR IMPROVED SLEEP | 11/757,744 ** | 04-JUN-2007 | 7,455,864 | 25-NOV-2008 |
| COMPOSITIONS AND METHODS FOR THE INDUCTION AND MAINTENANCE OF QUALITY SLEEP | 11/486,866 ** | 14-JUL-2006 | 7,476,405 | 13-JAN-2009 |
| METHOD FOR PROMOTING SLEEP | 12/206,892 ** | 09-SEP-2008 | 7,914,826 | 29-MAR-2011 |
| COMPOSITIONS AND METHODS FOR THE INDUCTION AND MAINTENANCE OF QUALITY SLEEP | 11/821,229 ** | 21-JUN-2007 | 7,906,154 | 15-MAR-2011 |
| CREATINOL-FATTY ACID ESTERS | 11/958,777 ** | 18-DEC-2007 | 7,476,749 | 13-JAN-2009 |
| CREATINE SALT WITH ENHANCED NUTRITIONAL AND THERAPEUTIC EFFICACY AND COMPOSITIONS CONTAINING SAME | 11/569,557 ** | 22-NOV-2006 | 7,511,173 | 31-MAR-2009 |
| NUTRITIONAL COMPOSITION FOR FACILITATING MUSCLE PUMPS | 12/291,478 ** | 10-NOV-2008 | 7,939,113 | 10-MAY-2011 |
| COMPOSITIONS AND METHODS FOR INCREASING ADIPOSE METABOLISM, LIPOLYSIS OR LIPOLYTIC METABOLISM VIA THERMOGENESIS | 11/715,992 ** | 08-MAR-2007 | 7,935,367 | 03-MAY-2011 |
| COMPOSITIONS AND METHODS FOR INCREASING ADIPOSE METABOLISM, LIPOLYSIS OR LIPOLYTIC METABOLISM VIA THERMOGENESIS | 11/985,609 ** | 14-NOV-2007 | 7,955,624 | 07-JUN-2011 |

**Immaterial Intellectual Property Rights

*Iovate GSA*

| Title | Application Number | Filing Date | Patent Number | Issue Date |
|-------|-------------------|-------------|---------------|------------|
| COMPOSITIONS AND METHODS FOR INCREASING METABOLISM, THERMOGENESIS AND/OR MUSCULAR DEFINITION | 11/485,713 ** | 12-JUL-2006 | 7,943,183 | 17-MAY-2011 |
| BRANCHED-CHAIN AMINO ACID COMPOSITION FOR IMPROVING SKELETAL MUSCLE PROTEIN METABOLISM | 12/928,481 ** | 13-DEC-2010 | 7,993,685 | 09-AUG-2011 |
| COMPOSITIONS FOR IMPROVED BODY COMPOSITION | 14/178,272 | 12-FEB-2014 | 9,040,576 | 26-MAY-2015 |
| HERBAL SUPPLEMENT PREPARED FROM PELAGONIUM CITRONELLUM | 13/113,475 ** | 08-AUG-2011 | | |
| SCUTELLARIA FOR IMPROVING COMPOSITIONS FOR ENERGY, FOCUS AND THERMOGENESIS | 62/151,118 ** | | | |
| USER-CONFIGURABLE FLAVORING SYSTEM | 62/218,148 ** | | | |

**International**

| Patent No. | Jurisdiction |
|------------|--------------|
| Patent # AU 784752 (Pub. # AU 7894800) | Australia |
| Pub. # EP 1093337 | Europe |
| Pub. # EP 1221865 | Europe |
| Pub # HK 1036203 | Hong Kong |
| DK 1093337 | Denmark |
| PT 1093337 | Portugal |
| Pub. # ES 2285855 | Spain |
| Pub. # GB 1093337 | Great Britain |
| Grant # GR 3062805 | Greece |
| IT | Italy |
| MXPA02003861 | Mexico |
| NZ518685 | New Zealand |

Common law trademarks:

- PHASE8
- HYDROXYCUT MAX!
- AMINOMAX

Copyright registrations and applications for copyright registrations: NIL

Industrial designs/registered designs and applications for registered designs: NIL

