**MILBANK LLP**
Alexander B. Lees
Michael T. Frieda
55 Hudson Yards
New York, NY 10001-2163
Phone: (212) 530-5000
Fax: (212) 530-5219
Email: alees@milbank.com
         mfrieda@milbank.com

*Counsel to Royal Bank of Canada*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| IOVATE HEALTH SCIENCES INTERNATIONAL INC., *et al.*, | Case No. 25-11958 (MG) |
| | (Jointly Administered) |
| Debtors in a Foreign Proceeding.[1] | |

### ROYAL BANK OF CANADA'S STATEMENT IN SUPPORT
### OF MOTION FOR RECOGNITION AND RELATED RELIEF

Royal Bank of Canada ("<u>RBC</u>" or the "<u>Agent</u>") submits this statement in support of the

Recognition Motion submitted by the Foreign Representative in the above-captioned chapter 15

cases. Capitalized terms not defined herein have the same meanings as in the Foreign

Representative's *Supplemental Brief in Support of Motion for (I) Recognition of Foreign Main*

*Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15*

*of the Bankruptcy Code*. In support hereof, the Agent respectfully states as follows.

---

[1] The Debtors in the Canadian Proceeding, along with the last four digits of each Debtors' United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A., Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909) (collectively, the "Debtors").

### PRELIMINARY STATEMENT

1.     The Court should enter the Amended Proposed Order, including provisions requiring that the Walmart Receivable be turned over to the Foreign Representative for use in the Debtors' restructuring in Canada. The Walmart Receivable is part of the collateral package supporting upwards of $ 114.6 million in loans that were extended to Iovate by a consortium of lenders in 2016, and for which RBC acts as administrative agent. Those loans have been in default since at least July 2024, and RBC and the Lenders elected to address this problem by forbearing from enforcement and allowing Iovate to continue as a going concern. They believed then that this was the best way to maximize their recoveries. They still hold this view now that Iovate is restructuring in Canada and subject to these chapter 15 cases. RBC therefore supports release of the Walmart Receivable to the Foreign Representative, since the alternative would deprive the company of the liquidity it needs to complete its reorganization.

2.     While it ordinarily would be uncontroversial for a due-and-owing debt to be turned over to a foreign representative, the Amended Proposed Order contains explicit language about the Walmart Receivable. RBC believes that this language is necessary in light of inappropriate pre-bankruptcy attempts by a judgment creditor to "skip the line" and obtain possession of that asset at the expense of other creditors, especially RBC and the Lenders. Specifically, a competitor of Iovate called Orgain sought to garnish the Walmart Receivable in Arkansas court as a means of collecting on a judgment obtained in California in 2024. Orgain was well aware of the Agent's security interest, and it knew that even if it succeeded in garnishing the funds, it would have to turn the money over to the Agent. Yet it pursued garnishment to try to deprive its competitor of much-needed liquidity. RBC attempted to intervene in the Arkansas action to protect its property interest, but it was not allowed to do so before the bankruptcy process commenced, at which time the Arkansas case was stayed and eventually dismissed.

3.    There is no basis to deny the Foreign Representative access to the Walmart Receivable. At most, Orgain has a judgment lien—not title to or possession of the funds. And that lien is unquestionably junior to the first-priority security interest held by RBC, which was perfected nearly a decade before the judgment was entered. The Foreign Representative has demonstrated that the business urgently needs the funds to complete its restructuring, and that the Bankruptcy Code authorizes the Court to order release of the funds. Meanwhile, Orgain can raise whatever rights it thinks it may have on account of its subordinate judgment in the Canadian Proceeding, which should be recognized as the Debtors' foreign main proceeding.

### **BACKGROUND**

4.    RBC is the administrative agent for the Lenders to Iovate Health Sciences International and Iovate Health Sciences Internal U.S.A., Inc. (collectively, "Iovate") under a credit agreement (as supplemented, amended and restated, or otherwise modified from time to time, the "Credit Agreement") and a contemporaneous security agreement (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "Security Agreement," and together with the Credit Agreement, the "Loan Documents"). Under the Loan Documents, the Agent acquired for the benefit of the Lenders a first-priority lien on substantially all assets of Iovate (the "Collateral"). The Collateral includes, among other things, Iovate's accounts receivable and their proceeds.

5.    The Agent's security interest in the Collateral was perfected as early as December 19, 2016, through UCC-1 financing statements filed in multiple jurisdictions. Each UCC-1 designated that the collateral included "All Assets." The Agent's first-priority security interest in Iovate's assets remains valid and perfected today.

6.    No later than July 8, 2024, Iovate had violated at least three covenants in the Credit Agreement. These breaches resulted in events of default that gave RBC an immediate right to

possess the Collateral. The Agent and the Lenders refrained from taking immediate possession of the Collateral, however, and instead worked constructively with Iovate in an effort to maximize the value of the business. Over the past fifteen months, RBC and the Lenders have been actively and continuously trying to address the defaults, including through extensive discussions with Iovate. The Lenders and RBC made a determination that liquidating the Collateral would destroy value, while allowing Iovate to continue operating its business as a going concern would maximize recoveries. As such, on September 24, 2024, Iovate entered into a heavily negotiated forbearance agreement with RBC (the "Forbearance Agreement").

