Steven W. Golden
Jeffrey M. Dine
Mary F. Caloway (admitted *pro hac vice*)
Victoria A. Newmark (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IOVATE HEALTH SCIENCES INTERNATIONAL INC.,[1] *et al.*<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-11958 (MG)<br><br>(Jointly Administered) |

**DECLARATION OF HARVEY G. CHAITON IN SUPPORT OF (I) FOREIGN REPRESENTATIVE'S (I) MOTION TO (A) AMEND ORDER RECOGNIZING FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1517(D) AND 1522(C), AND (B) RECOGNIZE AND ENFORCE THE INITIAL CCAA ORDER; AND (II) NOTICE OF SUBSTANTIAL CHANGE IN STATUS OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. § 1518**

I, Harvey G. Chaiton, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury of the laws of the United States of America that the following is true and correct:

1.      I am over the age of 18, a citizen of Canada, and, if called upon, could testify to all matters set forth in this declaration, except as otherwise provided herein. I hereby submit this declaration in support of the *Foreign Representative's (I) Motion to (A) Amend Order Recognizing*

---

[1] The Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A., Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909).

*Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517(d) and 1522(c), and (B) Recognize and Enforce the Initial CCAA Order; and (II) Notice of Substantial Change in Status of Foreign Main Proceeding Pursuant to 11 U.S.C. § 1518* (the "Motion to Amend") filed concurrently herewith[2].

2.  I am a partner of Chaitons LLP and have practiced exclusively in the area of bankruptcy, insolvency, and restructuring law, including cross-border insolvency proceedings, for more than 40 years.

A.  **Commencement of NOI Proceeding and CCAA Motion**

3.  On September 5, 2025, Iovate International, Iovate Health Sciences U.S.A. Inc. ("Iovate US"), and Northern Innovations Holding Corp. ("Northern Innovations" and, together with Iovate International and Iovate US, the "Chapter 15 Debtors") each commenced proceedings (the "NOI Proceeding") before the Canadian Court pursuant to section 50.4 of Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3) (the "BIA").

4.  KSV Restructuring Inc. ("KSV") was appointed as the Debtors' proposal trustee (the "Proposal Trustee"). That same date, the Office of Superintendent of Bankruptcy Canada issued for each Chapter 15 Debtor a *Certificate of Filing of a Notice of Intention to Make a Proposal Subsection 50.4* (the "Certificates of Filing") that commenced the NOI Proceeding with respect to each Chapter 15 Debtor, which were jointly administered pursuant to the Foreign Representative Order (as defined below). The Canadian Court File Number for the NOI Proceeding was BK-25-03268936-0031.

5.  On September 9, 2025, the Canadian Court granted an Order (the "Foreign Representative Order"), *inter alia*, (a) approving the administrative consolidation of the NOI Proceeding, (b) authorizing Iovate International to act as a foreign representative for the Chapter

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given them in the Motion to Amend.

15 Debtors, and (c) authorizing the Foreign Representative to apply to the United States Bankruptcy Court for relief pursuant to chapter 15 of the Bankruptcy Code with respect to the Chapter 15 Debtors.

6. On October 30, 2025, the Chapter 15 Debtors, together with Xiwang Iovate Holdings Company Limited ("Xiwang Iovate"), and Iovate Health Sciences Australia Pty Ltd ("Iovate Australia", and together with Xiwang Iovate and the Chapter 15 Debtors, the "Canadian Debtors"), filed a *Notice of Motion* (the "CCAA Motion")[3] in the Canadian Court requesting, *inter alia*, that the NOI Proceeding be taken up and continued under the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 (the "CCAA") to permit the Canadian Debtors to preserve their going concern value and maximize value for the benefit of their stakeholders, including by returning before the Canadian Court to seek an order approving a sale and investment solicitation process to pursue a going concern transaction.

