<u>**Exhibit A**</u>

**Amended and Restated Initial Order**

Court File No. BK-25-03268936-0031

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | **)** | FRIDAY, THE 28TH |
| | **)** | |
| JUSTICE CAVANAGH | **)** | DAY OF NOVEMBER, 2025 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF XIWANG IOVATE HOLDINGS COMPANY LIMITED, IOVATE HEALTH SCIENCES INTERNATIONAL INC., IOVATE HEALTH SCIENCES U.S.A. INC., IOVATE HEALTH SCIENCES AUSTRALIA PTY LTD, and NORTHERN INNOVATIONS HOLDING CORP.**

Applicants

**AMENDED AND RESTATED INITIAL ORDER**

**THIS MOTION**, made by the Applicants, including to continue the proposal proceedings commenced by Iovate Health Sciences International Inc. ("**Iovate International**"), Iovate Health Sciences U.S.A. Inc. ("**Iovate USA**"), and Northern Innovations Holding Corp. ("**Northern Innovations**", together with Iovate International and Iovate USA, the "**NOI Applicants**") by the separate filing of a notice of intention to make a proposal under the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "**BIA**") each bearing court file no. BK-25-03268936-0031 and court/estate file nos. 31-3268936, 31-3268942 and 31-3268971, respectively (collectively, the "**Proposal Proceedings**") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day by videoconference via Zoom.

**ON READING** the affidavit of Wesley Parris sworn October 29, 2025 and the Exhibits thereto (the "**Parris Affidavit**"), the Fourth Report of KSV Restructuring Inc. ("**KSV**"), in its

capacity as proposal trustee in the Proposal Proceedings (the "**Proposal Trustee**") and the Report of KSV, in its capacity as proposed monitor (the "**Monitor**") of the Applicants dated October 30, 2025 (the "**Joint Report**"), the affidavit of Wesley Parris sworn November 19, 2025, the First Report of KSV in its capacity as Monitor dated November 25, 2025 (the "**First Report**"), the Supplement to the First Report dated November 27, 2025 (the "**Supplemental Report**") and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicants and the additional parties listed in Schedule "A" hereto (collectively, the "**Non-Applicant Stay Parties**" and together with the Applicants, the "**Iovate Group**"), counsel for the proposed Monitor, counsel for Royal Bank of Canada as agent for a syndicate of lenders, and such other parties listed on the Counsel Slip, and on reading the consent of KSV to act as the Monitor,

## SERVICE AND DEFINITIONS

1.      **THIS COURT ORDERS** that the time for service and filing of the Notice of Motion, Notice of Application and the Motion Record is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that capitalized terms used in this Order but not otherwise defined herein shall have the meanings ascribed to them in the Parris Affidavit.

## CONTINUANCE UNDER THE CCAA

3.      **THIS COURT ORDERS AND DECLARES** that each of the Applicants is a company to which the CCAA applies.

4.      **THIS COURT ORDERS** that the Proposal Proceedings (bearing court file no. BK-25-03268936-0031) are hereby taken up and continued under the CCAA and that, as of the date of this Order, the provisions of Part III of the BIA shall have no further application to Iovate International, Iovate USA, and Northern Innovations, provided that: (a) any and all steps, agreements and procedures validly taken, done or entered into by the NOI Applicants or the Proposal Trustee during the Proposal Proceedings shall remain valid and binding; (b) nothing herein shall affect, vary, derogate from, limit or amend, and KSV shall continue to have the benefit of, any and all of the rights, approvals and protections in favour of the Proposal Trustee at law or

pursuant to the BIA or otherwise; (c) the existing court file no. BK-25-03268936-0031 shall be the court file in respect of the Applicants' proceedings under the CCAA (the "**CCAA Proceedings**") and all further materials in the CCAA Proceedings shall be filed with the Commercial List Office in court file no. BK-25-03268936-0031; and (d) the continuation of the Proposal Proceedings under the CCAA are not intended to vary or otherwise modify the protections to these proceedings extended in the Orders of Judge Glenn in the Chapter 15 Proceedings dated September 10, 2025, September 19, 2025, and October 28, 2025.

5.      **THIS COURT ORDERS** that, notwithstanding Section 50.4(8) of the BIA, the NOI Applicants shall not be deemed to have made an assignment in bankruptcy as a result of not having filed a proposal with the Official Receiver.

6.      **THIS COURT ORDERS** that KSV may take all necessary steps in furtherance of its discharge as Proposal Trustee in the Proposal Proceedings, including the taxation of its fees and disbursements and those of its counsel, in the within CCAA proceedings.

