# Exhibit A

## Approval and Reverse Vesting Order

4898-8675-4978.1 42848.00001

Electronically issued / Délivré par voie électronique : 16-Apr-2026          Court File No./N° du dossier du greffe: BK-25-03268936-0031
Superior Court of Justice<del>25-11058-mg</del>  Doc 99-1  Filed 04/17/26    Entered 04/17/26 09:16:18    Exhibit A
                                                        Pg 2 of 18



Court File No. BK-25-03268936-0031

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE | ) | THURSDAY, THE 16TH |
| | ) | |
| JUSTICE CAVANAGH | ) | DAY OF APRIL, 2026 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF XIWANG IOVATE HOLDINGS COMPANY LIMITED, IOVATE HEALTH SCIENCES INTERNATIONAL INC., IOVATE HEALTH SCIENCES U.S.A. INC., IOVATE HEALTH SCIENCES AUSTRALIA PTY LTD, and NORTHERN INNOVATIONS HOLDING CORP.**

Applicants

### APPROVAL AND REVERSE VESTING ORDER

**THIS MOTION**, made by KSV Restructuring Inc. ("**KSV**") in its capacity as Court-Appointed Monitor of the Applicants (in such capacity, the "**Monitor**"), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), for an order, *inter alia*, (a) approving the Subscription Agreement (the "**Subscription Agreement**") among Xiwang Iovate Holdings Company Limited (the "**Company**") and 1001542267 Ontario Inc. (the "**Purchaser**") dated as of April 2, 2026,  a redacted copy of which is attached as Appendix "A" to the Fourth Report (as defined below), and the transactions contemplated thereby (the "**Transactions**"), (b) adding 2807727 Alberta Ltd. ("**Residual Co.**") as an Applicant to these CCAA proceedings, (c) transferring and vesting all of the Principal Entities' right, title and interest in and to the Excluded Assets, the Excluded Contracts and the Excluded Liabilities (each as defined in the Subscription Agreement) in and to Residual Co., (d) releasing and discharging the Retained Assets of all Claims and Encumbrances other than the Retained Liabilities and Permitted Encumbrances (each as defined in the Subscription Agreement), (e) authorizing and directing the Company to file the Articles of Amendment, (f) terminating and cancelling all Existing Shares (as defined in the Subscription Agreement), for no consideration, (g) authorizing and directing the

- 2 -

Company to issue the Purchased Shares to the Purchaser free and clear of any Encumbrances, (h) releasing the Principal Entities and the Non-Applicant Stay Parties from the purview of the ARIO and all other Orders of this Court granted in respect of these CCAA Proceedings, and (i) granting certain related relief, was heard this day by videoconference in Toronto, Ontario.

**ON READING** the Fourth Report of KSV in its capacity as Monitor, dated April 9, 2026 (the "**Fourth Report**"), and on hearing the submissions of counsel for the Monitor, the Purchaser, the Royal Bank of Canada as agent for the syndicate of lenders (the "**Administrative Agent**") and such other counsel that were present and wished to be heard, no one else appearing although duly served as appears from the affidavit of service of Laura Culleton, filed:

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINED TERMS**

2.      **THIS COURT ORDERS** that all capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Subscription Agreement.

**APPROVAL AND VESTING**

3.      **THIS COURT ORDERS** that the Subscription Agreement and the Transactions (including the Closing Sequence) are hereby approved and the execution of the Subscription Agreement by the Company is authorized and approved, with such amendments as the parties thereto may deem necessary or appropriate, with the approval of the Monitor. The Principal Entities are hereby authorized and empowered to perform their respective obligations under the Subscription Agreement and any agreements contemplated thereunder and any ancillary documents related thereto and to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transactions.

4.      **THIS COURT ORDERS** that the Company is hereby permitted to execute and file notices of alteration, articles of amendment, amalgamation, continuance or reorganization or such other

documents or instruments as may be required to permit or enable and effect the Closing Sequence, and that such articles, documents or other instruments shall be deemed to be duly authorized, valid and effective notwithstanding any requirement under federal or provincial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required under corporate law to effect the Closing Sequence.

