Steven W. Golden
Mary F. Caloway (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IOVATE HEALTH SCIENCES INTERNATIONAL INC.,[1] *et al.*<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-11958 (MG)<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF THE FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN ORDER: (I) RECOGNIZING AND ENFORCING THE APPROVAL AND REVERSE VESTING ORDER; (II) APPROVING THE TRANSFER OF THE DEBTORS' EXCLUDED PROPERTY; AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A. Inc. (3542); and (iii) Northern Innovations Holding Corp. (3909).

Iovate Health Sciences International Inc., in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned foreign debtors in respect of the Canadian Proceeding[2] pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), by and through its undersigned counsel, respectfully submits this reply (the "Reply") in support of the *Foreign Representative's Motion for Entry of an Order: (I) Recognizing and Enforcing the Approval and Reverse Vesting Order; (II) Approving the Transfer of the Debtors' Excluded Property, and (III) Granting Related Relief* [Docket No. 91] (the "Motion") and in response to the limited objection to the Motion [Docket No. 101] (the "Limited Objection") filed by TSI Group Co., Ltd. and certain of its affiliates (collectively, "TSI").  In support of the Reply, the Foreign Representative respectfully states as follows:

## REPLY

1.      In its Limited Objection, TSI—a vendor to and contract counterparty of the Canadian Debtors—essentially raises three issues in opposition to the Motion, none of which are availing.  As detailed below, recognition and enforcement of the Reverse Vesting Order—without any amendment or modification to the contract assumption process contained therein—does not render the Reverse Vesting Order incapable of recognition simply because TSI did not receive notice of the Canadian Motion.[3]  Further, even if TSI should have received notice of the Canadian Motion under Canadian law (which the Foreign Representative denies was required but, in any event, a matter that TSI should address with the Canadian Court, if necessary), it is not subjected to any "undue prejudice" by the Reverse Vesting Order by virtue of the fact that the Purchaser has until two days before the closing of the Transaction to designate (or de-designate) Retained

---

[2]      Capitalized terms used but not defined herein are intended to have the meanings ascribed to them in the Motion.

[3]      As TSI concedes, the Foreign Representative provided notice of the instant Motion to TSI.

Contracts.  Finally, even if TSI was permitted to take discovery in a chapter 15 proceeding, the Court should decline the request—particularly where (as here) TSI has not provided the Foreign Representative or the Court the legal basis for such discovery, much less copies of the actual discovery (or even discovery targets) it seeks to propound.

2.      *First*, TSI states that it was not served with the Canadian Motion by the Canadian Debtors before the Reverse Vesting Order was issued, appearing to argue that such lack of service on it renders recognition of the Reverse Vesting Order in these Chapter 15 Cases contrary to public policy.  While it is true that TSI was not served with the Canadian Motion by the Canadian Debtors, whether, under Canadian law, TSI was entitled to such notice is a matter for the Canadian Court. To the Foreign Representative's knowledge, no United States court has refused to recognize a Canadian court's order under the "public policy exception" of section 1506 on account of a deprivation of due process under Canadian law, which the Foreign Representative denies took place here.  Indeed, as this Court has recognized, "[b]ankruptcy proceedings in Canada [have] time and again [been] found to conform to high standards of due process."[4]  If, as TSI asserts, "a known counterparty with continued postpetition dealings" like TSI "ought to have [been] served"[5] prior to the issuance of the Reverse Vesting Order, that is a matter it should raise with the Canadian Court.[6]

3.      Contrary to TSI's argument, neither of the two cases it cites are "instructive on the present matter."[7]  In *Nexgenesis*, the court declined to enforce an *ex parte* "pre-judgment

---

[4]     *In re Asbestos Corp. Ltd.*, 674 B.R. 855, 874 (Bankr. S.D.N.Y. 2025); *see also In re Sino-Forest Corp.*, 501 B.R. 655, 663 (Bankr. S.D.N.Y. 2013) ("Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process.") (quoting *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010)).

[5]     Limited Objection at ¶ 16.

[6]     To that end, TSI's paragraph of citations to Canadian law and jurisprudence "regarding the adequacy of notice provided to contractual counterparties at approval and vesting order hearings" is best directed to the Canadian Court.  *See* Limited Objection at ¶ 16.

