**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

IOVATE HEALTH SCIENCES
INTERNATIONAL INC.,[1] *et al.*

Debtors in a Foreign
Proceeding.

Chapter 15

Case No. 25-11958 (MG)

(Jointly Administered)

**ORDER GRANTING FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN
ORDER (I) RECOGNIZING AND ENFORCING THE APPROVAL AND
REVERSE VESTING ORDER; (II) APPROVING THE TRANSFER OF THE
DEBTORS' EXCLUDED PROPERTY; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") filed by Iovate Health Sciences International Inc. ("Iovate

International"), in its capacity as the authorized foreign representative (the "Foreign

Representative") of the above-captioned Chapter 15 Debtors (as defined below) in respect of the

Canadian Proceeding (as defined below) pending before the Ontario Superior Court of Justice

(Commercial List) (the "Canadian Court"), for entry of an order (this "Order"): (a) recognizing

and enforcing the *Approval and Reverse Vesting Order* (the "Reverse Vesting Order") entered by

the Canadian Court on April 16, 2026 and attached hereto as Exhibit 1, approving the *Subscription

Agreement*, dated April 2, 2026 (the "Subscription Agreement"), between Xiwang Iovate Holdings

Company Limited ("Iovate Holdings") and 1001542267 Ontario Inc. (the "Purchaser") and the

related transactions contemplated by the Subscription Agreement (the "Transaction"); (b)

approving, under sections 363, 1520, and 1521 of the Bankruptcy Code, the transfer of the Chapter

---

[1]     The Chapter 15 Debtors in the Canadian Proceeding, along with the last four digits of each Debtor's United
States Tax Identification Number or Canadian Business Number, as applicable, are as follows: (i) Iovate
Health Sciences International Inc. (0696); (ii) Iovate Health Sciences U.S.A. Inc. (3542); and (iii) Northern
Innovations Holding Corp. (3909).

15 Debtors' right, title, and interest in and to the Excluded Property[2] to ResidualCo pursuant to the Reverse Vesting Order; and (c) granting related relief; and upon this Court's review and consideration of the Motion, the Goldstein Declaration, and the De Lellis Declaration; and upon a hearing on the Motion (the "Hearing"), and for the reasons set forth on the record at the hearing on the Motion that, *inter alia*, resolved the *Limited Objection, Reservation of Rights, and Request for Related Relief* filed by TSI Group, Ltd. and certain related affiliates, including TSI USA Inc. and Metabolic Technologies, Inc. [ECF No. 101] (the "TSI Response"),

**THE COURT HEREBY FINDS AND DETERMINES THAT:[3]**

A.      On April 16, 2026, the Canadian Court entered the Reverse Vesting Order, approving the Transaction contemplated by the Subscription Agreement and authorizing the Canadian Debtors to take all actions necessary and proper to effectuate the Transaction.

B.      This Court has jurisdiction and authority to hear and determine the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue of these Chapter 15 Cases and the Motion in this Court and this District is proper under 28 U.S.C. § 1410.

C.      Based on the affidavits of service filed with, and the representations made to, this Court: (i) notice of the Motion and the Hearing was proper, timely, adequate, and sufficient under the circumstances of these Chapter 15 Cases and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (ii) no other

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]      The findings and conclusions set forth herein and in the record of the hearing on the Motion constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

or further notice of the Motion, the Hearing, or the entry of this Order is necessary or shall be required.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E.      The relief granted herein is necessary and appropriate, promotes international comity, is consistent with the public policies of the United States, is warranted pursuant to sections 105(a), 363(b), (m), and (n), 1501, 1507, 1520, 1521, and 1522 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.  The interests of the Chapter 15 Debtors, the Chapter 15 Debtors' creditors, and other interested parties are sufficiently protected by the issuance of this Order.

F.      Based on information contained in the Motion, the Goldstein Declaration, the De Lellis Declaration, the Reverse Vesting Order, and the record made at the Hearing, the SISP was non-collusive, duly noticed, and provided a reasonable opportunity for potentially interested parties to make an offer.  The Foreign Representative and the Monitor support the Transaction and have each recommended the transfer of the Excluded Property to ResidualCo in accordance with the Subscription Agreement, and it is appropriate that the Excluded Property be transferred, assigned, and vested in ResidualCo on the terms and subject to the conditions set forth in the Subscription Agreement.