**EXHIBIT A TO GSA**

**FORM OF SUPPLEMENT**
**TO**
**GENERAL SECURITY AGREEMENT**

**TO**:  Name:        HSBC BANK CANADA, as administrative agent
       Address:      70 York Street, Toronto, ON M5J 1S9
       Attention:    Agency Administrator
       Facsimile:    647-788-2185
       E-mail:       cacmbagency2@hsbc.ca

**RECITALS:**

A.      Reference is made to the General Security Agreement (the "**Security Agreement**") dated as of December 21, 2016 entered into by Xiwang Iovate Health Science International Inc. in favour of the Agent (for its own benefit and for the benefit of the other Secured Parties).

B.      Capitalized terms used but not otherwise defined in this Supplement have the respective meanings given to such terms in the Security Agreement, including the definitions of terms incorporated in the Security Agreement by reference to other agreements.

C.      Section 35 of the Security Agreement provides that additional Persons may from time to time after the date of the Security Agreement become Debtors under the Security Agreement by executing and delivering to the Agent a supplemental agreement to the Security Agreement in the form of this Supplement.

D.      The undersigned (the "**New Debtor**") has agreed to become a Debtor under the Security Agreement by executing and delivering this Supplement to the Agent.

For good and valuable consideration, the receipt and adequacy of which are acknowledged by the New Debtor, the New Debtor agrees with and in favour of the Agent (for its own benefit and for the benefit of the Secured Parties) as follows:

1.      The New Debtor has received a copy of, and has reviewed, the Security Agreement and is executing and delivering this Supplement to the Agent pursuant to Section 35 of the Security Agreement.

2.      Effective from and after the date this Supplement is executed and delivered to the Agent by the New Debtor:

       (a)      the New Debtor shall be, and shall be deemed for all purposes to be, a Debtor under the Security Agreement with the same force and effect, and subject to the same agreements, representations, indemnities, liabilities, obligations and Security Interests, as if the New Debtor had been, as of the date of this Supplement, an original signatory to the Security Agreement as a Debtor; and

*Iovate GSA*

(b)     all Collateral of the New Debtor shall be subject to the Security Interests granted by the New Debtor as security for the due payment and performance of the Liabilities of the New Debtor in accordance with the provisions of the Security Agreement.

In furtherance of the foregoing, the New Debtor, as general and continuing collateral security for the due payment and performance of its Secured Liabilities, pledges, mortgages, charges and assigns (by way of security) to the Agent (for its own benefit and for the benefit of the other Secured Parties), and grants to the Agent (for its own benefit and for the benefit of the other Secured Parties) a security interest in, the Collateral of the New Debtor.   The terms and provisions of the Security Agreement are incorporated by reference in this Supplement.

3.      The New Debtor represents and warrants to the Agent (for its own benefit and for the benefit of the other Secured Parties) that each of the representations and warranties made or deemed to have been made by it under the Security Agreement as a Debtor are true and correct on the date of this Supplement.

4.      All of the information set out in Schedule A to this Supplement with respect to the New Debtor is accurate and complete as of the date of this Supplement.

5.      Upon this Supplement bearing the signature of any Person claiming to have authority to bind the New Debtor coming into the possession of the Agent, this Supplement and the Security Agreement shall be deemed to be finally and irrevocably executed and delivered by, and be effective and binding on, and enforceable against, the New Debtor free from any promise or condition affecting or limiting the liabilities of the New Debtor.   No statement, representation, agreement or promise by any officer, employee or agent of the Agent or any Secured Party, unless expressly set forth in this Supplement, forms any part of this Supplement or has induced the New Debtor to enter into this Supplement and the Security Agreement or in any way affects any of the agreements, obligations or liabilities of the New Debtor under this Supplement and the Security Agreement.

6.      Delivery of an executed signature page to this Supplement by the New Debtor by facsimile or other electronic transmission shall be as effective as delivery by the New Debtor of a manually executed copy of this Supplement by the New Debtor.

7.      This Supplement shall be governed by and construed in accordance with the laws of the Province of Ontario, and the laws of Canada applicable therein.