7.    On November 17, 2024, Orgain obtained a judgment against Iovate in the action captioned *Orgain, Inc. v. Iovate Health Sciences International, Inc.*, 8:18-cv-01253-JLS-ADS, in the United States District Court of the Central District of California. Orgain then sought to enforce that judgment by sending notices of levy to some of Iovate's wholesale customers—each an account debtor of Iovate, including Walmart and Amazon. Iovate successfully moved to quash the notices of levy in California.

8.    On April 30, 2025, RBC issued a reservation of rights letter to Iovate conveying that as a result of Orgain's conduct, the Forbearance Agreement had terminated and RBC and the Lenders "are now in a position to enforce all of their rights and remedies." The letter reserved all rights and remedies of the Agent and Lenders, "including without limitation the right to take enforcement steps against the Credit Parties and all property subject to the Security Documents, without further notice."

9.    On May 1, 2025, counsel for RBC sent a letter notifying Orgain of its prior perfected lien on Iovate's assets and demanding that Orgain refrain from judgment enforcement efforts that would interfere with the Agent's superior rights in the Collateral, including efforts to garnish

Iovate's accounts receivable. Orgain never responded to that correspondence.

10. Rather, in disregard of RBC's rights, Orgain filed the judgment it obtained in California with the Circuit Court of Benton County, Arkansas, commencing *Orgain, Inc. v. Iovate Health Sciences International, Inc.*, Case No. 04CV-25-1607 (Benton County Cir. Ct.). Orgain also filed a writ of garnishment directed at Walmart. The writ of garnishment sought to redirect Iovate's accounts receivable from Walmart to Orgain, thus trying to deprive Iovate of liquidity and interfere with the Agent's and Lenders chosen path of maximizing value—namely, allowing Iovate to continue operating. As a direct result of Orgain's actions, Walmart has withheld more than $21.6 million that is presently due and owing to Iovate.

11. Iovate filed an emergency motion to quash the writ of garnishment. RBC attempted to intervene in the Arkansas case to protect its interest in the Collateral. On August 13, 2025, RBC submitted a motion to intervene, attaching a supporting declaration from its Senior Director of Special Loans & Advisory Services, as well as copies of an amended Credit Agreement, the Security Agreement, UCC-1 financing statements, and the correspondence with Orgain dated May 1, 2025. RBC also attached a proposed motion to quash Orgain's writ of garnishment, which it indicated it would prosecute upon being made a party. On August 22, 2025, RBC submitted further briefing opposing garnishment, with additional accompanying evidence.

12. The Court held a hearing on Iovate's emergency motion to quash—and only on that motion—on August 25, 2025. Though RBC had counsel present and sought an opportunity to speak, RBC was not permitted to participate in the hearing. The Arkansas court denied Iovate's emergency motion but went on to say that the Walmart Receivable "will sit where it is" until a court determines "how to release the money and to whom." On August 27, 2025, Orgain responded to RBC's motion to intervene; and on September 8, 2025, RBC submitted a reply in further support

of its motion to intervene.

13.  On August 27, 2025, the Agent delivered to the Debtors letters identifying the occurrence of several events of default under the Credit Agreement, as well as notices of intention to enforce security under the law of Canada. Through those letters, the Agent accelerated the loans, demanding immediate repayment of the outstanding indebtedness under the Credit Agreement.

14.  On September 9, 2025, Iovate commenced the Canadian Proceeding, and the Foreign Representative then sought recognition under chapter 15 of the Bankruptcy Code, along with related relief such as a stay of process against Iovate's property in the United States. This Court granted interim relief on September 10, 2025, which stayed the Arkansas case and prompted filings of suggestions of bankruptcy there. On September 25, 2025, the Arkansas court entered an order closing the case pending resolution of the bankruptcy proceedings. RBC's motion to intervene and proposed motion to quash were never adjudicated.

## ARGUMENT

15.  RBC supports entry of the proposed order granting recognition, including provisions requiring the release of the Walmart Receivable to the Foreign Representative. There is no factual dispute that the Agent holds a first-priority security interest in all the Debtors' assets. Since the Debtors first defaulted, the Agent has had the option to take immediate possession of the Collateral. *See* UCC § 9-609(a) ("After default, a secured party . . . [m]ay take possession of the collateral."). But it instead has engaged with the Debtors to ensure that Iovate's business could continue as a going concern. This was a deliberate and conscientious choice to maximize the Lenders' recoveries as the senior creditors of the Debtors. In this context, the Agent long has been of the view that the Walmart Receivable should be released to Iovate so it can be used to preserve the business. It continues to hold that view now that Iovate is restructuring in Canada and requires liquidity to complete the process.