B.  **Continuation of NOI Proceeding under the CCAA/Overview of CCAA Restructuring Process**

7. Section 11.6(a) of the CCAA expressly authorizes the continuation of NOI Proceedings under the CCAA. On a motion to continue an NOI proceeding under the CCAA, Canadian courts consider whether: (a) the debtor has filed a proposal under the BIA; (b) the proposed continuation is consistent with the purposes of the CCAA; and (c) the debtor has provided the Court with the information that would otherwise form part of an initial CCAA application under section 10(2) of the CCAA.[4]

---

[3] A true and correct copy of the CCAA Motion is attached hereto as **Exhibit A**.
[4] (Re) Clothing for Modern Times Ltd., 2011 ONSC 7522 at para 9; In the Matter of The Body Shop Canada Limited, 2024 ONSC 3882 at para 10 [*Body Shop*]; *In the Matter of a Plan of Compromise or Arrangement of Joriki Topco Inc. and Joriki Inc.*, 2025 ONSC 704 at para 15 [*Joriki*]; *Re Earth Boring Co. Ltd.*, 2025 ONSC 2422 at para 21 [*Earth Boring*].

8. The CCAA process begins when a company files an initial application—often on an *ex parte* basis—with the court in the jurisdiction where the company's headquarters or principal place of business is situated for protection under the CCAA. The initial application must, *inter alia*, be accompanied by: (a) projected weekly cash flow statements; (b) a statement regarding the preparation of the cash-flow statements; and (c) copies of all audited or unaudited financial statements prepared during the year prior to the application or, if no such statements were prepared in that year, a copy of the most recent such statement. *See* CCAA at 10(2).

9. Upon the filing of the initial application, the court may enter an order staying all proceedings and actions against the company and its property. This stay period may subsequently, from time to time, be extended by the CCAA court for such period of time as the CCAA court deems appropriate in the context of the company's restructuring process.

10. The Initial CCAA Order may also include, among other things, (a) authority to disclaim certain contracts; (b) a prohibition on the payment of prefiling obligations, subject to certain permitted exceptions; (c) authority to pay any outstanding wages, salaries, employee and pension benefits, as well as other entitlements and expenses; (d) authority to pay certain taxes; and (e) a prohibition on sales over a certain monetary threshold outside the ordinary course of business without court approval. *See* CCAA at 11.09(2).

11. Prior to 2009, there was an on-going debate over whether creditor protection under the CCAA was appropriate to allow for an orderly liquidation of a debtor company. In 2009, the CCAA was amended to include, *inter alia*, statutory rights in favor of debtor companies to sell their assets outside of the ordinary course of business and outside of a CCAA plan. Accordingly, since then, Canadian courts have come to accept that the business and assets of an insolvent company can be sold under the CCAA free and clear of any lien, security, charge, or other

restriction, without the need to file a CCAA plan. The CCAA now allows a debtor to dispose of all or substantially all of its assets outside of the ordinary course of business without the formal approval of its creditors, provided it obtains prior authorization from the court. In deciding whether to authorize the proposed sale of assets, the CCAA stipulates that the CCAA court is to consider, among other things:

    a. whether the process leading to the proposed sale or disposition was reasonable under the circumstances;

    b. whether the CCAA monitor has approved the process leading to the proposed sale or disposition;

    c. whether the CCAA monitor filed with the CCAA court a report stating that in its opinion, the sale or disposition would be more beneficial to the creditors than a sale or disposition under a bankruptcy;

    d. the extent to which the creditors were consulted;

    e. the effects of the proposed sale or disposition on the creditors and other interested parties; and

    f. whether the consideration to be received for the assets is reasonable and fair, taking into account their market value.

12. These criteria are largely based on the principles which were previously enunciated by the Ontario Court of Appeal in the *Soundair* matter,[5] in which the court listed the following non-exhaustive criteria to examine in order to determine whether a sale of assets of an insolvent debtor should be approved:[6]

    a. whether sufficient effort has been made to obtain the best price and that the debtor has not acted improvidently;

    b. the interests of all parties;

    c. the efficacy and integrity of the process by which offers have been

---

[5] *Royal Bank of Canada v. Soundair Corp.* (1991), 4 O.R. (3d) 1 (C.A.).
[6] Depending on the terms of a transaction (for example, if the transaction involves third-party releases or a reverse vesting structure), additional factors may be relevant to the court's consideration.

obtained; and

d.  whether there has been unfairness in the working out of the process.

13. If the required test is met, the court will typically issue an approval and vesting order authorizing the transfer of the assets on a free and clear basis (other than assumed/permitted encumbrances). The order will also provide that creditor claims will have the same priority against the proceeds of the transaction that they had against the assets, prior to the sale.