**RECOGNITION OF PREVIOUS ORDERS**

7.      **THIS COURT ORDERS** that the Order of Justice Dietrich dated September 9, 2025, the Order of Justice Conway dated October 3, 2025, and the Order of Justice Black dated October 17, 2025 (collectively, the "**NOI Orders**"), and the authorizations, rights, protections and other relief granted thereunder shall continue in full force and effect in the within proceedings, *mutatis mutandis*. Without limiting the generality of the foregoing:

(a)     all references to the Court in the NOI Orders for the period from and after the date hereof shall be construed so as to refer to the Court in these proceedings;

(b)     all references to the Proposal Trustee and the Iovate Entities or NOI Applicants in the NOI Orders for the period from and after the date hereof shall be construed so as to refer to the Monitor and the Applicants, respectively; and

(c)     all references to the Foreign Representative in the NOI Orders for the period from and after the date hereof shall be construed so as to refer to Iovate International, being the Foreign Representative in these proceedings.

**POSSESSION OF PROPERTY AND OPERATIONS**

8.      **THIS COURT ORDERS** that the Applicants shall remain in possession and control of their respective current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**").  Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and the Property. The Applicants are authorized and empowered to continue to retain and employ the employees, consultants, contractors, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

9.      **THIS COURT ORDERS** that the Applicants shall be entitled to continue to utilize the central cash management system currently in place as described in the Parris Affidavit or, with the consent of the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank or credit union providing the Cash Management System shall: (i) not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, (ii) shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and (iii) shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under any plan of compromise or arrangement (a "**Plan**") with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

10.     **THIS COURT ORDERS** that the Applicants, in accordance with the cash flow forecast appended to the Joint Report (the "**Cash Flow Forecast**"), as such cash flow forecast may be amended by the Applicants with the approval of the Monitor and Lenders, shall be entitled but not required to pay the following expenses whether incurred prior to, on, or after the date of this Order:

(a)     all outstanding and future wages, salaries, employee and pension benefits, vacation pay, and employee expenses (including, without limitation, in respect of expenses charged by employees to corporate credit cards) payable prior to, on, or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements, and all other payroll and benefits processing expenses; and

(b)     the fees and disbursements of any Assistants retained or employed by any of the Applicants in respect of these proceedings, at their standard rates and charges.

11.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the NOI Applicants shall be entitled but not required to pay all reasonable expenses incurred by the NOI Applicants in carrying on the NOI Applicants' business in the ordinary course on, or after September 5, 2025 (the "**NOI Filing Date**"), and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the NOI Applicants' property or business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services; and

(b)     payment for goods or services actually supplied to any of the NOI Applicants on or following the NOI Filing Date.

12.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, Xiwang Iovate Holdings Company Limited ("**Xiwang Iovate**") and Iovate Health Sciences Australia PTY Ltd. ("**Iovate Australia**") shall be entitled but not required to pay all reasonable expenses incurred by Xiwang Iovate and Iovate Australia in carrying on Xiwang Iovate and Iovate Australia's business in the ordinary course on, or after the date of this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of Xiwang Iovate and Iovate Australia's property or business including, without

limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services; and

(b)     payment for goods or services actually supplied to any of Xiwang Iovate or Iovate Australia on or following the date of this Order.

13.     **THIS COURT ORDERS** that the Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance; (ii) Canada Pension Plan; (iii) income taxes; and (iv) all other amounts related to such deductions or employee wages payable for periods following the NOI Filing Date pursuant to the *Income Tax Act*, the *Canada Pension Plan*, the *Employment Insurance Act* or similar provincial statutes that are of a kind that could be subject to a demand under the statutory provisions specified in subsections 6(3)(a) through 6(3)(c) of the CCAA;

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by any of the Applicants in connection with the sale of goods and services by any of the Applicants, but only where: (i) for the NOI Applicants, such Sales Taxes are accrued or collected after the NOI Filing Date, or where such Sales Taxes were accrued or collected prior to the NOI Filing Date but not required to be remitted until on or after the NOI Filing Date; and (ii) for Xiwang Iovate and Iovate Australia, such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which

are attributable to or in respect of the carrying on of the Business by any of the Applicants, whether in Canada, the United States, or another jurisdiction.

14.    **THIS COURT ORDERS** that until a real property lease is disclaimed in accordance with the CCAA, the applicable Applicant shall pay, without duplication, all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the applicable Applicant and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, monthly on the first day of each month, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

15.    **THIS COURT ORDERS** that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court, subject to paragraph 16 herein: (i) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the Applicants to any of their creditors as of this date; (ii) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; and (iii) to not grant credit or incur liabilities except in the ordinary course of the Applicants' Business.