5.     **THIS COURT ORDERS** that this Order shall constitute the only authorization required by the Principal Entities to proceed with the Transaction, and that no shareholder, director, or other consent or approvals shall be required in connection therewith.

6.     **THIS COURT ORDERS** that the Registrar of Companies appointed pursuant to the *Business Corporations Act* (British Columbia) be and is hereby authorized and directed to accept and receive any articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Closing Sequence contemplated by the Subscription Agreement, filed by either the Principal Entities or Residual Co., as the case may be.

7.     **THIS COURT ORDERS** that, upon the delivery of the Monitor's certificate (the "**Monitor's Certificate**") to the Purchaser in accordance with the Subscription Agreement (the "**Effective Time**"), substantially in the form attached as **Schedule "A"** hereto, the following shall occur and shall be deemed to have occurred at the Effective Time in the following sequence:

(a)     first, the Purchaser shall pay the Closing Payment to the Monitor, to be held in escrow by the Monitor on behalf of the Purchaser and released in accordance with the Closing Sequence;

(b)     second, Residual Co. shall be added as an Applicant in these CCAA Proceedings pursuant to paragraph 20 hereof;

(c)     third, the following shall occur, and shall be deemed to occur, concurrently:

(i)     all of the Principal Entities' right, title and interest in and to the Excluded Assets (other than the Excluded Contracts, the Deposit and the Closing Payment) shall vest absolutely and exclusively in Residual Co., and any and all Claims and Encumbrances shall continue to attach to such Excluded

- 4 -

Assets with the same nature and priority as they had immediately prior to the transfer; and

(ii)     all Excluded Contracts and Excluded Liabilities shall be transferred to, and vest absolutely and exclusively in, Residual Co., such that the Excluded Contracts and Excluded Liabilities shall become obligations of Residual Co. and shall no longer be obligations of the Principal Entities, as applicable, and (i) all applicable Claims and Encumbrances will continue to attach to the Excluded Contracts with the same nature and priority as they had immediately prior to the transfer, and (ii) each of the Principal Entities and the Retained Assets shall be and are hereby forever released, expunged and discharged from the Excluded Contracts and Excluded Liabilities, and any and all Claims and Encumbrances (excluding, for greater certainty, the Retained Liabilities and Permitted Encumbrances) in connection therewith or affecting or relating to the Principal Entities and the Retained Assets shall be and are hereby forever released, expunged and discharged as against each of them and the Retained Assets;

(d)     fourth, the following shall occur, and shall be deemed to occur, concurrently:

(i)     the Company shall file the Articles of Amendment, and all Existing Shares as well as any agreement, contract, plan, indenture, deed, certificate, subscription right, conversion right, pre-emptive right, option (including stock options or share purchase or equivalent plans) or other document or instrument governing or having been created or granted in connection with the share capital of the Company (other than the rights of the Purchaser under the Subscription Agreement) shall be deemed to be terminated and cancelled for no consideration in accordance with and pursuant to this Order;

(ii)     the Company shall issue the Purchased Shares to the Purchaser and the Purchaser shall subscribe for and purchase the Purchased Shares, which shall represent 100% of the Equity Interests of the Company immediately after Closing, and all of the Company's right, title and interest in and to the

- 5 -

Purchased Shares shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise); and

(iii)    the Deposit and the Closing Payment will be released from escrow.

(e)    fifth, the Principal Entities and the Non-Applicant Stay Parties, shall be deemed to be released from the purview of the ARIO and all other Orders of this Court granted in respect of these CCAA Proceedings, save and except for this Order the provisions of which (as they relate to the Purchased Entities and the Non-Applicant Stay Parties) shall continue to apply in all respects. For greater certainty, Residual Co. shall remain an Applicant in these CCAA Proceedings in accordance with and subject to the terms of this Order.

8.    **THIS COURT ORDERS** that, upon presentation of the required form with a true copy of this Order and the Monitor's Certificate, the registrars under the *Personal Property Security Act* (Ontario)*,* or under similar legislation in any applicable jurisdiction are hereby authorized and directed to cancel, discharge, delete and expunge all instruments and registrations made, registered or published against or in respect of the Principal Entities, the Retained Assets, and the Purchased Shares, in respect of any applicable Claims or Encumbrances other than the Permitted Encumbrances.