[7]     Limited Objection at ¶ 14.

attachment against *non-debtors' assets* in furtherance of unadjudicated claims for damages against those non-debtors" that was issued in a Brazilian proceeding.[8]  Among other reasons for the court's declining to grant enforcement and comity to such attachment was that, as contemplated by section 1506 of the Bankruptcy Code, the attachment violated two "basic public policies of the United States", neither of which is present here: (a) personal jurisdiction over a party cannot be exercised without demonstrating that party's minimum contacts with the forum; and (b) that U.S. citizens and companies' assets cannot be frozen prior to a judgment on a claim for money damages.[9]

4.       The other case, *Toft*, is even less apposite.  In *Toft*, a German insolvency court issued an *ex parte* order authorizing the insolvency administrator (who was also the foreign representative) to intercept the debtor's postal and electronic mail.[10]  The foreign representative then obtained an *ex parte* order from the English High Court of Justice recognizing and enforcing the German order and then moved in the United States—***also on an* ex parte *basis***—for the same relief.[11]   Describing the requested relief as "a wiretap of [the debtor's] future email correspondence,"[12] Judge Gropper declined to grant recognition to the German court's order because, among other reasons, the relief requested would violate U.S. law and "might subject the Foreign Representative or his U.S. agents and possibly an ISP disclosing the debtor's emails, to U.S. criminal liability."[13]  *Toft* does not stand for the proposition that recognizing and enforcing an order issued *ex parte* by a foreign court falls into the public policy exception of section 1506,

---

[8]       *In re Nexgenesis Holdings Ltda.*, 662 B.R. 406, 413 (Bankr. S.D. Fla. 2024) (emphasis in original).
[9]       *Nexgenesis*, 662 B.R. at 419.
[10]      *In re Toft*, 453 B.R. 186, 188 (Bankr. S.D.N.Y. 2011).
[11]      *Toft*, 453 B.R. at 189.
[12]      *Id.*
[13]      *Id.* at 189.  *See also id.* at 198 ("Here, however, the relief sought by the Foreign Representative is banned under U.S. law, and it would seemingly result in criminal liability under the Wiretap Act and the Privacy Act for those who carried it out. The relief sought would directly compromise privacy rights subject to a comprehensive scheme of statutory protection, available to aliens, built on constitutional safeguards incorporated in the Fourth Amendment as well as the constitutions of many States.").

as TSI appears to argue in the Limited Objection.  Rather, it was the *ex parte* nature of the recognition relief sought ***in the United States*** that Judge Gropper found objectionable.[14]  No such concerns are present here, as evidenced by the notice of the Motion provided to TSI.

5.    ***Second***, TSI argues that it is put at "undue risk" because of the "advance financial outlay from TSI" that is required of it as a vendor, particularly as to "US$800,000 in postpetition orders in production for delivery this summer."[15]  Thus, TSI argues, the Canadian Debtors "should confirm contract assumption (or rejection) and the amount and payment of cure owing to TSI prior to the" hearing on the Motion.[16]  In the first instance, TSI is not bearing any unique risk as compared to any other vendor or contract counterparty because the Canadian Debtors can and will pay any amounts related to the Canadian Debtors' postpetition orders—whether or not the Canadian Debtors' agreements with TSI are Retained Contracts.  Additionally, pursuant to the Subscription Agreement, all Post-Filing Claims are retained by the Principal Entities as Retained Liabilities.

6.    Thus, as with all of the Canadian Debtors' other contract counterparties, the only questions facing TSI are whether their agreements will be Retained Contracts and, if so, whether there is any dispute as to the Cure Cost owing to TSI thereunder.  As to the treatment of any prepetition amounts owing from the Canadian Debtors to TSI, TSI is not entitled to any "greater process and protections than have been provided or are proposed in the RVO."[17]  In fact, there is functionally no difference between the contract designation process contemplated by the Subscription Agreement and Reverse Vesting Order and the process normally used in plenary

---

[14]    *Id.* at 200.
[15]    Limited Objection at ¶ 4.
[16]    *Id.* at ¶ 5.
[17]    *Id.* at ¶ 13.

chapter 11 cases, including chapter 11 cases before this Court.[18] Pursuant to the Subscription

Agreement, as approved by the Reverse Vesting Order, the Purchaser has until two (2) business

days prior to the closing of the Transaction to designate the "Retained Contracts" to be retained by

the Canadian Debtors.[19] All Cure Costs (defined as "the amounts, if any, that are required to cure

any monetary defaults of the Principal Entities under any Retained Contract")[20] are Retained

Liabilities that must therefore be paid by the Canadian Debtors.[21] If there is a dispute as to the

Cure Cost owed to TSI, the Canadian Court will resolve it. And if TSI's agreements with the

Canadian Debtors are determined to be Excluded Contracts, then TSI will hold a claim against

ResidualCo. Accordingly, the Foreign Representative respectfully submits that there is no basis

for this Court to deny recognition and enforcement of the Reverse Vesting Order on this basis—

much less delay such recognition solely on one counterparty's account.[22]

7.      Finally, if TSI does not receive the confirmation of the treatment of its agreements

prior to the hearing on the Motion, it argues that it should be authorized to conduct discovery "so

that TSI can determine Iovate's (and the purchaser's) actual intentions."[23] In support of this

request, TSI relies on *In re Golden Sphinx Ltd.*, Case No. 2:22-bk-14320-NB, 2023 WL 2823391