G.      The Chapter 15 Debtors' entry into (if applicable) and performance under the Subscription Agreement and related agreements (i) constitute a sound and reasonable exercise of the Chapter 15 Debtors' business judgment, (ii) provide value and are beneficial to the Chapter 15 Debtors, and are in the best interests of the Chapter 15 Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances.  Business justifications for the transfer of the

Excluded Property include, but are not limited to, the following: (a) the Subscription Agreement constitutes the highest and otherwise best offer received to acquire the Chapter 15 Debtors' assets; (b) the Subscription Agreement presents the best opportunity to maximize the value of the Chapter 15 Debtors on a going-concern basis and avoid devaluation of the Chapter 15 Debtors' assets; (c) unless the transfer of the Excluded Property pursuant to the Subscription Agreement and all of the other transactions contemplated by the Subscription Agreement are concluded expeditiously, as provided for in the Subscription Agreement, recoveries to the Chapter 15 Debtors' creditors may be diminished; and (d) the value received for the Chapter 15 Debtors will be maximized through the Transaction under the Subscription Agreement.  The consideration provided by the Purchaser under the Subscription Agreement constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

H.      The Purchaser is not, and shall not be deemed to be, a mere continuation, and is not holding itself out as a mere continuation, of any of the Chapter 15 Debtors and there is no continuity between the Purchaser and the Chapter 15 Debtors.  The Transaction does not amount to a consolidation, merger, or de facto merger of the Purchaser and any of the Chapter 15 Debtors.

I.      Time is of the essence in consummating the Transaction.  To maximize the value of the Chapter 15 Debtors, it is essential that the Transaction occur and be recognized and enforced in the United States promptly. The Foreign Representative, on behalf of the Chapter 15 Debtors, has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Subscription Agreement. Accordingly, there is cause to waive the stay that would otherwise

be applicable under Bankruptcy Rule 6004(h) and the Transaction can be closed as soon as reasonably practicable upon entry of this Order.

J.        Based upon information contained in the Motion, the Goldstein Declaration, the De Lellis Declaration, and the record made at the Hearing, the Subscription Agreement and the Transaction contemplated therein were negotiated, proposed, and entered into by the Chapter 15 Debtors and the Purchaser in good faith, without collusion and from arms'-length bargaining positions.  The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  None of the Chapter 15 Debtors, the Foreign Representative, the Monitor, or the Purchaser has engaged in any conduct that would cause or permit the Subscription Agreement or the consummation of the Transaction to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

K.        The Subscription Agreement was not entered into for the purpose of hindering, delaying, or defrauding any present or future creditors of the Chapter 15 Debtors.

L.        Enforcement in the United States of the transfer of the Excluded Property from the Chapter 15 Debtors to ResidualCo does not present any public policy conflict or issue concerning protection of the interests of non-Chapter 15 Debtor parties that would prevent this Court from entering this Order.  As of the filing of the Monitor's Certificate in the Canadian Proceeding and the delivery thereof to the Purchaser, the transfer of the Excluded Property that is located within the territorial jurisdiction of the United States from the Chapter 15 Debtors to ResidualCo will be a legal, valid, and effective transfer, and will vest ResidualCo with all right, title, and interest of the Chapter 15 Debtors in and to such Excluded Property.

M.     The total consideration to be provided under the Subscription Agreement reflects the Purchaser's reliance on this Order to provide ResidualCo with title to and possession of the Excluded Property.  The transfer of the Chapter 15 Debtors' rights in and to the Excluded Property to ResidualCo as and to the extent provided in the Reverse Vesting Order is integral to the Subscription Agreement, is in the best interests of the Chapter 15 Debtors, and represents the reasonable exercise of the Chapter 15 Debtors' business judgment.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted in its entirety, subject to the statements placed on the record that resolved the TSI Response.

2.     The Reverse Vesting Order, attached hereto as Exhibit 1, is hereby recognized, enforced, and given full force and effect within the territorial jurisdiction of the United States in its entirety.