8.      This Supplement and the Security Agreement shall be binding upon the New Debtor and its successors.  The New Debtor shall not assign its rights and obligations under this Supplement or the Security Agreement, or any of its rights or obligations in this Supplement or the Security Agreement.

Dated:          **[MONTH] [DAY], [YEAR]**

                                                            **[NEW DEBTOR]**

                                                            By: _____
                                                                    Name:
                                                                    Title:

*Iovate GSA*

## SCHEDULE A TO GSA

## <u>DEBTOR INFORMATION</u>

**Full legal name:**

**Prior names:**

**Predecessor companies:**

**Jurisdiction of incorporation or organization:**

**Address of chief executive office:**

**Jurisdictions in which business is carried on or tangible Personal Property is kept:**

**Addresses of all owned real property:**

**Addresses of all leased real property:**

**Description of all "serial number" goods (i.e. motor vehicles, trailers, aircraft, boats and outboard motors for boats) having a Fair Market Value exceeding U.S. $100,000:**

**Description of all material Permits:**

**Subsidiaries of New Debtor:**

**Instruments, Documents of Title and Chattel Paper of the Debtor having a Fair Market Value exceeding U.S. $100,000,000:**

**Pledged Certificated Securities:**

| Pledged Issuer | Securities Owned | % of issued and outstanding Securities of Pledged Issuer | Security Certificate Numbers | Security Certificate Location |
|---|---|---|---|---|
| [SUBCO] | [100 common shares] | [100%] | [C-1] | [Toronto] |
|  |  |  |  |  |

*Iovate GSA*

**Pledged Securities Accounts:**

| Pledged Securities Intermediary | Securities Account Number | Pledged Securities Intermediary's Jurisdiction | Pledged Security Entitlements |
|---|---|---|---|
| **[BROKERAGE HOUSE]** | **[NUMBER]** | **[Ontario]** | **[100 common shares of [COMPANY]]** |
| | | | |

**Pledged Uncertificated Securities:**

| Pledged Issuer | Pledged Issuer's Jurisdiction | Securities Owned | % of issued and outstanding Securities of Pledged Issuer |
|---|---|---|---|
| **[LIMITED PARTNERSHIP]** | **[Ontario]** | **[100 limited partnership units]** | **[50% of all limited partnership interests]** |
| | | | |

**Pledged Futures Accounts:**

| Pledged Futures Intermediary | Futures Account Number | Pledged Futures Intermediary's Jurisdiction | Pledged Futures Contracts |
|---|---|---|---|
| **[BROKERAGE HOUSE]** | **[NUMBER]** | **[Ontario]** | ***[Brief description of Contract]*** |
| | | | |

**Registered trade-marks and applications for trademark registrations:**

| *Country* | *Trade-mark* | *Application No.* | *Application Date* | *Registration No.* | *Registration Date* | *Licensed to or by Debtor*[1] |
|---|---|---|---|---|---|---|
| | | | | | | **[Y/N]** |
| | | | | | | |

---

[1]  If the answer to this or any corresponding column is "yes", describe the particulars of each such licence.

*Iovate GSA*

**Patents and patent applications:**

| Country | Title | Patent No. | Application Date | Date of Grant | Licensed to or by Debtor |
|---------|-------|-----------|------------------|---------------|--------------------------|
|         |       |           |                  |               | [Y/N]                    |
|         |       |           |                  |               |                          |

**Copyright registrations and applications for copyright registrations:**

| Country | Work | Application No. | Application Date | Registration No. | Licensed to or by Debtor |
|---------|------|-----------------|------------------|------------------|--------------------------|
|         |      |                 |                  |                  | [Y/N]                    |
|         |      |                 |                  |                  |                          |

**Industrial designs/registered designs and applications for registered designs:**

| Country | Design | Application No. | Application Date | Registration No. | Issue Date | Licensed to or by Debtor |
|---------|--------|-----------------|------------------|------------------|------------|--------------------------|
|         |        |                 |                  |                  |            | [Y/N]                    |
|         |        |                 |                  |                  |            |                          |

*Iovate GSA*