16.    Orgain is a judgment creditor of Iovate. At most, Orgain holds a lien by operation of the writ of garnishment issued in Arkansas. But a lien does not confer title. *See In re Brown*, 22 B.R. 844, 848 (Bankr. N.D.N.Y. 1982) ("[i]t is well settled law that a lien, although a charge upon property, confers no general right of property or title upon the (lien)holder.") (internal citation and quotation omitted); 75 N.Y. Jur. 2d Liens § 5 ("A lien, while a charge upon property, confers no general right of property or title upon the holder."). No principle of law—in Arkansas or anywhere else—provides Orgain with ownership of the Walmart Receivable. To the contrary, after Iovate's emergency motion to quash was denied in the Arkansas action, the court expressly ruled that the Walmart Receivable would "sit where it is" pending further proceedings—presumably, proceedings in which RBC would have the opportunity to prove the priority of its security interest. The Arkansas court never held those further proceedings, however. While RBC's motion to intervene was pending, the Arkansas case was stayed as a result of Iovate's bankruptcy filing and this Court's order, and the action was dismissed.

17.    Whatever lien Orgain may have obtained is indisputably junior the security interest held by the Agent. The Lenders' perfected security interest arose nearly a decade before Orgain obtained its judgment. It is black-letter law that "the holder of a perfected security interest takes priority over a subsequent lien creditor under the general [commercial] code principle that gives priority to the earliest perfected security interest." *Sperry Corp. v. Farm Implement, Inc.*, 760 F.2d 196, 198 (8th Cir. 1985) (applying Arkansas law). The "well established rule" in Arkansas, as elsewhere, "is that the priority of liens is generally determined by the maxim, first-in-time, first-in-right." *Searcy Farm Supply, LLC v. Merchs. & Planters Bank*, 256 S.W.3d 496, 501 (Ark. 2007); *see also, e.g.*, *Niedermeier v. Cent. Prod. Credit Ass'n*, 777 S.W.2d 210, 211 (Ark. 1989) ("[t]he first in time, first in right rule prevails" when determining the priority of conflicting

security interests.).

18.   Through the Arkansas action, as well as similar actions filed in Washington and Delaware, Orgain improperly tried to get ahead of RBC and the Lenders. It did so despite having actual notice of the Agent's earlier perfected security interest in the Collateral.

19.   Denying the Foreign Representative access to the funds held by Walmart would be a lose-lose-lose proposition. The Debtors' and their estates would lose because Iovate would be deprived of much-needed liquidity, thus jeopardizing its ability to engage in a value-maximizing workout. The Lenders, as the senior stakeholders, would lose because their Collateral would deteriorate in value, and they and would be denied the chance to pursue their preferred course for maximizing recoveries. And Orgain would lose, too. Even if it succeeded in redirecting the funds to itself, it would not get to keep the money. Instead, the Agent would "trace and recapture" the money from Orgain, leaving the judgment creditor with nothing except litigation expenses that could have been avoided. *See, e.g.*, *Navient Sols., LLC v. BPG Office Partners XIII Iron Hill LLC*, 315 A.3d 1164, 1180-82 (Del. Super. Ct. 2024) (collecting authority and recognizing the right of a prior perfected secured party to trace and recapture funds that were redirected to a later-in-time judgment lien creditor through garnishment); *Davis v. F.W. Fin. Servs., Inc.*, 317 P.3d 916, 925-27 (Or. App. 2013) (allowing senior secured creditor to trace and recapture identifiable proceeds of debtor's accounts receivable that were directed to a junior judgment creditor through garnishment); *Legacy Bank v. Fab Tech Drilling Equip., Inc.*, 566 S.W.3d 922, 930-31 (Tex. Ct. App. 2018) (same).

20.   Given this dynamic, it is not difficult to infer that any attempt by Orgain to resist release of the Walmart Receivable to the Foreign Representative must be driven by ulterior motives. Orgain is a direct competitor that would benefit from seeing Iovate go out of business

rather than reorganize. This is not a proper basis to withhold funds from the business that are owed to it, and which its senior creditors prefer to see dedicated to a value-maximizing restructuring process.

21.  If Orgain believes it has any rights to the Walmart Receivable, releasing the funds to Iovate will not cause it prejudice. Orgain can apply to the Canadian Court for whatever relief or protection it thinks it is entitled to receive. RBC will demonstrate then that Orgain has nothing more than an out-of-the-money junior lien; but that is an issue for another day.

## **CONCLUSION**

For these reasons, and the reasons in the foreign representative's submissions, RBC respectfully requests that the Court enter the Amended Proposed Order.

Dated: October 8, 2025
New York, New York

**MILBANK LLP**

*/s/  Alexander B. Lees*
Alexander B. Lees
Michael T. Frieda
55 Hudson Yards
New York, NY 10001-2163
Phone: (212) 530-5000
Fax: (212) 530-5219
Email: alees@milbank.com
mfrieda@milbank.com

*Counsel to Royal Bank of Canada*