14. It should be noted that court authorization will be granted only if the CCAA court is satisfied that the company can and will pay for any unpaid wages or pension plan contributions that would have been required if the court had approved a proposal or a plan of arrangement and compromise, as applicable. It should also be noted that if the sale transaction ultimately presented to the court for approval is with a related party, certain additional requirements must be met.

15. While, as mentioned, the sale of assets of a debtor company does not require the formal approval of its creditors, the CCAA requires that a notice of motion to the CCAA court for the approval of the sale or disposition of assets be given by the debtor to all of its secured creditors who are likely to be affected by the proposed sale or disposition. Likewise, the Canadian Debtors intend to seek CCAA court approval of procedures to govern a sale process.

C.  **Commencement of the CCAA Proceeding**

16. On October 31, 2025 (the "Canadian Conversion Date"), the Canadian Court granted the CCAA Motion and issued an order (the "Initial CCAA Order")[7] that, among other things, converted the Chapter 15 Debtors' NOI Proceeding to a proceeding (the "CCAA Proceeding") under the CCAA.[8] The Canadian Proceeding remains before the same Canadian Court as the CCAA Proceeding as the NOI Proceeding.

---

[7] A true and correct copy of the Initial CCAA Order is attached hereto as **Exhibit B**.
[8] Initial CCAA Order at ¶¶ 4, 7.

17. In addition, pursuant to the Initial CCAA Order, among other things:

   (a) the Canadian Court file number for the NOI Proceeding (BK-25-03268936-0031) remains the Canadian Court file number for the CCAA Proceeding;[9]

   (b) KSV, the Proposal Trustee in the NOI Proceeding, is the Monitor in the CCAA Proceeding;[10]

   (c) the Canadian Court extended the stay entered in the NOI Proceeding with respect to the "current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situated, and including all proceeds thereof" with respect to Muscletech LLC ("Muscletech"), XP Sports LLC ("XP Sports"), and Simplevita Nutrition LLC ("Simplevita" and, together with Muscletech and XP Sports, the "US Non-Debtor Stay Parties");[11]

   (d) Iovate International remains the Foreign Representative of the Chapter 15 Debtors and was in addition named the Foreign Representative of Xiwang Iovate and Iovate Australia;[12] and

   (e) the Chapter 15 Debtors remain in possession of their assets, undertakings, and operations in the CCAA Proceeding as they did in the NOI Proceeding.

18. The only substantive change to the Canadian Proceeding (as to the Chapter 15 Debtors) is the applicable statutory scheme. Whereas the NOI Proceeding was governed by the BIA, the CCAA Proceeding is governed by the CCAA.

19. To the best of my information and belief, the CCAA Proceeding is a collective judicial proceeding under Canadian law relating to the adjustment of debt of the Chapter 15 Debtors in which the purpose is a corporate restructuring.

20. To the best of my information and belief, and as identified in the Fourth Parris Declaration filed contemporaneously herewith, other than these Chapter 15 Cases, the CCAA Proceeding is the only proceeding related to the adjustment of debts pending for the Chapter 15

---

[9] Initial CCAA Order at ¶ 4.
[10] Initial CCAA Order at ¶¶ 29 – 37.
[11] Initial CCAA Order at ¶ 19.
[12] Initial CCAA Order at ¶ 48.

Debtors and, therefore, are the only "foreign proceedings" with respect to the Chapter 15 Debtors within the meaning of section 101(23) of the Bankruptcy Code.

21. In addition, the Initial CCAA Order expressly requests that courts in the United States recognize the CCAA Proceeding to aid and assist the Canadian Court in carrying out the terms of the Initial CCAA Order:

> **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant foreign representative status to Iovate International in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.
>
> **THIS COURT ORDERS** that Iovate International be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that Iovate International is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.[13]

22. I believe the modification of the recognition of the continued Canadian Proceeding will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the CCAA Proceeding under the supervision of the Canadian Court.

*[Remainder of page intentionally left blank]*

---

[13] *Id.* at ¶¶ 52-53.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: November 5, 2025
Toronto, Ontario, Canada

                                                */s/ Harvey G. Chaiton*
                                                Harvey G. Chaiton