16.    **THIS COURT ORDERS** that the Applicants are hereby authorized, but not directed, to make payments of interest to the Lenders in respect of the Credit Agreement.

**RESTRUCTURING**

17.    **THIS COURT ORDERS** that each Applicant shall, subject to such requirements as are imposed by the CCAA, have the right to:

(a)    permanently or temporarily cease, downsize or shut down any of its business or operations, and to dispose of redundant or non-material assets not exceeding CAD250,000 in any one transaction or CAD1,000,000 in the aggregate;

(b)    disclaim such of its arrangements or agreements of any nature whatsoever with whomever, whether oral or written, as such Applicant deems appropriate, in accordance with Section 32 of the CCAA; and

(c)    terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

## NO PROCEEDINGS AGAINST THE IOVATE GROUP, THEIR BUSINESS OR THEIR RESPECTIVE PROPERTY

18.    **THIS COURT ORDERS** that until and including January 30, 2026, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**", and collectively, "**Proceedings**"), including any garnishment enforcement steps previously initiated prior to the date of this Order by any Person (each, a "**Garnishor**") on such other Person that is in respect of the Applicants' Business or Property, shall be commenced or continued against or in respect of the Applicants or the Monitor or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of any of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

19.    **THIS COURT ORDERS** that during the Stay Period, no Proceedings shall be commenced or continued against or in respect of any of the Non-Applicant Stay Parties or affecting any of the Non-Applicant Stay Parties' current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, and including all proceeds thereof (collectively, the "**Non-Applicant Stay Parties' Property**") except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of any of the Non-Applicant Stay Parties or affecting the Non-Applicant Stay Parties' Property or the Non-Applicant Stay Parties' business are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

20.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental unit, body or agency, Garnishor, or any

other entities (all of the foregoing, collectively being **"Persons"** and each being a **"Person"**) against or in respect of any of the Applicants or the Monitor or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall: (i) empower any of the Applicants to carry on any business which such entity is not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a security interest; or (iv) prevent the registration of a claim for lien.

21.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any Person against or in respect of the Non-Applicant Stay Parties or affecting the Non-Applicant Stay Parties' property and the Non-Applicant Stay Parties' business, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall: (i) empower any of the Non-Applicant Stay Parties to carry on any business which they are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a security interest; or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

22.    **THIS COURT ORDERS** that during the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour or renew, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the Applicants or the Non-Applicant Stay Parties, except with the prior written consent of the Applicants and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

23.    **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements or arrangements with any of the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, cash management services, payroll services, benefit services, accounting services, insurance, transportation services,

warehouse and logistics services, utility or other services to any of the Applicants or the Business, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by any of the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and the applicable Applicant and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

24.    **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to any of the Applicants.  Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

25.    **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of any of the Applicants (the "**Directors and Officers**") with respect to any claim against the Directors or Officers that arose before the date hereof and that relates to any obligations of any of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as Directors or Officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

26.    **THIS COURT ORDERS** that the Applicants shall indemnify the Directors and Officers against obligations and liabilities that they may incur as a Director or Officer of any of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any Director or Officer, the obligation or liability was incurred as a result of such Director's or Officer's gross negligence or wilful misconduct (the "**D&O Indemnity**").

27.    **THIS COURT ORDERS** that the Directors and Officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of CAD1,310,000, unless permitted by further Order of this Court, as security for the D&O Indemnity provided in paragraph 26 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 44 and 46 herein.

28.    **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary: (i) no insurer or indemnitor shall be entitled to be subrogated to or claim the benefit of the Directors' Charge; and (ii) the Applicants' Directors and Officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 26 of this Order.

**APPOINTMENT OF SALES AGENT**

29.    **THIS COURT ORDERS** that the Monitor is hereby authorized, *nunc pro tunc* and following the date of this Order, to the exclusion of all others (including the Applicants and their respective officers and directors) to: (a) negotiate and execute, on behalf of the Applicants, the engagement letter dated November 11, 2025 (the "**Engagement Letter**"), engaging Origin Merchant Partners (the "**Sales Agent**") as independent financial advisor and sales agent to the Applicants; (b) cause the Applicants to perform their obligations under the Engagement Letter; and (c) perform such other functions and duties, and enter into any agreements or incur any obligations on behalf of and in the name of the Applicants, as may be necessary or incidental to the negotiation, execution and performance of the Engagement Letter by the Applicants. Without limiting the statutory and Court-ordered protections and limitation of liability afforded to the Monitor and its counsel in these CCAA Proceedings, or otherwise at law, the Monitor and its

counsel shall have no liability to the Lenders or any other person in its capacity as Monitor, or in its personal or corporate capacity, for any actions taken pursuant to this paragraph 29, save and except for any gross negligence or wilful misconduct on its part.

30.    **THIS COURT ORDERS** that the Engagement Letter and the retention of the Sales Agent pursuant to the terms thereof is ratified and approved, *nunc pro tunc,* and the Applicants are authorized and directed to make the payments contemplated thereunder in accordance with the terms and conditions of the Engagement Letter.

31.    **THIS COURT ORDERS** that the Sales Agent shall be entitled to the benefit of and is hereby granted a charge (the "**Sales Agent Charge**") on the Property, which shall not exceed CAD1,750,000 to secure the Transaction Fee (as defined in the Engagement Letter) and the Sales Agents' expenses under the Engagement Letter. The Sales Agent Charge shall have the priority set out in paragraphs 44 to 46 herein.

32.    **THIS COURT ORDERS** that all claims of the Sales Agent pursuant to the Engagement Letter may not be compromised pursuant to a plan of compromise or arrangement under the *Companies' Creditors Arrangement Act* (a "**Plan**") and shall be treated as unaffected in any Plan, any proposal under the *Bankruptcy and Insolvency Act* or any other restructuring and no such Plan, proposal or restructuring shall be approved that does not provided for the payment of all amounts due to the Sales Agent pursuant to the Engagement Letter.

33.    **THIS COURT ORDERS** that the Sales Agent, its affiliates, partners, directors, employees, agents and controlling persons (the "**Sales Agent Parties**") shall incur no liability with respect to any and all losses, claims, damages or liabilities, of any nature or kind whatsoever, to any person in connection with or as a result of its engagement by the Applicants, save and except to the extent that any court of competent jurisdiction, in a final judgment and in a proceeding in which the Sales Agent is named as a party, determines that such losses, claims, damages or liabilities were caused by or resulted from the gross negligence or wilful misconduct of the Sales Agent Parties.

34.    **THIS COURT ORDERS** that Confidential Appendix "1" to the First Report is hereby sealed and shall not form part of the public record, subject to further order of this Court.

**APPOINTMENT OF MONITOR**

35.     **THIS COURT ORDERS** that KSV is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

36.     **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Applicants' receipts and disbursements;

(b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)     advise the Applicants in their preparation of the Applicants' cash flow statements;

(d)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(e)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(f)     assist the Foreign Representative (as defined in the Parris Affidavit) and its legal counsel as may be required to give effect to the terms of this Order; and

(g)     perform such other duties as are required by this Order or by this Court from time to time.

37.    **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or the Property, or any part thereof.

38.    **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

39.    **THIS COURT ORDERS** that that the Monitor shall provide any creditor of the Applicants with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

40.    **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the Monitor under the CCAA or as an officer of this Court, neither the Monitor nor its directors, officers, employees, counsel and other representatives acting in such capacities shall incur any liability or obligation as a result of the Monitor's appointment or the carrying out by it of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part.

Nothing in this Order shall derogate from the protections afforded to the Monitor by the CCAA or any applicable legislation.

41.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor and counsel to the Applicants shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on, or subsequent to the date of this Order, by the Applicants as part of the costs of these proceedings.  The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a bi-weekly basis or on such other terms as the parties may agree.

42.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

43.    **THIS COURT ORDERS** that FTI Consulting in its capacity as financial advisor to the Lenders, and Blake, Cassels & Graydon LLP, in its capacity as legal counsel to the Lenders shall be included in the definition of Administrative Professionals that benefit from the Administrative Professionals Charge, and the Administrative Professionals Charge shall have the priority set out in paragraphs 44 and 46 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

44.    **THIS COURT ORDERS** that the priorities of the Directors' Charge, the Administrative Professionals Charge, and the Sales Agent Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administrative Professionals Charge (to the maximum amount of CAD750,000);
>
> Second – Directors' Charge (to the maximum amount of CAD1,310,000); and
>
> Third – Sales Agent Charge (to the maximum amount of CAD1,750,000).

45.    **THIS COURT ORDERS** that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered,

recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

46.    **THIS COURT ORDERS** that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts (including deemed trusts), liens, charges and encumbrances, and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person notwithstanding the order of perfection or attachment.

47.    **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court on notice to parties in interest, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges unless the Applicants also obtain the prior written consent of the Monitor and the beneficiaries of the applicable Charges, or further Order of this Court.

48.    **THIS COURT ORDERS** that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by: (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)    the creation of the Charges shall not create or be deemed to constitute a breach by any of the Applicants of any Agreement to which any of them is a party;

(b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting the creation of the Charges; and

(c)    the payments made by the Applicants pursuant to this Order, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

49.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the applicable Applicant's interest in such real property leases.

**SERVICE AND NOTICE**

50.    **THIS COURT ORDERS** that the Monitor shall: (i) without delay, publish in *The Globe and Mail,* National Edition, a notice containing the information prescribed under the CCAA; and (ii) within five (5) days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, or cause to be sent, in the prescribed manner, a notice to every known creditor who has a claim against any of the Applicants of more than CAD1,000 (excluding individual employees, and former employees), and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder; provided that the Monitor shall not be required to make the claims, names and addresses of individuals who are creditors publicly available unless otherwise ordered by this Court.

51.    **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/) shall be valid and effective service.  Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission.  This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: https://www.ksvadvisory.com/experience/case/Iovate (the "**Website**").

52.    **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol or CCAA is not practicable, the Applicants and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by pre-paid ordinary mail, courier, personal delivery, facsimile transmission or electronic message (including e-mail) to the Applicants' creditors or other interested parties at their respective addresses or email addresses as last shown on the records of the Applicants and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date forwarding thereof, or if sent by ordinary mail, on  the third business day after mailing.

53.    **THIS COURT ORDERS** that, subject to further Order of this Court in respect of urgent motions, any interested party wishing to object to the relief sought in a motion brought by the Applicants or the Monitor in these CCAA proceedings shall, subject to further Order of this Court, provide the service list in these proceedings (the "**Service List**") with responding motion materials or a written notice (including by e-mail) stating its objection to the motion and the grounds for such objection by no later than 5:00 p.m. (Toronto Time) on the date that is two (2) business days prior to the date such motion is returnable (the "**Objection Deadline**"). The Monitor shall have the ability to extend the Objection Deadline after consulting with the Applicants.

**FOREIGN PROCEEDINGS**

54.    **THIS COURT ORDERS** that the Order of Justice Dietrich dated September 9, 2025, is expanded such that Iovate International is hereby authorized and empowered to:

(a)    act as the foreign representative (in such capacity, the "**Foreign Representative**") of the Applicants in respect of the within proceeding for the purpose of having this proceeding recognized and approved in a jurisdiction outside of Canada; and

(b)    continue to act as a foreign representative of the Applicants, including apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code* and any other provisions of the United States Bankruptcy Code, in the Chapter 15 Proceedings.

**GENERAL**

55.    **THIS COURT ORDERS** that any interested party that wishes to amend or vary this Order shall be entitled to appear or bring a motion before this Court to vary or amend this order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

56.    **THIS COURT ORDERS** that, notwithstanding paragraph 55 of this Order, each of the Applicants or the Monitor may, from time to time, apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of their respective powers and duties under this Order or in the interpretation of this Order hereunder.

57.    **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

58.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant foreign representative status to Iovate International in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

59.    **THIS COURT ORDERS** that Iovate International be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that Iovate International is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

60.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01
a.m. (Toronto Time) on the date of this Order without the need for entry or filing.

_____

_____

## SCHEDULE "A"
## NON-APPLICANT STAY PARTIES

Infinity Insurance Co. Ltd.

Iovate Health Sciences Europe Limited

Muscletech LLC

XP Sports LLC

Simplevita Nutrition LLC

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF XIWANG IOVATE HOLDINGS COMPANY LIMITED, IOVATE HEALTH SCIENCES INTERNATIONAL INC., IOVATE HEALTH SCIENCES U.S.A. INC., IOVATE HEALTH SCIENCES AUSTRALIA PTY LTD, and NORTHERN INNOVATIONS HOLDING CORP.

Court File No: BK-25-03268936-0031

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>PROCEEDING COMMENCED AT TORONTO |
|  | **AMENDED AND RESTATED INITIAL ORDER** |
|  | **CHAITONS LLP**<br>Barristers and Solicitors<br>5000 Yonge Street, 10th Floor<br>Toronto, ON  M2N 7E9<br><br>**Harvey Chaiton (LSO No. 21592F)**<br>Tel:     (416) 218-1129<br>E-mail: harvey@chaitons.com<br><br>**Danish Afroz (LSO No. 65786B)**<br>Tel:     (416) 218-1137<br>E-mail: dafroz@chaitons.com<br><br>*Lawyers for the Applicants* |