9.    **THIS COURT ORDERS** that, upon presentation of the required form with a true copy of this Order and the Monitor's Certificate, the Registrar of Trademarks under the *Trademarks Act* (Canada), the Commissioner of Patents under the *Patent Act* (Canada), and any other applicable office responsible for the registration of trademarks, patents, copyrights and industrial designs of the Principal Entities in any applicable jurisdiction are hereby authorized and directed to cancel, discharge, delete and expunge all security interests recorded at the Canadian Intellectual Property Office, United States Patent and Trademark Office or any other registry responsible for registration in respect of the intellectual property applications and registrations of the Principal Entities, but excluding the Permitted Encumbrances.

- 6 -

10.     **THIS COURT ORDERS AND DIRECTS** the Monitor to file with the Court a copy of the Monitor's Certificate and deliver a copy of the Monitor's Certificate to the Service List, in each case, forthwith after delivery thereof in connection with the Transactions.

11.     **THIS COURT ORDERS** that the Monitor may rely on written notice from the Company and the Purchaser (which notice may be by email from counsel to the Company and the Purchaser) regarding the satisfaction or waiver of the conditions to closing under the Subscription Agreement and shall have no liability with respect to delivery of the Monitor's Certificate.

12.     **THIS COURT ORDERS** that all Claims and Encumbrances released, expunged and discharged as against the Principal Entities, the Retained Assets, and the Purchased Shares, pursuant to paragraph 7 hereof shall attach to the Excluded Contracts and Excluded Assets with the same nature and priority as they had immediately prior to the Transactions, as if the Transactions had not occurred.

13.     **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, as amended, the Principal Entities or the Monitor, as the case may be, are authorized, permitted and directed to, at the Effective Time, disclose to the Purchaser all human resources and payroll information in the Principal Entities' records pertaining to past or current employees of the Principal Entities. The Purchaser shall maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner that is in all material respects identical to the prior use of such information by the Principal Entities.

14.     **THIS COURT ORDERS** that, except to the extent expressly contemplated by the Subscription Agreement, all Retained Contracts will be and remain in full force and effect upon and following delivery of the Monitor's Certificate and no individual, firm, corporation, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

(a)   any event that occurred on or prior to the Effective Time and is not continuing that would have entitled such Person to enforce those rights or remedies (including any defaults or events of default arising as a result of the insolvency of any Principal Entity);

(b)   the insolvency of any Principal Entity or the fact that the Principal Entities sought or obtained relief under the CCAA or pursuant to chapter 15 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York;

(c)   any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations or other steps taken or effected pursuant to the Subscription Agreement, the Transactions or the provisions of this Order, or any other Order of the Court in these CCAA proceedings or the Chapter 15 Proceedings; or

(d)   any transfer or assignment, or any change of control of the Principal Entities arising from the implementation of the Subscription Agreement, the Transactions or the provisions of this Order.

15.   **THIS COURT ORDERS** that (a) nothing in this Order shall waive, compromise or discharge any obligations of the Principal Entities or the Purchaser in respect of any Retained Liabilities; (b) the designation of any Claim as a Retained Liability is without prejudice to the Principal Entities' right to dispute the existence, validity or quantum of any such Retained Liability; and (c) nothing in this Order or the Subscription Agreement shall affect or waive the Principal Entities' rights and defences, both legal and equitable, with respect to any Retained Liability, including, but not limited to, all rights with respect to entitlements to set-offs or recoupments against such Retained Liability.

16.   **THIS COURT ORDERS** that from and after the Effective Time, all Persons shall be deemed to have waived any and all defaults of any Principal Entity then existing or previously committed by any Principal Entity, or caused by any Principal Entity, directly or indirectly, or non-compliance with any covenant, warranty, representation, undertaking, positive or negative pledge, term, provision, condition or obligation, expressed or implied, in any contract existing between such Person and the Principal Entities, arising directly or indirectly from the filing by the Principal

Entities under the CCAA and the implementation of the Transaction, including without limitation any of the matters or events listed in paragraph 14 hereof and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith under a Retained Contract shall be deemed to have been rescinded and of no further force or effect; provided that, nothing herein shall be deemed to excuse the Principal Entities from performing their obligations under the Subscription Agreement or the Retained Contracts or be a waiver of defaults by the Principal Entities under the Subscription Agreement and the related documents.

17.     **THIS COURT ORDERS** that from and after the Effective Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, derivatively or otherwise, and including without limitation, any action, suit, demand, enforcement, administrative hearings and orders, declarations and assessments, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Principal Entities, the Retained Assets, or the Purchased Shares which relates in any way to or is in respect of any Excluded Assets, Excluded Contracts or Excluded Liabilities or any other Claims or other matters that are waived, released, expunged or discharged pursuant to this Order.

18.     **THIS COURT ORDERS** that, effective as of the Effective Time, the Purchaser and the Principal Entities shall be deemed released from any and all claims, liabilities (direct, indirect, absolute or contingent) or obligations with respect to any Taxes (including penalties and interest thereon) of, or that relate to, the Principal Entities, provided that, as it relates to the Principal Entities, such release shall not apply to (a) Taxes in respect of the business and operations conducted by the Principal Entities after the Effective Time, or (b) Taxes expressly retained as Retained Liabilities pursuant to the Subscription Agreement.

19.     **THIS COURT ORDERS** that, from and after the Effective Time:

(a)     the nature of the Retained Liabilities retained by the Principal Entities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Transactions or this Order;

- 9 -

(b)     the nature of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to Residual Co.;

(c)     any Person that prior to the Effective Time had a valid right or claim against the Principal Entities under or in respect of any Excluded Asset, Excluded Contract or Excluded Liability (each an "**Excluded Liability Claim**") shall no longer have such right or claim against the Principal Entities or Retained Assets but instead shall have such Excluded Liability Claim against Residual Co. in respect of the Excluded Asset, Excluded Contract or Excluded Liability from and after the Effective Time in its place and stead, and nothing in this Order limits, lessens or extinguishes the Excluded Liability Claim of any Person as against Residual Co.; and

(d)     any Person with an Excluded Liability Claim against Residual Co. following the Effective Time shall have the same rights, priority and entitlement as against Residual Co. as such Person, with an Excluded Liability Claim, had against the Principal Entities prior to the Effective Time.

20.     **THIS COURT ORDERS** that, as of the Effective Time and in the sequence set out in paragraph 7, above:

(a)     Residual Co. shall be a company to which the CCAA applies; and

(b)     Residual Co. shall be added as an Applicant in these CCAA Proceedings and all references in any Order of this Court in respect of these CCAA Proceedings (except the herein order) to (i) an "Applicant" or the "Applicants" shall refer to and include Residual Co., *mutatis mutandis*, (ii) "Property" shall refer to and include the current and future assets, cash, receivables, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof, of Residual Co, and (iii) each of the Charges (as such term is defined in the ARIO) shall constitute charges on the Property of Residual Co.

- 10 -

**MONITOR**

21.     **THIS COURT ORDERS** that nothing in this Order, including the release of the Principal Entities and the Non-Applicant Stay Parties from the purview of these CCAA proceedings pursuant to paragraph 7(e) hereof, and the addition of Residual Co. as an Applicant in these CCAA proceedings, shall affect, vary, derogate from, limit or amend any rights, approvals and protections afforded to the Monitor in these CCAA proceedings and KSV shall continue to have the benefit of any and all rights, approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the ARIO, any other Orders in these CCAA proceedings or otherwise, including all approval, protections and stays of proceedings in favour of KSV in its capacity as Monitor, all of which are expressly continued and confirmed.

22.     **THIS COURT ORDERS** that no action lies against the Monitor by reason of this Order or the performance of any act authorized by this Order, except with leave of the Court following a motion brought on not less than fifteen (15) days' notice to the Monitor and its legal counsel. The entities related or affiliated with the Monitor or belonging to the same group as the Monitor (including, without limitation, any agents, employees, legal counsel or other advisors retained or employed by the Monitor) shall benefit from the protection granted to the Monitor under the present paragraph.

**RELEASES**

23.     **THIS COURT ORDERS** that effective upon Effective Time, (a) the current and former directors, officers, employees, consultants, legal counsel and advisors to Residual Co., (b) the Purchaser and its legal counsel and their respective current directors, officers, partners, employees, consultants, advisors and assignees; (c) Origin Merchant Partners and its current directors, officers, partners, employees, consultants and advisors, and (d) the Monitor and its legal counsel and their respective current directors, officers, partners, employees, consultants and advisors (the Persons listed in (a) - (d) being collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims (including, without limitations, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, duties, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or

- 11 -

unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) arising in connection with or relating to the Subscription Agreement or  consummation or implementation of the Transactions and/or any document, agreement, instrument, matter or transaction involving the Principal Entities arising in connection with or pursuant to the foregoing (collectively, the "**Released Claims**"), which Released Claims are hereby and shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to Residual Co. or to any other entity and are extinguished, provided that, nothing in this paragraph shall waive, discharge, release, cancel or bar (i) any claim that is finally determined by a court of competent jurisdiction to have constituted for fraud or wilful misconduct, (ii) any claim against Residual Co. in respect of the Excluded Assets, Excluded Contracts or Excluded Liabilities transferred pursuant to the Subscription Agreement, (iii) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA, (iv) any Released Party from the performance of its obligations pursuant to the Subscription Agreement, or (v) the Purchaser from any liability or obligation to any Debt Financing Source in relation to Debt Financing provided in connection with the Subscription Agreement and the Transactions.

24.    **THIS COURT ORDERS** that, notwithstanding:

    (a)    the pendency of these proceedings;

    (b)    any application for a bankruptcy order or receivership order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, R.S.C 195, c. B-3, as amended (the "**BIA**") in respect of the Principal Entities or Residual Co. or any of their property and any order issued pursuant to any such application; and

    (c)    any assignment in bankruptcy made in respect of the Principal Entities or Residual Co.,

the Subscription Agreement, the implementation of the Transactions (including without limitation the transfer and vesting of the Excluded Assets, Excluded Contracts and Excluded Liabilities in and to Residual Co. and the transfer and vesting of the Purchased Shares in and to the Purchaser), or payments by or to the Purchaser, the Principal Entities, Residual Co., or the Monitor authorized herein shall be binding on any trustee in bankruptcy or receiver that may be appointed in respect

- 12 -

of the Principal Entities and/or Residual Co. and shall not be void or voidable by creditors of the Principal Entities and/or Residual Co., as applicable, nor shall they constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the CCAA, the BIA or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**STYLE OF CAUSE**

25.     **THIS COURT ORDERS** that, following the Effective Time, the title of these proceedings is hereby changed to:

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF 2807727 ALBERTA LTD.

**SEALING**

26.     **THIS COURT ORDERS** that Confidential Appendix "1" and Confidential Appendix "2" to the Fourth Report are hereby sealed and shall not form part of the public record until the Closing of the Transactions.

**GENERAL**

27.     **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada.

28.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, Australia, Barbados and Ireland to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals and regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign

proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

29.  **THIS COURT ORDERS** that each of Iovate International and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal or regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that each of Iovate International and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.



_____

**SCHEDULE "A"**

**FORM OF MONITOR'S CERTIFICATE**

Court File No. BK-25-03268936-0031

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
XIWANG IOVATE HOLDINGS COMPANY LIMITED, IOVATE HEALTH SCIENCES
INTERNATIONAL INC., IOVATE HEALTH SCIENCES U.S.A. INC., IOVATE
HEALTH SCIENCES AUSTRALIA PTY LTD, and NORTHERN INNOVATIONS
HOLDING CORP.**

Applicants

**MONITOR'S CERTIFICATE**

**RECITALS**

A. On September 5, 2025, Iovate Health Sciences International Inc. ("**Iovate International**"), Iovate Health Sciences U.S.A. Inc. ("**Iovate USA**") and Northern Innovations Holding Corp. ("**Northern Innovations**", and collectively, the "**NOI Applicants**") each filed a Notice of Intention to Make a Proposal in accordance with the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended.

B. Pursuant to the Initial Order of the Honourable Justice Dietrich of the Ontario Superior Court of Justice (Commercial List), (the "**Court**") dated October 31, 2025, as amended and restated on November 28, 2025, the NOI Applicants, Xiwang Iovate Holdings Company Limited and Iovate Health Sciences Australia PTY Ltd. (collectively, the "**Applicants**") were granted protection from their creditors pursuant to the *Companies' Creditors Arrangement Act*, R.S.C.

1985, c. C-36, as amended, and KSV Restructuring Inc. was appointed as the monitor of the Applicants (in such capacity, the "**Monitor**").

C.  Capitalized terms used but not defined herein have the meanings ascribed to them in the Approval and Reverse Vesting Order of this Court dated April 16, 2026 (the "**ARVO**") or the Subscription Agreement among Xiwang Iovate Holdings Company Limited (the "**Company**"), and 1001542267 Ontario Inc. (the "**Purchaser**") dated April 2, 2026 (the "**Subscription Agreement**"), as applicable.

D.  Pursuant to the ARVO, the Court approved the Transactions contemplated by the Subscription Agreement, and ordered, *inter alia*, the (i) adding 2807727 Alberta Ltd. ("**Residual Co.**") as an Applicant to these CCAA proceedings, (ii) transferring and vesting all of the Principal Entities' right, title and interest in and to the Excluded Assets, the Excluded Contracts and the Excluded Liabilities (each as defined in the Subscription Agreement) in and to Residual Co., (iii) releasing and discharging the Retained Assets of all Claims and Encumbrances other than the Retained Liabilities and Permitted Encumbrances (each as defined in the Subscription Agreement), (iv) authorizing and directing the Company to file the Articles of Amendment, (v) terminating and cancelling all Existing Shares (as defined in the Subscription Agreement), for no consideration, (vi) authorizing and directing the Company to issue the Purchased Shares to the Purchaser free and clear of any Encumbrances, and (vii) releasing the Principal Entities and the Non-Applicant Stay Parties from the purview of the ARIO and all other Orders of this Court granted in respect of these CCAA Proceedings, which vesting, releasing, and discharging is, in each case and as applicable, to be effective upon the delivery by the Monitor to the Purchaser of a certificate confirming that the Monitor has received written confirmation in form and substance satisfactory to the Monitor from the Purchaser and the Company that all conditions to closing have been satisfied or waived by the parties to the Subscription Agreement in accordance with the Subscription Agreement and the ARVO.

**THE MONITOR CERTIFIES** the following:

1.    the Monitor has received the entirety of the Purchase Price.

2.      the Monitor has received written confirmation from the Purchaser and the Company, in form and substance satisfactory to the Monitor, that all conditions to closing have been satisfied or waived by the parties to the Subscription Agreement.

This Monitor's Certificate was delivered by the Monitor at _____ on _____, 2026.

**KSV Restructuring Inc., in its capacity as Monitor of the Applicants, and not in its personal or corporate capacity**

Per:      _____

          Name:

          Title:

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF XIWANG IOVATE HOLDINGS COMPANY LIMITED, IOVATE HEALTH SCIENCES INTERNATIONAL INC., IOVATE HEALTH SCIENCES U.S.A. INC., IOVATE HEALTH SCIENCES AUSTRALIA PTY LTD, AND NORTHERN INNOVATIONS HOLDING CORP.**

Court File No. BK-25-03268936-0031

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceeding commenced at: TORONTO |
|  | **APPROVAL AND REVERSE VESTING ORDER** |
|  | **OSLER, HOSKIN & HARCOURT LLP**<br>100 King Street West, 1 First Canadian Place<br>Suite 6200, P.O. Box 50<br>Toronto ON  M5X 1B8<br><br>**Marc Wasserman – LSO# 44066M**<br>Tel:    416.862.4908<br>Email: mwasserman@osler.com<br><br>**Michael DeLellis – LSO# 48038U**<br>Tel:    416.862.5997<br>Email: mdelellis@osler.com<br><br>Lawyers for the Monitor, KSV Restructuring Inc. |