---

[18]    *See, e.g., In re Publishers Clearing House LLC*, Case No. 25-10694 (MG), Docket No. 177 at ¶ 16 (Bankr. S.D.N.Y. June 30, 2025) (approving assumption and assignment of executory contracts in connection with asset sale and permitting the purchaser to "add or remove any contract from the list of Assigned Contracts" prior to the Closing Date); *In re Hermitage Offshore Svcs. Ltd.*, Case No. 20-11850 (MG), Docket No. 162 at ¶ 16 (Bankr. S.D.N.Y. Oct. 15, 2020) (approving assumption and assignment of executory contracts in connection with asset sale and permitting the purchaser to unilaterally remove any contract from the list of assumed contracts until closing).s

[19]    Subscription Agreement at §§ 1.1(dddd), 2.2(f) and Schedule 1.1(dddd) thereto.

[20]    *Id.* at § 1.1(cc).

[21]    *Id.* at § 2.3(c).

[22]    The Foreign Representative provided notice of the Motion to the Master Service List (which includes all of the United States Debtors' known and potential creditors in the United States) and service of the Motion itself to the Core Notice Parties and all counterparties to the Debtors' executory contracts and unexpired leases who are (x) located in the United States and/or (y) doing business with a United States Debtor. *See* Motion at ¶ 61; *see also* Docket Nos. 98 and 100. TSI was the only party to object to the Motion and no parties informally contacted counsel to the Foreign Representative regarding the Motion.

[23]    Limited Objection at ¶ 15.

4910-2263-5635.3 42848.00001                    5

(Bankr. C.D. Cal. Mar. 31, 2023) for the proposition that "Rule 2004 applies in Chapter 15 cases and that limited discovery may be available to parties other than the foreign representative in certain circumstances."[24]   However, *Golden Sphinx* does not support the relief that TSI seeks; there, Judge Bason noted that the bulk of authority "support[s] the conclusion that Rule 2004 does apply in chapter 15 cases, although generally those holdings have arisen from the foreign representatives' Rule 2004 discovery, not other parties' attempts to use Rule 2004."[25]

8.    In *Golden Sphinx*, while noting that the "Court can conceive of scenarios in which it might be appropriate for a creditor to seek discovery in" a chapter 15 proceeding, the court declined to permit the requesting party to do so.[26]   Judge Bason suggested that such scenarios where chapter 15 discovery could be propounded by a party other than a foreign representative include (a) where the foreign court requested the chapter 15 court oversee a discovery dispute or enforce one of its discovery orders, (b) where the discovery was brought in a contested matter or adversary proceeding (in which case "the Rule 7000 series discovery rules probably would apply, rather than Rule 2004"), or (c) if the party seeking discovery "presents sufficient evidence to suspect the existence of a fraudulent transfer claim that the foreign representatives were wrongfully refusing to pursue."[27]

9.    Assuming any party other than the Foreign Representative is even entitled to obtain discovery in these Chapter 15 Cases, TSI's desire to do so in order to discern the Purchaser's future intentions under the Subscription Agreement is plainly not the "limited circumstance" contemplated by *Golden Sphinx*.   And, even if it was, the Foreign Representative cannot substantively reply to TSI's request to "conduct discovery."   TSI's request was not made by motion

---

[24]    *Id.*
[25]    *Golden Sphinx*, 2023 WL 2823391 at *2 (citing cases).
[26]    *Golden Sphinx*, 2023 WL 2823391 at *3.
[27]    *Id.*

or any other formal means and thus the Foreign Representative does not know the statutory or Bankruptcy Rule basis for the discovery, the form TSI contemplates such discovery to take, nor even the identity of the parties on whom it wishes to serve discovery. "[D]iscovery normally should take place in the foreign main proceeding, because Chapter 15 cases are intended to be ancillary proceedings that do not require bankruptcy courts to adjudicate claims or administer debtors' liquidations."[28]  The Court should thus decline TSI's request to permit it to conduct such discovery here.

## CONCLUSION

10.    For these reasons, the Foreign Representative respectfully requests that the Court (a) grant the relief sought in the Motion; (b) overrule the Limited Objection; and (c) enter the Proposed Order.

Dated: May 4, 2026                    Respectfully submitted,

                              PACHULSKI STANG ZIEHL & JONES LLP


                              By: _/s/ Steven W. Golden_____
                                  Steven W. Golden
                                  Mary F. Caloway (admitted *pro hac vice*)
                                  1700 Broadway, 36th Floor
                                  New York, New York 10019
                                  Telephone: 212-561-7700
                                  Facsimile:  212-561-7777

                              *Counsel to the Foreign Representative*

---

[28]    *Golden Sphinx*, 2023 WL 2823391 at *3.