3.     The Subscription Agreement and the Transaction contemplated thereunder, including, for the avoidance of doubt, the transfer of the Excluded Property located within the territorial jurisdiction of the United States to ResidualCo on the terms set forth in the Subscription Agreement, the Reverse Vesting Order (including all transactions contemplated thereunder), this Order (including all transactions contemplated hereunder), and all of the terms and conditions of each of the foregoing are hereby authorized pursuant to sections 105, 363, 1501, 1507, 1520, 1521, and 1522 of the Bankruptcy Code.

4.     The Chapter 15 Debtors, the Foreign Representative, the Monitor, and the Purchaser (as well as each of their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the Transaction, including the transfer of the Excluded Property to ResidualCo, in accordance with the Subscription

Agreement, the Reverse Vesting Order, and this Order; (b) perform, consummate, implement, and fully close the Transaction contemplated by the Subscription Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Subscription Agreement and the Transaction, and to take such additional steps and actions as may be necessary or appropriate to the performance of the obligations contemplated by the Subscription Agreement, all without further order of the Court; (c) cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Excluded Property that are necessary or appropriate to effectuate the Transaction, the Reverse Vesting Order, and this Order (including, without limitation, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as the Chapter 15 Debtors or the Purchaser may determine are necessary or appropriate); and (d) cause to be filed, registered, or otherwise recorded a certified copy of the Reverse Vesting Order or this Order to the extent necessary or appropriate, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the automatic release of all encumbrances, except for Retained Liabilities (as defined in the Subscription Agreement) against the Chapter 15 Debtors.

5. All persons and entities that are currently in possession of any Excluded Assets (as defined in the Subscription Agreement) located in the territorial jurisdiction of the United States or that are otherwise subject to the jurisdiction of this Court are hereby directed to surrender possession of such Excluded Assets to ResidualCo on the Closing Date.

6. The Releases set forth in the Reverse Vesting Order are hereby recognized by this Court and given full force and effect in the United States.

7.      On the Closing Date, all right, title, and interest of the Chapter 15 Debtors in and to the Excluded Property shall be transferred to and absolutely vest in ResidualCo without further instrument of transfer or assignment, and such transfer shall: (a) be a legal, valid, binding, and effective transfer of such Excluded Property to ResidualCo; (b) vest all right, title, and interest of the Chapter 15 Debtors in the Excluded Property exclusively in ResidualCo; and (c) enjoin any claims against the Chapter 15 Debtors or Purchaser related to or arising from any Excluded Property and channel any such claims to be asserted solely against ResidualCo.

8.      Every federal, state, and local governmental agency or department is authorized to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the transfer of the Excluded Property to ResidualCo and the Transaction generally.  Effective as of the Closing Date, the Reverse Vesting Order and this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Chapter 15 Debtors' interests in the Excluded Property to ResidualCo.  The Reverse Vesting Order and this Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

9.      This Order (a) shall be effective as a determination that, as of the Closing Date, all Encumbrances, other than Permitted Encumbrances, have been unconditionally released, discharged, and terminated as to the Retained Assets located within the territorial jurisdiction of the United States, and (b) is and shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who

may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Retained Assets located within the territorial jurisdiction of the United States.

10.     The Purchaser is not and shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to any of the Chapter 15 Debtors; (b) have, de facto or otherwise, merged with or into any or all of the Chapter 15 Debtors; or (c) be a mere continuation or substantial continuation of any or all of the Chapter 15 Debtors or the enterprise or operations of any or all of the Chapter 15 Debtors.

11.     The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby.  The Transaction was undertaken and entered into by the Chapter 15 Debtors and the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code.  As such, the reversal or modification on appeal of this Order approving the Subscription Agreement shall not affect the validity of the Subscription Agreement, whether or not the Purchaser knew of the pendency of the appeal, unless this Order was duly and properly stayed pending appeal.

12.     Neither the Chapter 15 Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Subscription Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

13.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable provisions of the Bankruptcy Rules or Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply. The

Chapter 15 Debtors, the Purchaser, the Monitor, and the Foreign Representative are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order.

14.    This Court shall retain jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order or the Reverse Vesting Order in the United States.  Notwithstanding anything to the contrary in this Order, the Reverse Vesting Order, or any other document, this Court shall retain jurisdiction to hear and determine all disputes which are in any forum or court within the territorial United States involving the existence, nature, scope, or enforcement of any Releases granted in the Reverse Vesting Order or recognized by this Order.

New York, New York
Dated:  May 7, 2026

/s/**Martin Glenn**
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE